**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,    ) ) ) ) | |
| Plaintiff,    ) ) | |
| v.    ) ) | Case No. 12-cv-00127 (RWR) |
| U.S. DEPARTMENT OF JUSTICE CRIMINAL DIVISION, et al.,    ) ) ) | |
| Defendants.    ) ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants U.S. Department of Justice Criminal Division, National Security Division,

and the Federal Bureau of Investigation, through the undersigned counsel, move this Court for

summary judgment pursuant to Federal Rule of Civil Procedure 56.  In support of this motion,

the Court is respectfully referred to the attached Memorandum in Support of Motion for

Summary Judgment, Statement of Material Facts Not in Dispute, three declarations submitted on

the public record, and three declarations submitted *ex parte* and *in camera*.

Dated: January 31, 2013.

Respectfully submitted,

STUART F. DELERY
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

 */s/ Scott Risner*
SCOTT RISNER (MI Bar # P70762)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530

Tel: (202) 514-2395
Fax: (202) 616-8470
Email: scott.risner@usdoj.gov

Counsel for Defendants

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ELECTRONIC PRIVACY<br>INFORMATION CENTER,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE<br>CRIMINAL DIVISION, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 12-cv-00127 (RWR)<br>)<br>)<br>)<br>)<br>)<br>) |

<u>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**</u>

STUART F. DELERY
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

SCOTT RISNER (MI Bar # P70762)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
Tel: (202) 514-2395
Fax: (202) 616-8470
Email: scott.risner@usdoj.gov

Counsel for Defendants

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

STANDARD OF REVIEW ................................................................................................. 4

ARGUMENT ...................................................................................................................... 6

   I.  DEFENDANTS CONDUCTED ADEQUATE SEARCHES FOR RESPONSIVE
      RECORDS .................................................................................................................. 6

  II.  EACH COMPONENT PROPERLY WITHHELD ALL RESPONSIVE
      DOCUMENTS UNDER EXEMPTION 7(A) .................................................................... 8

      A.  The Records Were "Compiled for Law Enforcement Purposes" ................................. 9

      B.  Disclosure of the Records "Could Reasonably Be Expected to Interfere with
           Enforcement Proceedings" ........................................................................................... 10

 III.  EACH COMPONENT PROPERLY WITHHELD CERTAIN INFORMATION
      UNDER ADDITIONAL EXEMPTIONS ......................................................................... 16

      A.  Exemption 1 (FBI and NSD) ..................................................................................... 16

      B.  Exemption 3 (FBI, NSD, and the Criminal Division) ................................................. 21

      C.  Exemption 5 (FBI, NSD, and the Criminal Division) ................................................. 22

      D.  Exemption 6 (FBI, NSD, and the Criminal Division)………………………………….26

      E.  Exemptions 7(C), (D), (E), and (F)…..…………….…………………………………..29

           1.  Exemption 7(C) (FBI, NSD, and the Criminal Division) ..................................... 29
           2.  Exemption 7(D) (FBI, NSD, and the Criminal Division)...……………………….30
           3.  Exemption 7(E) (FBI)...………………………………………………………….32
           4.  Exemption 7(F) (FBI)...………………………………………………………….33

CONCLUSION ................................................................................................................... 34

# TABLE OF AUTHORITIES

*Access Reports v. Department of Justice*,
    926 F.2d 1192 (D.C. Cir. 1991) ........................................................................24

*Alyeska Pipeline Serv. v. EPA*,
    856 F.2d 309 (D.C. Cir. 1988) ..........................................................................12

*America Civil Liberties Union v. U.S. Department of Defense*,
    628 F.3d 612 (D.C. Cir. 2011) ..........................................................................16

*Amuso v. DOJ*,
    600 F. Supp. 2d 78 (D.D.C. 2009) ....................................................................27

*Antonelli v. ATF*,
    555 F. Supp. 2d 16 (D.D.C. 2008) ....................................................................22

*In re Apollo Grp., Inc. Securities Litigation*,
    251 F.R.D. 12 (D.D.C. 2008) ............................................................................24

*Arieff v. Department of the Navy*,
    712 F.2d 1462 (D.C. Cir. 1983) ..........................................................................3

*Aspin v. Department of Defense*,
    491 F.2d 24 (D.C. Cir. 1973)) ............................................................................9

*Azmy v. Department of Defense*,
    562 F. Supp. 2d 590 (S.D.N.Y. 2008) ..............................................................15

*Baldridge v. Shapiro*,
    455 U.S. 345 (1982) ............................................................................................5

*Bevis v. Department of State*,
    801 F.2d 1386 (D.C. Cir. 1986) ........................................................................11

*Blanton v. DOJ*,
    182 F. Supp. 2d 81 (D.D.C. 2002) ....................................................................32

*Brunetti v. FBI*,
    357 F. Supp. 2d 97 (D.D.C. 2004) ......................................................................7

*Campbell v. Department of Health & Human Services*,
    682 F.2d 256 (D.C. Cir. 1982) ..........................................................................11

*Chemical Manufacturers Association v. Consumer Products Safety Commission*,
    600 F. Supp. 114 (D.D.C. 1984) ......................................................................24

*Coastal States Gas Corp. v. Department of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ...................................................................................24

*Coleman v. Lappin*,
  607 F. Supp. 2d 15 (D.D.C. 2009) ...........................................................................9, 15

*Crooker v. Bureau of Alcohol, Tobacco & Firearms*,
  789 F.2d 64 (D.C. Cir. 1986) ...................................................................................11

*Crowell & Moring v. Department of Defense*,
  703 F. Supp. 1004 (D.D.C. 1989) .............................................................................13

*Center for National Security Studies v. DOJ*,
  331 F.3d 918 (D.C. Cir. 2003) ..................................................................................4

*Delviscovo v. FBI*,
  903 F. Supp. 1 (D.D.C. 1995) ...................................................................................31

*Department of Defense v. Federal Labor Relations Authority*,
  510 U.S. 487 (1994) .................................................................................................26

*Department of Interior v. Klamath Water Users Protective Association*,
  532 U.S. 1 (2001) .....................................................................................................23

*Department of the Air Force v. Rose*,
  425 U.S. 352 (1976) .................................................................................................25

*Dow Jones & Co. v. Department of Justice*,
  917 F.2d 571 (D.C. Cir. 1990) ..................................................................................30

*Edmonds v. FBI*,
  272 F. Supp. 2d 35 (D.D.C. 2003) ..................................................................11, 13, 14

*El Badrawi v. DHS*,
  596 F. Supp. 2d 389 (D. Conn. 2009) .......................................................................32

*Environmental Protection Services v. EPA*,
  364 F. Supp. 2d 575 (N.D. W. Va. 2005) ...................................................................14

*Garcia v. DOJ*,
  181 F. Supp. 2d 356 (S.D.N.Y. 2002) .......................................................................33

*Gardels v. CIA*,
  689 F.2d 1100 (D.C. Cir. 1982) .................................................................................5

*Goland v. CIA*,
   607 F.2d 339 (D.C. Cir. 1978) .................................................................................20

*Greenberg v. U.S. Department of Treasury*,
   10 F. Supp. 2d 3 (D.D.C. 1998) ...............................................................................6

*Hale v. DOJ*,
   973 F.2d 894 (10th Cir. 1992), *vacated on other grounds*, 509 U.S. 918 (1993)...............5

*Hayden v. National Security Agency*,
   608 F.2d 1381 (D.C. Cir. 1979) ...............................................................................21

*Hickman v. Taylor*,
   329 U.S. 495 (1947)...................................................................................................22

*J.P. Stevens & Co. v. Perry*,
   710 F.2d 136 (4th Cir. 1983) ...................................................................................14

*Jefferson v. DOJ*,
   284 F.3d 172 (D.C. Cir. 2002) ..................................................................................9

*Juarez v. DOJ*,
   518 F.3d 54 (D.C. Cir. 2008) ...................................................................................15

*Judicial Watch, Inc. v. FDA*,
   449 F.3d 141 (D.C. Cir. 2006) .................................................................................26

*Kay v. FCC*,
   976 F. Supp. 23 (D.D.C. 1997) ...............................................................................15

*Kidd v. Department of Justice*,
   362 F. Supp. 2d 291 (D.D.C. 2005) ..........................................................................8

*LaCedra v. Executive Office of U.S. Attorneys*,
   317 F.3d 345 (D.C. Cir. 2003) ..................................................................................2

*Larson v. Department of State*,
   565 F.3d 857 (D.C. Cir. 2009) .................................................................................16

*Loving v. Department of Defense*,
   550 F.3d 32 (D.C. Cir. 2008) ...................................................................................23

*Marshall v. FBI*,
   802 F. Supp. 2d 125 (D.D.C. 2011) ..........................................................................7

*McGehee v. U.S. Department of Justice*,
   800 F. Supp. 2d 220 (D.D.C. 2011) ...................................................................7

*Mead Data Ctr., Inc. v. U.S. Department of the Air Force*,
   566 F.2d 242 (D.C. Cir. 1977) ........................................................................23

*Meeropol v. Meese*,
   790 F.2d 942 (D.C. Cir. 1986) ..........................................................................4

*Military Audit Project v. Casey*,
   656 F.2d 724 (D.C. Cir. 1981) .........................................................................16

*Moorefield v. U.S. Secret Serv.*,
   611 F.2d 1021 (5th Cir. 1980) .........................................................................15

*Morley v. CIA*,
   508 F.3d 1108 (D.C. Cir. 2007) .......................................................................16

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ....................................................................................21, 24

*Oglesby v. Department of the Army*,
   920 F.2d 57 (D.C. Cir. 1990) ..........................................................................4, 6

*Painting & Drywall Work Preservation Fund, Inc. v. HUD*,
   936 F.2d 1300 (D.C. Cir. 1991) .......................................................................25

*People for the America Way Foundation v. National Park Serv.*,
   503 F. Supp. 2d 284 (D.D.C. 2007) .................................................................24

*Raulerson v. Ashcroft*,
   271 F. Supp. 2d 17 (D.D.C. 2002) ...................................................................32

*Reed v. NLRB*,
   927 F.2d 1249 (D.C. Cir. 1991) .......................................................................25

*Renegotiation Board v. Grumman Aircraft Engineering Corp.*,
   421 U.S. 168 (1975) .........................................................................................25

*Rockwell International Corp. v. U.S. Department of Justice*,
   235 F.3d 598 (D.C. Cir. 2001) .........................................................................22

*SafeCard Services, Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) .........................................................................6

*Schiller v. NLRB*,
 964 F.2d 1205 (D.C. Cir. 1992) ........................................................22

*Schrecker v. Department of Justice*,
 349 F.3d 657 (D.C. Cir. 2003) ..........................................................6

*Solar Sources, Inc. v. United States*,
 142 F.3d 1033 (7th Cir. 1998) .....................................................13, 14

*Stern v. Federal Bureau of Investigation*,
 737 F.2d 84 (D.C. Cir. 1984) ..........................................................27

*Stillman v. CIA*,
 319 F.3d 546 (D.C. Cir. 2003) ........................................................20

*Summers v. DOJ*,
 517 F. Supp. 2d 231 (D.D.C. 2007) ..................................................29

*Suzhou Yuanda Enterprise Co. v. Customs & Border Protection*,
 404 F. Supp. 2d 9 (D.D.C. 2005) .....................................................14

*Texas Independent Producers Legal Action Association v. IRS*,
 605 F. Supp. 538 (D.D.C. 1984) ........................................................6

*U.S. Department of Justice v. Landano*,
 508 U.S. 165 (1993) .......................................................................30

*U.S. Department of Justice v. Reporters Committee for Freedom of the Press*,
 489 U.S. 749 (1989) .........................................................................5

*Upjohn Co. v. United States*,
 449 U.S. 383 (1981) .......................................................................23

*Vaughn v. Rosen*,
 523 F.2d 1136 (D.C. Cir. 1975) ......................................................24

*Weisberg v. DOJ*,
 705 F.2d 1344 (D.C. Cir. 1983) ........................................................6

*Williams v. FBI*,
 69 F.3d 1155 (D.C. Cir. 1995) ........................................................30

## **INTRODUCTION**

On November 28, 2010, the organization WikiLeaks published numerous documents that it contended were Department of State embassy cables.  The following day, Attorney General Eric H. Holder, Jr. stated that the Department of Justice had initiated a criminal investigation into the potential unauthorized release of classified information.  Compl. ¶¶ 15-16.  That investigation continues to this day.

This case arises out of Plaintiff Electronic Privacy Information Center ("EPIC")'s attempts to obtain information from the Government's files about that investigation.  In June 2011, EPIC submitted nearly identical Freedom of Information Act ("FOIA") requests to three Department of Justice components: the Federal Bureau of Investigation ("FBI"), the National Security Division ("NSD"), and the Criminal Division.  The requests set forth EPIC's suspicions about the scope of the Government's investigation, and seek four categories of records that would reveal whether, and to what extent, the Government has employed particular investigative techniques in its attempts to identify suspects and obtain evidence.  *See, e.g.*, Hardy Decl. (Ex. 1), Ex. A (request to FBI) at 1-3.

EPIC's request is a quintessential example of an improper attempt to use FOIA to force the Government to open its investigative files to public inspection.  But Congress did not enact FOIA to permit such unwarranted intrusion.  Through Exemption 7(A), FOIA protects from disclosure "records or information compiled for law enforcement purposes" when the disclosure of such records "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  In response to EPIC's requests, the FBI, NSD, and the Criminal Division have determined that all responsive documents are protected from disclosure by Exemption 7(A), and accordingly each component has properly refused to produce responsive records.  Moreover,

records requested by EPIC are also protected by Exemptions 1, 3, 5, 6, 7(C), 7(D), 7(E), and

7(F).  Defendants, accordingly, move for summary judgment pursuant to Federal Rule of Civil

Procedure 56.

## **BACKGROUND**

On approximately June 23, 2011, EPIC submitted nearly identical FOIA requests to the

FBI, NSD, and the Criminal Division.  The requests seek four categories of records concerning

the Government's investigation into WikiLeaks:

1.  All records regarding any individuals targeted for surveillance for
    support for or interest in WikiLeaks;

2.  All records regarding lists of names of individuals who have
    demonstrated support for or interest in WikiLeaks;

3.  All records of any agency communications with Internet and social
    media companies including, but not limited to Facebook and Google,
    regarding lists of individuals who have demonstrated, through
    advocacy or other means, support for or interest in WikiLeaks; and

4.  All records of any agency communications with financial services
    companies including, but not limited to Visa, MasterCard, and PayPal,
    regarding lists of individuals who have demonstrated, through
    monetary donations or other means, support or interest in WikiLeaks.

*See*, *e.g.*, Hardy Decl. (Ex. 1), Ex. A (request to FBI) at 3.[1]

EPIC filed its complaint on January 25, 2012, *see* Dkt. 1, and Defendants answered the

complaint on March 23, 2012, *see* Dkt. 4.  Pursuant to the Court's Scheduling Order of June 6,

---

[1] In responding to the request, Defendants confirm that they have records responsive to the
request as a whole, the terms of which they have interpreted broadly.  *See LaCedra v. Exec.
Office of U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003) (requiring agencies to interpret
requests "liberally in favor of disclosure").  But Defendants do not confirm the existence of
records responsive to any particular portion of the request.  *See* Hardy *Ex Parte* Decl. (Ex. 2) ¶ 8
n.1.

2012, each defendant provided EPIC with a *Vaughn* index on November 1, 2012.[2]  Defendants

now move for summary judgment.

      As set forth in the attached declarations, each component conducted its own search for

documents, and each has determined that all responsive documents are protected from disclosure

under FOIA's statutory exemptions. Specifically, the components have determined that

Exemptions 7(A) protects all responsive material, while certain information is also protected by

Exemptions 1, 3, 5, 6, 7(C), 7(D), 7(E), and 7(F).

      In support of this motion, Defendants are providing this Court with a series of

declarations and exhibits.  Because EPIC requests records concerning a sensitive national

security investigation, certain information regarding the documents cannot be publicly disclosed.

While the use of public declarations is preferred, courts recognize the need for *ex parte* filings in

FOIA cases when "(1) the validity of the government's assertion of exemptions cannot be

evaluated without information beyond that contained in the public affidavits and in the records

themselves, and (2) public disclosure of that information would compromise the secrecy

asserted."  *Arieff v. Dep't of the Navy*, 712 F.2d 1462, 1471 (D.C. Cir. 1983).

      Here, Defendants have determined that certain information concerning the requested

documents and the bases for their withholding cannot be provided publicly.  The Government

should not be required to divulge sensitive information concerning an investigation, including

non-public information concerning the scope or size of the investigation, in order to protect other

---

[2] Those *Vaughn* indices identified the exemptions that the Defendants asserted over the withheld
information, but they did not describe particular documents given that disclosing information
such as the volume of responsive material would cause harm by revealing the scope of the
investigation. For additional information about the particular documents being withheld, the
Court is respectfully referred to the components' *ex parte* declarations.  *See* Hardy *Ex Parte*
Decl. (Ex. 2) ¶ 8 n.3; Bradley *Ex Parte* Decl. (Ex. 3) ¶ 5; Cunningham *Ex Parte* Decl. (Ex. 5)
¶ 4.

sensitive information.  While Defendants have made every effort to detail the basis for their

withholdings on the public record, the declarations also explain why certain information must

only be provided *ex parte* and *in camera*.   To require otherwise would force the Government to

divulge the very information it is trying to protect.  Accordingly, Defendants are providing the

Court with both public and *ex parte* declarations:

| Exhibit | Component | Declarant |
|---------|-----------|-----------|
| Exhibit 1 | FBI | Declaration of David M. Hardy |
| Exhibit 2 | FBI | *Ex Parte* and *In Camera* Declaration of David M. Hardy (addressing Exemptions 3 and 7(D)) |
| Exhibit 3 | NSD | Declaration of Mark A. Bradley |
| Exhibit 4 | NSD | *Ex Parte* and *In Camera* Declaration of Mark A. Bradley (addressing NSD's search and Exemptions 3, 6, 7(A), and 7(C)) |
| Exhibit 5 | CRM | Declaration of John E. Cunningham III |
| Exhibit 6 | CRM | *Ex Parte* and *In Camera* Declaration of John E. Cunningham III (addressing Exemption 3) |

## **STANDARD OF REVIEW**

The Freedom of Information Act, 5 U.S.C. § 552, "represents a balance struck by

Congress between the public's right to know and the government's legitimate interest in keeping

certain information confidential."  *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C.

Cir. 2003).  FOIA requires agencies to release documents responsive to a properly submitted

request, except for those documents (or portions of documents) subject to any of nine statutory

exemptions to the general disclosure obligation.  *See* 5 U.S.C. §§ 552(a)(3), (b)(1)-(b)(9).

In discharging its obligations under FOIA, an agency generally must conduct a

reasonable search for responsive documents.  "In order to obtain summary judgment, the agency

must show that it made a good faith effort to conduct a search for the requested records, using

4

methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The agency's search is evaluated on the basis of affidavits, and "affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Meeropol v. Meese*, 790 F.2d 942, 952 (D.C. Cir. 1986).

While FOIA requires agency disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public interest." *Baldridge v. Shapiro*, 455 U.S. 345, 352 (1982). FOIA provides nine exemptions that "reflect Congress' recognition that the Executive Branch must have the ability to keep certain types of information confidential." *Hale v. DOJ*, 973 F.2d 894, 898 (10th Cir. 1992), *vacated on other grounds*, 509 U.S. 918 (1993). To sustain its burden of justifying nondisclosure of information, *see* 5 U.S.C. § 552(a)(4)(B), an agency may submit a declaration or index describing the withheld material with reasonable specificity, explaining the reasons for non-disclosure, and demonstrating with reasonable specificity that reasonably segregable material has been released. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 753 (1989). A court reviews an agency's response to a FOIA request *de novo*, *see* 5 U.S.C. § 552(a)(4)(B), but given the unique nature of FOIA cases, an agency declaration is accorded substantial weight. *See Gardels v. CIA*, 689 F.2d 1100, 1104 (D.C. Cir. 1982).

In evaluating the applicability of FOIA exemptions in this case, it is important to note that the information sought by EPIC "implicat[es] national security, a uniquely executive purview." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926. EPIC seeks records concerning a government investigation into the unauthorized disclosure of classified information. As Secretary of State Hillary Clinton recognized, the disclosure of such information "puts people's

lives in danger, threatens our national security, and undermines our efforts to work with other countries to solve shared problems." *See* Sec'y Hillary Clinton, Remarks to the Press on Release of Purportedly Confidential Documents by Wikileaks (Nov. 29, 2010), available at http://www.state.gov/secretary/rm/2010/11/152078.htm. Time and again, courts have recognized the "propriety of deference to the executive in the context of FOIA claims which implicate national security." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927-28.

## ARGUMENT

## I.   DEFENDANTS CONDUCTED ADEQUATE SEARCHES FOR RESPONSIVE RECORDS

An agency can show that it discharged its obligations under FOIA and is entitled to summary judgment by submitting declarations that demonstrate that the agency "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. "The adequacy of an agency's search is measured by a standard of reasonableness, and is dependent upon the circumstances of the case." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). Conducting a "reasonable" search is a process that requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise" and is "hardly an area in which the courts should attempt to micro manage the executive branch." *Schrecker v. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003).

Moreover, an agency's declaration will be relied upon if it is "relatively detailed, nonconclusory, and submitted in good faith." *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 12-13 (D.D.C. 1998)). "The standard . . . is not meticulous documentation [of] the details of an epic search." *Texas Indep. Producers Legal Action Ass'n v. IRS*, 605 F. Supp. 538, 547 (D.D.C. 1984). A sufficiently detailed declaration is presumed to be in good faith, a presumption

that can be rebutted only with clear evidence of bad faith.  *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

The declarations submitted by the FBI, NSD, and the Criminal Division adequately explain the searches conducted by each component.

The FBI's declaration explains the scope of the conducted search, the search terms used in that search, and the basis for the FBI's belief that the search would reasonably be expected to locate any documents responsive to EPIC's request.  Specifically, the FBI indicates that it conducted a search of its Central Records System ("CRS") using the search term "WikiLeaks," and identified a file containing cross-references to certain agency files.  *See* Hardy Decl. (Ex. 1) ¶¶ 17-19.  Through consultations with the case agents assigned to the file, the FBI identified investigative files likely to contain responsive information.  *Id.* ¶ 19.

Courts have routinely found that FBI searches of its CRS fully meet the standards of adequacy and reasonableness established under the FOIA.  *See, e.g.*, *Marshall v. FBI*, 802 F. Supp. 2d 125, 132-33 (D.D.C. 2011); *McGehee v. U.S. Dep't of Justice*, 800 F. Supp. 2d 220, 229-30 (D.D.C. 2011); *Brunetti v. FBI*, 357 F. Supp. 2d 97, 103 (D.D.C. 2004), *aff'd*, 124 F.3d 1309 (D.D.C. 1997) (table).  Here, a search of the CRS for "main" files and "cross-references" was likely to locate any responsive documents.  Hardy Decl. (Ex. 1) ¶¶ 17-19.  Accordingly, the FBI's search was both comprehensive and sufficient.

Upon receiving the request, NSD FOIA personnel determined that the Counterespionage Section ("CES") was the only location within NSD that was reasonably likely to possess responsive records.  Bradley Decl. (Ex. 3) ¶ 9.  NSD searched all of the electronic files pertaining to the investigation of the lead CES attorney assigned to the matter, after determining that such a search would locate any potentially responsive records because any other files would

be duplicative of those records. *Id.* That search was sufficiently comprehensive. Additional

detail regarding how NSD conducted its search is included in NSD's *ex parte* declaration, since

its disclosure would provide non-public information regarding the scope of NSD's involvement

in the investigation that would itself compromise the investigation. *See* Bradley *Ex Parte* Decl.

(Ex. 4) ¶ 4.

Finally, the Criminal Division determined that the only entities likely to have responsive

documents were the Computer Crimes and Intellectual Property Section ("CCIPS") and the

Office of International Affairs ("OIA"). Cunningham Decl. (Ex. 5) ¶ 10. Those entities

conducted searches, employing a variety of search terms designed to locate potentially

responsive materials. *Id.* The Criminal Division's FOIA personnel determined that those

searches were likely to locate any responsive documents. *Id.*

The foregoing discussion and the additional details set forth in the attached declarations

demonstrate that each component searched those locations that they determined were reasonably

likely to contain responsive documents. Because the entities each "made a good faith effort to

search for the records requested," and their "methods were reasonably expected to produce the

information requested," *Kidd v. Dep't of Justice*, 362 F. Supp. 2d 291, 294 (D.D.C. 2005), the

Court should enter summary judgment on this issue in favor of Defendants.

## II.     EACH COMPONENT PROPERLY WITHHELD ALL RESPONSIVE
##         DOCUMENTS UNDER EXEMPTION 7(A)

In response to EPIC's requests, Defendants determined that all records responsive to the

requests are subject to one or more of FOIA's nine statutory exemptions to disclosure. All of the

records are being withheld pursuant to Exemption 7(A), which applies to "records or information

compiled for law enforcement purposes" to the extent that the production of such records "could

reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).

As detailed below, Defendants have met their burden under FOIA and established that they properly withheld all responsive records under this exemption.[3]

## A.      The Records Were "Compiled for Law Enforcement Purposes"

"In assessing whether records are compiled for law enforcement purposes, . . . the focus is on how and under what circumstances the requested files were compiled, and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" *Jefferson v. DOJ*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (quoting *Aspin v. Dep't of Defense*, 491 F.2d 24, 27 (D.C. Cir. 1973)).  "Because the DOJ is an agency 'specializ[ing] in law enforcement, its claim of a law enforcement purpose is entitled to deference." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926.  To demonstrate that the records were compiled for law enforcement purposes, an agency "must establish (1) 'a rational nexus between the investigation and one of the agency's law enforcement duties;' and (2) 'a connection between an individual or incident and a possible security risk or violation of federal law.'"  *Id.* (quoting *Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998)).

Here, each component's declaration makes clear that the information withheld under this exemption was "compiled for law enforcement purposes" because it is part of a broader investigation being conducted by the Department of Justice into the unauthorized disclosure of classified information.  *See* Hardy Decl. (Ex. 1) ¶ 23; Bradley Decl. (Ex. 3) ¶ 13; Cunningham Decl. (Ex. 5) ¶ 12.  The investigation of criminal conduct, particularly when it entails serious threats to the national security, is plainly a high-priority law enforcement duty of the

---

[3] Defendants begin with a discussion of Exemption 7(A) as a matter of judicial economy.  By upholding the Government's withholdings under this exemption, the Court will not need to address the other exemptions discussed below.  *See Coleman v. Lappin*, 607 F. Supp. 2d 15, 23 (D.D.C. 2009) ("If the Court determines that information properly is withheld under one exemption, it need not determine whether another exemption applies to that same information.").

Department.  *See Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926 (recognizing that the Exemption

7(A) threshold is satisfied by an investigation concerning "a heinous violation of federal law as

well as a breach of this nation's security").  Insofar as individuals are being investigated for their

role in the unauthorized disclosure of classified information, there is a clear nexus between the

subjects "and a possible security risk or violation of federal law."  *Id.*  Because the records at

issue were compiled as part of a Department of Justice investigation into possible violations of

federal law, they were "compiled for law enforcement purposes," and the threshold inquiry under

Exemption 7(A) is satisfied.

   **B.**      **Disclosure of the Records "Could Reasonably Be Expected to Interfere with
             Enforcement Proceedings"**

   Defendants have also determined that the disclosure of the responsive records could

reasonably be expected to interfere with ongoing enforcement proceedings.  "Exemption 7(A)

explicitly requires a predictive judgment of the harm that will result from disclosure of

information."  *Id.* at 927.  Given that the Department's investigation concerns matters of national

security, Defendants' declarations must be "viewed in light of the appropriate deference to the

executive on issues of national security."  *Id.  See also id.* at 927-28 ("Just as we have deferred to

the executive when it invokes FOIA Exemptions 1 and 3, we owe the same deference under

Exemption 7(A) in appropriate cases," including those in which "the government's declarations

raise legitimate concerns that disclosure would impair national security.").

   In justifying its reliance on Exemption 7(A), the Government need not discuss the

exemption on a document-by-document basis.  To do so could itself impede the investigation, as

providing details such as the volume of the responsive material or the nature of particular

documents could itself reveal sensitive information that could impede the investigation.  Instead,

an agency may "group[] documents into relevant categories that are sufficiently distinct to allow

a court to grasp 'how each . . . category of documents, if disclosed, would interfere with the investigation.'" *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986) (quoting *Campbell v. Dep't of Health & Human Servs.*, 682 F.2d 256, 265 (D.C. Cir. 1982)).  As set forth below, Defendants have reviewed the responsive documents, and identified "functional" categories, such that the court may "trace a rational link between the nature of the document and the alleged likely interference." *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986).

The declarations explain that the requested documents relate to an ongoing national security investigation.  In November 2010, the Attorney General announced that the Department of Justice was conducting a criminal investigation into the possible disclosure of classified information that was published on the WikiLeaks website.  Bradley Decl. (Ex. 3) ¶ 13.  That investigation concerns potential violations of federal criminal laws, in the form of serious threats to the national security, and the investigation continues today. *Id.*; Hardy Decl. (Ex. 1) ¶ 23; Cunningham Decl. (Ex. 5) ¶ 12.  From the terms of their request, it is clear that EPIC seeks to obtain documents concerning that investigation.

Defendants' declarations also describe the types of records at issue.  The declarations explain that the records responsive to EPIC's request consist of evidentiary, investigative, and administrative materials related to the investigation. *See* Hardy Decl. (Ex. 1) ¶¶ 26, 29-38; Bradley Decl. (Ex. 3), ¶¶ 14-16; Cunningham Decl. (Ex. 5) ¶¶ 14-19.  The records are further described by type – such as confidential source statements, communications between government investigators and attorneys, and summaries of evidence obtained during the investigation – in ways that indicate the information contained in the materials.  By describing the responsive documents in functional categories, Defendants have provided sufficient detail to

meet their burden under Exemption 7(A). *See, e.g.*, *Edmonds v. FBI*, 272 F. Supp. 2d 35, 54-55 (D.D.C. 2003) (upholding agency's declaration that grouped withheld material into two categories, "evidentiary" and "investigative" materials). *Cf. Bevis*, 801 F.2d at 1390 (rejecting use of categories such as "letters" that give "absolutely no indication of the substance of the information contained").

Moreover, the declarations provide substantive explanations for the harms that would result from disclosure. For example, Defendants have withheld information that, if disclosed, would identify potential witnesses and other individuals who have cooperated with the investigation. Specifically, the FBI has explained that the documents include statements made to the FBI by sources who were given expressed or implied assurances that their identities would remain confidential. Hardy Decl. (Ex. 1) ¶ 30. These statements contain information provided by individuals with knowledge of potential criminal activities. *Id.* As the FBI explains, disclosure of the information would mean that "the sources that have chosen to cooperate with law enforcement could be subjected to retaliation, intimidation, or physical or mental harm." *Id.* Aside from the harms that disclosure would cause to the sources themselves, it is the judgment of the FBI that "[t]his would have a chilling effect on these investigations and any future prosecutions resulting from these cases." *Id.* NSD and the Criminal Division have made similar determinations in withholding their own records concerning information that the Government has obtained from witnesses. *See* Bradley Decl. (Ex. 3) ¶ 15(c); Cunningham Decl. (Ex. 5) ¶ 17. *See also* Bradley *Ex Parte* Decl. (Ex. 4) ¶¶ 8-9 (explaining harms that would result from disclosure of identities of Government personnel involved in the investigation).

The harms associated with revealing the identities of cooperating individuals are well-recognized in cases applying Exemption 7(A). *See, e.g.*, *Ctr. for Nat'l Sec. Studies*, 331 F.3d at

929 (discussing courts that have found the "likelihood of witness intimidation and evidence tampering" to be sufficient concerns under Exemption 7(A)); *Alyeska Pipeline Serv. v. EPA*, 856 F.2d 309, 311 (D.C. Cir. 1988) (agreeing that disclosure might identify individuals who had assisted investigation by providing documents, and would "thereby subject them to potential reprisals and deter them from providing further information"); *Edmonds*, 272, F. Supp. 2d at 55 (recognizing potential harms that would result if disclosure "stifle[d] cooperation" or "le[d] to the harassment or intimidation of individuals involved in the investigations"); *Kay*, 976 F. Supp. at 39 (recognizing that an agency "need not establish that witness intimidation is certain to occur, only that it is a possibility"); *Crowell & Moring v. Dep't of Defense*, 703 F. Supp. 1004, 1011 (D.D.C. 1989) (agreeing that disclosing witnesses' identities would impair the Government's ability to obtain cooperation during an investigation).

Defendants have also asserted Exemption 7(A) to protect the documentary evidence and other information gathered in the course of the investigation.  *See* Hardy Decl. (Ex. 1) ¶ 32; Bradley Decl. (Ex. 3) ¶¶ 8(b), 8(c); Cunningham Decl. (Ex. 5) ¶ 17.  Release of this information "would undermine any pending or prospective prosecutions by prematurely revealing the scope and focus of the investigations," Hardy Decl. (Ex. 1) ¶ 32, and by "reveal[ing] the methods by which the Government is (or is not) conducting the investigation," Bradley Decl. (Ex. 3) ¶ 8(b). Indeed, this appears to be the purpose of EPIC's request, insofar as portions of the request seek records that would reveal whether, and to what extent, the Government has communicated with social media companies and financial services companies to obtain evidence about particular individuals.  *See* Hardy Decl. (Ex. 1), Ex. A (request to FBI), at 3.

Courts time and again have recognized the harms that would result from disclosing the scope of an investigation, and refused to allow FOIA to be used as a tool to force the government

to prematurely provide a roadmap of its investigative plans.  *See, e.g.*, *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 928 (disclosure "would enable al Qaeda or other terrorist groups to map the course of the investigation," thus giving them "a composite picture"); *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1039 (7th Cir. 1998) (agreeing that disclosure could reveal "scope and nature" of investigation).; *J.P. Stevens & Co. v. Perry*, 710 F.2d 136, 143 (4th Cir. 1983) (disclosure would "hinder [the agency's] ability to shape and control investigations"); *Suzhou Yuanda Enter. Co. v. Customs & Border Protection*, 404 F. Supp. 2d 9, 14 (D.D.C. 2005) (accepting that disclosure of evidence of criminal conduct "would interfere with an agency investigation [by] informing the public of the evidence sought and scrutinized by this type of investigation"); *Envt'l Prot. Servs. v. EPA*, 364 F. Supp. 2d 575, 588 (N.D. W. Va. 2005) (disclosure "would prematurely reveal the EPA's case"); *Edmonds*, 272 F. Supp. 2d at 55 (recognizing potential harms that would result if disclosure "reveal[ed] the nature and scope of the investigations, investigative activities, the cooperation of particular individuals, the identity of potential witnesses, and the investigative steps taken to pursue interviews with individuals who can inform investigators").

Defendants have also determined that releasing certain evidentiary materials gathered during the investigations would identify "the subjects of and persons of investigative interest in those investigations."  Hardy Decl. (Ex. 1) ¶ 32; *see also* Bradley Decl. (Ex. 3) ¶ 8(a); Cunningham Decl. (Ex. 5) ¶ 17.  As the FBI explains, "[o]nce subjects and persons of interest become aware of the FBI's attention, they are able to take defensive actions to conceal their activities, elude detection, and/or suppress or fabricate evidence."  Hardy Decl. (Ex. 1) ¶ 32. NSD has determined that releasing this type of information may enable "targets of the Government's investigation . . . to change their behavior, alter or destroy evidence, and intimidate potential witnesses."  Bradley Decl. (Ex. 3) ¶ 8(a).  The Criminal Division similarly

14

recognizes that disclosure of such information could allow individuals "to assess the likelihood

that he or she may be prosecuted and/or convicted in connection with this investigation," and to

make "changes to their behavior that [could] frustrate the investigation."  Cunningham Decl. (Ex.

5) ¶ 17.

It is well-established that Exemption 7(A) provides for the non-disclosure of information

that would alert individuals that they are of interest to a pending investigation.  *See, e.g.*, *Juarez

v. DOJ*, 518 F.3d 54, 58 (D.C. Cir. 2008) (agreeing that release "would compromise the

investigation as it could lead to destruction of evidence"); *Moorefield v. U.S. Secret Serv.*, 611

F.2d 1021, 1026 (5th Cir. 1980) (agreeing that disclosure would enable targets "to elude the

scrutiny of the [Secret] Service"); *Azmy v. Dep't of Defense*, 562 F. Supp. 2d 590, 605 (S.D.N.Y.

2008) (disclosure of "names of individuals and organizations of ongoing law enforcement

interest" could reasonably be expected to interfere with investigation because "subjects of the

Government's interest would likely attempt to conceal their activities"); *Kay v. FCC*, 976 F.

Supp. 23, 38-39 (D.D.C. 1997) (finding that disclosure would harm an investigation because it

would provide the requester with insight into the focus of the agency's investigation and

evidence, and permit him to intimidate witnesses and circumvent the investigation).

Each component has reviewed the responsive material, and determined that it is exempt

in its entirety under Exemption 7(A).  As a result, there are no segregable, non-exempt portions

that may be released to EPIC.  *See* Hardy Decl. (Ex. 1) ¶¶ 27, 119; Bradley Decl. (Ex. 3) ¶ 12;

Cunningham Decl. (Ex. 5) ¶¶ 19, 44.  Defendants' assertions of Exemption 7(A) should thus be

upheld.

III.    **EACH COMPONENT PROPERLY WITHHELD CERTAIN INFORMATION UNDER ADDITIONAL EXEMPTIONS**

Because Exemption 7(A) applies to all responsive documents, Defendants' proper assertion of that exemption is grounds for summary judgment on all withholdings. *See Coleman*, 607 F. Supp. 2d at 23 (recognizing that a court need not consider whether multiple exemptions apply to the same information). If the Court finds that certain information is not protected by Exemption 7(A), though, each component has properly withheld information under numerous other exemptions. As set forth below, the FBI has withheld information under Exemptions 1, 3, 5, 6, 7(C), 7(D), 7(E), and 7(F); NSD relies on Exemptions 1, 3, 5, 6, 7(C), and 7(D); and the Criminal Division asserts Exemptions 3, 5, 6, 7(C), and 7(D).

A.      **Exemption 1 (FBI and NSD)**

The FBI and NSD have also determined that certain portions of the documents are exempt under 5 U.S.C. § 552(b)(1). That provision, known as Exemption 1, allows agencies to withhold classified information that is protected in the interest of national security and foreign policy. As detailed below, the FBI and NSD have met their burden under FOIA and established that they properly withheld information under Exemption 1.

Exemption 1 "protects matters 'specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . in fact properly classified pursuant to such Executive order.'" *Larson v. Dep't of State*, 565 F.3d 857, 861 (D.C. Cir. 2009) (quoting 5 U.S.C. § 552(b)(1)). While agency decisions to withhold classified information under FOIA are reviewed *de novo*, *see* 5 U.S.C. § 552(a)(4)(B), courts must accord "substantial weight" to an agency's affidavits justifying classification because agencies have "unique insights" into the adverse effects that might result from public disclosure of classified information. *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

16

"[L]ittle proof or explanation is required beyond a plausible assertion that information is properly classified." *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007). Because assessment of harm to national security is entrusted to the Executive Branch rather than the courts, "the government's burden is a light one;" "searching judicial review" is inappropriate, and "plausible" and "logical" arguments for nondisclosure will be sustained. *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 624 (D.C. Cir. 2011).

An agency can establish that it has properly withheld information under Exemption 1 if it demonstrates that it has met the classification requirements of Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009). Section 1.1 of the Executive Order sets forth the following four requirements for the classification of national security information: (1) an original classification authority classifies the information; (2) the Government owns, produces, or controls the information; (3) the information is within one of eight protected categories listed in section 1.4 of the Order; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in a specified level of identifiable damage to the national security. E.O. 13526, § 1.1(a). In section 1.4, the Executive Order establishes eight categories of classification. Of relevance here, the order provides that information may be classified if it concerns: "(b) foreign government information; (c) intelligence activities (including covert action), intelligence sources or methods, or cryptology; [or] (d) foreign relations or foreign activities of the United States, including confidential sources." *Id.* § 1.4. Here, the FBI and NSD have met both the procedural and substantive prerequisites for classification under the Order.

The FBI and NSD have each provided declarations from individuals who are authorized to classify national security information. Hardy Decl. (Ex. 1) ¶ 2; Bradley Decl. (Ex.

17

3) ¶ 2.  The declarants have personally reviewed the documents at issue and determined that the withheld information is properly classified consistent with the requirements of Executive Order 13526.  Hardy Decl. (Ex. 1) ¶¶ 43-44; Bradley Decl. (Ex. 3) ¶¶ 19-20.  Moreover, the declarations confirm that the information contained in the withheld documents is owned by and under the control of the United States.  Hardy Decl. (Ex. 1) ¶ 44; Bradley Decl. (Ex. 3) Decl. ¶ 19.

The two entities have also determined, and articulated with reasonable specificity, that the information protected from disclosure falls squarely within the categories of information set forth in sections 1.4(b), (c), and (d) of Executive Order 13526.  Hardy Decl. (Ex. 1) ¶¶ 44-75; Bradley Decl. (Ex. 3) ¶¶ 19-20.  In their declarations, the agencies have explained that the release of the withheld information reasonably could be expected to cause harm to national security.

### 1.  Section 1.4(b)

Section 1.4(b) of the Executive Order protects "foreign government information."  That includes "information provided to the United States Government by a foreign government or governments . . . with the expectation that the information, the source of the information, or both, are to be held in confidence."  E.O. 13526, § 6.1(s)(1).  The protection of such information is critical because, "[t]he free exchange of information between United States intelligence and law enforcement services and their foreign counterparts is predicated upon the understanding that these liaisons, and information exchanged between them, must be kept in confidence."  Hardy Decl. (Ex. 1) ¶ 46.

Here, the FBI has determined that numerous responsive documents contain such information.  *Id.* ¶¶ 45-51.  For example, the FBI asserts Exemption 1 over documents that

18

identify foreign governments and contain detailed information provided by those governments. It is the assessment of the FBI's Original Classification Authority that this information must be withheld in order "to protect the relationship and cooperative endeavors between these foreign governments and the FBI with regarding to the pending investigations." *Id.* ¶ 50(A).   Similarly, the FBI has withheld information identifying particular foreign government officials, along with the information those officials provided, because such information was provided on the condition of confidence, and identifying those foreign officials could harm not only the investigation but also our ability to obtain information in the future.  *Id.* ¶ 50(C).  Such information is plainly covered by section 1.4(b).

### 2.  Section 1.4(c)

The FBI and NSD also withhold information under section 1.4(c) of the Order, which protects "intelligence activities (including covert action), intelligence sources or methods, or cryptology."  E.O. 13526, § 1.4(c).  As explained in the attached declarations, the FBI has withheld documents describing "intelligence methods utilized by the FBI for gathering intelligence data," Hardy Decl. (Ex. 1) ¶ 52, while NSD has withheld documents that discuss "ongoing intelligence operations," Bradley Decl. (Ex. 3) ¶ 20.

The FBI has determined that the release of its information "would reveal actual intelligence activities and methods used by the FBI against specific targets of foreign counterintelligence investigations or operations; identify a target of a foreign counterintelligence investigation; or disclose the intelligence-gathering capabilities of the activities or methods directed at specific targets."  Hardy Decl. (Ex. 1) ¶ 53.  The FBI has determined that the disclosure of these activities or methods – which are still being used – could reveal specific targets of the FBI's investigation and allow hostile entities to discover the FBI's intelligence-

gathering methods.  *Id.* ¶ 54.  This could allow hostile entities to "develop countermeasures which would, in turn, severely disrupt the FBI's intelligence-gathering capabilities," and frustrate "the FBI's efforts to detect and apprehend violators of the United States' national security and criminal laws."  *Id.*

Similarly, NSD's declaration explains that the disclosure of the information withheld under section 1.4(b) "would reveal the scope of sensitive U.S. intelligence gathering operations." Bradley Decl. (Ex. 3) ¶ 20.  Releasing this information "would provide our adversaries and foreign intelligence targets with insight into the United States Government's foreign intelligence collection capabilities, which in turn could be used to develop the means to degrade and evade those collection capabilities."  *Id.*  Such information falls within the scope of section 1.4(c) of the Order.

### 3.  Section 1.4(d)

The FBI has also withheld information under section 1.4(d) of the Order.  That section recognizes that the release of certain information would impair U.S. government relations with foreign governments, and thus permits the classification of certain information relating to "foreign relations or foreign activities of the United States, including confidential sources."  E.O. 13526, § 1.4(d).  The FBI relies on section 1.4(d) to withhold "sensitive intelligence information gathered by the United States either about or from a foreign country."  Hardy Decl. (Ex. 1) ¶ 74. The FBI has determined that the release of this information could "jeopardize the fragile relationships that exist between the United States and certain foreign governments."  *Id.*  The disclosure of this information could, in the FBI's judgment, result in diplomatic or economic retaliation against the United States, among other harms to the national security.  *Id.* ¶ 75.

Based on the provided declarations, the sensitive information contained in the responsive documents, and the deference owed to national security officials, *see Stillman v. CIA*, 319 F.3d 546, 548 (D.C. Cir. 2003), the Court should uphold the Exemption 1 withholdings by the FBI and NSD.

### B.      Exemption 3 (FBI, NSD, and the Criminal Division)

Certain information withheld by the FBI, NSD, and the Criminal Division is also protected from disclosure by Exemption 3.  That exemption protects information that is "specifically exempted from disclosure by statute" under certain conditions.  5 U.S.C. § 552(b)(3).  To qualify as a statute that permits the withholding of information pursuant to Exemption 3, a statute must "(i) require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establish[] particular criteria for withholding or refer[] to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).   "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage."  *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978).

Each component has withheld information pursuant to Exemption 3, but cannot publicly identify the statute(s) that require(s) nondisclosure or provide further information about the withheld information.  *See* Hardy Decl. (Ex. 1) ¶ 79; Bradley Decl. (Ex. 3) ¶ 22; Cunningham Decl. (Ex. 5) ¶ 22.  While the Government often identifies the statutes at issue in an Exemption 3 withholding, it need not do so when that information is itself protected.  *See Haddam v. FBI*, Case No. 01-00434-CKK, Dkt. 51, Mem. Op. (D.D.C. Sept. 8, 2004) (upholding application of Exemption 3 made only *in camera* and *ex parte*, and not disclosing the basis for the assertion or

the statute at issue); *see also Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1391 (D.C. Cir. 1979)

("The Agency stated as much detail publicly in this case as it reasonably could without revealing

sensitive information, and presented further specifics *In camera*.  This is the proper way to

satisfy FOIA Exemption 3.").  Accordingly, the Court is respectfully referred to Defendants' *ex

parte* submissions for a further explanation of these withholdings.[4]  *See* Hardy *Ex Parte* Decl.

(Ex. 2) ¶¶ 9-12; Bradley *Ex Parte* Decl. (Ex. 4) ¶¶ 10-12; Cunningham *Ex Parte* Decl. (Ex. 6)

¶¶ 6-9.

### C.      Exemption 5 (FBI, NSD, and the Criminal Division)

Each component also moves for summary judgment on its withholding of information

under Exemption 5, which exempts from disclosure "inter-agency or intra-agency memorandums

or letters which would not be available by law to a party . . . in litigation with the agency."  5

U.S.C. § 552(b)(5).  Records are exempt from disclosure if they would be "normally privileged

in the civil discovery context."  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

Exemption 5 thus incorporates the privileges that are available to an agency in civil litigation,

including the protection of attorney work product, attorney-client communications, and

deliberative process materials.  *Id.* at 148-50; *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235

F.3d 598, 601 (D.C. Cir. 2001).

### 1.  Attorney Work Product

The attorney work product privilege protects materials prepared by attorneys during, or in

reasonable anticipation of, litigation.  *Hickman v. Taylor*, 329 U.S. 495, 509-10 (1947).  The

privilege applies to criminal matters, *see Rockwell Int'l Corp.*, 235 F.3d at 604-05, and protects

---

[4] Defendants respectfully request that the Court not identify the Exemption 3 statute(s) at issue,
or reveal any of the other information provided in Defendants' *ex parte* and *in camera*
submissions.

records generated as part of a law enforcement investigation when the investigation is "based upon a specific wrongdoing and represent[s] an attempt to garner evidence and build a case against the suspected wrongdoer," *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992). Courts routinely recognize that this privilege protects documents discussing litigation strategy from disclosure under the FOIA. *See, e.g.*, *Antonelli v. ATF*, 555 F. Supp. 2d 16, 24-25 (D.D.C. 2008).

Here, the FBI has withheld materials and communications created "in relation to the pending prosecution of PFC Bradley Manning" and "in anticipation of potential other prosecutions arising out of the pending investigations into the disclosure of classified information that was subsequently published on the WikiLeaks website." Hardy Decl. (Ex. 1) ¶ 82. These materials include documents created by, and communications between, attorneys within the FBI, other components of the Department of Justice, and other government agencies. *Id.* The Criminal Division asserts Exemption 5 to protect "materials created by Criminal Division and other Department attorneys . . . that reflect the sorting and assembling of factual information, as well as the underlying legal analyses and recommendations of DOJ attorneys about how best to prosecute an ongoing matter." Cunningham Decl. (Ex. 5) ¶ 25. And NSD has withheld e-mail messages and memoranda between attorneys at NSD and other DOJ components concerning potential prosecutions, such as an e-mail from an NSD lawyer providing the lawyer's impressions about the investigation. Bradley Decl. (Ex. 3) ¶ 24. Because these materials constitute attorney work product, they are protected from disclosure under Exemption 5.

## 2. Attorney-Client Communications

Exemption 5 also incorporates the attorney-client privilege, which protects "confidential communications between an attorney and his client relating to a legal matter for which the client

has sought professional advice." *Mead Data Ctr., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d

242, 252 (D.C. Cir. 1977). Here, the FBI has withheld "communications between and among

FBI counsel and their FBI clients and employees that reflect the seeking and/or providing of

legal advice with respect to aspects of the ongoing investigations and related pending prospective

prosecutions." Hardy Decl. (Ex. 1) ¶ 84. This information must be protected to ensure that the

Government's attorneys may obtain information candidly from their clients. *Id.*; *see also Upjohn*

*Co. v. United States*, 449 U.S. 383, 389 (1981) (recognizing "that sound legal advice or advocacy

serves public ends and that such advice or advocacy depends upon the lawyer's being fully

informed by the client").

### 3. Deliberative Process

Defendants also rely on Exemption 5 to withhold information protected by the

deliberative process privilege. To protect agency deliberation, the privilege generally protects

"'documents reflecting advisory opinions, recommendations and deliberations comprising part of

a process by which governmental decisions and policies are formulated.'" *Loving v. Dep't of*

*Defense*, 550 F.3d 32, 38 (D.C. Cir. 2008) (quoting *Dep't of Interior v. Klamath Water Users*

*Protective Ass'n*, 532 U.S. 1, 8 (2001)). "In deciding whether a document should be protected

by the privilege [courts] look to whether the document is 'predecisional' [–] whether it was

generated before the adoption of an agency policy [–] and whether the document is 'deliberative'

[–] whether it reflects the give-and-take of the consultative process." *Coastal States Gas Corp.*

*v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). "There should be considerable

deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take

– of the deliberative process – by which the decision itself is made'" because the agency is best

situated "to know what confidentiality is needed 'to prevent injury to the quality of agency

decisions.'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118

(D.D.C. 1984) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975); *Vaughn v.

Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)). *See also Access Reports v. Dep't of Justice*, 926

F.2d 1192, 1195 (D.C. Cir. 1991) (The "key question" in identifying deliberative material is

whether disclosure would "discourage candid discussion within the agency.").

Here, the Criminal Division has withheld "drafts of affidavits, pleadings, and

memoranda" that were created as part of the investigation and that were subject to further

revisions. Cunningham Decl. (Ex. 5) ¶ 29. "[D]raft documents by their very nature[] are

typically predecisional and deliberative, because they reflect only the tentative view of their

authors; views that might be altered or rejected upon further deliberation either by their authors

or by superiors." *In re Apollo Grp., Inc. Securities Litig.*, 251 F.R.D. 12, 31 (D.D.C. 2008) (non-

FOIA case) (quotations omitted). Accordingly, "drafts are commonly found exempt under the

deliberative process exemption." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F.

Supp. 2d 284, 303 (D.D.C. 2007).

Each component has also withheld materials that reflect decision-making by agency

officials regarding the scope and focus of the pending investigations. *See* Hardy Decl. (Ex. 1)

¶ 87 (discussing the FBI's withholding of documents reflecting the decision-making process

within the FBI and other DOJ components regarding the investigation); Cunningham Decl. (Ex.

5) ¶ 29 (discussing the Criminal Division's withholding of materials that set forth "discussions

and suggestions regarding potential investigative steps"); Bradley Decl. (Ex. 3) ¶ 26 (discussing

NSD's withholding of deliberative communications discussing what investigative techniques

should be used). Such materials reflect the deliberative process in that they lead to ultimate

decisions about how to proceed in the investigation. Because materials "prepared in order to

assist an agency decisionmaker in arriving at his decision" fall within the deliberative process

protection, *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975),

Defendants' withholdings should be upheld.

### D.      Exemption 6 (FBI, NSD, and the Criminal Division)

Exemption 6 protects "personnel and medical files and similar files the disclosure of

which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C.

§ 552(b)(6).  The Supreme Court has adopted a broad construction of the privacy interests

protected by Exemption 6, *see Reporters Comm. for Freedom of the Press*, 489 U.S. at 763, and

privacy is of particular importance in the FOIA context because a disclosure under FOIA is a

disclosure to the public at large, *see Painting & Drywall Work Pres. Fund, Inc. v. HUD*, 936

F.2d 1300, 1302 (D.C. Cir. 1991).

This exemption requires an agency to balance an individual's right to privacy against the

public's interest in disclosure.  *See Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976).

The agency must determine whether disclosure of the information threatens a protectable privacy

interest; if so, the agency must weigh that privacy interest against the public interest in

disclosure, if any.  *See Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).  The "only relevant

public interest to be weighed in this balance is the extent to which the disclosure would serve the

core purpose of FOIA, which is contribut[ing] significantly to public understanding of the

operations or activities of the government."  *Dep't of Defense v. Fed. Labor Relations Auth.*, 510

U.S. 487, 495 (1994) (internal citation and quotation marks omitted).  The requester bears the

burden of demonstrating that the release of the withheld information would serve this interest.

*See Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391-92 nn.8 & 13 (D.C. Cir. 1987).

The FBI, NSD, and the Criminal Division each have withheld information pursuant to this exemption.  The components have weighed the privacy interest of the concerned individuals against the public interest in disclosure, and determined that the Government's release of the information would result in a clearly unwarranted invasion of personal privacy without contributing significantly to the public's understanding of the Government's operations or activities.  Hardy Decl. (Ex. 1) ¶¶ 90-102; Bradley Decl. (Ex. 3) ¶¶ 27-34; Cunningham Decl. (Ex. 5) ¶¶ 30-34.

For example, each component has withheld the names of law enforcement personnel involved in the investigation, including FBI Special Agents, Department of Justice attorneys, and other federal and local employees.  Hardy Decl. (Ex. 1) ¶¶ 91-96; Bradley Decl. (Ex. 3) ¶¶ 30, 32; Cunningham Decl. (Ex. 5) ¶¶ 31-32.  Those withholdings are proper.  It is clear that Exemption 6 protects "not just files, but also bits of personal information, such as names and addresses."  *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006).  And the general nature of law enforcement work implicates a strong privacy interest, as it is well-established that "law enforcement personnel have a privacy interest in protecting their own identities because disclosure could subject them to annoyance, embarrassment, and harassment in the conduct of their official and private lives."  *Marshall v. FBI*, 802 F. Supp. 2d 125, 134 (D.D.C. 2011).  *See also* Bradley *Ex Parte* Decl. (Ex. 4) ¶ 14 (providing additional non-public information concerning potential harms to Government personnel involved in the investigation).  At the same time, the disclosure of this identifying information would serve no meaningful public purpose because the release of the personnel's identities would shed no light on the Government's execution of its statutory duties.

Each component has also withheld the names and identifying information of individuals who provided information to the Government as part of its investigation.  Hardy Decl. (Ex. 1) ¶¶ 99-101; Bradley Decl. (Ex. 3) ¶ 33; Cunningham Decl. (Ex. 5) ¶ 33.  The components have determined that the third parties have an interest in the nondisclosure of their identities – given that the exposure of that information could lead to harassment, intimidation, and threats of legal or economic reprisal and physical harm – but that disclosing their identities would not shed light on the operations or activities of the Government.  Hardy Decl. (Ex. 1) ¶¶ 100-101; Bradley Decl. (Ex. 3) ¶ 33; Cunningham Decl. (Ex. 5) ¶ 33.  *See Amuso v. DOJ*, 600 F. Supp. 2d 78, 93 (D.D.C. 2009) ("Individuals involved in law enforcement investigations, 'even if they are not the subject of the investigation[,] have a substantial interest in seeing that their participation remains secret.'") (quoting *Willis v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 76 (D.D.C. 2008)).

Moreover, the components have withheld the names and identifying information of individuals who are considered to be persons of investigative interest.  Hardy Decl. (Ex. 1) ¶ 102; Bradley Decl. (Ex. 3) ¶ 34.  The FBI also withheld the names and identifying information of individuals who were merely mentioned in the files.  Hardy Decl. (Ex. 1) ¶¶ 97-98.  These individuals have a legitimate privacy interest in non-disclosure, given that "[b]eing linked with any law enforcement investigation carries a strong negative connotation and a stigma."  *Id.* ¶ 102.  *See also Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984) (recognizing individuals' "strong interest in not being associated unwarrantedly with alleged criminal activity"); *Amuso*, 600 F. Supp. 2d at 97 (allowing the withholding of suspect's identities because suspects "maintain a 'substantial interest' in the nondisclosure of their identities and connection to a particular investigation").  On the other hand, disclosure would not

inform the public as to how the Government conducts its operations.  Hardy Decl. (Ex. 1) ¶ 102;

Bradley Decl. (Ex. 3) ¶ 34.

###    E.    Exemptions 7(C), (D), (E), and (F)

Finally, information withheld by each component is also protected from disclosure under

other prongs of Exemption 7.  As discussed above, this exemption applies to records compiled

for law enforcement purposes.  In addition to Exemption 7(A)'s protection for records whose

disclosure could reasonably be expected to interfere with enforcement proceedings, the

exemption also protects information when its disclosure:

> (C)    could reasonably be expected to constitute an unwarranted invasion of
>     personal privacy,
> (D)    could reasonably be expected to disclose the identity of a confidential
>     source, including a State, local, or foreign agency or authority or any
>     private institution which furnished information on a confidential basis,
>     and, in the case of a record or information compiled by a criminal law
>     enforcement authority in the course of a criminal investigation, or by an
>     agency conducting a lawful national security intelligence investigation,
>     information furnished by a confidential source,
> (E)    would disclose techniques and procedures for law enforcement
>     investigations or prosecutions, or would disclose guidelines for law
>     enforcement investigations or prosecutions if such disclosure could
>     reasonably be expected to risk circumvention of the law, or
> (F)    could reasonably be expected to endanger the life or physical safety of any
>     individual.

5 U.S.C. § 552(b)(7).

###    1.   Exemption 7(C) (FBI, NSD, and the Criminal Division)

Turning to the various prongs of Exemption 7, each entity asserts Exemption 7(C), which

protects information that "could reasonably be expected to constitute an unwarranted invasion of

personal privacy."  *See* Hardy Decl. (Ex. 1) ¶¶ 90-102; Bradley Decl. (Ex. 3) ¶¶ 27-34;

Cunningham Decl. (Ex. 5) ¶¶ 30-34.  This exemption is similar to Exemption 6, and information

withheld by Defendants under one exemption has also been withheld under the other.  *See* Hardy

Decl. (Ex. 1) ¶ 90 n.8; Bradley Decl. (Ex. 3) ¶ 30; Cunningham Decl. (Ex. 5) ¶ 31.  As with

Exemption 6, the components have invoked Exemption 7(C) to withhold information concerning

the names and other identifying information of federal and local law enforcement employees

involved in the criminal investigations, individuals who have provided information or other

evidence to investigators, and persons of interest to the investigation, and the FBI has withheld

the names and other identifying information about third parties merely mentioned in the

investigative files.  Hardy Decl. (Ex. 1) ¶¶ 91-102; Bradley Decl. (Ex. 3) ¶¶ 28-34; Cunningham

Decl. (Ex. 5) ¶¶ 30-34.

While the applicability of Exemption 7(C) requires an agency to balance the relevant

individual privacy rights against the public interest in disclosure, as in Exemption 6, the analysis

under Exemption 7(C) tilts further in favor of nondisclosure.  *See Summers v. DOJ*, 517 F. Supp.

2d 231, 243 (D.D.C. 2007).  Here, as described above, the components have balanced the public

and private interests, and determined that release of the individuals' names would constitute an

unwarranted invasion of their personal privacy by confirming their involvement in various

aspects of sensitive national security investigations without serving a discernible public interest.

*See* Hardy Decl. (Ex. 1) ¶¶ 91-102; Bradley Decl. (Ex. 3) ¶¶ 28-34; Cunningham Decl. (Ex. 5)

¶¶ 30-34.

### 2.  Exemption 7(D) (FBI, NSD, and the Criminal Division)

Each component also withheld information under Exemption 7(D), which permits the

redaction of law enforcement records where their release "could reasonably be expected to

disclose the identity of a confidential source."  See 5 U.S.C. § 552(b)(7)(D); Hardy Decl. (Ex. 1)

¶ 103; Bradley Decl. (Ex. 3) ¶ 35; Cunningham Decl. (Ex. 5) ¶ 35.  Unlike Exemption 7(C),

Exemption 7(D) requires no balancing of public and private interests.  *See Dow Jones & Co. v.*

*Dep't of Justice*, 917 F.2d 571, 575-76 (D.C. Cir. 1990).  Exemption 7(D) applies if an agency

establishes that a source has provided information under either an express or implied promise of

confidentiality.  *See Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995).

As NSD has explained, "[c]onfidential sources are an integral part of law enforcement

investigations, including investigations concerning national security matters," as many sources

would not provide information if confidentiality were not assured.  Bradley Decl. (Ex. 3) ¶ 36.

Assurances of confidentiality need not be express; an implied assurance could be found "when

circumstances such as the nature of the crime investigated and the witness' relation to it support

an inference of confidentiality."  *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993).  In

such circumstances, the Government is entitled to a presumption of inferred confidentiality.  *Id.*

Here, the FBI, NSD, and the Criminal Division assert Exemption 7(D) to protect the

names and identifying information of various individuals who have provided information to

investigators under assurances of confidentiality.  Hardy Decl. (Ex. 1) ¶¶ 107-111; Bradley Decl.

(Ex. 3) ¶ 36; Cunningham Decl. (Ex. 5) ¶¶ 37-42.  In certain circumstances, disclosure of the

information provided by a source would itself reveal the source's identity (because the

information provided could only have been provided by particular individuals), and in such

situations that information must also be protected.  Bradley Decl. (Ex. 3) ¶ 36.  By releasing the

information withheld under Exemption 7(D), Defendants would be identifying particular

individuals who have assisted or cooperated with investigators, thus placing them in harm.  In

some cases, the identities withheld are those of foreign governments and entities who have

provided information to investigators.  Hardy Decl. (Ex. 1) ¶ 104; Cunningham Decl. (Ex. 5)

¶ 37-42.  As the Criminal Division explains, foreign governments routinely provide information

to the United States on the condition of confidence, Cunningham Decl. (Ex. 5) ¶ 39, and the

Government's ability to obtain such information in the future depends on our ability to maintain that confidentiality.[5]  As a result, the information has been properly withheld.

### 3.  Exemption 7(E) (FBI)

The FBI has also withheld information under Exemption 7(E), which protects information where release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

Specifically, the FBI asserts Exemption 7(E) to protect procedures and techniques used by FBI Special Agents in the course of criminal and national security investigations, including the underlying investigation here.  Hardy Decl. (Ex. 1) ¶¶ 113-14.  In the FBI's judgment, "[d]isclosure of this information could enable subjects of these and other FBI investigations to circumvent similar currently-used law enforcement techniques and procedures."  *Id.* ¶ 114.  This would enable individuals to frustrate the Government's investigations and to continue to violate the law.  *Id.  See, e.g.*, *Delviscovo v. FBI*, 903 F. Supp. 1, 3 (D.D.C. 1995) (upholding assertion of Exemption 7(E) to protect information that would reveal effectiveness of particular investigative techniques).

The FBI also relies on Exemption 7(E) to protect the location and identity of FBI units that are or have been involved in the underlying investigation.  *See* Hardy Decl. (Ex. 1) ¶ 115.  Disclosure of this information "would reveal the targets, the physical areas of interest of the investigation, and/or the areas of analysis being conducted in the case."  *Id.*  Finally, the FBI has

---

[5] Moreover, the FBI also relies on Exemption 7(D) to withhold information related to persons who cannot be described publicly without divulging protected information.  A further explanation of that information is provided in the FBI's *ex parte* declaration.  Hardy *Ex Parte* Decl. (Ex. 2) ¶¶ 13-25.

withheld information concerning the dates and comprehensiveness of the investigations being undertaken by the Government, along with the bases for the initiation of the investigations. *Id.* ¶ 116. If this information were disclosed, the FBI would be providing a roadmap to current and potential targets as to the types of behavior and conduct that can trigger an investigation, and would allow such individuals to alter their conduct to evade detection. *Id.* Such information warrants protection because it demonstrates how particular techniques have been used. *See El Badrawi v. DHS*, 596 F. Supp. 2d 389, 396 (D. Conn. 2009) (recognizing that Exemption 7(E) protects information concerning what circumstances a particular technique is used in, since disclosure of such information "would cause the very harm FOIA Exemption[] . . . 7(E) [is] designed to prevent").

### 4. Exemption 7(F) (FBI)

Finally, the FBI properly withheld information under Exemption 7(F), which applies when disclosure "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). This exemption confers broad protection for the identities of law enforcement personnel, *Blanton v. DOJ*, 182 F. Supp. 2d 81, 87 (D.D.C. 2002), as well as the identities of individuals who have provided information to investigators, *Garcia v. DOJ*, 181 F. Supp. 2d 356, 378 (S.D.N.Y. 2002). "Unlike Exemption 7(C), which involves a balancing of societal and individual privacy interests, 7(F) is an absolute ban against certain information and, arguably, an even broader protection than 7(C)." *Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 29 (D.D.C. 2002).

Here, the FBI relies on Exemption 7(F) to protect the identities of FBI personnel, other government employees, and other individuals who have cooperated with or participated in the investigations. Hardy Decl. (Ex. 1) ¶ 118. The FBI recognizes that "Government employees

who are working on these cases, or have worked on them in the past, have been threatened or

harassed in conjunction with these cases," and as a result "the FBI can reasonably expect the

disclosure of the identities of individuals associated with these investigations . . . could endanger

their lives or physical safety." *Id.*  This information is thus properly protected under Exemption

7(F).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their

Motion for Summary Judgment and enter final judgment for them in this matter.

Dated: January 31, 2013.                  Respectfully submitted,

                                          STUART F. DELERY
                                          Principal Deputy Assistant Attorney General

                                          ELIZABETH J. SHAPIRO
                                          Deputy Branch Director

                                           */s/ Scott Risner*
                                          SCOTT RISNER (MI Bar No. P70762)
                                          Trial Attorney
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          20 Massachusetts Avenue, N.W.
                                          Washington, D.C. 20530
                                          Telephone: (202) 514-2395
                                          Fax: (202) 616-8470
                                          Email: scott.risner@usdoj.gov

                                          Counsel for Defendants