# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 12-cv-00127 (RWR) ) |
| U.S. DEPARTMENT OF JUSTICE CRIMINAL DIVISION, et al., | ) ) ) |
| Defendants. | ) ) |

**<u>Exhibit 3 to the Memorandum in Support of Defendants' Motion for Summary Judgment</u>**

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELECTRONIC PRIVACY )
INFORMATION CENTER )
                         )
        Plaintiff, )
                         )
        v. ) Civil Action No. 1:12-00127-RWR
                         )
U.S. DEPARTMENT OF JUSTICE, )
CRIMINAL DIVISION, U.S. DEPARTMENT )
OF JUSTICE NATIONAL SECURITY DIVISION, )
and FEDERAL BUREAU OF INVESTIGATION )
                         )
        Defendants. )

## DECLARATION OF MARK A. BRADLEY

I, Mark A. Bradley, declare as follows:

1. I am the Director of the Freedom of Information Act ("FOIA") and

Declassification Unit of the Office of Law and Policy in the National Security Division ("NSD")

of the United States Department of Justice ("DOJ" or "Department"). NSD is a component of

the Department which formally began operations on October 2, 2006, by inter alia, consolidating

the resources of the Office of Intelligence Policy and Review ("OIPR") and the Criminal

Division's Counterterrorism ("CTS") and Counterespionage Section ("CES").

2. In my capacity as Director of the FOIA and Declassification Unit, I supervise the

unit that responds to requests for access to NSD records and information pursuant to the FOIA, 5

U.S.C. § 552 and the Privacy Act of 1974. In addition, my responsibilities include reviewing

NSD information for classification purposes as mandated by Executive Order 13526, 75 Fed.

Reg. 707 (2010) and preparing declarations in support of FOIA Exemption 1 claims asserted

under the FOIA, 5 U.S.C. § 552(b)(1). Further, I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 13526, §§ 1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, information provided to me in the course of my official duties, and determinations I have made following a review of NSD's potentially responsive documents.

3.     In addition to this declaration, which is being filed on the public record, I am also submitting a second declaration *ex parte* and *in camera* for the Court's review. That declaration includes additional information that cannot be disclosed publicly concerning active law enforcement proceedings and NSD's assertion of certain exemptions.

## BACKGROUND TO PLAINTIFF'S FOIA REQUEST

4.     On June 23, 2011, plaintiff submitted a Freedom of Information Act ("FOIA") request to NSD for the following:

- All records regarding any individuals targeted for surveillance for support for or interest in Wikileaks;

- All records regarding lists of names of individuals who have demonstrated support for or interest in Wikileaks;

- All records of any agency communications with Internet and social media companies including, but not limited to Facebook and Google, regarding lists of individuals who have demonstrated, through advocacy or other means, support for or interest in Wikileaks; and

- All records of any agency communications with financial services companies including, but not limited to Visa, MasterCard, and PayPal, regarding lists of individuals who have demonstrated, through monetary donations of other means, support or interest in Wikileaks.

2

*See* Exhibit 1.

5.     In a letter dated, July 18, 2011, signed by NSD's FOIA Coordinator Arnetta Mallory, NSD informed plaintiff that the records it sought were exempt from disclosure pursuant to FOIA Exemption (b)(7)(A), which protects records compiled for law enforcement purposes when the disclosure of those records may interfere with ongoing law enforcement proceedings. *See* Exhibit 2.

6.     By letter dated September 9, 2011, plaintiff submitted an administrative appeal to the Department of Justice's Office of Information Policy ("OIP"). The appeal contended that NSD had "failed to identify the documents, establish a factual basis for withholding, or perform a sufficient segregability analysis." *See* Exhibit 3.

7.     In a letter dated September 22, 2011, OIP responded to plaintiff's letter by acknowledging receipt of the appeal. Plaintiff was informed that its appeal had been assigned Appellate No. AP-2011-03147. *See* Exhibit 4.

8.     OIP had not responded to plaintiff's appeal before plaintiff filed the present lawsuit on January 25, 2012.

## SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUEST

9.     In response to plaintiff's FOIA request, NSD FOIA personnel determined which component(s) within NSD would be likely to possess responsive records. Specifically, NSD FOIA personnel contacted CES, the component which they deemed was likely to possess responsive records. CES stated that there was a pending criminal investigation concerning Wikileaks and the unauthorized disclosure of classified information. CES's subject matter expert

3

– the lead CES attorney assigned to the investigation – indicated that any potentially responsive documents would be contained in his/her electronic files, and that any other responsive records in NSD's possession would, to the best of his/her knowledge and belief, be duplicative of those files. NSD FOIA was given access to all of the lead attorney's electronic files pertaining to the Wikileaks investigation. NSD FOIA processed all of the lead attorney's electronic files pertaining to the Wikileaks investigation and located documents responsive to plaintiff's request, including documents that originated with other Department of Justice components or government agencies. No other locations within NSD are reasonably likely to have responsive records that are not duplicated in the electronic files of the lead attorney.

10.     After completing its search, NSD determined that all of the responsive records are part of a pending criminal investigation and are therefore exempt from disclosure pursuant to FOIA Exemption (b)(7)(A). In addition, certain responsive records or portions thereof are exempt from disclosure pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(D). I have personally reviewed each of the responsive records, and explain the application of these exemptions below and in my *ex parte* and *in camera* declaration.

## APPLICABLE FOIA EXEMPTIONS

### Exemption (b)(7)(A)

11.     Exemption (b)(7) of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes whose disclosure could reasonably be expected to cause one of the harms enumerated in the subpart of the exemption. See 5 U.S.C. § 552(b)(7). In this case, the harm that could reasonably be expected to result from

4

disclosure concerns the potential interference with ongoing law enforcement proceedings.

> 10 U.S.C. § 552 (b)(7)(A) exempts from disclosure:
>
> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings.

Application of this exemption requires the existence of law enforcement records, a pending or prospective law enforcement proceeding, and a determination that release of the information could reasonably be expected to interfere with enforcement proceedings.

12. All of NSD's responsive records are protected from disclosure pursuant to FOIA Exemption (b)(7)(A) because they are part of an on-going criminal investigation, and their release would interfere with that investigation.[1]

13. On or about November 29, 2010, the Attorney General announced that the Department of Justice was conducting a criminal investigation into the disclosure of classified information that was published on the WikiLeaks website. The investigation concerns possible violations of federal criminal laws, and is within the law enforcement duties of NSD and the broader Department of Justice. All of NSD's responsive records reside in the files of that open investigation, which continues to this day.

14. Any release of information from the responsive records within NSD's criminal investigative file is reasonably likely to harm the pending law enforcement proceedings.

---

[1] NSD's files contain potentially responsive records originating from other government agencies ("OGAs"). Because NSD is withholding all records pursuant to Exemption 7(A), it has not referred these records to their originating OGAs for review and application of other exemptions. NSD believes that these records are also subject to one or more of the other exemptions described in this declaration. If NSD's Exemption 7(A) withholdings are not upheld, it will refer the records to the originating OGAs for review and a direct response to plaintiff.

Providing a document-by-document discussion of the records would itself harm the investigation,

though, because it would reveal the scope and nature of NSD's involvement in the investigation.

As a result, NSD is providing a description of the type of responsive records at issue, and an

explanation of the harms that could result from their disclosure. (A complete listing of the

responsive records is provided as part of my *ex parte* and *in camera* declaration. To provide that

list here would divulge information that is itself protected by Exemption (b)(7)(A), such as

details concerning the scope of the investigation.)

  15. Each of the responsive documents consists of investigative or evidentiary

materials created as part of the investigation, including communications between attorneys at

NSD and other Department of Justice components. The following paragraphs describe the types

of investigative materials in the responsive records, along with the potential harm that could

result from their disclosure.

  a. Documents concerning potential targets: These documents include

communications discussing potential targets of the investigation. Once documents are released

and are in the public domain, information concerning this ongoing investigation could reach the

targets of the investigation and allow these targets to critically analyze the materials concerning

the investigation. The targets of the Government's investigation could therefore use the released

information to their advantage to change their behavior, alter or destroy evidence, and intimidate

potential witnesses.

  b. Documents concerning investigative strategies: NSD has identified certain

documents that include discussions of potential investigative strategies and techniques. The

disclosure of such information would reveal the methods by which the Government is (or is not) conducting the investigation, thus enabling targets to evade detection.

        c.      Documents concerning witnesses: This category includes information that the Government has obtained from witnesses (whether testimonial or documentary evidence). If this information is released, individuals and potential witnesses who possess information relevant to the investigation will be identified, which could lead to their being harmed or intimidated because of their involvement in the investigation. Disclosure would further harm the investigation by tipping off targets as to the evidence that has been collected, and it could provide insight into the investigators' assessments of particular individuals.

        d.      Documents concerning other exchanges of information between NSD and other entities: Disclosure of such information would reveal investigative information and evidence developed by the government agencies and other entities that have cooperated with NSD as part of the investigation. That would have the effect of interfering with the Department's ability to collect evidence. An inherent condition of such cooperation is a mutual recognition that NSD will maintain the confidentiality of such cooperation, and thus release of the information would also have a chilling effect on potential cooperation in this and future investigations.

      16.     Because a release made to plaintiff under the FOIA is a release to the public at large, releasing the information described above would interfere with the pending law enforcement investigation. Thus, for all the reasons discussed above, NSD's records in this case are protected from disclosure pursuant to FOIA Exemption (b)(7)(A).

**Exemption (b)(1)**

17.     FOIA exemption (b)(1), 5 U.S.C. § 552(b)(1), provides that the FOIA disclosure

provisions do not apply to matters that are:

>   (A)     Specifically authorized under criteria established by an Executive Order to
>           be kept secret in the interest of national defense or foreign policy and
>
>   (B)     are in fact properly classified pursuant to such Executive Order.

18.     Section 1.1 (a) of Executive Order ("E.O.") 13526 provides that information may

be originally classified under the terms of this order only if all of the following conditions are

met:

>   (1)     an original classification authority is classifying the information;
>
>   (2)     the information is owned by, produced by or for, or is under the control of
>           the U.S. Government;
>
>   (3)     the information falls within one or more of the categories of
>           information listed in section 1.4 of E.O. 13526; and (4) the original
>           classification authority determines that the unauthorized disclosure of the
>           information reasonably could be expected to result in some level of
>           damage to the national security and the original classification authority is
>           able to identify or describe the damage.

19.     In the course of its search, NSD identified records which are classified. The

information contained in these documents is owned by and under the control of the

U.S. Government. The withheld information is classified SECRET. Section 1.2 (a)(2) of E.O.

13526 states:

>   "Secret" shall be applied to information, the disclosure of which reasonably could
>   be expected to cause serious damage to the national security that the original
>   classification authority is able to identify or describe.

8

Section 1.4 of E.O. 13526 identifies the types of information that may be considered for classification. Of relevance to the information withheld here, the provision states that:

> Information shall not be considered for classification unless its unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security ... and it pertains to: ... (c) intelligence activities (including covert action), intelligence sources or methods, or cryptology;

20.    In this case, the information in the responsive, classified materials relates to intelligence activities, sources, or methods. Disclosure of this information would reveal the scope of sensitive U.S. intelligence gathering operations. These documents discuss ongoing intelligence operations, including intelligence gathering methods. Disclosure of this information would provide our adversaries and foreign intelligence targets with insight into the United States Government's foreign intelligence collection capabilities, which in turn could be used to develop the means to degrade and evade those collection capabilities. As a result, this information is currently and properly classified pursuant to Section 1.4(c) of E.O. 13526, and is therefore exempt from disclosure under FOIA exemption (b)(1).

### Exemption (b)(3)

21.    Exemption 3 protects records from disclosure information that is "specifically exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552 (b)(3).

22.    NSD has determined that Exemption 3 applies to certain information in the

9

pending investigative files, but identifying and discussing the particular statute that applies would itself harm the interests that Exemption 3 attempts to protect. As a result, I have discussed the application of Exemption 3 in my *ex parte* and *in camera* declaration.

### Exemption (b)(5)

23.     NSD has also determined that certain responsive records are exempt from disclosure pursuant to FOIA Exemption (b)(5). FOIA Exemption (b)(5) protects "inter-agency or intra-agency memorandums or letters which would not be available by law or to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption has been construed to protect documents which would normally be privileged in the civil discovery context. Among the privileges incorporated into Exemption 5 is the Attorney Work Product privilege, which protects documents prepared by an attorney as part of, or in reasonable anticipation of, litigation. The purpose of the privilege is to protect the adversarial process by insulating the attorney's preparation.

24.     In this case, NSD's responsive records consist of materials that were prepared by an attorney, or under the direction of an attorney, in reasonable anticipation of litigation. These materials include email messages and memorandums between attorneys at NSD and the FBI and/or other DOJ components. These materials were all prepared in anticipation of possible criminal prosecutions arising out of the pending investigation into the disclosure of classified information that was published on the WikiLeaks website. For example, one of NSD's records consists of an email from an NSD lawyer which provides the lawyer's impression about the investigation. Because these notes would be protected in civil discovery pursuant to the

10

Attorney Work Product privilege, they are protected from disclosure by FOIA Exemption (b)(5).

25.     In addition, NSD is also asserting Exemption 5 to protect deliberative materials.
The general purpose of the deliberative process privilege is to prevent injury to the quality of
agency decisions. Thus, material that contains or was prepared in connection with the
formulation of opinions, advice, evaluations, deliberations, policies, proposals, conclusions, or
recommendations may properly be withheld. Disclosure of this type of information would have
an inhibiting effect upon agency decision-making and the development of policy because it
would chill full and frank discussions between agency personnel and decision makers regarding a
decision. If agency personnel know that their preliminary impressions, opinions, evaluations, or
comments would be released for public consumption, they would be less candid and more
circumspect in expressing their thoughts, which would impede the fulsome discussion of issues
necessary to reach a well-reasoned decision.

26.     In order to invoke the deliberative process privilege, the protected information
must be both "predecisional" and "deliberative." Information is "predecisional" if it temporally
precedes the decision or policy to which it relates. It is "deliberative" if it played a direct part in
the decision-making process because it consists of recommendations or opinions on legal or
policy matters, or reflects the give-and-take of the consultative process. The deliberative process
privilege applies to documents in the pending investigative files that reflect decision-making by
NSD, alone or in conjunction with other DOJ components, regarding the scope and focus of the
investigations, as well as pending and prospective prosecutions. For example, one of the
deliberative materials consists of an email discussing what investigative techniques should be

11

used. This email is predecisional in that it precedes a final investigative decision, and deliberative because it played a part in the process by which decisions were made in the investigation.

### Exemptions (b)(6) and (b)(7)(C)

27.     Additionally, NSD's records also contain information that is exempt from disclosure pursuant to FOIA Exemptions (b)(6) and (b)(7)(C), which protects information when its disclosure would constitute an unwarranted invasion of personal privacy.

28.     Exemption (b)(6) permits withholding of "personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Similarly, Exemption (b)(7)(C) protects "records or information compiled for law enforcement purposes, ... to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7).

29.     When withholding information pursuant to these exemptions, the Government must balance the privacy interests of the individuals against any public interest in disclosure. The public interest in disclosure is determined by whether the information would inform the general public about how NSD fulfills its responsibilities and protects the national security.

30.     Here, NSD asserts Exemptions (b)(6) and (b)(7)(C) to protect the names and identifying information of both government employees and private citizens. (These exemptions have been applied in conjunction, such that information withheld under one exemption has already been withheld under the other.) Specifically, NSD's records contain names and/or

12

identifying information concerning (a) Federal Government personnel and other law enforcement agents, (b) individuals who provided information to the Government, and (c) other persons of interest to the investigation. All of this information was compiled for the criminal investigation described above.

31.     For each withholding under these exemptions, NSD determined that the privacy rights of the individuals outweighed the public interest, if any, in the disclosure of the information.

32.     With respect to Federal Government personnel and other law enforcement agents, NSD has withheld the names and/or identifying information of individuals who have participated in the investigation as part of their official duties. These individuals have privacy interests in avoiding publicity in connection with their work, both because it could subject them to harassment or intimidation and because it could impair their ability to continue to operate effectively in the investigation. These personnel include attorneys, agents, and support staff, none of whom should be subjected to harassment or hostility for work done in the course of their employment. (Additional information concerning the relevant privacy interests is set forth in my *ex parte* declaration.) At the same time, there is no discernible public interest in identifying these individuals, because providing the names and/or identifying information of particular employees would not shed light on NSD's operations. As a result, releasing this information would constitute a clearly unwarranted invasion of their privacy which outweighs the public interest in disclosure.

33.     NSD has also applied these exemptions (in conjunction with Exemption

13

(b)(7)(D), discussed below) to withhold the names and/or identifying information of individuals who have provided information to the Government as part of the investigation. Individuals who provide information to investigators must be able to rely on the confidentiality of their identities, because the threat of witnesses being harassed, intimidated, or physically harmed would seriously impede the Government's ability to obtain information. NSD has determined that these individuals thus have a strong interest in the non-disclosure of their names and other identifying information. On the other hand, the disclosure of witnesses' names would not shed light on NSD's operations and activities, and thus there is no public interest in disclosure.

34.     These exemptions are also being asserted to protect the names and/or identifying information of third parties of interest to the investigation. Such individuals have a strong interest in the protection of their identities because being publicly identified as a person of interest to a law enforcement investigation can bring unwanted attention and scrutiny. The release of this information could thus lead to harassment and threats. At the same time, disclosing the identities of third parties of interest to the investigation would not provide the public with meaningful insight into the operations of the Government. As a result, NSD has determined that the individuals' privacy interests outweigh the public interest in disclosure of this information.

## Exemption (b)(7)(D)

35.     Further, certain NSD records contain information pertaining to confidential sources and their identities. This information is protected from disclosure under FOIA Exemption (b)(7)(D), which protects:

14

records or information compiled for law enforcement purposes [which] could reasonably be expected to disclose the identity of a confidential source, including a state, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).

36.    Confidential sources are an integral part of law enforcement investigations, including investigations concerning national security matters.  Many of these sources only provide information after being given express assurances of confidentiality, while others provide information in a context where assurances of confidentiality are implied.  In both situations, the Government's ability to obtain information is wholly dependent on the credible, good faith assurances that the individuals will not be identified in ways that could subject them to threats, intimidation, and other unwanted attention.  Keeping the identities of sources confidential is critical because sources can face reprisal from the targets of criminal investigations.  And fear of harm would discourage others to participate as sources, thereby impeding current and future investigations.  Because these individuals often provide information that could not have been obtained from another individual, Exemption (b)(7)(D) recognizes that in some circumstances it is necessary to protect the information that has been provided, else disclosure of even the information could lead to an identification of the source.  After a review of the responsive records in its possession, NSD determined that the disclosure of certain information would reveal the identities of sources who provided information with assurances (both express and implied) of confidentiality.  Such information is protected from disclosure pursuant to FOIA Exemption

15

(b)(7)(D).

Pursuant to 28 U.S.C.§ 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of January, 2013.


_Mark A. Bradley_
MARK A. BRADLEY

16

# *Exhibit 1*

# epic.org

11-224
recd 6/28/1June 23, 2011

VIA REGISTERED MAIL

FOIA Initiatives Coordinator Arnetta James
National Security Division
Department of Justice
Room 6150, 950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

RE: Freedom of Information Act Request and Request for Expedited Processing

Dear Ms. James:

1718 Connecticut Ave NW

Suite 200

Washington DC 20009

USA

+1 202 483 1140 [tel]

+1 202 483 1248 [fax]

www.epic.org

     This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted on behalf of the Electronic Privacy Information Center ("EPIC"). EPIC seeks documents regarding the government's identification and surveillance of individuals who have demonstrated support for or interest in WikiLeaks, as well as any documents relating to records obtained from Internet and financial services companies regarding these individuals.

Background

     On December 22, 2010, EPIC submitted FOIA requests to the Department of Justice ("DOJ"), the Secret Service, Immigration and Customs Enforcement ("ICE"), and the Financial Crimes Enforcement Network ("FinCEN"). These requests sought communications or agreements between the government and certain corporations regarding donations to WikiLeaks and personally identifiable information for individuals who accessed or attempted to access the WikiLeaks website. The request to the DOJ was referred to the Antitrust Division. As of June 9, 2011, none of the agencies have found or disclosed the records EPIC requested.

     On November 28, 2010, WikiLeaks and cooperating news agencies published State Department cables allegedly provided by Pvt. Bradley Manning.[1] On November 29, Attorney General Eric Holder stated that DOJ was conducting a criminal investigation regarding WikiLeaks.[2] The government filed a sealed request pursuant to 18 U.S.C. § 2703(d) with federal magistrate judge Theresa C. Buchanan in the Eastern District of Virginia in Alexandria.[3] On December 14, 2010, Judge Buchanan issued an order ("Twitter Order") pursuant to § 2703(d) compelling Twitter to disclose customer account information, including Internet Protocol addresses and addressing information

---

[1] Robert Booth, *WikiLeaks Cables: Bradley Manning Faces 52 Years in Jail*, The Guardian, Nov. 30, 2010, http://www.guardian.co.uk/world/2010/nov/30/wikileaks-cables-bradley-manning.

[2] Mark Memmott, *WikiLeaks Update: Justice Investigating*, National Public Radio, Nov. 29, 2010, http://www.npr.org/blogs/thetwo-way/2010/11/29/131669228/wikileaks-update-justice-investigating.

[3] *See In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, Misc. No. 10GJ3793 (E.D. Va. Dec. 14, 2010).

associated with communications, for Julian Assange, Bradley Manning, Rop Gonggrijp, and Birgitta Jónsdóttir.[4]

The Twitter Order prohibited Twitter from disclosing the existence of the application or order to anyone.[5] After contesting the seal, Twitter convinced the federal district court to unseal the order and allow Twitter to notify its users of the government's request for their information.[6] On January 26, 2011, the Electronic Frontier Foundation and the American Civil Liberties Union filed a motion in the Eastern District of Virginia to overturn the Twitter Order, on behalf of Rop Gonggrijp, Birgitta Jónsdóttir, and Jacob Appelbaum (the only U.S. citizen among the plaintiffs).[7] This litigation remains pending.[8]

As evidence of surveillance of WikiLeaks supporters, Jacob Appelbaum, U.S. WikiLeaks spokesperson, and David House, close friend of Bradley Manning, have been stopped at the border by Customs and Border Patrol ("CBP") agents when entering the United States and specifically questioned about their involvement with WikiLeaks.[9] Appelbaum has been questioned at least twice at the border, and his electronic devices have been confiscated. The first time was on July 29, 2010 upon reentering the United States from the Netherlands.[10] When he was questioned a second time on January 10, 2011 upon return from Iceland, he traveled with no electronic equipment, causing the customs agents to be "visibly unhappy."[11] The CBP agents also indicated they had viewed his Twitter feed ahead of his flight to obtain his flight details.[12] On July 31, 2010, plainclothes FBI agents questioned Appelbaum after he gave a speech at Defcon.[13] All of the questioning by FBI and DHS focused on his personal views on and work with WikiLeaks.[14]

*The Washington Post* reported that DHS agents at Chicago O'Hare International Airport detained David House and seized his laptop on November 3, 2010.[15] David

---

[4] *Id.*

[5] *See Id.*

[6] Order to Unseal the Order Pursuant to 18 U.S.C. § 2703(D), Misc. No. 10GJ3793 (E.D. Va. Jan. 5, 2010).

[7] Motion to Vacate Dec. 14, 2010 Order, Misc. No. GJ3793 (E.D. Va. Jan. 26, 2010).

[8] *See Government Demands for Twitter Records of Birgitta Jonsdottir*, Electronic Frontier Foundation, June 2, 2011, https://www.eff.org/cases/government-demands-twitter-records.

[9] Glenn Greenwald, *Government Harrassing and Intimidating Bradley Manning Supporters*, Salon, Nov. 9, 2010, http://www.salon.com/news/opinion/glenn_greenwald/2010/11/09/manning.

[10] Elinor Mills, *Researcher Detained at U.S. Border, Questioned about WikiLeaks*, CNET, July 31, 2010, http://news.cnet.com/8301-27080_3-20012253-245.html

[11] Xeni Jardin, *Wikileaks Volunteer Detained and Searched (again) by US Agents*, Boing Boing, Jan. 12, 2011, http://www.boingboing.net/2011/01/12/wikileaks-volunteer-1.html.

[12] *Id.*

[13] Elinor Mills, *Researcher Detained at U.S. Border, Questioned about WikiLeaks*, CNET, July 31, 2010, http://news.cnet.com/8301-27080_3-20012253-245.html

[14] *Id.*

[15] Ellen Nakashima, *Activist Who Supports Soldier in WikiLeaks Case Sues U.S. over Seizure of Laptop*, The Washington Post, May 13, 2011, http://www.washingtonpost.com/national/activist-who-supports-soldier-in-wikileaks-case-sues-us-over-seizure-of-laptop/2011/05/11/AFxxzf1G_story.html.

House created the Bradley Manning Support Network, a defense fund for Bradley Manning.[16] An agent from the FBI Joint Terrorism Task Force questioned David House about his relationship with Manning and WikiLeaks.[17] In an interview with *The Washington Post,* David House claimed he had been stopped and questioned at the border seven times since September and he believes his name is on a government watchlist.[18]

There has been widespread suspicion that other online services such as Facebook and Google were served with similar court orders requesting information on WikiLeaks supporters, though neither company has confirmed the existence of such an order.[19] The broad nature of the Twitter Order and the silence of other companies that were likely served with a similar sealed order suggest that DOJ, FBI, DHS, and CBP may be conducting surveillance of WikiLeaks supporters.

Requested Documents

1. All records regarding any individuals targeted for surveillance for support for or interest in WikiLeaks;

2. All records regarding lists of names of individuals who have demonstrated support for or interest in WikiLeaks;

3. All records of any agency communications with Internet and social media companies including, but not limited to Facebook and Google, regarding lists of individuals who have demonstrated, through advocacy or other means, support for or interest in WikiLeaks; and

4. All records of any agency communications with financial services companies including, but not limited to Visa, MasterCard, and PayPal, regarding lists of individuals who have demonstrated, through monetary donations or other means, support or interest in WikiLeaks.

Request for Expedited Processing

This request warrants expedited processing because it is made by "a person primarily engaged in disseminating information . . ." and it pertains to a matter about

---

[16] Glenn Greenwald, *Government Harrassing and Intimidating Bradley Manning Supporters,* Salon, Nov. 9, 2010, http://www.salon.com/news/opinion/glenn_greenwald/2010/11/09/manning.

[17] *Id.*

[18] Nakashima, *supra* note 15.

[19] Peter Beaumont, *WikiLeaks Demands Google and Facebook Unseal US Subpoenas,* The Guardian, Jan. 8, 2011, http://www.guardian.co.uk/media/2011/jan/08/wikileaks-calls-google-facebook-us-subpoenas.

which there is an "urgency to inform the public about an actual or alleged federal government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

EPIC is "primarily engaged in disseminating information." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004). This request is part of EPIC's open government program and its ongoing efforts to investigate the U.S. government's domestic surveillance programs.[20] On December 22, 2010, EPIC submitted FOIA requests to the DOJ, the Secret Service, ICE, and the FinCEN, seeking documents related to the government's attempts to compel Internet and financial services companies to disclose private records regarding WikiLeaks supporters. In January 2011, Steven Aftergood, who directs the Project on Government Secrecy at the American Federation of Scientists, and Glenn Greenwald, a noted constitutional lawyer and writer at Salon.com, spoke at an EPIC board meeting regarding WikiLeaks.

There is particular urgency for the public to obtain information about the extent of the government's domestic surveillance programs. Disclosure of information related to the surveillance of WikiLeaks supporters will enhance the public's understanding of the extent of the government's surveillance of individuals exercising the rights to freedom of speech and association guaranteed by the First Amendment of the U.S. Constitution.

Request for "News Media" Fee Status

EPIC is a "representative of the news media" for fee waiver purposes. *EPIC v. Department of Defense*, 241 F. Supp. 2d 6 (D.D.C. 2003). Based on our status as a "news media" requester, we are entitled to receive the requested record with only duplication fees asserted. Further, because disclosure of this information will "contribute greatly public understanding of the operation or activities of the government," and duplication fees should be waived.

Thank you for your consideration of this request. As 5 U.S.C. § 552(a)(6)(E)(ii)(I) provides, I will anticipate your determination on our request within ten (10) calendar days.

---

[20] *See, e.g.*, EPIC, Domestic Surveillance, http://www.epic.org/features/surveillance.html (last visited June 9, 2011).

Respectfully submitted,

Andrew Christy
Law Clerk, EPIC
Christy@epic.org

Alexandra Wood
Law Clerk, EPIC
Wood@epic.org

Ginger McCall
Staff Counsel, EPIC
Mccall@epic.org

5

# *Exhibit 2*



**U.S. Department of Justice**

National Security Division

*Washington, D.C. 20530*

JUL 1 8 2011

Ginger McCall
EPIC.org
1718 Connecticut Ave N.W.
Suite 200
Washington, D.C.  20009

Re: FOIA/PA # 11-224

Dear Ms. McCall:

This letter is in regards to your letter dated June 23, 2011 seeking all records regarding any individual targeted for surveillance for support for or interest in WikiLeaks; lists of names of individuals who have demonstrated support for or interest in WikiLeaks; any agency communication with internet and social media companies regarding lists of individuals who have demonstrated support for or interest in WikiLeaks; any agency communications with financial services companies regarding lists of individuals who have demonstrated support or interest in WikiLeaks. Your Freedom of Information Act request was received on June 28, 2011.

We regret to inform you that we cannot comply. Under provisions of the Freedom of Information Act, access to the records which you are seeking has been denied pursuant to 5 U.S.C. 552 (b)(7)(A) records or information compiled for law enforcement purposes, but only to the extent that the information could reasonably be expected to interfere with enforcement proceedings. The citation of the above exemption is not to be construed as the only exemption which may be available under the Freedom of Information Act.

If you are not satisfied with this response, you may administratively appeal by writing to the Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, NW, Suite 11050, Washington, D.C. 20530-0001. Your appeal must be received within sixty days of the date of this letter. Both the letter and envelope should be clearly marked "Freedom of Information Act Appeal".

Sincerely,

Arnetta Mallory
FOIA Coordinator

# *Exhibit 3*

ELECTRONIC PRIVACY INFORMATION CENTER

# epic.org   2011-03147   FOIA @ NSD   AEC



1718 Connecticut Ave NW
Suite 200
Washington DC 20009
USA
+1 202 483 1140 [tel]
+1 202 483 1248 [fax]
www.epic.org

September 9, 2011

## VIA U.S. MAIL (CERTIFIED DELIVERY)

RECEIVED

SEP 2 0 2011

Office of Information Policy

Freedom of Information Appeal
Office of Information Policy
U.S. Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, D.C. 20530-0001

RE:   **Freedom of Information Act Appeal – FOIA/PA # 11-224**

Dear FOIA Appeals Officer:

This letter constitutes an appeal under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the National Security Division of the Department of Justice ("DOJ") on behalf of the Electronic Privacy Information Center ("EPIC"). As detailed below, EPIC appeals the DOJ's withholding of agency records in response to EPIC's June 23, 2011, FOIA request.

On June 23, 2011, EPIC submitted to the DOJ via U.S. certified mail a FOIA request regarding the government's identification and surveillance of individuals who have demonstrated support for or interest in WikiLeaks, as well as any documents relating to records obtained from Internet and financial services companies regarding these individuals. Specifically, EPIC requested:

1. All records regarding any individuals targeted for surveillance for support for or interest in WikiLeaks;

2. All records regarding lists of names of individuals who have demonstrated support for or interest in WikiLeaks;

3. All records of any agency communications with Internet and social media companies including, but not limited to Facebook and Google, regarding lists of individuals who have demonstrated, through advocacy or other means, support for or interest in WikiLeaks; and

1

4. All records of any agency communications with financial services companies including, but not limited to Visa, MasterCard, and PayPal, regarding lists of individuals who have demonstrated, through monetary donations or other means, support or interest in WikiLeaks.

*See* Appendix 1 ("EPIC's FOIA Request").

Factual Background

On December 22, 2010, EPIC submitted FOIA requests to the Department of Justice ("DOJ"), the Secret Service, Immigration and Customs Enforcement ("ICE"), and the Financial Crimes Enforcement Network ("FinCEN"). These requests sought communications or agreements between the government and certain corporations regarding donations to WikiLeaks and personally identifiable information for individuals who accessed or attempted to access the WikiLeaks website. The request to the DOJ was referred to the Antitrust Division. As of June 9, 2011, none of the agencies have found or disclosed the records EPIC requested.

On November 28, 2010, WikiLeaks and cooperating news agencies published State Department cables allegedly provided by Pvt. Bradley Manning.[1] On November 29, Attorney General Eric Holder stated that DOJ was conducting a criminal investigation regarding WikiLeaks.[2] The government filed a sealed request pursuant to 18 U.S.C. § 2703(d) with federal magistrate judge Theresa C. Buchanan in the Eastern District of Virginia in Alexandria.[3] On December 14, 2010, Judge Buchanan issued an order ("Twitter Order") pursuant to § 2703(d) compelling Twitter to disclose customer account information, including Internet Protocol addresses and addressing information associated with communications, for Julian Assange, Bradley Manning, Rop Gonggrijp, and Birgitta Jónsdóttir.[4]

The Twitter Order prohibited Twitter from disclosing the existence of the application or order to anyone.[5] After contesting the seal, Twitter convinced the federal district court to unseal the order and allow Twitter to notify its users of the government's request for their information.[6] On January 26, 2011, the Electronic Frontier Foundation and the American Civil Liberties Union filed a motion in the Eastern District of Virginia to overturn the Twitter Order, on behalf of Rop Gonggrijp, Birgitta Jónsdóttir, and Jacob

---

[1] Robert Booth, *WikiLeaks Cables: Bradley Manning Faces 52 Years in Jail*, The Guardian, November 30, 2010, http://www.guardian.co.uk/world/2010/nov/30/wikileaks-cables-bradley-manning.

[2] Mark Memmott, *WikiLeaks Update. Justice Investigating*, National Public Radio, Nov. 29, 2010, http://www.npr.org/blogs/thetwo-way/2010/11/29/131669228/wikileaks-update-justice-investigating.

[3] *See In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, Misc. No. 10GJ3793 (E.D. Va. Dec. 14, 2010).

[4] *Id.*

[5] *See id.*

[6] Order to Unseal the Order Pursuant to 18 U.S.C. § 2703(D), Misc. No. 10GJ3793 (E.D. Va. Jan. 5, 2011).

Appelbaum (the only U.S. citizen among the plaintiffs).[7] This litigation remains pending.[8]

As evidence of surveillance of WikiLeaks supporters, Jacob Appelbaum, U.S. WikiLeaks spokesperson, and David House, close friend of Bradley Manning, have been stopped at the border by Customs and Border Patrol ("CBP") agents when entering the United States and specifically questioned about their involvement with WikiLeaks.[9] Appelbaum has been questioned at least twice at the border, and his electronic devices have been confiscated. The first time was on July 29, 2010 upon reentering the United States from the Netherlands.[10] When he was questioned a second time on January 10, 2011 upon return from Iceland, he traveled with no electronic equipment, causing the customs agents to be "visibly unhappy."[11] The CBP agents also indicated they had viewed his Twitter feed ahead of his flight to obtain his flight details.[12] On July 31, 2010, plainclothes FBI agents questioned Appelbaum after he gave a speech at Defcon.[13] All of the questioning by FBI and DHS focused on his personal views on and work with WikiLeaks.[14]

*The Washington Post* reported that DHS agents at Chicago O'Hare International Airport detained David House and seized his laptop on November 3, 2010.[15] David House created the Bradley Manning Support Network, a defense fund for Bradley Manning.[16] An agent from the FBI Joint Terrorism Task Force questioned David House about his relationship with Manning and WikiLeaks.[17] In an interview with *The Washington Post*, David House claimed he had been stopped and questioned at the border seven times since September and he believes his name is on a government watchlist.[18]

There has been widespread suspicion that other online services such as Facebook and Google were served with similar court orders requesting information on WikiLeaks

---

[7] Motion to Vacate Dec. 14, 2010 Order, Misc. No. GJ3793 (E.D. Va. Jan. 26, 2011).

[8] *See Government Demands for Twitter Records of Birgitta Jonsdottir*, Electronic Frontier Foundation, June 2, 2011, https://www.eff.org/cases/government-demands-twitter-records.

[9] Glenn Greenwald, *Government Harrassing and Intimidating Bradley Manning Supporters*, Salon, Nov. 9, 2010, http://www.salon.com/news/opinion/glenn_greenwald/2010/11/09/manning.

[10] Elinor Mills, *Researcher Detained at U.S. Border, Questioned about WikiLeaks*, CNET, July 31, 2010, http://news.cnet.com/8301-27080_3-20012253-245.html

[11] Xeni Jardin, *Wikileaks Volunteer Detained and Searched (again) by US Agents*, Boing Boing, Jan. 12, 2011, http://www.boingboing.net/2011/01/12/wikileaks-volunteer-1.html.

[12] *Id.*

[13] Elinor Mills, *Researcher Detained at U.S. Border, Questioned about WikiLeaks*, CNET, July 31, 2010, http://news.cnet.com/8301-27080_3-20012253-245.html

[14] *Id.*

[15] Ellen Nakashima, *Activist Who Supports Soldier in WikiLeaks Case Sues U.S. over Seizure of Laptop*, The Washington Post, May 13, 2011, http://www.washingtonpost.com/national/activist-who-supports-soldier-in-wikileaks-case-sues-us-over-seizure-of-laptop/2011/05/11/AFxxzfIG_story.html.

[16] Glenn Greenwald, *Government Harrassing and Intimidating Bradley Manning Supporters*, Salon, Nov. 9, 2010, http://www.salon.com/news/opinion/glenn_greenwald/2010/11/09/manning.

[17] *Id.*

[18] Nakashima, *supra* note 15.

supporters, though neither company has confirmed the existence of such an order.[19] The broad nature of the Twitter Order and the silence of other companies that were likely served with a similar sealed order suggest that DOJ, FBI, DHS, and CBP is conducting surveillance of WikiLeaks supporters.

## Procedural Background

On June 23, 2011, EPIC mailed EPIC's FOIA Request to the National Security Division of the Department of Justice. *See* Appendix 1. The FOIA Request was sent via U.S. Certified Mail, no. 7010 3090 0002 1107 4661. *See* Appendix 2 ("Certified Mail Receipt"). The DOJ received EPIC's FOIA Request on June 27, 2011. *See* Appendix 3 ("USPS Track & Confirm Page").

On July 18, 2011, the DOJ mailed a letter to EPIC in response to EPIC's FOIA Request. *See* Appendix 4 ("DOJ Letter"). The DOJ Letter assigned the request FOIA/PA # 11-224 and stated that the agency denied the request pursuant to 5 U.S.C. § 552(b)(7)(A), citing the exemption for "information compiled for law enforcement purposes, but only to the extent that the information could reasonablely [sic] be expected to interfere with enforcement proceedings." Appendix 4.

### EPIC Appeals the DOJ's Withholding of Records in Full

EPIC appeals the DOJ's withholding of records in full. In the DOJ Letter, the DOJ indicated that responsive records were withheld, but the agency failed to identify the documents, establish a factual basis for withholding, or perform a sufficient segregability analysis.

EPIC's appeal includes, but is not limited to, the DOJ's withholding of records related to the government's request pursuant to 18 U.S.C. § 2703(d) to compel Twitter to disclose customer account information associated with Julian Assange, Bradley Manning, Rop Gonggrijp, and Birgitta Jónsdóttir.[20] Judge Buchanan of the U.S. District Court for the Eastern District of Virginia issued an order ("Twitter Order") compelling disclosure of this information on December 14, 2010, and then unsealed the order on January 5, 2011.[21]

The DOJ has not provided any factual basis for withholding information related to the Twitter Order pursuant to Exemption b(7)(A). The burden is on the agency to provide proof that the withheld documents were actually "compiled for law enforcement purposes" and would "interfere with enforcement proceedings," and the agency has

---

[19] Peter Beaumont, *WikiLeaks Demands Google and Facebook Unseal US Subpoenas*, The Guardian, Jan. 8, 2011, http://www.guardian.co.uk/media/2011/jan/08/wikileaks-calls-google-facebook-us-subpoenas.

[20] *See In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, Misc. No. 10GJ3793 (E.D. Va. Dec. 14, 2010).

[21] *See id.*; Order to Unseal the Order Pursuant to 18 U.S.C. § 2703(D), Misc. No. 10GJ3793 (E.D. Va. Jan. 5, 2011).

provided no such proof.[22]  Because the Twitter Order has been made publicly available, the information included in the order is known to defendants and the DOJ's disclosure of the document would not impede the investigation.[23]  The Twitter Order is evidence that the DOJ has withheld documents that are segregable and may not be withheld pursuant to Exemption b(7)(A).

EPIC Renews Its Request for "News Media" Fee Status

EPIC is a non-profit, educational organization that routinely and systematically disseminates information to the public. EPIC is a representative of the news media. *Elec. Privacy Info. Ctr. v. U.S. Dep't of Def.*, 241, F.Supp. 2d 5 (D.D.C. 2003).

Based on our status as a "news media" requester, we are entitled to receive the requested records with only duplication fees assessed. Further, because disclosure of this information will "contribute significantly to public understanding of the operations or activities of the government," as described above, any duplication fees should be waived.

Conclusion

As set forth above, EPIC appeals the DOJ's withholding of agency records in the DOJ Letter.  The agency has failed to identify the documents, provide a factual basis for its withholdings, or perform a sufficient segregability analysis.

Thank you for your prompt response to this appeal.  As provided in 5 U.S.C. § 552(a)(6)(A)(ii), I anticipate that you will produce responsive documents within twenty (20) working days of receipt of this appeal.  If you have any questions, please feel free to contact Ginger McCall at (202) 483-1140 or mccall@epic.org.

Respectfully submitted,

Ginger McCall
Staff Counsel, EPIC

---

[22] 5 U.S.C. § 552(a)(6)(E)(v)(II) (2008); *Al-Fayed v. CIA*, 254 F.3d 300, 306 (D.C. Cir. 2001).
[23] 120 Cong. Rec. S9330 (daily ed. May 30, 1974) (statement of Sen. Hart).

# *Exhibit 4*



**U.S. Department of Justice**

Office of Information Policy

*Telephone: (202) 514-3642*          *Washington, D.C.  20530*

**SEP 2 2 2011**

Ginger McCall, Esq.
Electronic Privacy Information Center
Suite 200
1718 Connecticut Avenue, NW
Washington, DC  20009

     Re:  Request No. 11-224

Dear Ms. McCall:

     This is to advise you that your administrative appeal from the action of the National Security Division was received by this Office on September 20, 2011.

     The Office of Information Policy has the responsibility of adjudicating such appeals.  In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt.  Your appeal has been assigned number **AP-2011-03147**.  Please mention this number in any future correspondence to this Office regarding this matter.

     We will notify you of the decision on your appeal as soon as we can.  If you have any questions about the status of your appeal you may contact me at the number above.

               Sincerely,

               Priscilla Jones
               Supervisory Administrative Specialist

NSP