**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE CRIMINAL DIVISION, et al.,<br><br>Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 12-cv-00127 (RWR) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

<u>**Exhibit 5 to the Memorandum in Support of Defendants' Motion for Summary Judgment**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, Plaintiff, | ) ) ) ) ) |
| v. | ) ) Civil Action No. 1:12-00127-RWR |
| U.S. DEPARTMENT OF JUSTICE, *et. al.* Defendants. | ) ) ) ) ) ) |

## DECLARATION OF JOHN E. CUNNINGHAM III

I, John E. Cunningham III, declare the following to be a true and correct statement of facts:

1.      I am a Trial Attorney in the U.S. Department of Justice (DOJ or Department), Criminal Division, and am currently assigned to the Office of Enforcement Operations, Freedom of Information Act/Privacy Act (FOIA/PA) Unit, where I have worked since November 2011.  I have been employed as a Trial Attorney with the Department of Justice since October 1998. From October 1998 to November 2011, I was employed by the Fraud Section of the Criminal Division.

2.      I am responsible for providing litigation support and assistance to Department of Justice Assistant United States Attorneys and Civil Division Trial Attorneys who represent the Department in lawsuits filed in federal court under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Privacy Act (PA), 5 U.S.C. § 552a, stemming from requests for Criminal Division records.  My duties include reviewing processing files compiled by the Criminal Division in responding to FOIA/PA requests in order to determine whether searches for records

1

were properly conducted, and whether decisions to withhold or release Criminal Division records were in accordance with the FOIA and PA, as well as Department of Justice FOIA and PA regulations at 28 C.F.R. §§ 16.1 *et seq.* If searches are incomplete and/or records have not been processed, I ensure that searches are completed, and/or records are processed. Then, I take the lead in the completion of any pending searches or processing of Criminal Division documents. I regularly consult with the Chief, Deputy Chief, the Supervisory FOIA Specialist, and other members of the FOIA/PA Unit about the Criminal Division's searches and processing of FOIA/PA requests.

3.      Due to the nature of my official duties, I am familiar with the particular processing of plaintiff's FOIA request at issue in this litigation. I was involved in the processing of this FOIA request, including drafting the Criminal Division's response to this FOIA request. In addition, I assisted the Civil Division Trial Attorney in this lawsuit.

4.      The Criminal Division is submitting in support of its motion for summary judgment. This declaration describes the Criminal Division's search for responsive records and the basis for its withholding of information pursuant to FOIA Exemptions 3, 5, 6, 7(A), 7(C), and 7(D). I am also submitting an *ex parte* and *in camera* declaration that contains additional information that cannot be made public concerning the Criminal Division's withholdings under Exemption 3, along with a detailed *Vaughn* index identifying each responsive record and the bases for its withholding.

5.      The statements that follow are made on the basis of my review of the Criminal Division's official files and records, my personal knowledge, and information I acquired in performing my official duties.

2

## PLAINTIFF'S FOIA REQUEST

6.      Plaintiff submitted a FOIA request, dated June 23, 2011, to the Criminal Division,

requesting:

> All records regarding any individuals targeted for surveillance for support for or interest in WikiLeaks;
>
> All records regarding lists of names of individuals who have demonstrated support for or interest in WikiLeaks;
>
> All records of any agency communications with Internet and social media companies including, but not limited to Facebook and Google, regarding lists of individuals who have demonstrated, through advocacy or other means, support for or interest in WikiLeaks; and
>
> All records of any agency communications with financial services companies including, but not limited to Visa, MasterCard, and PayPal, regarding lists of individuals who have demonstrated, through monetary donations or other means, support or interest in WikiLeaks.

A copy of plaintiff's FOIA request is attached as Exhibit 1.

7.      In a letter dated July 18, 2011, the Criminal Division responded to the plaintiff's

request.  The Criminal Division assigned plaintiff's FOIA request file number 201100450F.  In

its letter, the Criminal Division requested that plaintiff provide it with clarifying information

regarding the names of the individuals referred to, the specific time frames covered by the

request, as well as a further description of the specific subject matter related to WikiLeaks.  A

copy of the Criminal Division's response to plaintiff's FOIA request is attached as Exhibit 2.

8.      On August 2, 2011, the plaintiff responded to the Criminal Division's request for

clarification and further identified the names of six individuals.  A copy of plaintiff's

clarification letter is attached as Exhibit 3.  On August 18, 2011, the Criminal Division sent a

letter informing the plaintiff that the Criminal Division had not performed a search for

responsive records, and it asserted that any records pertaining to the six named individuals the

plaintiff had identified, were exempt from disclosure under FOIA Exemptions 6 and 7(C).  *See* 5

U.S.C. § 552(b)(6), (7)(C).  A copy of the Criminal Division's response to plaintiff's

clarification letter is attached as Exhibit 4.

      9.     On or about October 11, 2011, the plaintiff filed an appeal with the Department of

Justice's Office of Information Policy (OIP).  A copy of plaintiff's appeal is attached as Exhibit

5.  In a letter dated October 24, 2011, OIP acknowledged receiving the plaintiff's administrative

appeal on October 14, 2011.  A copy of OIP's letter to plaintiff is attached as Exhibit 6.  On

January 25, 2012, the plaintiff filed the instant lawsuit in the United States District Court for the

District of Columbia.  In a letter dated August 23, 2012, OIP notified the plaintiff that because

the plaintiff had filed a lawsuit the appeal file would be closed.  A copy of OIP's letter to

plaintiff is attached as Exhibit 7.

## SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFF'S FOIA REQUEST

      10.    In response to the plaintiff's June 23, 2011 FOIA request for records relating to

WikiLeaks, the Criminal Division determined that the only entities that were reasonably likely to

have records responsive to the request were the Computer Crimes and Intellectual Property

Section (CCIPS) and the Office of International Affairs (OIA).  Both CCIPS and OIA

subsequently conducted searches of their electronic files for responsive records after determining

that their electronic files would contain all responsive records in their possession.  To that end,

CRM FOIA personnel prepared a list of search terms using the information provided in the

plaintiff's request.  The searches conducted by CCIPS and OIA were reasonably calculated to

locate all responsive files, and included the following search terms: "WikiLeaks"; "surveillance";

"social media"; "Facebook"; "Google"; "Twitter"; "Private Bradley Manning"; "Julian

Assange"; "Jacob Appelbaum"; "David House"; "Rop Gonggrijp"; and "Birgitta Jónsdóttir."

Both components also searched utilizing the following Boolean connectors: "communications"

AND ("financial service company/(ies)" OR "Visa" OR "Mastercard" OR "Paypal").  And

CCIPS also conducted additional searches utilizing the following Boolean connectors:

"WikiLeaks" AND ("Facebook" OR "Google" OR "Twitter") AND ("Manning" OR "Assange"

OR "Appelbaum" OR "House" OR "Gonggrijp" Or "Jónsdóttir").  CRM FOIA personnel

determined that these searches would locate the responsive documents that are within CRM's

possession or control.  As a result of these searches, the Criminal Division identified electronic

and paper files containing information potentially responsive to plaintiff's FOIA request.  I have

personally reviewed the responsive records, and have determined that they must be withheld in

their entirety for the reasons described below.

## EXEMPTION (b)(7)(A)
## PENDING LAW ENFORCEMENT INVESTIGATION

11.     Exemption (b)(7) of the FOIA protects from mandatory disclosure records or

information compiled for law enforcement purposes, but only to the extent that disclosure could

reasonably be expected to cause one of the harms enumerated in one of the subparts of the

exemption.   See 5 U.S.C. § 552(b)(7).  In this case, the Criminal Division has determined that all

of the potentially responsive records are protected by Exemption (b)(7)(A) because their release

could reasonably be expected to interfere with an ongoing law enforcement investigation.

12.     Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it

must first demonstrate that the records or information at issue were compiled for law

enforcement purposes.  Law enforcement agencies such as the Criminal Division must

demonstrate that the records at issue are related to the enforcement of federal laws, and that the

law enforcement activity is within the duties of the agency.  Here, the responsive records in the

possession of the Criminal Division are all part of the Department of Justice's investigation into

the unauthorized disclosure of classified information that resulted in the publication of materials

on the WikiLeaks website.  This matter is an active, ongoing criminal law enforcement

investigation, and is clearly within the law enforcement duties of the Criminal Division, which

include the investigation and prosecution of violations of federal criminal laws.  Thus, all the

records responsive to the FOIA request were compiled for law enforcement purposes and readily

meet the threshold requirement of Exemption (b)(7).

13.     Among the subparts of Exemption (b)(7) is Exemption (b)(7)(A), which exempts

from disclosure:

> Records or information compiled for law enforcement purposes, but only
> to the extent that the production of such law enforcement records or
> information . . . could reasonably be expected to interfere with enforcement
> proceedings.

Application of this exemption requires: (a) the existence of law enforcement records; (b) a

pending or prospective law enforcement proceeding, and a determination that release of the information could reasonably be expected to interfere with an enforcement proceeding. The Criminal Division has exempted from disclosure all responsive records within the pending investigative file pursuant to FOIA exemption 7(A) because the Criminal Division has determined that the disclosure of these law enforcement records could reasonably be expected to interfere with the Department's national security investigation into the unauthorized disclosure of classified information.

### Types of Law Enforcement Records Exempt Under (b)(7)(A)

14.     The Criminal Division cannot provide a public description of each individual document withheld under Exemption (b)(7)(A). To do so would itself reveal protected information concerning the Government's ongoing investigation, including the size and scope of the investigation (or at least the Criminal Division's role in it) and the particular Division offices involved in the investigation (and, by implication, the offices that are not involved). I am providing a specific listing of these documents as part of my *ex parte* and *in camera* declaration, but in order to protect these interests I will publicly describe the types of responsive records that are being withheld.

15.     The responsive records withheld from the pending investigative file pursuant to Exemption (b)(7)(A) include the following types of documents:

    a. <u>E-mails</u>: These documents include electronic messages exchanged between and among Criminal Division attorneys, employees, and Assistant United States Attorneys concerning an ongoing investigation or matter.

    b. <u>Legal Pleadings</u>: This category includes legal documents that have been filed under seal with the United States courts in connection with either pending or

prospective litigation.

    c.   Memoranda:  The documents in this category summarize both the deliberative and legal aspects of an investigation or matter, and contain predecisional, deliberative, proposed or recommended courses of action.

    d.   Transmittal Memoranda:   A transmittal memorandum provides an addressee with a brief overview or synopsis of a separate underlying document.  A transmittal document can be detached from the underlying document, and may further be identified as having language such as: "Law Enforcement Sensitive – Limited Official Use."

    e.   Case Tracking Summary:  These documents list ongoing investigations or matters, including open, ongoing, and closed investigations and cases.

    f.   Miscellaneous Administrative Documents:  The Criminal Division uses various types of documentary forms throughout a criminal investigation, which includes facsimile cover sheets, routing slips, tracking system cover documents, notes, memoranda, letters, and other attachments of an administrative nature that would identify the ongoing law enforcement investigation or matter.

**Reasonable Expectation of Interference**

    16.     The Criminal Division has determined that any release of the records described above to the plaintiff would be premature and likely to cause harm to pending law enforcement proceedings.  Once documents are released and are in the public domain, information concerning this ongoing investigation could reach the individuals being investigated, thus allowing such individuals to be "tipped off" that they are being investigated, and to critically analyze these documents concerning the investigation.  In reaching these conclusions, the Criminal Division

has determined that the responsive records generally fall within two categories: evidentiary and investigative materials, and administrative materials.

17.   *Evidentiary and investigative materials:*   This category includes copies of emails among Department attorneys as well as memoranda and pleadings filed under seal that are not publically available.  The information contained in these records includes discussions of litigation and prosecution strategies, summaries of evidence, attempts to obtain evidence from third parties, and the identification of persons of interest to the investigation.  The disclosure of such information would harm the ongoing investigation in numerous ways.  The identification of individuals and potential witnesses who possess information relative to the investigation would subject those individuals to possible harm and/or intimidation, and could lead to their refusal to cooperate with the investigation along with negative consequences for their well-being.  The disclosure of evidence and the identification of persons of interest could allow those individuals to counteract evidence developed by investigators, resulting in the potential that individuals may alter or destroy evidence or create false evidence.  It would also allow subjects of the investigation to assess the likelihood that he or she may be prosecuted and/or convicted in connection with this investigation, which can result in changes to their behavior that frustrate the investigation.  Moreover, the identification of locations (whether in the United States or elsewhere) where the Criminal Division is focusing the investigation and collecting investigative and source material could reveal the scope of the investigation and to identify the suspects, witnesses, and evidence that are at issue in the investigation.

18.   *Administrative materials:*   The Criminal Division has also determined that the release of the administrative materials within the investigative file would likely interfere with the ongoing investigation.  These materials include the transmittal memoranda, cover sheets, and

9

other administrative guidance in the file. These materials are often attached to or directly related

to the evidentiary and investigative materials discussed above, and the release of these

documents creates the potential for the same harms discussed in the previous paragraph. These

documents could also reveal the particular offices or employees within the Criminal Division

that are involved in the investigation, as well as the other Department components or

Government agencies participating in the investigation, and the disclosure of this information

could reasonably be expected to harm the investigation by revealing non-public information

regarding the scope and status of a complex national security investigation. Administrative

materials also record information such as the identities of sources and persons of interest to the

investigation, and the dates and locations of events of interest to investigators. Releasing such

materials would also reveal what facts have been obtained as part of the investigation, which

could provide meaningful insight to potential targets such that they could change their behavior

in ways that would frustrate the investigation.

19.     The Criminal Division makes every effort to provide information that will not

interfere with the pending law enforcement proceedings. However, in this case, the release of

the Criminal Division's documents could reasonably be expected to interfere with law

enforcement proceedings, and it is therefore protected by FOIA Exemption (b)(7)(A).

## OTHER APPLICABLE EXEMPTIONS

20.     As explained above, the Criminal Division has determined that all of the withheld

records are protected by Exemption (b)(7)(A). In addition, the Criminal Division withholds

certain documents based on FOIA Exemptions (b)(3), (b)(5), (b)(6), (b)(7)(C) and (b)(7)(D).

The bases for these withholdings is set forth below. In addition, a description of the particular

documents is provided as part of my *ex parte*, *in camera* declaration, for the reasons explained

above.

## EXEMPTION (b)(3)
## INFORMATION PROTECTED BY STATUTE

21.   5 U.S.C. § 552(b)(3) exempts from disclosure information which is:

> Specifically exempted from disclosure by statute . . . provided is
> such statute (A) requires that the matters be withheld from the public
> in such a manner as to leave no discretion on the issue; or (B)
> establishes particular criteria for withholding or refers to particular
> types of matters to be withheld.

22.   The Criminal Division withholds information covered by one or more Federal

statutes that prohibit disclosure.  Because identifying the particular statute or statutes that are at

issue would itself reveal information protected by Exemptions (b)(3) and (b)(7)(A),  the Criminal

Division has discussed the application of this exemption in my *ex parte* declaration.

## EXEMPTION (b)(5)

23.   In this case, the Criminal Division has determined that certain records requested

by the plaintiff are also exempt under FOIA Exemption (b)(5), which permits agencies to

withhold inter- or intra-agency documents that would not be available in litigation (i.e., attorney-

client communications, attorney work product, and deliberative process materials).  5 U.S.C.

§ 552(b)(5).  Exemption 5 has been construed to exempt inter- and intra-agency documents and

information normally privileged in the civil discovery context and includes, inter alia, attorney

work product documents and materials created as part of the deliberative process.

### Attorney Work Product

24.   The attorney work product doctrine protects tangible and intangible items such as

interviews, memoranda, correspondence, mental impressions, and personal beliefs prepared or

developed by an attorney in anticipation of litigation, based upon the recognition that proper

preparation of a case depends on an attorney's ability to assemble information, sort relevant from

11

irrelevant facts, and prepare his/her legal theories and strategies without intrusive or needless scrutiny. For purposes of the attorney work product doctrine, litigation is anticipated when the government is investigating specific wrongdoing in an attempt to gather evidence and build a case against a suspected wrongdoer. However, litigation need not come to fruition in order for the doctrine to attach. Moreover, the doctrine extends to recommendations not to litigate (or prosecute) a case. Finally, for purposes of FOIA, the work product doctrine protects factual materials, in addition to an attorney's legal analysis.

25.     The Criminal Division relies on Exemption 5 to protect materials create by Criminal Division and other Department attorneys in anticipation of potential prosecutions arising out of the pending investigation. The documents being withheld are tangible items that reflect the sorting and assembling of factual information, as well as the underlying legal analyses and recommendations of DOJ attorneys about how best to prosecute an ongoing matter.

26.     Accordingly, the Criminal Division has properly asserted FOIA Exemption (b)(5) to withhold certain documents from disclosure.

## **Deliberative Process Privilege**

27.     The deliberative process privilege protects documents that reflect advisory opinions, recommendations and deliberations that are part of the internal agency process by which the government makes decisions or formulates policies. The privilege is designed to protect the integrity of the internal agency decision-making process including candid discussions between federal government employees and preventing public confusion from premature disclosure of decisions before the government has formulated a final opinion.

28.     For the deliberative process privilege to apply, the information withheld must be both predecisional and deliberative. Information is predecisional if it temporally precedes the

decision about which it pertains and if it is prepared/compiled to assist decision-makers in reaching that decision. Information is deliberative if it is actually part of the give-and-take by which the government made its decision. Recommendations, draft documents, proposals, suggestions, and other subjective documents reflecting the opinion of the writers, rather than the policy of the agency, are the types of documents often found to be deliberative.

29. The Criminal Division has withheld documents that reflect the decision-making process as it has played out during the investigation. The materials at issue include discussions and suggestions regarding potential investigative steps. The materials also include drafts of affidavits, pleadings, and memoranda, that were subject to revisions. Accordingly, the Criminal Division has properly asserted FOIA Exemption (b)(5) to withhold certain documents from disclosure.

**EXEMPTIONS (b)(6) AND (b)(7)(C)**
**CLEARLY UNWARRANTED AND UNWARRANTED**
**INVASION OF PERSONAL PRIVACY**

30. FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) safeguards records or information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In order to apply either exemption, an agency must balance competing interests: an individual's privacy interests must be balanced against the public's interest in disclosure. In considering whether information should be withheld under these exemptions, the Criminal Division has balanced these interests by considering the harms that could result from disclosure along with whether the disclosure would shed light on the activities of the Criminal

Division (and the broader Government).

31.    The Criminal Division relies on Exemptions 6 (general privacy provision) and

7(C) (law enforcement privacy provision) to protect the names and/or other identifying

information of Department of Justice attorneys, support personnel and third parties which are

contained in the investigative file.  (Information withheld under these exemptions is withheld

under both exemptions together.  In order words, there is no information that is exempt only

under Exemption 6 or Exemption 7(C).)

32.    With respect to the names and other identifying information of Department of

Justice attorneys and other employees, the Criminal Division has determined that these

individuals have strong privacy interests in not having their identities disclosed and confirmed.

These individuals are assisting with a sensitive national security investigation (and most have

also been involved in other similar investigations).  The disclosure of their identities could

subject them to physical harm, intimidation, and harassment merely for the performance of their

job duties.  It could also impair their ability to work on this and future investigations.  Moreover,

it could subject them to scrutiny regarding the means by which the Government has conducted

the investigation.  At the same time, there is no discernible public interest in the disclosure of

this information because identifying the individual employees who worked on an investigation

would not itself shed light on the activities of the Criminal Division.

33.    The Criminal Division is also withholding the identities of various individuals,

including custodians of records, who are employed by entities that provided information to the

Department of Justice.  The Criminal Division determined that these individuals have a privacy

interest in the non-disclosure of their identities, because they could be subjected to harassment or

other harms on account of having provided assistance to the United States as part of the

investigation.  At the same time, there is no public interest in disclosure of these employees'

identities.  These issues are identified in the documents solely in connection with their

administrative role in communicating with the United States and its representatives, and

revealing their identities would not shed light on the Government's activities.

34.     Accordingly, the Criminal Division withheld information under Exemptions 6 and

7(C) after properly determining that there is no public interest in disclosure that would outweigh

the individuals' personal privacy interests, and these withholdings should therefore be upheld.

**EXEMPTION (b)(7)(D)**
**CONFIDENTIAL SOURCE INFORMATION**

35.     5 U.S.C. § 552 (b)(7)(D) protects from disclosure:

> Records or information compiled for law enforcement purposes [which]
> could reasonably be expected to disclose the identity of a confidential
> source, including a state, local or foreign agency or authority or any
> private institution which furnished information on a confidential basis,
> and, in the case of a record or information compiled by a criminal law
> enforcement authority in the course of a criminal investigation or by an
> agency conducting a lawful national security intelligence investigation,
> information furnished by a confidential source.

36.     The Criminal Division routinely relies on individuals to assist, cooperate with and

provide information to law enforcement. In order to obtain critical law enforcement information,

such individuals must be free to furnish that information with complete candor and without the

fear of reprisal.  A primary purpose of FOIA Exemption 7(D) is to enable individuals who

provide information to law enforcement agencies to be free to furnish that information with

complete candor and without withholding some of the information due to fear that their names or

their cooperation with law enforcement will later be made public.  FOIA Exemption 7(D)

protects individuals who provide information to law enforcement by not disclosing their

assistance and identities.  The release of the identity of an individual source who has been

assured confidentiality would most likely eliminate that source as a future means of obtaining

15

necessary law enforcement information, and could subject them to a real risk of physical harm, harassment, and intimidation.  In addition, when the identity of one individual source is revealed, that may have a chilling effect on the activities and cooperation of other individual sources, in not only this case but in future cases as well.

37.     The Criminal Division has specifically sought to withhold information sought by the United States from foreign governments and named individuals pursuant to certain Mutual Legal Assistance Treaties ("MLAT's").  For these reasons, the Criminal Division has properly withheld this information pursuant to FOIA Exemption 7(D).

38.     During the course of the Criminal Division's investigation, DOJ attorneys have sought and continue to seek the assistance of various foreign governments and individuals to obtain information in aid of these investigations.  Information has been provided by various foreign governments and individuals under both express and implied assurances of confidentiality.

39.     These foreign governments and individuals could be subject to acts of reprisal or harassment, or could draw an unnecessary amount of public attention if the Criminal Division disclosed their cooperation.  The Criminal Division has learned through experience that foreign governments and individuals who provide information about subjects under investigation must be able to do so without fearing that their identities and the information they provided will be disclosed outside their confidential relationship with the Criminal Division.  Foreign governments and individuals who provide investigative information must be free to furnish that information with complete candor and without the understandable tendency to hedge or withhold information out of fear of public disclosure.  Those foreign governments and individuals who have provided information in these investigations must be secure in the knowledge that their

assistance and their identities will be held in confidence. This is of particular importance here, where the Government has cause to be concerned about potential harassment and threats to individuals who have cooperated in these investigations.

40.   ***Names, Identifying Information, and/or Information Provided Under Implied Assurances of Confidentiality:***   Exemption 7(D) has been asserted, in conjunction with Exemptions 6, 7(C) to protect the names and/or identifying information about cooperating foreign governments and individuals who have provided information to the Criminal Division under implied assurances of confidentiality during the course of the Criminal Division's investigations into the disclosure of classified information that was subsequently published on the WikiLeaks website. Exemption 7(D) has also been asserted to protect the information these governments and individuals provided to the Criminal Division under implied assurances of confidentiality. These foreign governments and individuals provided specific and detailed information that is singular in nature about the matters under investigation. The disclosure of their identities could have disastrous consequences. Given the nature of these investigations and also prior incidents of harassment and threats toward individuals associated with these investigations, the Criminal Division has legitimate cause to conclude that the disclosure of the identities of cooperating foreign governments and individuals could subject them to reprisal and have a chilling effect on future cooperation by them in these or other cases. These foreign governments and individuals have provided information of value to the Criminal Division in relation to these investigations, and in doing so, have placed themselves in harm's way should their cooperation with/participation in these investigations become publicly known.

41.   Accordingly, foreign governments and individuals who have cooperated with the on-going investigations under implied assurances of confidentiality, as well as the information

they provided, are entitled to protection and the Criminal Division has properly invoked

Exemption 7(D) in conjunction with Exemptions 6 and 7(C), to protect this information.

42.     ***Names, Identifying Information, and/or Information Provided Under Express***

***Assurances of Confidentiality:***   Exemption 7(D) has been asserted, in conjunction with

Exemptions 6, 7(C) to protect the names and/or identifying information about cooperating

foreign governments and individuals who have provided information to the Criminal Division

under express assurances of confidentiality during the course of the Criminal Division's

investigations into the disclosure of classified information that was subsequently published on

the WikiLeaks website.  Exemption 7(D) has also been asserted to protect the information these

foreign governments and individuals provided to the Criminal Division under express assurances

of confidentiality.  These foreign governments and individuals provided specific and detailed

information that is singular in nature about the matters under investigation.  The disclosure of

their identities could have disastrous consequences.  Given the nature of these investigations and

also prior incidents of harassment and threats toward individuals associated with these

investigations, the Criminal Division has legitimate cause to conclude that the disclosure of the

identities of cooperating foreign governments and individuals could subject them to reprisal and

have a chilling effect on future cooperation by them in these or other cases.  These foreign

governments and individuals have provided information of value to the Criminal Division in

relation to these investigations, and in doing so, have placed themselves in harm's way should

their cooperation with/participation in these investigations become publicly known.

43.     Accordingly, foreign governments and individuals who have cooperated with the

on-going investigations under express assurances of confidentiality, as well as the information

they provided, are entitled to protection and the Criminal Division has properly invoked

Exemption 7(D) in conjunction with Exemptions 6 and 7(C), to protect this information.

## CONCLUSION

44.    As discussed above, the Criminal Division has processed the plaintiff's request

and determined that all responsive records are contained in the files of an ongoing criminal

investigation.  Because the disclosure of those records would interfere with the investigation, the

records have been withheld pursuant to Exemption 7(A).  In addition, certain records are

protected from disclosure by FOIA Exemptions 3, 5, 6, 7(C) and 7(D).  The Criminal Division

has reviewed these records and determined that there are no reasonably segregable non-exempt

portions that can be released.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed this 31st day of January, 2013.

JOHN E. CUNNINGHAM III

# Exhibit 1

 06/23/2011  15:18   2024831248                 EPIC                        PAGE  01

# ELECTRONIC PRIVACY INFORMATION CENTER

1718 CONNECTICUT AVENUE NW, SUITE 200
WASHINGTON, D.C. 20009
202-483-1140
FAX 202-483-1248

CONFIDENTIAL -- SUBJECT TO ATTORNEY-CLIENT PRIVILEGE

ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION BY OTHER THAN
ITS ADDRESSEE IS STRICTLY PROHIBITED. IF THIS FACSIMILE HAS BEEN RECEIVED IN ERROR,
PLEASE  IMMEDIATELY  NOTIFY THE SENDER

## TO: RENA KIM, FOIA OFFICER     FROM:  ANDREW CHRISTY

COMPANY:                                      DATE:

Department of Justice Criminal Division       6/23/2011

RECIPIENT'S FAX NUMBER:                        SENDER'S EMAIL:

(202) 514-6117                                 Christy@epic.org

RECIPIENT'S TELEPHONE NUMBER:                  SENDER'S TELEPHONE  NUMBER:

                                               (202) 483-1140

TOTAL NO. OF PAGES INCLUDING COVER:

6

## COMMENTS:

JUN 2 7 2011

06/23/2011  15:18  2024831248                EPIC                        PAGE  02

ELECTRONIC PRIVACY INFORMATION CENTER

# epic.org

June 23, 2011

VIA FACSIMILE:  (202) 514-6117

Chief FOIA Officer Rena Y. Kim
Criminal Division
Department of Justice
Suite 1127, Keeney Building
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

1718 Connecticut Ava NW

Suite 200

Washington DC 20009

USA

+1 202 483 1140 [tel]

+1 202 483 1248 [fax]

www.epic.org

RE:  Freedom of Information Act Request and Request for Expedited Processing

Dear Ms. Kim:

This letter constitutes a request under the Freedom of Information Act ("FOIA"),
5 U.S.C. § 552, and is submitted on behalf of the Electronic Privacy Information Center
("EPIC").  EPIC seeks documents regarding the government's identification and
surveillance of individuals who have demonstrated support for or interest in WikiLeaks,
as well as any documents relating to records obtained from Internet and financial services
companies regarding these individuals.

Background

On December 22, 2010, EPIC submitted FOIA requests to the Department of
Justice ("DOJ"), the Secret Service, Immigration and Customs Enforcement ("ICE"), and
the Financial Crimes Enforcement Network ("FinCEN").  These requests sought
communications or agreements between the government and certain corporations
regarding donations to WikiLeaks and personally identifiable information for individuals
who accessed or attempted to access the WikiLeaks website.  The request to the DOJ was
referred to the Antitrust Division. As of June 9, 2011, none of the agencies have found or
disclosed the records EPIC requested.

On November 28, 2010, WikiLeaks and cooperating news agencies published
State Department cables allegedly provided by Pvt. Bradley Manning.[1]  On November
29, Attorney General Eric Holder stated that DOJ was conducting a criminal
investigation regarding WikiLeaks.[2]  The government filed a sealed request pursuant to
18 U.S.C. § 2703(d) with federal magistrate judge Theresa C. Buchanan in the Eastern
District of Virginia in Alexandria.[3]  On December 14, 2010, Judge Buchanan issued an
order ("Twitter Order") pursuant to § 2703(d) compelling Twitter to disclose customer

---

[1] Robert Booth, *WikiLeaks Cables:  Bradley Manning Faces 52 Years in Jail*, The Guardian, Nov. 30,
2010, http://www.guardian.co.uk/world/2010/nov/30/wikileaks-cables-bradley-manning.
[2] Mark Memmott, *WikiLeaks Update: Justice Investigating*, National Public Radio, Nov. 29, 2010,
http://www.npr.org/blogs/thetwo-way/2010/11/29/131669228/wikileaks-update-justice-investigating.
[3] *See In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, Misc. No.
10GJ3793 (E.D. Va. Dec. 14, 2010).

account information, including Internet Protocol addresses and addressing information associated with communications, for Julian Assange, Bradley Manning, Rop Gonggrijp, and Birgitta Jónsdóttir.[4]

The Twitter Order prohibited Twitter from disclosing the existence of the application or order to anyone.[5] After contesting the seal, Twitter convinced the federal district court to unseal the order and allow Twitter to notify its users of the government's request for their information.[6] On January 26, 2011, the Electronic Frontier Foundation and the American Civil Liberties Union filed a motion in the Eastern District of Virginia to overturn the Twitter Order, on behalf of Rop Gonggrijp, Birgitta Jónsdóttir, and Jacob Appelbaum (the only U.S. citizen among the plaintiffs).[7] This litigation remains pending.[8]

As evidence of surveillance of WikiLeaks supporters, Jacob Appelbaum, U.S. WikiLeaks spokesperson, and David House, close friend of Bradley Manning, have been stopped at the border by Customs and Border Patrol ("CBP") agents when entering the United States and specifically questioned about their involvement with WikiLeaks.[9] Appelbaum has been questioned at least twice at the border, and his electronic devices have been confiscated. The first time was on July 29, 2010 upon reentering the United States from the Netherlands.[10] When he was questioned a second time on January 10, 2011 upon return from Iceland, he traveled with no electronic equipment, causing the customs agents to be "visibly unhappy."[11] The CBP agents also indicated they had viewed his Twitter feed ahead of his flight to obtain his flight details.[12] On July 31, 2010, plainclothes FBI agents questioned Appelbaum after he gave a speech at Defcon.[13] All of the questioning by FBI and DHS focused on his personal views on and work with WikiLeaks.[14]

---

[4] *Id.*

[5] *See id.*

[6] Order to Unseal the Order Pursuant to 18 U.S.C. § 2703(D), Misc. No. 10GJ3793 (E.D. Va. Jan. 5, 2010).

[7] Motion to Vacate Dec. 14, 2010 Order, Misc. No. GJ3793 (E.D. Va. Jan. 26, 2010).

[8] *See Government Demands for Twitter Records of Birgitta Jonsdottir*, Electronic Frontier Foundation, June 2, 2011, https://www.eff.org/cases/government-demands-twitter-records.

[9] Glenn Greenwald, *Government Harrassing and Intimidating Bradley Manning Supporters*, Salon, Nov. 9, 2010, http://www.salon.com/news/opinion/glenn_greenwald/2010/11/09/manning.

[10] Elinor Mills, *Researcher Detained at U.S. Border, Questioned about WikiLeaks*, CNET, July 31, 2010, http://news.cnet.com/8301-27080_3-20012253-245.html

[11] Xeni Jardin, *Wikileaks Volunteer Detained and Searched (again) by US Agents*, Boing Boing, Jan. 12, 2011, http://www.boingboing.net/2011/01/12/wikileaks-volunteer-1.html.

[12] *Id.*

[13] Elinor Mills, *Researcher Detained at U.S. Border, Questioned about WikiLeaks*, CNET, July 31, 2010, http://news.cnet.com/8301-27080_3-20012253-245.html

[14] *Id.*

*The Washington Post* reported that DHS agents at Chicago O'Hare International Airport detained David House and seized his laptop on November 3, 2010.[15] David House created the Bradley Manning Support Network, a defense fund for Bradley Manning.[16] An agent from the FBI Joint Terrorism Task Force questioned David House about his relationship with Manning and WikiLeaks.[17] In an interview with *The Washington Post*, David House claimed he had been stopped and questioned at the border seven times since September and he believes his name is on a government watchlist.[18]

There has been widespread suspicion that other online services such as Facebook and Google were served with similar court orders requesting information on WikiLeaks supporters, though neither company has confirmed the existence of such an order.[19] The broad nature of the Twitter Order and the silence of other companies that were likely served with a similar sealed order suggest that DOJ, FBI, DHS, and CBP may be conducting surveillance of WikiLeaks supporters.

Requested Documents

1.  All records regarding any individuals targeted for surveillance for support for or interest in WikiLeaks;

2.  All records regarding lists of names of individuals who have demonstrated support for or interest in WikiLeaks;

3.  All records of any agency communications with Internet and social media companies including, but not limited to Facebook and Google, regarding lists of individuals who have demonstrated, through advocacy or other means, support for or interest in WikiLeaks; and

4.  All records of any agency communications with financial services companies including, but not limited to Visa, MasterCard, and PayPal, regarding lists of individuals who have demonstrated, through monetary donations or other means, support or interest in WikiLeaks.

---

[15] Ellen Nakashima, *Activist Who Supports Soldier in WikiLeaks Case Sues U.S. over Seizure of Laptop*, The Washington Post, May 13, 2011, http://www.washingtonpost.com/national/activist-who-supports-soldier-in-wikileaks-case-sues-us-over-seizure-of-laptop/2011/05/11/AFxxzflG_story.html.

[16] Glenn Greenwald, *Government Harrassing and Intimidating Bradley Manning Supporters*, Salon, Nov. 9, 2010, http://www.salon.com/news/opinion/glenn_greenwald/2010/11/09/manning.

[17] *Id.*

[18] Nakashima, *supra* note 15.

[19] Peter Beaumont, *WikiLeaks Demands Google and Facebook Unseal US Subpoenas*, The Guardian, Jan. 8, 2011, http://www.guardian.co.uk/media/2011/jan/08/wikileaks-calls-google-facebook-us-subpoenas.

Request for Expedited Processing

This request warrants expedited processing because it is made by "a person primarily engaged in disseminating information . . ." and it pertains to a matter about which there is an "urgency to inform the public about an actual or alleged federal government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

EPIC is "primarily engaged in disseminating information." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004). This request is part of EPIC's open government program and its ongoing efforts to investigate the U.S. government's domestic surveillance programs.[20] On December 22, 2010, EPIC submitted FOIA requests to the DOJ, the Secret Service, ICE, and the FinCEN, seeking documents related to the government's attempts to compel Internet and financial services companies to disclose private records regarding WikiLeaks supporters. In January 2011, Steven Aftergood, who directs the Project on Government Secrecy at the American Federation of Scientists, and Glenn Greenwald, a noted constitutional lawyer and writer at Salon.com, spoke at an EPIC board meeting regarding WikiLeaks.

There is particular urgency for the public to obtain information about the extent of the government's domestic surveillance programs. Disclosure of information related to the surveillance of WikiLeaks supporters will enhance the public's understanding of the extent of the government's surveillance of individuals exercising the rights to freedom of speech and association guaranteed by the First Amendment of the U.S. Constitution.

Request for "News Media" Fee Status

EPIC is a "representative of the news media" for fee waiver purposes. *EPIC v. Department of Defense*, 241 F. Supp. 2d 6 (D.D.C. 2003). Based on our status as a "news media" requester, we are entitled to receive the requested record with only duplication fees asserted. Further, because disclosure of this information will "contribute greatly public understanding of the operation or activities of the government," and duplication fees should be waived.

Thank you for your consideration of this request. As 5 U.S.C. § 552(a)(6)(E)(ii)(I) provides, I will anticipate your determination on our request within ten (10) calendar days.

---

[20] *See, e.g.*, EPIC, Domestic Surveillance, http://www.epic.org/features/surveillance.html (last visited June 9, 2011).

Respectfully submitted,

Andrew Christy
Law Clerk, EPIC
Christy@epic.org

Alexandra Wood
Law Clerk, EPIC
Wood@epic.org

Ginger McCall
Staff Counsel, EPIC
Mccall@epic.org

# Exhibit 2



**U.S. Department of Justice**

Criminal Division
Office of Enforcement Operations

_Washington, D.C. 20530_

RYK: KS: cs typed 7/1/2011
CRM  201100450F

JUL 1 8 2011.

Andrew Christy, Law Clerk
Electronic Privacy Information Center (EPIC)
1718 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20009
<Christy@epic.org>

Dear Mr. Christy:

     The U.S. Department of Justice, Criminal Division acknowledges receipt of your Freedom of Information Act (FOIA) request dated June 23, 2011.  Your request has been assigned file number 201100450F.  Please refer to this number in any future correspondence with this Unit.  In your request, you asked for copies of records "regarding the government's identification and surveillance of individuals who have demonstrated support for or interest in WikiLeaks, as well as any document relating to records obtained from Internet and financial services companies regarding these individuals."  Specifically, you requested:

1. All documents regarding any individuals targeted for surveillance for support for or interest in WikiLeaks;

2. All records regarding lists of names of individuals who have demonstrated support for or interest in WikiLeaks;

3. All records of any agency communications with Internet and social media companies including, but not limited to Facebook and Google, regarding lists of individuals who have demonstrated, through advocacy or other means, support for or interest in WikiLeaks; and

4. All records of any agency communications with financial services companies including, but not limited to Visa, Mastercard, and PayPal, regarding lists of individuals who have demonstrated, through monetary donations or other means, support or interest in WikiLeaks.

     After a careful review of your request, it appears to be broad in scope, and does not clearly identify the records which you are seeking.  Records need to be described in reasonably sufficient detail to enable government employees who are familiar with the subject area to locate records without placing an unreasonable burden upon the agency.  See 5 U.S.C. § 552 (a)(3)(A).  For this reason, the Department of Justice's regulations require that the records requested be described with enough detail to enable Department personnel to locate them with a reasonable amount of time and effort.  The FOIA does not require an agency to create new records, answer what are only questions posed by requesters, or attempt to interpret a request that does not

FILE COPY

clearly identify records. Whenever possible, the request should include, specific information about each record including the date, title or name, author, recipient, and subject matter of the record. In addition, records concerning court cases should include the title of the case, the court in which the case was filed, and the nature of the case. See 28 C.F.R. § 16.3(b).

Here, we seek clarification regarding the names of the individual(s) to which you refer, including the specific time frames covered by your request, as well as a further description of the specific subject matter related to WikiLeaks that you are seeking.

You asked that your request be processed on an expedited basis. Until we receive clarification of the scope of your request, we cannot consider your request for expedited treatment. Requests for expedited treatment must be accompanied by a statement, certified to be true and correct to the best of the requester's knowledge and belief, that explains in detail the basis for requesting expedited processing. 28 C.F.R. § 16.5(d)(3).

A request for expedited treatment will be granted when it is determined that it involves:

1.  Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;

2.  An urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information;

3.  The loss of substantial due process rights; or

4.  A matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence. 28 C.F.R. § 16.5(d).

Regarding your request for media status, please be advised that this issue will be addressed upon receipt of a clarified request.

We have also determined that the following component of the U.S. Department of Justice may have records responsive to your request. Therefore, we have routed your request to the following office who will respond directly to you.

> Patricia Matthews, FOIA Public Liaison
> National Security Division
> U.S. Department of Justice
> 950 Pennsylvania Avenue, N.W.
> Room 6150
> Washington, D.C. 20530-0001
> nsdfoia@usdoj.gov

We want to be responsive to your request; therefore, upon receipt of your clarification of your request, you will be advised as to its status. If we do not hear from you within 30 days from

the date of this letter, we will assume you are no longer interested in this FOIA request, and the case will be administratively closed.  Please be advised that this action is not a denial of your request and will not preclude you from filing other requests in the future.

Thank you for your interest in the Criminal Division.

Sincerely,

Rena Y. Kim, Chief
Freedom of Information/Privacy Act Unit

# Exhibit 3

08/02/2011  17:15   2024831248                EPIC                                    PAGE  01



$201100450F$

# ELECTRONIC PRIVACY INFORMATION CENTER

1718 CONNECTICUT AVENUE NW, SUITE 200
WASHINGTON, D.C. 20009
202-483-1140
FAX 202-483-1248

CONFIDENTIAL -- SUBJECT TO ATTORNEY-CLIENT PRIVILEGE

ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION BY OTHER THAN
ITS ADDRESSEE IS STRICTLY PROHIBITED. IF THIS FACSIMILE HAS BEEN RECEIVED IN ERROR,
PLEASE IMMEDIATELY NOTIFY THE SENDER

**TO: RENA KIM**

COMPANY:

DOJ Criminal Division

RECIPIENT'S FAX NUMBER:

202-514-6117

RECIPIENT'S TELEPHONE NUMBER:

**FROM:  ANDREW CHRISTY**

DATE:

8/2/2011

SENDER'S EMAIL:

Christy@epic.org

SENDER'S TELEPHONE NUMBER:

(202) 483-1140

TOTAL NO. OF PAGES INCLUDING COVER:

18

**COMMENTS:**

AUG 0 3 2011

AUG 0 3 2011

08/02/2011  17:15   2024831248          EPIC                        PAGE  02

ELECTRONIC PRIVACY INFORMATION CENTER



August 2, 2011

VIA FACSIMILE:  (202) 514-6117

1718 Connecticut Ave NW

Suite 200

Chief FOIA Officer Rena Y. Kim                Washington DC 20009
Criminal Division                             USA
Department of Justice
Suite 1127, Keeney Building                   +1 202 483 1140 [tel]
950 Pennsylvania Avenue, N.W.                 +1 202 483 1248 [fax]
Washington, D.C. 20530
                                              www.epic.org

   RE:  <u>Freedom of Information Act Clarification</u>

Dear Ms. Kim:

   This letter constitutes a response to your July 18, 2011 request for clarification
regarding the FOIA Request sent by the Electronic Privacy Information Center ("EPIC")
on June 23, 2011 seeking documents regarding the government's identification and
surveillance of individuals who have demonstrated support for or interest in WikiLeaks,
as well as any documents relating to records obtained from Internet and financial services
companies regarding these individuals.  Specifically, EPIC requested:

1. All records regarding any individuals targeted for surveillance for support for or
   interest in WikiLeaks;

2. All records regarding lists of names of individuals who have demonstrated
   support for or interest in WikiLeaks;

3. All records of any agency communications with Internet and social media
   companies including, but not limited to Facebook and Google, regarding lists of
   individuals who have demonstrated, through advocacy or other means, support for
   or interest in WikiLeaks; and

4. All records of any agency communications with financial services companies
   including, but not limited to Visa, MasterCard, and PayPal, regarding lists of
   individuals who have demonstrated, through monetary donations or other means,
   support or interest in WikiLeaks.

*See* Appendix 1 ("EPIC's FOIA Request").

*Factual Background*

On December 22, 2010, EPIC submitted FOIA requests to the Department of Justice ("DOJ"), the Secret Service, Immigration and Customs Enforcement ("ICE"), and the Financial Crimes Enforcement Network ("FinCEN").  These requests sought communications or agreements between the government and certain corporations regarding donations to WikiLeaks and personally identifiable information for individuals who accessed or attempted to access the WikiLeaks website.  The request to the DOJ was referred to the Antitrust Division. As of June 9, 2011, none of the agencies have found or disclosed the records EPIC requested.

On November 28, 2010, WikiLeaks and cooperating news agencies published State Department cables allegedly provided by Pvt. Bradley Manning.[1]  On November 29, Attorney General Eric Holder stated that DOJ was conducting a criminal investigation regarding WikiLeaks.[2]  The government filed a sealed request pursuant to 18 U.S.C. § 2703(d) with federal magistrate judge Theresa C. Buchanan in the Eastern District of Virginia in Alexandria.[3]  On December 14, 2010, Judge Buchanan issued an order ("Twitter Order") pursuant to § 2703(d) compelling Twitter to disclose customer account information, including Internet Protocol addresses and addressing information associated with communications, for Julian Assange, Bradley Manning, Rop Gonggrijp, and Birgitta Jónsdóttir.[4]

The Twitter Order prohibited Twitter from disclosing the existence of the application or order to anyone.[5]  After contesting the seal, Twitter convinced the federal district court to unseal the order and allow Twitter to notify its users of the government's request for their information.[6]  On January 26, 2011, the Electronic Frontier Foundation and the American Civil Liberties Union filed a motion in the Eastern District of Virginia to overturn the Twitter Order, on behalf of Rop Gonggrijp, Birgitta Jónsdóttir, and Jacob Appelbaum (the only U.S. citizen among the plaintiffs).[7]  This litigation remains pending.[8]

---

[1] Robert Booth, *WikiLeaks Cables: Bradley Manning Faces 52 Years In Jail*, The Guardian, Nov. 30, 2010, http://www.guardian.co.uk/world/2010/nov/30/wikileaks-cables-bradley-manning.
[2] Mark Memmott, *WikiLeaks Update: Justice Investigating*, National Public Radio, Nov. 29, 2010, http://www.npr.org/blogs/thetwo-way/2010/11/29/131669228/wikileaks-update-justice-investigating.
[3] *See In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, Misc. No. 10GJ3793 (E.D. Va. Dec. 14, 2010).
[4] *Id.*
[5] *See id.*
[6] Order to Unseal the Order Pursuant to 18 U.S.C. § 2703(D), Misc. No. 10GJ3793 (E.D. Va. Jan. 5, 2010).
[7] Motion to Vacate Dec. 14, 2010 Order, Misc. No. GJ3793 (E.D. Va. Jan. 26, 2010).
[8] *See Government Demands for Twitter Records of Birgitta Jonsdottir*, Electronic Frontier Foundation, June 2, 2011, https://www.eff.org/cases/government-demands-twitter-records.

As evidence of surveillance of WikiLeaks supporters, Jacob Appelbaum, U.S. WikiLeaks spokesperson, and David House, close friend of Bradley Manning, have been stopped at the border by Customs and Border Patrol ("CBP") agents when entering the United States and specifically questioned about their involvement with WikiLeaks.[9] Appelbaum has been questioned at least twice at the border, and his electronic devices have been confiscated. The first time was on July 29, 2010 upon reentering the United States from the Netherlands.[10] When he was questioned a second time on January 10, 2011 upon return from Iceland, he traveled with no electronic equipment, causing the customs agents to be "visibly unhappy."[11] The CBP agents also indicated they had viewed his Twitter feed ahead of his flight to obtain his flight details.[12] On July 31, 2010, plainclothes FBI agents questioned Appelbaum after he gave a speech at Defcon.[13] All of the questioning by FBI and DHS focused on his personal views on and work with WikiLeaks.[14]

The Washington Post reported that DHS agents at Chicago O'Hare International Airport detained David House and seized his laptop on November 3, 2010.[15] David House created the Bradley Manning Support Network, a defense fund for Bradley Manning.[16] An agent from the FBI Joint Terrorism Task Force questioned David House about his relationship with Manning and WikiLeaks.[17] In an interview with The Washington Post, David House claimed he had been stopped and questioned at the border seven times since September and he believes his name is on a government watchlist.[18]

There has been widespread suspicion that other online services such as Facebook and Google were served with similar court orders requesting information on WikiLeaks supporters, though neither company has confirmed the existence of such an order.[19] The broad nature of the Twitter Order and the silence of other companies that were likely served with a similar sealed order suggest that DOJ, FBI, DHS, and CBP may be conducting surveillance of WikiLeaks supporters.

---

[9] Glenn Greenwald, *Government Harrassing and Intimidating Bradley Manning Supporters*, Salon, Nov. 9, 2010, http://www.salon.com/news/opinion/glenn_greenwald/2010/11/09/manning.

[10] Elinor Mills, *Researcher Detained at U.S. Border, Questioned about WikiLeaks*, CNET, July 31, 2010, http://news.cnet.com/8301-27080_3-20012253-245.html

[11] Xeni Jardin, *Wikileaks Volunteer Detained and Searched (again) by US Agents*, Boing Boing, Jan. 12, 2011, http://www.boingboing.net/2011/01/12/wikileaks-volunteer-1.html.

[12] *Id.*

[13] Elinor Mills, *Researcher Detained at U.S. Border, Questioned about WikiLeaks*, CNET, July 31, 2010, http://news.cnet.com/8301-27080_3-20012253-245.html

[14] *Id.*

[15] Ellen Nakashima, *Activist Who Supports Soldier in WikiLeaks Case Sues U.S. over Seizure of Laptop*, The Washington Post, May 13, 2011, http://www.washingtonpost.com/national/activist-who-supports-soldier-in-wikileaks-case-sues-us-over-seizure-of-laptop/2011/05/11/AFxxzf1G_story.html.

[16] Glenn Greenwald, *Government Harrassing and Intimidating Bradley Manning Supporters*, Salon, Nov. 9, 2010, http://www.salon.com/news/opinion/glenn_greenwald/2010/11/09/manning.

[17] *Id.*

[18] Nakashima, *supra* note 15.

[19] Peter Beaumont, *WikiLeaks Demands Google and Facebook Unseal US Subpoenas*, The Guardian, Jan. 8, 2011, http://www.guardian.co.uk/media/2011/jan/08/wikileaks-calls-google-facebook-us-subpoenas.

*Procedural Background*

On June 23, 2011, EPIC faxed EPIC's FOIA Request to the Department of Justice Criminal Division, and the sending of the fax generated a confirmation sheet. *See* Appendix 2. You responded on July 18, 2011 by acknowledging receipt, and requesting clarification pursuant to 5 U.S.C. § 552 (a)(3)(A). *See* Appendix 3.

*Response to Clarification Request*

In your letter, you stated that the EPIC request was "broad in scope, and does not clearly identify the records which [sic] you are seeking." You clarified that, "[h]ere, we seek clarification regarding the names of the individual(s) to which [sic] you refer, including the specific time frames covered by your request, as well as a further description of the specific subject mater related to WikiLeaks that you are seeking."

In its extensive "Background" section in its FOIA Request, repeated above, for reference, EPIC lays out a clear factual predicate upon which the request was based. *See* Appendix I. Aside from Jacob Appelbaum, Julian Assange, David House, Rop Gonggrijp, Birgitta Jónsdóttir, and Bradley Manning, we are unaware of any specific individuals who may have been targeted by the Department of Justice ("DOJ") based upon their support for or interest in WikiLeaks. However, the FOIA Request is not limited to those six individuals. In fact, one of the purposes of this FOIA Request is to obtain records relating to the surveillance of other individuals who have not been named as surveillance targets.

Furthermore, the "Requested Documents" section is as specific as it can reasonably be. *See id.* Although there is a great deal of publicly available information suggesting that the documents requested exist, it is not possible to provide additional specificity to the request. Again, this information is outlined in the "Background" section. *See id.*

Finally, EPIC is able to provide clarification regarding a specific timeframe. We are interested in responsive records from November 1, 2010 through the present.

*Conclusion*

Thank you for your prompt response to this clarification. To be clear, this clarification does not substantively alter the existing EPIC FOIA Request. As the FOIA provides, I anticipate that you will produce responsive documents within 20 working days. If you have any questions, please feel free to contact Ginger McCall at (202) 483-1140 or mccall@epic.org.

Andrew Christy
Law Clerk, EPIC

Alexandra Wood
Law Clerk, EPIC

Ginger McCall
Open Government Counsel, EPIC

# Appendix 1

EPIC's FOIA Request

ELECTRONIC PRIVACY INFORMATION CENTER



June 23, 2011

VIA FACSIMILE: (202) 514-6117

Chief FOIA Officer Rena Y. Kim
Criminal Division
Department of Justice
Suite 1127, Keeney Building
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

1718 Connecticut Ave NW
Suite 200
Washington DC 20009
USA
+1 202 483 1140 [tel]
+1 202 483 1248 [fax]
www.epic.org

RE:  Freedom of Information Act Request and Request for Expedited Processing

Dear Ms. Kim:

This letter constitutes a request under the Freedom of Information Act ("FOIA"),
5 U.S.C. § 552, and is submitted on behalf of the Electronic Privacy Information Center
("EPIC"). EPIC seeks documents regarding the government's identification and
surveillance of individuals who have demonstrated support for or interest in WikiLeaks,
as well as any documents relating to records obtained from Internet and financial services
companies regarding these individuals.

Background

On December 22, 2010, EPIC submitted FOIA requests to the Department of
Justice ("DOJ"), the Secret Service, Immigration and Customs Enforcement ("ICE"), and
the Financial Crimes Enforcement Network ("FinCEN"). These requests sought
communications or agreements between the government and certain corporations
regarding donations to WikiLeaks and personally identifiable information for individuals
who accessed or attempted to access the WikiLeaks website. The request to the DOJ was
referred to the Antitrust Division. As of June 9, 2011, none of the agencies have found or
disclosed the records EPIC requested.

On November 28, 2010, WikiLeaks and cooperating news agencies published
State Department cables allegedly provided by Pvt. Bradley Manning.[1]  On November
29, Attorney General Eric Holder stated that DOJ was conducting a criminal
investigation regarding WikiLeaks.[2]  The government filed a sealed request pursuant to
18 U.S.C. § 2703(d) with federal magistrate judge Theresa C. Buchanan in the Eastern
District of Virginia in Alexandria.[3]  On December 14, 2010, Judge Buchanan issued an
order ("Twitter Order") pursuant to § 2703(d) compelling Twitter to disclose customer

---

[1] Robert Booth, *WikiLeaks Cables:  Bradley Manning Faces 52 Years in Jail*, The Guardian, Nov. 30,
2010, http://www.guardian.co.uk/world/2010/nov/30/wikileaks-cables-bradley-manning.
[2] Mark Memmott, *WikiLeaks Update: Justice Investigating*, National Public Radio, Nov. 29, 2010,
http://www.npr.org/blogs/thetwo-way/2010/11/29/131669228/wikileaks-update-justice-investigating.
[3] *See In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, Misc. No.
10GJ3793 (E.D. Va. Dec. 14, 2010).

1

account information, including Internet Protocol addresses and addressing information associated with communications, for Julian Assange, Bradley Manning, Rop Gonggrijp, and Birgitta Jónsdóttir.[4]

The Twitter Order prohibited Twitter from disclosing the existence of the application or order to anyone.[5] After contesting the seal, Twitter convinced the federal district court to unseal the order and allow Twitter to notify its users of the government's request for their information.[6] On January 26, 2011, the Electronic Frontier Foundation and the American Civil Liberties Union filed a motion in the Eastern District of Virginia to overturn the Twitter Order, on behalf of Rop Gonggrijp, Birgitta Jónsdóttir, and Jacob Appelbaum (the only U.S. citizen among the plaintiffs).[7] This litigation remains pending.[8]

As evidence of surveillance of WikiLeaks supporters, Jacob Appelbaum, U.S. WikiLeaks spokesperson, and David House, close friend of Bradley Manning, have been stopped at the border by Customs and Border Patrol ("CBP") agents when entering the United States and specifically questioned about their involvement with WikiLeaks.[9] Appelbaum has been questioned at least twice at the border, and his electronic devices have been confiscated. The first time was on July 29, 2010 upon reentering the United States from the Netherlands.[10] When he was questioned a second time on January 10, 2011 upon return from Iceland, he traveled with no electronic equipment, causing the customs agents to be "visibly unhappy."[11] The CBP agents also indicated they had viewed his Twitter feed ahead of his flight to obtain his flight details.[12] On July 31, 2010, plainclothes FBI agents questioned Appelbaum after he gave a speech at Defcon.[13] All of the questioning by FBI and DHS focused on his personal views on and work with WikiLeaks.[14]

---

[4] *Id.*

[5] *See id.*

[6] Order to Unseal the Order Pursuant to 18 U.S.C. § 2703(D), Misc. No. 10GJ3793 (E.D. Va. Jan. 5, 2010).

[7] Motion to Vacate Dec. 14, 2010 Order, Misc. No. GJ3793 (E.D. Va. Jan. 26, 2010).

[8] *See Government Demands for Twitter Records of Birgitta Jonsdottir*, Electronic Frontier Foundation, June 2, 2011, https://www.eff.org/cases/government-demands-twitter-records.

[9] Glenn Greenwald, *Government Harrassing and Intimidating Bradley Manning Supporters*, Salon, Nov. 9, 2010, http://www.salon.com/news/opinion/glenn_greenwald/2010/11/09/manning.

[10] Elinor Mills, *Researcher Detained at U.S. Border, Questioned about WikiLeaks*, CNET, July 31, 2010, http://news.cnet.com/8301-27080_3-20012253-245.html

[11] Xeni Jardin, *Wikileaks Volunteer Detained and Searched (again) by US Agents*, Boing Boing, Jan. 12, 2011, http://www.boingboing.net/2011/01/12/wikileaks-volunteer-1.html.

[12] *Id.*

[13] Elinor Mills, *Researcher Detained at U.S. Border, Questioned about WikiLeaks*, CNET, July 31, 2010, http://news.cnet.com/8301-27080_3-20012253-245.html

[14] *Id.*

*The Washington Post* reported that DHS agents at Chicago O'Hare International Airport detained David House and seized his laptop on November 3, 2010.[15] David House created the Bradley Manning Support Network, a defense fund for Bradley Manning.[16] An agent from the FBI Joint Terrorism Task Force questioned David House about his relationship with Manning and WikiLeaks.[17] In an interview with *The Washington Post*, David House claimed he had been stopped and questioned at the border seven times since September and he believes his name is on a government watchlist.[18]

There has been widespread suspicion that other online services such as Facebook and Google were served with similar court orders requesting information on WikiLeaks supporters, though neither company has confirmed the existence of such an order.[19] The broad nature of the Twitter Order and the silence of other companies that were likely served with a similar sealed order suggest that DOJ, FBI, DHS, and CBP may be conducting surveillance of WikiLeaks supporters.

Requested Documents

1. All records regarding any individuals targeted for surveillance for support for or interest in WikiLeaks;

2. All records regarding lists of names of individuals who have demonstrated support for or interest in WikiLeaks;

3. All records of any agency communications with Internet and social media companies including, but not limited to Facebook and Google, regarding lists of individuals who have demonstrated, through advocacy or other means, support for or interest in WikiLeaks; and

4. All records of any agency communications with financial services companies including, but not limited to Visa, MasterCard, and PayPal, regarding lists of individuals who have demonstrated, through monetary donations or other means, support or interest in WikiLeaks.

---

[15] Ellen Nakashima, *Activist Who Supports Soldier in WikiLeaks Case Sues U.S. over Seizure of Laptop*, The Washington Post, May 13, 2011, http://www.washingtonpost.com/national/activist-who-supports-soldier-in-wikileaks-case-sues-us-over-seizure-of-laptop/2011/05/11/AFxxzf1G_story.html.

[16] Glenn Greenwald, *Government Harrassing and Intimidating Bradley Manning Supporters*, Salon, Nov. 9, 2010, http://www.salon.com/news/opinion/glenn_greenwald/2010/11/09/manning.

[17] *Id.*

[18] Nakashima, *supra* note 15.

[19] Peter Beaumont, *WikiLeaks Demands Google and Facebook Unseal US Subpoenas*, The Guardian, Jan. 8, 2011, http://www.guardian.co.uk/media/2011/jan/08/wikileaks-calls-google-facebook-us-subpoenas.

Request for Expedited Processing

     This request warrants expedited processing because it is made by "a person primarily engaged in disseminating information . . ." and it pertains to a matter about which there is an "urgency to inform the public about an actual or alleged federal government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

     EPIC is "primarily engaged in disseminating information." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004). This request is part of EPIC's open government program and its ongoing efforts to investigate the U.S. government's domestic surveillance programs.[20] On December 22, 2010, EPIC submitted FOIA requests to the DOJ, the Secret Service, ICE, and the FinCEN, seeking documents related to the government's attempts to compel Internet and financial services companies to disclose private records regarding WikiLeaks supporters. In January 2011, Steven Aftergood, who directs the Project on Government Secrecy at the American Federation of Scientists, and Glenn Greenwald, a noted constitutional lawyer and writer at Salon.com, spoke at an EPIC board meeting regarding WikiLeaks.

     There is particular urgency for the public to obtain information about the extent of the government's domestic surveillance programs. Disclosure of information related to the surveillance of WikiLeaks supporters will enhance the public's understanding of the extent of the government's surveillance of individuals exercising the rights to freedom of speech and association guaranteed by the First Amendment of the U.S. Constitution.

Request for "News Media" Fee Status

     EPIC is a "representative of the news media" for fee waiver purposes. *EPIC v. Department of Defense*, 241 F. Supp. 2d 6 (D.D.C. 2003). Based on our status as a "news media" requester, we are entitled to receive the requested record with only duplication fees asserted. Further, because disclosure of this information will "contribute greatly public understanding of the operation or activities of the government," and duplication fees should be waived.

     Thank you for your consideration of this request. As 5 U.S.C. § 552(a)(6)(E)(ii)(I) provides, I will anticipate your determination on our request within ten (10) calendar days.

---

[20] *See, e.g.,* EPIC, Domestic Surveillance, http://www.epic.org/features/surveillance.html (last visited June 9, 2011).

Respectfully submitted,

Andrew Christy
Law Clerk, EPIC
Christy@epic.org

Alexandra Wood
Law Clerk, EPIC
Wood@epic.org

Ginger McCall
Staff Counsel, EPIC
Mccall@epic.org

5

**Appendix 2**

EPIC's FOIA Request Fax Confirmation Sheet

TRANSMISSION VERIFICATION REPORT

TIME  : 06/23/2011 15:19
NAME  : EPIC
FAX   : 2024831248
TEL   : 2024831140
SER.# : M7J214130

DATE,TIME                        06/23  15:18
FAX NO./NAME                     12025146117
DURATION                         00:01:07
PAGE(S)                          06
RESULT                           OK
MODE                             STANDARD
                                 ECM

**Appendix 3**

Department of Justice Criminal Division Request for Clarification



**U.S. Department of Justice**

Criminal Division
Office of Enforcement Operations

_Washington, D.C.  20530_

CRM  201100450F

**JUL 1 8 2011**

Andrew Christy, Law Clerk
Electronic Privacy Information Center (EPIC)
1718 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20009
<Christy@epic.org>

Dear Mr. Christy:

The U.S. Department of Justice, Criminal Division acknowledges receipt of your Freedom of Information Act (FOIA) request dated June 23, 2011.  Your request has been assigned file number 201100450F.  Please refer to this number in any future correspondence with this Unit.  In your request, you asked for copies of records "regarding the government's identification and surveillance of individuals who have demonstrated support for or interest in WikiLeaks, as well as any document relating to records obtained from Internet and financial services companies regarding these individuals."  Specifically, you requested:

1.  All documents regarding any individuals targeted for surveillance for support for or interest in WikiLeaks;

2.  All records regarding lists of names of individuals who have demonstrated support for or interest in WikiLeaks;

3.  All records of any agency communications with Internet and social media companies including, but not limited to Facebook and Google, regarding lists of individuals who have demonstrated, through advocacy or other means, support for or interest in WikiLeaks; and

4.  All records of any agency communications with financial services companies including, but not limited to Visa, Mastercard, and PayPal, regarding lists of individuals who have demonstrated, through monetary donations or other means, support or interest in WikiLeaks.

After a careful review of your request, it appears to be broad in scope, and does not clearly identify the records which you are seeking.  Records need to be described in reasonably sufficient detail to enable government employees who are familiar with the subject area to locate records without placing an unreasonable burden upon the agency.  See 5 U.S.C. § 552 (a)(3)(A). For this reason, the Department of Justice's regulations require that the records requested be described with enough detail to enable Department personnel to locate them with a reasonable amount of time and effort.  The FOIA does not require an agency to create new records, answer what are only questions posed by requesters, or attempt to interpret a request that does not

clearly identify records. Whenever possible, the request should include, specific information about each record including the date, title or name, author, recipient, and subject matter of the record. In addition, records concerning court cases should include the title of the case, the court in which the case was filed, and the nature of the case. See 28 C.F.R. § 16.3(b).

Here, we seek clarification regarding the names of the individual(s) to which you refer, including the specific time frames covered by your request, as well as a further description of the specific subject matter related to WikiLeaks that you are seeking.

You asked that your request be processed on an expedited basis. Until we receive clarification of the scope of your request, we cannot consider your request for expedited treatment. Requests for expedited treatment must be accompanied by a statement, certified to be true and correct to the best of the requester's knowledge and belief, that explains in detail the basis for requesting expedited processing. 28 C.F.R. § 16.5(d)(3).

A request for expedited treatment will be granted when it is determined that it involves:

1.  Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;

2.  An urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information;

3.  The loss of substantial due process rights; or

4.  A matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence. 28 C.F.R. § 16.5(d).

Regarding your request for media status, please be advised that this issue will be addressed upon receipt of a clarified request.

We have also determined that the following component of the U.S. Department of Justice may have records responsive to your request. Therefore, we have routed your request to the following office who will respond directly to you.

> Patricia Matthews, FOIA Public Liaison
> National Security Division
> U.S. Department of Justice
> 950 Pennsylvania Avenue, N.W.
> Room 6150
> Washington, D.C. 20530-0001
> nsdfoia@usdoj.gov

We want to be responsive to your request; therefore, upon receipt of your clarification of your request, you will be advised as to its status. If we do not hear from you within 30 days from

the date of this letter, we will assume you are no longer interested in this FOIA request, and the case will be administratively closed.  Please be advised that this action is not a denial of your request and will not preclude you from filing other requests in the future.

Thank you for your interest in the Criminal Division.

Sincerely,

Rena Y. Kim, Chief
Freedom of Information/Privacy Act Unit

# Exhibit 4



**U.S. Department of Justice**

Criminal Division
Office of Enforcement Operations

_Washington, D.C. 20530_

RYK: KS: cs typed 8/15/2011
CRM  201100450F

**AUG 1 8 2011**

Andrew Christy, Law Clerk
Electronic Privacy Information Center (EPIC)
1718 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20009
<Christy@epic.org>

Dear Mr. Christy:

The U.S. Department of Justice, Criminal Division acknowledges receipt of your Freedom of Information Act (FOIA) clarification letter dated August 2, 2011. In your original request, dated June 23, 2011, you asked for copies of records "regarding the government's identification and surveillance of individuals who have demonstrated support for or interest in WikiLeaks, as well as any document relating to records obtained from Internet and financial services companies regarding these individuals." Specifically, you requested:

1. All documents regarding any individuals targeted for surveillance for support for or interest in WikiLeaks;

2. All records regarding lists of names of individuals who have demonstrated support for or interest in WikiLeaks;

3. All records of any agency communications with Internet and social media companies including, but not limited to Facebook and Google, regarding lists of individuals who have demonstrated, through advocacy or other means, support for or interest in WikiLeaks; and

4. All records of any agency communications with financial services companies including, but not limited to Visa, Mastercard, and PayPal, regarding lists of individuals who have demonstrated, through monetary donations or other means, support or interest in WikiLeaks.

In our response to you dated July 18, 2011, we requested clarification regarding the names of the individual(s) to which you refer and the specific time frames covered by your request, as well as a further description of the specific subject matter related to WikiLeaks that you are seeking.

In your clarification letter you requested records from November 1, 2010, to the present about the following six individuals:

1. Jacob Appelbaum

FILE COPY

2.  Julian Assange

3.  David House

4.  Rop Gonggrijp

5.  Birgitta Jonsdottir

6.  Bradley Manning

In addition, you stated that your request is not limited to those six individuals and that one of the purposes of this FOIA request is to obtain records relating to other (unnamed) individuals.

In reference to your request regarding individual number 2, Julian Assange, records about a third party generally cannot be released absent (1) express written authorization and consent by the third party; (2) proof that he/she is deceased; or (3) a clear demonstration that the public interest in disclosure outweighs the personal privacy interests of the third party and that significant public benefit would result from the disclosure of the requested records. Because you have not furnished a release, proof of death, or public justification for release, the release of records concerning the third party would result in an unwarranted invasion of personal privacy and thus these records are exempt from disclosure under FOIA Exemption 6, which permits withholding personnel, medical and similar files where disclosure would constitute a clearly unwarranted invasion of personal privacy, and FOIA Exemption 7(C), which permits withholding records or information compiled for law enforcement purposes where disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6), (7)(C).

We have not performed a search for records and you should not assume that records concerning the third party exist. If you obtain the written authorization and consent of the third party for release of the requested records, please submit a new request for the documents accompanied by the written authorization. A form is enclosed to assist you in providing us the authorization and consent of the subject(s) of your request. The authorization must be notarized or signed under penalty of perjury pursuant to 18 U.S.C. § 1001.

With respect to individuals numbered 1, 3, 4, 5 and 6, and any other "unnamed" individuals, to either confirm or deny whether we have records concerning individuals would constitute an unwarranted invasion of their personal privacy in that such action would reveal whether they have ever been a subject of interest to the Division. With respect to your request concerning specific individuals, absent either a notarized release from the individual(s), a showing that he or she is deceased, or a clear demonstration that release of the information you are seeking would disclose the operations of the government sufficient to outweigh any privacy interests, we consider that this response is justified by Exemptions 6 and 7(C).

Furthermore, because any records the Division might have within the scope of your request would be part of a Privacy Act (5 U.S.C. §552a) system of records, their release would be prohibited by that statute unless it is determined either that release is required by the Freedom of Information Act, or that some other Privacy Act provision authorizes release. 5 U.S.C. §552a (b).

Therefore, no search of the Criminal Division's records systems will be undertaken unless you provide a notarized release from each individual, or demonstrate either that he or she is deceased or that the public interest in release overrides personal privacy interests. If you can provide such information, please submit it along with a new request. Please note that if we should determine that your additional information requires us to confirm whether or not we have records within the scope of your request, and if we do have records, these records will be reviewed to determine if other FOIA exemptions apply.

If you treat this response as a denial of your request, you have a right to an administrative appeal of this determination. Your appeal must be in writing and addressed to:

> Office of Information Policy
> United States Department of Justice
> 1425 New York Ave., N.W., Suite 11050
> Washington, D.C. 20530-0001

Both the envelope and appeal letter should be clearly marked "FOIA/PA Appeal." Department regulations provide that such appeals must be received by the Office of Information Policy within sixty days of the date of this letter. 28 C.F.R. § 16.9. If you exercise this right and your appeal is denied, you also have the right to seek judicial review of this action in the federal judicial district (1) in which you reside, (2) in which you have your principal place of business, (3) in which the records denied are located, or (4) for the District of Columbia. If you elect to file an appeal, please include the Criminal Division file number above in your letter to the Office of Information Policy.

We previously determined that the following component of the U.S. Department of Justice may have records responsive to your request. Therefore, we routed your original request to the National Security Division, which will respond directly to you.

Thank you for your interest in the Criminal Division.

> Sincerely,
>
> Rena Y. Kim, Chief
> Freedom of Information/Privacy Act Unit

Enclosure

3

# Exhibit 5

10/14/2011  17:32    2024831248              EPIC                          PAGE  01

*AP·2012·00226*   FOIA (A) CRM   fee AEC

# ELECTRONIC PRIVACY INFORMATION CENTER

RECEIVED

1718 CONNECTICUT AVENUE NW, SUITE 200
WASHINGTON, D.C. 20009
202-483-1140
FAX 202-483-1248

OCT 14 2011

Office of Information Policy

CONFIDENTIAL -- SUBJECT TO ATTORNEY-CLIENT PRIVILEGE

ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION BY OTHER THAN
ITS ADDRESSEE IS STRICTLY PROHIBITED. IF THIS FACSIMILE HAS BEEN RECEIVED IN ERROR,
PLEASE IMMEDIATELY NOTIFY THE SENDER

**TO: APPEALS DEPT**

COMPANY:

DOJ OIP

RECIPIENT'S FAX NUMBER:

202-514-1009

RECIPIENT'S TELEPHONE NUMBER:

**FROM:  GINGER MCCALL**

DATE:

10/14/11

SENDER'S EMAIL:

mccall@epic.org

SENDER'S TELEPHONE NUMBER:

(202) 483-1140

TOTAL NO. OF PAGES INCLUDING COVER:

## COMMENTS:

**Concerning FOIA # CRM 201100450F**

10/14/2011   17:32   2024831248                    EPIC                    PAGE   02

ELECTRONIC PRIVACY INFORMATION CENTER

# epic.org

October 14, 2011

1718 Connecticut Ave NW

Suite 200

Washington DC 20009

USA

+1 202 483 1140 [tel]

+1 202 483 1248 [fax]

www.epic.org

VIA U.S. MAIL (CERTIFIED DELIVERY)

Carmen L. Mallon
Chief of Staff
Office of Information Policy
United States Department of Justice
1425 New York Avenue, N.W., Suite 11050
Washington, D.C. 20530

RE:     Freedom of Information Act Appeal (CRM 201100450F)

This letter constitutes an appeal under the Freedom of Information Act ("FOIA"),
5 U.S.C. § 552, and is submitted to the Office of Information Policy of the Department of Justice
("DOJ") by the Electronic Privacy Information Center ("EPIC").

On June 23, 2011 EPIC requested, *via* facsimile, agency records in the DOJ's possession
concerning government identification and surveillance of individuals who have demonstrated
support for or interest in WikiLeaks. EPIC also requested any documents relating to records
obtained from Internet and financial services companies regarding these individuals.
Specifically, EPIC requested:

1. All records regarding any individuals targeted for surveillance for support for or
   interest in WikiLeaks;

2. All records regarding lists of names of individuals who have demonstrated
   support for or interest in WikiLeaks;

3. All records of any agency communications with Internet and social media
   companies including, but not limited to Facebook and Google, regarding lists of
   individuals who have demonstrated, through advocacy or other means, support for
   or interest in WikiLeaks; and

4. All records of any agency communications with financial services companies
   including, but not limited to Visa, MasterCard, and PayPal, regarding lists of
   individuals who have demonstrated, through monetary donations or other means,
   support or interest in WikiLeaks.[1]

---

[1] FOIA request from Andrew Christy, Ginger McCall, and Alexandra Wood, EPIC to Rena Y. Kim, Criminal
Division, U.S. Dep't of Justice (June 23, 2011). *See* Appendix 1.

1

10/14/2011  17:32    2024831248                EPIC                                    PAGE  03

*Procedural Background*

On June 23, 2011 EPIC submitted, *via* facsimile, EPIC's FOIA request to the DOJ.[2]

On July 18, 2011, the DOJ wrote to EPIC acknowledging receipt of EPIC's FOIA Request, stating the EPIC request was "broad in scope, and does not clearly identify the records" that EPIC was seeking.[3]   DOJ requested clarification regarding the names of individuals to whom EPIC referred "including the specific time frames covered by [EPIC's] request, as well as a further description of the specific subject matter related to WikiLeaks" that EPIC sought.[4]

On August 2, 2011, EPIC responded, *via* facsimile, to the DOJ's clarification request by referring the DOJ to the detailed "Requested Documents" section of EPIC's original request, which pinpointed the specific documents EPIC sought.[5]   EPIC also provided the specific timeframe of November 1, 2010 through the present to cover the dates of the requested documents.

On August 18, 2011, the DOJ responded to EPIC claiming FOIA Exemptions 6 and 7(C) regarding documents requested by EPIC. DOJ admitted, "[they] have not performed a search for records" requested by EPIC.[6]

*EPIC Appeals the DOJ's Failure Perform a Search for Records*

EPIC hereby appeals the DOJ's failure to perform a search regarding EPIC's FOIA Request. Although the agency seeks to withhold documents based upon FOIA Exemptions 6 and 7(C), "it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)." *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1167 (D.C.Cir. 2011); *North v. U.S. Dep't of Justice*, 774 F.Supp.2d 217, 222 (D.D.C.2011) (citing *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1178 (D.C.Cir. 1996)). The agency bears the burden of demonstrating that withheld documents contain no reasonably segregable factual information. *Mokhiber v. U.S. Dept. of Treasury*, 335 F. Supp. 2d 65, 69 (D.D.C. 2004) (citing *Army Times Pub. Co. v. U.S. Dep't of Air Force*, 998 F.2d 1067, 1068 (D.C.Cir. 1993); *Mead Data Central, Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242, 260 (D.C.Cir. 1977)). Here, the DOJ has not clearly demonstrated that the documents contain no reasonably segregable factual information because they have not even performed the requisite search to determine segregability. *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C.Cir. 2011) (agencies fulfill search obligations if they "can demonstrate beyond material doubt that [their] search was 'reasonably calculated to uncover all relevant documents'") (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C.Cir. 1990).

---

[2] *Id.*

[3] Letter from Rena Y. Kim, Criminal Division, U.S. Dep't. of Justice to Andrew Christy, EPIC (July 18, 2011). *See* Appendix 2.

[4] *Id.* at 2.

[5] Letter from Andrew Christy, Ginger McCall, Alexandra Wood, EPIC to Rena Y. Kim, Criminal Division, U.S. Dep't. of Justice (Aug. 2, 2011). *See* Appendix 3.

[6] Letter from Rena Y. Kim, Criminal Division, U.S. Dep't. of Justice to Andrew Christy, EPIC (Aug. 18, 2011). *See* Appendix 4; *See also* 5 U.S.C. § 552(a)(6), 7 (C).

The DOJ's failure to perform the requisite search for records violates the FOIA.

*EPIC Renews Its Request for "News Media" Fee Status*

At this time, EPIC reiterates and renews all arguments that it should be granted "news media" fee status. EPIC is a non-profit, educational organization that routinely and systematically disseminates information to the public. EPIC is a representative of the news media. *EPIC v. Dep't of Defense*, 241 F. Supp. 2d. 5 (D.D.C. 2003).

EPIC's status as a "news media" requester entitles it to receive requested records with only duplication fees assessed. In addition, because disclosure of this information will "contribute significantly to public understanding of the operations or activities of the government," as described above, any duplication fees should be waived.

*Conclusion*

Thank you for your prompt response to this appeal. As the FOIA provides, I anticipate that you will produce responsive documents within 20 working days. If you have any questions, please feel free to contact me at (202) 483-1140 or mcccall@epic.org.

Sincerely,

Ginger McCall
Open Government Counsel
Electronic Privacy Information Center

Khaliah Barnes
Open Government Fellow
Electronic Privacy Information Center

/enclosures

3

## Appendix 1

EPIC's June 23, 2011 FOIA Request to the DOJ

**ELECTRONIC PRIVACY INFORMATION CENTER**



June 23, 2011

VIA FACSIMILE:  (202) 514-6117

Chief FOIA Officer Rena Y. Kim
Criminal Division
Department of Justice
Suite 1127, Keeney Building
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

1718 Connecticut Ave NW

Suite 200

Washington DC 20009

USA

+1 202 483 1140 [tel]

+1 202 483 1248 [fax]

RE:  Freedom of Information Act Request and Request for Expedited Processing

www.epic.org

Dear Ms. Kim:

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted on behalf of the Electronic Privacy Information Center ("EPIC"). EPIC seeks documents regarding the government's identification and surveillance of individuals who have demonstrated support for or interest in WikiLeaks, as well as any documents relating to records obtained from Internet and financial services companies regarding these individuals.

Background

On December 22, 2010, EPIC submitted FOIA requests to the Department of Justice ("DOJ"), the Secret Service, Immigration and Customs Enforcement ("ICE"), and the Financial Crimes Enforcement Network ("FinCEN"). These requests sought communications or agreements between the government and certain corporations regarding donations to WikiLeaks and personally identifiable information for individuals who accessed or attempted to access the WikiLeaks website. The request to the DOJ was referred to the Antitrust Division. As of June 9, 2011, none of the agencies have found or disclosed the records EPIC requested.

On November 28, 2010, WikiLeaks and cooperating news agencies published State Department cables allegedly provided by Pvt. Bradley Manning.[1]  On November 29, Attorney General Eric Holder stated that DOJ was conducting a criminal investigation regarding WikiLeaks.[2]  The government filed a sealed request pursuant to 18 U.S.C. § 2703(d) with federal magistrate judge Theresa C. Buchanan in the Eastern District of Virginia in Alexandria.[3]  On December 14, 2010, Judge Buchanan issued an order ("Twitter Order") pursuant to § 2703(d) compelling Twitter to disclose customer

---

[1] Robert Booth, *WikiLeaks Cables: Bradley Manning Faces 52 Years in Jail*, The Guardian, Nov. 30, 2010, http://www.guardian.co.uk/world/2010/nov/30/wikileaks-cables-bradley-manning.
[2] Mark Memmott, *WikiLeaks Update: Justice Investigating*, National Public Radio, Nov. 29, 2010, http://www.npr.org/blogs/thetwo-way/2010/11/29/131669228/wikileaks-update-justice-investigating.
[3] *See In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, Misc. No. 10GJ3793 (E.D. Va. Dec. 14, 2010).

1

account information, including Internet Protocol addresses and addressing information associated with communications, for Julian Assange, Bradley Manning, Rop Gonggrijp, and Birgitta Jónsdóttir.[4]

The Twitter Order prohibited Twitter from disclosing the existence of the application or order to anyone.[5] After contesting the seal, Twitter convinced the federal district court to unseal the order and allow Twitter to notify its users of the government's request for their information.[6] On January 26, 2011, the Electronic Frontier Foundation and the American Civil Liberties Union filed a motion in the Eastern District of Virginia to overturn the Twitter Order, on behalf of Rop Gonggrijp, Birgitta Jónsdóttir, and Jacob Appelbaum (the only U.S. citizen among the plaintiffs).[7] This litigation remains pending.[8]

As evidence of surveillance of WikiLeaks supporters, Jacob Appelbaum, U.S. WikiLeaks spokesperson, and David House, close friend of Bradley Manning, have been stopped at the border by Customs and Border Patrol ("CBP") agents when entering the United States and specifically questioned about their involvement with WikiLeaks.[9] Appelbaum has been questioned at least twice at the border, and his electronic devices have been confiscated. The first time was on July 29, 2010 upon reentering the United States from the Netherlands.[10] When he was questioned a second time on January 10, 2011 upon return from Iceland, he traveled with no electronic equipment, causing the customs agents to be "visibly unhappy."[11] The CBP agents also indicated they had viewed his Twitter feed ahead of his flight to obtain his flight details.[12] On July 31, 2010, plainclothes FBI agents questioned Appelbaum after he gave a speech at Defcon.[13] All of the questioning by FBI and DHS focused on his personal views on and work with WikiLeaks.[14]

---

[4] *Id.*

[5] *See id.*

[6] Order to Unseal the Order Pursuant to 18 U.S.C. § 2703(D), Misc. No. 10GJ3793 (E.D. Va. Jan. 5, 2010).

[7] Motion to Vacate Dec. 14, 2010 Order, Misc. No. GJ3793 (E.D. Va. Jan. 26, 2010).

[8] *See Government Demands for Twitter Records of Birgitta Jonsdottir*, Electronic Frontier Foundation, June 2, 2011, https://www.eff.org/cases/government-demands-twitter-records.

[9] Glenn Greenwald, *Government Harrassing and Intimidating Bradley Manning Supporters*, Salon, Nov. 9, 2010, http://www.salon.com/news/opinion/glenn_greenwald/2010/11/09/manning.

[10] Elinor Mills, *Researcher Detained at U.S. Border, Questioned about WikiLeaks*, CNET, July 31, 2010, http://news.cnet.com/8301-27080_3-20012253-245.html

[11] Xeni Jardin, *Wikileaks Volunteer Detained and Searched (again) by US Agents*, Boing Boing, Jan. 12, 2011, http://www.boingboing.net/2011/01/12/wikileaks-volunteer-1.html.

[12] *Id.*

[13] Elinor Mills, *Researcher Detained at U.S. Border, Questioned about WikiLeaks*, CNET, July 31, 2010, http://news.cnet.com/8301-27080_3-20012253-245.html

[14] *Id.*

2

*The Washington Post* reported that DHS agents at Chicago O'Hare International Airport detained David House and seized his laptop on November 3, 2010.[15] David House created the Bradley Manning Support Network, a defense fund for Bradley Manning.[16] An agent from the FBI Joint Terrorism Task Force questioned David House about his relationship with Manning and WikiLeaks.[17] In an interview with *The Washington Post*, David House claimed he had been stopped and questioned at the border seven times since September and he believes his name is on a government watchlist.[18]

There has been widespread suspicion that other online services such as Facebook and Google were served with similar court orders requesting information on WikiLeaks supporters, though neither company has confirmed the existence of such an order.[19] The broad nature of the Twitter Order and the silence of other companies that were likely served with a similar sealed order suggest that DOJ, FBI, DHS, and CBP may be conducting surveillance of WikiLeaks supporters.

Requested Documents

1. All records regarding any individuals targeted for surveillance for support for or interest in WikiLeaks;

2. All records regarding lists of names of individuals who have demonstrated support for or interest in WikiLeaks;

3. All records of any agency communications with Internet and social media companies including, but not limited to Facebook and Google, regarding lists of individuals who have demonstrated, through advocacy or other means, support for or interest in WikiLeaks; and

4. All records of any agency communications with financial services companies including, but not limited to Visa, MasterCard, and PayPal, regarding lists of individuals who have demonstrated, through monetary donations or other means, support or interest in WikiLeaks.

---

[15] Ellen Nakashima, *Activist Who Supports Soldier in WikiLeaks Case Sues U.S. over Seizure of Laptop*, The Washington Post, May 13, 2011, http://www.washingtonpost.com/national/activist-who-supports-soldier-in-wikileaks-case-sues-us-over-seizure-of-laptop/2011/05/11/AFxxzf1G_story.html.

[16] Glenn Greenwald, *Government Harrassing and Intimidating Bradley Manning Supporters*, Salon, Nov. 9, 2010, http://www.salon.com/news/opinion/glenn_greenwald/2010/11/09/manning.

[17] *Id.*

[18] Nakashima, *supra* note 15.

[19] Peter Beaumont, *WikiLeaks Demands Google and Facebook Unseal US Subpoenas*, The Guardian, Jan. 8, 2011, http://www.guardian.co.uk/media/2011/jan/08/wikileaks-calls-google-facebook-us-subpoenas.

Request for Expedited Processing

This request warrants expedited processing because it is made by "a person primarily engaged in disseminating information . . ." and it pertains to a matter about which there is an "urgency to inform the public about an actual or alleged federal government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

EPIC is "primarily engaged in disseminating information." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004). This request is part of EPIC's open government program and its ongoing efforts to investigate the U.S. government's domestic surveillance programs.[20] On December 22, 2010, EPIC submitted FOIA requests to the DOJ, the Secret Service, ICE, and the FinCEN, seeking documents related to the government's attempts to compel Internet and financial services companies to disclose private records regarding WikiLeaks supporters. In January 2011, Steven Aftergood, who directs the Project on Government Secrecy at the American Federation of Scientists, and Glenn Greenwald, a noted constitutional lawyer and writer at Salon.com, spoke at an EPIC board meeting regarding WikiLeaks.

There is particular urgency for the public to obtain information about the extent of the government's domestic surveillance programs. Disclosure of information related to the surveillance of WikiLeaks supporters will enhance the public's understanding of the extent of the government's surveillance of individuals exercising the rights to freedom of speech and association guaranteed by the First Amendment of the U.S. Constitution.

Request for "News Media" Fee Status

EPIC is a "representative of the news media" for fee waiver purposes. *EPIC v. Department of Defense*, 241 F. Supp. 2d 6 (D.D.C. 2003). Based on our status as a "news media" requester, we are entitled to receive the requested record with only duplication fees asserted. Further, because disclosure of this information will "contribute greatly public understanding of the operation or activities of the government," and duplication fees should be waived.

Thank you for your consideration of this request. As 5 U.S.C. § 552(a)(6)(E)(ii)(I) provides, I will anticipate your determination on our request within ten (10) calendar days.

---

[20] *See, e.g.*, EPIC, Domestic Surveillance, http://www.epic.org/features/surveillance.html (last visited June 9, 2011).

4

10/14/2011  17:32    2024831248              EPIC                                    PAGE  10

Respectfully submitted,


Andrew Christy
Law Clerk, EPIC
Christy@epic.org


Alexandra Wood
Law Clerk, EPIC
Wood@epic.org


Ginger McCall
Staff Counsel, EPIC
Mccall@epic.org

5

## Appendix 2

Letter Dated July 18, 2011 from DOJ to EPIC Requesting Clarification

10/14/2011   17:32     2024831248                EPIC                                    PAGE   12



**U.S. Department of Justice**

Criminal Division
Office of Enforcement Operations

*Washington, D.C. 20530*

CRM  201100450F

**JUL 1 8 2011**

Andrew Christy, Law Clerk
Electronic Privacy Information Center (EPIC)
1718 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20009
<Christy@epic.org>

Dear Mr. Christy:

The U.S. Department of Justice, Criminal Division acknowledges receipt of your
Freedom of Information Act (FOIA) request dated June 23, 2011. Your request has been
assigned file number 201100450F. Please refer to this number in any future correspondence
with this Unit. In your request, you asked for copies of records "regarding the government's
identification and surveillance of individuals who have demonstrated support for or interest in
WikiLeaks, as well as any document relating to records obtained from Internet and financial
services companies regarding these individuals." Specifically, you requested:

1.  All documents regarding any individuals targeted for surveillance for
    support for or interest in WikiLeaks;

2.  All records regarding lists of names of individuals who have
    demonstrated support for or interest in WikiLeaks;

3.  All records of any agency communications with Internet and social
    media companies including, but not limited to Facebook and Google,
    regarding lists of individuals who have demonstrated, through
    advocacy or other means, support for or interest in WikiLeaks; and

4.  All records of any agency communications with financial services
    companies including, but not limited to Visa, Mastercard, and PayPal,
    regarding lists of individuals who have demonstrated, through
    monetary donations or other means, support or interest in WikiLeaks.

After a careful review of your request, it appears to be broad in scope, and does not
clearly identify the records which you are seeking. Records need to be described in reasonably
sufficient detail to enable government employees who are familiar with the subject area to locate
records without placing an unreasonable burden upon the agency. See 5 U.S.C. § 552 (a)(3)(A).
For this reason, the Department of Justice's regulations require that the records requested be
described with enough detail to enable Department personnel to locate them with a reasonable
amount of time and effort. The FOIA does not require an agency to create new records, answer
what are only questions posed by requesters, or attempt to interpret a request that does not

clearly identify records. Whenever possible, the request should include, specific information about each record including the date, title or name, author, recipient, and subject matter of the record. In addition, records concerning court cases should include the title of the case, the court in which the case was filed, and the nature of the case. See 28 C.F.R. § 16.3(b).

Here, we seek clarification regarding the names of the individual(s) to which you refer, including the specific time frames covered by your request, as well as a further description of the specific subject matter related to WikiLeaks that you are seeking.

You asked that your request be processed on an expedited basis. Until we receive clarification of the scope of your request, we cannot consider your request for expedited treatment. Requests for expedited treatment must be accompanied by a statement, certified to be true and correct to the best of the requester's knowledge and belief, that explains in detail the basis for requesting expedited processing. 28 C.F.R. § 16.5(d)(3).

A request for expedited treatment will be granted when it is determined that it involves:

1.   Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual;

2.   An urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information;

3.   The loss of substantial due process rights; or

4.   A matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence. 28 C.F.R. § 16.5(d).

Regarding your request for media status, please be advised that this issue will be addressed upon receipt of a clarified request.

We have also determined that the following component of the U.S. Department of Justice may have records responsive to your request. Therefore, we have routed your request to the following office who will respond directly to you.

Patricia Matthews, FOIA Public Liaison
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Room 6150
Washington, D.C. 20530-0001
nsdfoia@usdoj.gov

We want to be responsive to your request; therefore, upon receipt of your clarification of your request, you will be advised as to its status. If we do not hear from you within 30 days from

2

the date of this letter, we will assume you are no longer interested in this FOIA request, and the case will be administratively closed.  Please be advised that this action is not a denial of your request and will not preclude you from filing other requests in the future.

Thank you for your interest in the Criminal Division.

Sincerely,

Rena Y. Kim, Chief
Freedom of Information/Privacy Act Unit

## Appendix 3

Letter dated August 2, 2011 from EPIC to the DOJ Responding to the DOJ's Request for
Clarification

**ELECTRONIC  PRIVACY  INFORMATION  CENTER**



August 2, 2011

VIA FACSIMILE:  (202) 514-6117

Chief FOIA Officer Rena Y. Kim
Criminal Division
Department of Justice
Suite 1127, Keeney Building
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

1718 Connecticut Ave NW

Suite 200

Washington DC 20009

USA

+1 202 483 1140 [tel]

+1 202 483 1248 [fax]

www.epic.org

     RE:    Freedom of Information Act Clarification

Dear Ms. Kim:

    This letter constitutes a response to your July 18, 2011 request for clarification regarding the FOIA Request sent by the Electronic Privacy Information Center ("EPIC") on June 23, 2011 seeking documents regarding the government's identification and surveillance of individuals who have demonstrated support for or interest in WikiLeaks, as well as any documents relating to records obtained from Internet and financial services companies regarding these individuals.  Specifically, EPIC requested:

1. All records regarding any individuals targeted for surveillance for support for or interest in WikiLeaks;

2. All records regarding lists of names of individuals who have demonstrated support for or interest in WikiLeaks;

3. All records of any agency communications with Internet and social media companies including, but not limited to Facebook and Google, regarding lists of individuals who have demonstrated, through advocacy or other means, support for or interest in WikiLeaks; and

4. All records of any agency communications with financial services companies including, but not limited to Visa, MasterCard, and PayPal, regarding lists of individuals who have demonstrated, through monetary donations or other means, support or interest in WikiLeaks.

*See* Appendix 1 ("EPIC's FOIA Request").

1

*Factual Background*

On December 22, 2010, EPIC submitted FOIA requests to the Department of Justice ("DOJ"), the Secret Service, Immigration and Customs Enforcement ("ICE"), and the Financial Crimes Enforcement Network ("FinCEN"). These requests sought communications or agreements between the government and certain corporations regarding donations to WikiLeaks and personally identifiable information for individuals who accessed or attempted to access the WikiLeaks website. The request to the DOJ was referred to the Antitrust Division. As of June 9, 2011, none of the agencies have found or disclosed the records EPIC requested.

On November 28, 2010, WikiLeaks and cooperating news agencies published State Department cables allegedly provided by Pvt. Bradley Manning.[1] On November 29, Attorney General Eric Holder stated that DOJ was conducting a criminal investigation regarding WikiLeaks.[2] The government filed a sealed request pursuant to 18 U.S.C. § 2703(d) with federal magistrate judge Theresa C. Buchanan in the Eastern District of Virginia in Alexandria.[3] On December 14, 2010, Judge Buchanan issued an order ("Twitter Order") pursuant to § 2703(d) compelling Twitter to disclose customer account information, including Internet Protocol addresses and addressing information associated with communications, for Julian Assange, Bradley Manning, Rop Gonggrijp, and Birgitta Jónsdóttir.[4]

The Twitter Order prohibited Twitter from disclosing the existence of the application or order to anyone.[5] After contesting the seal, Twitter convinced the federal district court to unseal the order and allow Twitter to notify its users of the government's request for their information.[6] On January 26, 2011, the Electronic Frontier Foundation and the American Civil Liberties Union filed a motion in the Eastern District of Virginia to overturn the Twitter Order, on behalf of Rop Gonggrijp, Birgitta Jónsdóttir, and Jacob Appelbaum (the only U.S. citizen among the plaintiffs).[7] This litigation remains pending.[8]

---

[1] Robert Booth, *WikiLeaks Cables: Bradley Manning Faces 52 Years in Jail*, The Guardian, Nov. 30, 2010, http://www.guardian.co.uk/world/2010/nov/30/wikileaks-cables-bradley-manning.

[2] Mark Memmott, *WikiLeaks Update: Justice Investigating*, National Public Radio, Nov. 29, 2010, http://www.npr.org/blogs/thetwo-way/2010/11/29/131669228/wikileaks-update-justice-investigating.

[3] *See In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, Misc. No. 10GJ3793 (E.D. Va. Dec. 14, 2010).

[4] *Id.*

[5] *See id.*

[6] Order to Unseal the Order Pursuant to 18 U.S.C. § 2703(D), Misc. No. 10GJ3793 (E.D. Va. Jan. 5, 2010).

[7] Motion to Vacate Dec. 14, 2010 Order, Misc. No. GJ3793 (E.D. Va. Jan. 26, 2010).

[8] *See Government Demands for Twitter Records of Birgitta Jonsdottir*, Electronic Frontier Foundation, June 2, 2011, https://www.eff.org/cases/government-demands-twitter-records.

As evidence of surveillance of WikiLeaks supporters, Jacob Appelbaum, U.S. WikiLeaks spokesperson, and David House, close friend of Bradley Manning, have been stopped at the border by Customs and Border Patrol ("CBP") agents when entering the United States and specifically questioned about their involvement with WikiLeaks.[9] Appelbaum has been questioned at least twice at the border, and his electronic devices have been confiscated.  The first time was on July 29, 2010 upon reentering the United States from the Netherlands.[10]  When he was questioned a second time on January 10, 2011 upon return from Iceland, he traveled with no electronic equipment, causing the customs agents to be "visibly unhappy."[11]  The CBP agents also indicated they had viewed his Twitter feed ahead of his flight to obtain his flight details.[12]  On July 31, 2010, plainclothes FBI agents questioned Appelbaum after he gave a speech at Defcon.[13]  All of the questioning by FBI and DHS focused on his personal views on and work with WikiLeaks.[14]

*The Washington Post* reported that DHS agents at Chicago O'Hare International Airport detained David House and seized his laptop on November 3, 2010.[15]  David House created the Bradley Manning Support Network, a defense fund for Bradley Manning.[16]  An agent from the FBI Joint Terrorism Task Force questioned David House about his relationship with Manning and WikiLeaks.[17]  In an interview with *The Washington Post*, David House claimed he had been stopped and questioned at the border seven times since September and he believes his name is on a government watchlist.[18]

There has been widespread suspicion that other online services such as Facebook and Google were served with similar court orders requesting information on WikiLeaks supporters, though neither company has confirmed the existence of such an order.[19]  The broad nature of the Twitter Order and the silence of other companies that were likely served with a similar sealed order suggest that DOJ, FBI, DHS, and CBP may be conducting surveillance of WikiLeaks supporters.

---

[9] Glenn Greenwald, *Government Harrassing and Intimidating Bradley Manning Supporters*, Salon, Nov. 9, 2010, http://www.salon.com/news/opinion/glenn_greenwald/2010/11/09/manning.

[10] Elinor Mills, *Researcher Detained at U.S. Border, Questioned about WikiLeaks*, CNET, July 31, 2010, http://news.cnet.com/8301-27080_3-20012253-245.html

[11] Xeni Jardin, *Wikileaks Volunteer Detained and Searched (again) by US Agents*, Boing Boing, Jan. 12, 2011, http://www.boingboing.net/2011/01/12/wikileaks-volunteer-1.html.

[12] *Id.*

[13] Elinor Mills, *Researcher Detained at U.S. Border, Questioned about WikiLeaks*, CNET, July 31, 2010, http://news.cnet.com/8301-27080_3-20012253-245.html

[14] *Id.*

[15] Ellen Nakashima, *Activist Who Supports Soldier in WikiLeaks Case Sues U.S. over Seizure of Laptop*, The Washington Post, May 13, 2011, http://www.washingtonpost.com/national/activist-who-supports-soldier-in-wikileaks-case-sues-us-over-seizure-of-laptop/2011/05/11/AFxxzflG_story.html.

[16] Glenn Greenwald, *Government Harrassing and Intimidating Bradley Manning Supporters*, Salon, Nov. 9, 2010, http://www.salon.com/news/opinion/glenn_greenwald/2010/11/09/manning.

[17] *Id.*

[18] Nakashima, *supra* note 15.

[19] Peter Beaumont, *WikiLeaks Demands Google and Facebook Unseal US Subpoenas*, The Guardian, Jan. 8, 2011, http://www.guardian.co.uk/media/2011/jan/08/wikileaks-calls-google-facebook-us-subpoenas.

*Procedural Background*

On June 23, 2011, EPIC faxed EPIC's FOIA Request to the Department of Justice Criminal Division, and the sending of the fax generated a confirmation sheet. *See* Appendix 2. You responded on July 18, 2011 by acknowledging receipt, and requesting clarification pursuant to 5 U.S.C. § 552 (a)(3)(A). *See* Appendix 3.

*Response to Clarification Request*

In your letter, you stated that the EPIC request was "broad in scope, and does not clearly identify the records which [sic] you are seeking." You clarified that, "[h]ere, we seek clarification regarding the names of the individual(s) to which [sic] you refer, including the specific time frames covered by your request, as well as a further description of the specific subject mater related to WikiLeaks that you are seeking."

In its extensive "Background" section in its FOIA Request, repeated above, for reference, EPIC lays out a clear factual predicate upon which the request was based. *See* Appendix I. Aside from Jacob Appelbaum, Julian Assange, David House, Rop Gonggrijp, Birgitta Jónsdóttir, and Bradley Manning, we are unaware of any specific individuals who may have been targeted by the Department of Justice ("DOJ") based upon their support for or interest in WikiLeaks. However, the FOIA Request is not limited to those six individuals. In fact, one of the purposes of this FOIA Request is to obtain records relating to the surveillance of other individuals who have not been named as surveillance targets.

Furthermore, the "Requested Documents" section is as specific as it can reasonably be. *See id.* Although there is a great deal of publicly available information suggesting that the documents requested exist, it is not possible to provide additional specificity to the request. Again, this information is outlined in the "Background" section. *See id.*

Finally, EPIC is able to provide clarification regarding a specific timeframe. We are interested in responsive records from November 1, 2010 through the present.

*Conclusion*

Thank you for your prompt response to this clarification. To be clear, this clarification does not substantively alter the existing EPIC FOIA Request. As the FOIA provides, I anticipate that you will produce responsive documents within 20 working days. If you have any questions, please feel free to contact Ginger McCall at (202) 483-1140 or mccall@epic.org.

4

## Appendix 4

Letter dated August 18, 2011 from the DOJ to EPIC Claiming FOIA Exemptions 6 and 7(C)



**U.S. Department of Justice**

Criminal Division
Office of Enforcement Operations

*Washington, D.C. 20530*

CRM  201100450F

**AUG 1 8 2011**

Andrew Christy, Law Clerk
Electronic Privacy Information Center (EPIC)
1718 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20009
<Christy@epic.org>

Dear Mr. Christy:

The U.S. Department of Justice, Criminal Division acknowledges receipt of your
Freedom of Information Act (FOIA) clarification letter dated August 2, 2011.  In your original
request, dated June 23, 2011, you asked for copies of records "regarding the government's
identification and surveillance of individuals who have demonstrated support for or interest in
WikiLeaks, as well as any document relating to records obtained from Internet and financial
services companies regarding these individuals."  Specifically, you requested:

1.  All documents regarding any individuals targeted for surveillance for
    support for or interest in WikiLeaks;

2.  All records regarding lists of names of individuals who have
    demonstrated support for or interest in WikiLeaks;

3.  All records of any agency communications with Internet and social
    media companies including, but not limited to Facebook and Google,
    regarding lists of individuals who have demonstrated, through
    advocacy or other means, support for or interest in WikiLeaks; and

4.  All records of any agency communications with financial services
    companies including, but not limited to Visa, Mastercard, and PayPal,
    regarding lists of individuals who have demonstrated, through
    monetary donations or other means, support or interest in WikiLeaks.

In our response to you dated July 18, 2011, we requested clarification regarding the
names of the individual(s) to which you refer and the specific time frames covered by your
request, as well as a further description of the specific subject matter related to WikiLeaks that
you are seeking.

In your clarification letter you requested records from November 1, 2010, to the present
about the following six individuals:

1.  Jacob Appelbaum

   2.  Julian Assange

   3.  David House

   4.  Rop Gonggrijp

   5.  Birgitta Jonsdottir

   6.  Bradley Manning

     In addition, you stated that your request is not limited to those six individuals and that one of the purposes of this FOIA request is to obtain records relating to other (unnamed) individuals.

     In reference to your request regarding individual number 2, Julian Assange, records about a third party generally cannot be released absent (1) express written authorization and consent by the third party; (2) proof that he/she is deceased; or (3) a clear demonstration that the public interest in disclosure outweighs the personal privacy interests of the third party and that significant public benefit would result from the disclosure of the requested records. Because you have not furnished a release, proof of death, or public justification for release, the release of records concerning the third party would result in an unwarranted invasion of personal privacy and thus these records are exempt from disclosure under FOIA Exemption 6, which permits withholding personnel, medical and similar files where disclosure would constitute a clearly unwarranted invasion of personal privacy, and FOIA Exemption 7(C), which permits withholding records or information compiled for law enforcement purposes where disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6), (7)(C).

     We have not performed a search for records and you should not assume that records concerning the third party exist. If you obtain the written authorization and consent of the third party for release of the requested records, please submit a new request for the documents accompanied by the written authorization. A form is enclosed to assist you in providing us the authorization and consent of the subject(s) of your request. The authorization must be notarized or signed under penalty of perjury pursuant to 18 U.S.C. § 1001.

     With respect to individuals numbered 1, 3, 4, 5 and 6, and any other "unnamed" individuals, to either confirm or deny whether we have records concerning individuals would constitute an unwarranted invasion of their personal privacy in that such action would reveal whether they have ever been a subject of interest to the Division. With respect to your request concerning specific individuals, absent either a notarized release from the individual(s), a showing that he or she is deceased, or a clear demonstration that release of the information you are seeking would disclose the operations of the government sufficient to outweigh any privacy interests, we consider that this response is justified by Exemptions 6 and 7(C).

Furthermore, because any records the Division might have within the scope of your request would be part of a Privacy Act (5 U.S.C. §552a) system of records, their release would be prohibited by that statute unless it is determined either that release is required by the Freedom of Information Act, or that some other Privacy Act provision authorizes release. 5 U.S.C. §552a (b).

Therefore, no search of the Criminal Division's records systems will be undertaken unless you provide a notarized release from each individual, or demonstrate either that he or she is deceased or that the public interest in release overrides personal privacy interests. If you can provide such information, please submit it along with a new request. Please note that if we should determine that your additional information requires us to confirm whether or not we have records within the scope of your request, and if we do have records, these records will be reviewed to determine if other FOIA exemptions apply.

If you treat this response as a denial of your request, you have a right to an administrative appeal of this determination. Your appeal must be in writing and addressed to:

> Office of Information Policy
> United States Department of Justice
> 1425 New York Ave., N.W., Suite 11050
> Washington, D.C. 20530-0001

Both the envelope and appeal letter should be clearly marked "FOIA/PA Appeal." Department regulations provide that such appeals must be received by the Office of Information Policy within sixty days of the date of this letter. 28 C.F.R. § 16.9. If you exercise this right and your appeal is denied, you also have the right to seek judicial review of this action in the federal judicial district (1) in which you reside, (2) in which you have your principal place of business, (3) in which the records denied are located, or (4) for the District of Columbia. If you elect to file an appeal, please include the Criminal Division file number above in your letter to the Office of Information Policy.

We previously determined that the following component of the U.S. Department of Justice may have records responsive to your request. Therefore, we routed your original request to the National Security Division, which will respond directly to you.

Thank you for your interest in the Criminal Division.

Sincerely,

Rena Y. Kim, Chief
Freedom of Information/Privacy Act Unit

Enclosure

3

# Exhibit 6



**U.S. Department of Justice**

Office of Information Policy

*Telephone: (202) 514-3642*                    *Washington, D.C.  20530*

OCT 2 4 2011


Ginger P. McCall, Esq.
Electronic Privacy Information Center
Suite 200
1718 Connecticut Avenue, NW
Washington, DC  20009

        Re:  Request No. CRM-201100450F

Dear Ms. McCall:

        This is to advise you that your administrative appeal from the action of the Criminal
Division was received by this Office on October 14, 2011.

        The Office of Information Policy has the responsibility of adjudicating such appeals.  In
an attempt to afford each appellant equal and impartial treatment, we have adopted a general
practice of assigning appeals in the approximate order of receipt.  Your appeal has been assigned
number **AP-2012-00226**.  Please mention this number in any future correspondence to this
Office regarding this matter.

        We will notify you of the decision on your appeal as soon as we can.  If you have any
questions about the status of your appeal you may contact me at the number above.

                                        Sincerely,

                                        Priscilla Jones
                                        Supervisory Administrative Specialist



OCI 25 2011

# Exhibit 7



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*                    **AUG 2 3 2012**


Ginger P. McCall, Esq.
Electronic Privacy Information Center          Re:    Appeal No. AP-2012-00226
1718 Connecticut Avenue NW, Suite 200                 Request No. CRM-201100450F
Washington, DC 20009                                  CAS:RRK

Dear Ms. McCall:

    You appealed from the action of the Criminal Division of the United States Department of Justice on your request for access to records concerning "the government's identification and surveillance of individuals who have demonstrated support for or interest in Wikileaks, as well as any document relating to records obtained from Internet and financial series companies regarding those individuals."

    I have been informed that you filed a lawsuit concerning the Criminal Division's action in the United States District Court for the District of Columbia. Inasmuch as this matter is now before the Court, I am closing your appeal file in this Office in accordance with 28 C.F.R. § 16.9(a)(3) (2011).

                            Sincerely,

                            *Caroline Smith for*

                            Janice Galli McLeod
                            Associate Director