**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                  )
ELECTRONIC PRIVACY                                )
INFORMATION CENTER,                               )
                                                  )
          Plaintiff,                              )
                                                  )
     v.                                           ) Civil Action No: 12-cv-00127 (RWR)
                                                  )
U.S. DEPARTMENT OF JUSTICE                        )
CRIMINAL DIVISION, et al.,                        )
                                                  )
          Defendants.                             )
_____)

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO FILE _EX PARTE_ AND _IN CAMERA_ EXHIBITS**

## INTRODUCTION

This case involves three Freedom of Information Act ("FOIA") requests filed by the Electronic Privacy Information Center ("EPIC") that seek information about government surveillance of individuals who have exercised their First Amendment rights and expressed interest in WikiLeaks, an Internet-based media organization. Throughout the course of this litigation, the government has disclosed no documents to EPIC, nor has it provided any meaningful information about the responsive records. Now, the government moves to withhold declarations necessary for the evaluation of its claims under Exemptions 3, 6, 7(A), 7(C), and 7(D) without explaining why such secret filings are necessary. The government even seeks to withhold the legal authority it asserts under the (b)(3) Exemption. EPIC respectfully asks this Court to reject Defendant's motion for leave to file *ex parte* and *in camera*. Furthermore, because the existence of a secret Exemption 3 statute poses unique concerns to democratic governance and undermines the purpose of the FOIA, EPIC also respectfully requests that this Court order the Defendants to cite the statute upon which they base their legal claims.

## PROCEDURAL BACKGROUND

On June 23, 2011, EPIC filed FOIA requests with Defendants seeking information about the government's identification and surveillance of individuals who had demonstrated support for or interest in WikiLeaks. Compl., Dkt. 1, ¶¶ 30-32. After Defendants failed to disclose a single document or to timely respond to EPIC's FOIA appeals, EPIC filed this lawsuit under the FOIA, 5 U.S.C. § 552. Compl., Dkt. 1, ¶¶ 1-2. Following a scheduling conference on June 1, 2012, the Court issued a scheduling order that directed the government to produce *Vaughn* indices on November 1, 2012, and to file a dispositive motion on December 17, 2012. *See* Order, Dkt. 8. The Parties subsequently amended the briefing schedule via consent notice, setting January 31, 2013, as the deadline for the government's dispositive motion. Notice, Dkt. 9.

1

On November 1, 2012, EPIC received three documents summarizing the categories of information withheld by the three government agencies. *See* FBI Vaughn, Ex. 1; NSD Vaughn, Ex. 2; CRM Vaughn, Ex. 3. Although the government characterized these summaries as "*Vaughn* indices," these documents failed to meet the well-established threshold for a sufficient *Vaughn* filing. A true *Vaughn* index contains "three indispensable elements:"

> (1) The index should be contained in one document, complete in itself.
> (2) The index must adequately describe each withheld document or deletion from a released document.
> (3) The index must state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant.

*Founding Church of Scientology of Washington, D. C., Inc. v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979). Rather, the government submitted categorical *Vaughn* indices that did not justify the withholding on a document-by-document basis but instead listed generic categories of documents. For example, the Criminal Division's categorical *Vaughn* index listed six types of documents: "E-mails," "Legal Pleadings," "Memorandums," "Transmittal Memorandums," "Case Tracking Summary," and "Miscellaneous Administrative Documents." CRM Vaughn, Ex. 3, at 2-3. The government's categorical *Vaughn* indices also made oblique references to future *ex parte*, *in camera* filings. The Criminal Division's *Vaughn* index indicated that the agency would provide more information "to the district court *in camera* at the time of its Motion for Summary Judgment," *id.* at 3, while the National Security Division referred to "an *ex parte* filing" that would accompany its motion NSD Vaughn, Ex. 2, at 3. The FBI, however, made no reference to any *ex parte* or *in camera* filing. FBI Vaughn, Ex. 1.

The government moved for summary judgment on January 31, 2013. Defs.' Mot. Summ. J., Dkt. 12. Before filing, the government asked whether EPIC would consent to the filing of three declarations *ex parte* and *in camera*. Defs.' Mot. Leave, Dkt. 10. EPIC replied that it would

not consent to such a filing, and the government then moved for leave to file three declarations *ex parte* and *in camera* in connection with its Motion for Summary Judgment. *Id.* These declarations were completed by individuals at each of the Department of Justice components: the Criminal Division, the National Security Division, and the Federal Bureau of Investigation. *Id.* Although public versions of each declaration were also filed, the government explained that the secret declarations were necessary to properly evaluate its arguments under Exemption 7(A), which is the primary basis for its withholding. Defs.' Mot. Summ. J., Dkt. 12, at 8. The government also stated that the *ex parte*, *in camera* filings were necessary to support its withholdings under Exemptions 3, 6, 7(C), and 7(D). *Id.* at 4.

Finally, the government made a startling admission: "Each component has withheld information pursuant to Exemption 3, but cannot publicly identify the statute(s) that require(s) nondisclosure or provide further information about the withheld information." *Id.* at 21. The FBI and the National Security Division stated that they are only withholding the identity of one Exemption 3 statute, Hardy Decl., Dkt. 12, Ex. 1, at 79; Bradley Decl., Dkt. 12, Ex. 3, at 22, while the Criminal Division suggested that it might be relying on multiple secret Exemption 3 statutes. Cunningham Decl., Dkt. 12, Ex. 5, at 22.

## **ARGUMENT**

The government is attempting to litigate this case without the burden of the adversarial process. Virtually all meaningful information has been withheld from EPIC, including information about the volume of the responsive records, the means by which the search was conducted, and whether records responsive to any particular portion of the request exist. Most incredibly, the government refuses to identify the statute(s) that it claims as authority to keep documents secret under Exemption 3. Instead, the government has produced "*Vaughn* indices"

consisting of summaries of other summaries of responsive documents, and public declarations reciting vague and formulaic justifications for its withholdings and for the necessity of its *ex parte*, *in camera* exhibits.

But the FOIA, and the courts, have established a demanding standard for the acceptance of such secret evidence. Declarations must not be examined *ex parte* and *in camera* unless "absolutely necessary." *Yeager v. DEA.*, 678 F.2d 315, 324 (D.C. Cir. 1982) ("This is particularly true where, as here, the submissions sought to be accorded *in camera* treatment constitute the heart of the agency's Vaughn index."). And the D.C. Circuit has made clear recently that "FOIA provides no protection for such 'secret law' developed and implemented by an agency." *Public Citizen, Inc. v. OMB*, 598 F.3d 865, 871 (D.C. Cir. 2010).

The government has failed to meet this standard. Its argument as to the necessity of the *ex parte, in camera* declarations is too broad and conclusory to be sustained, and the claim that it has released as much information as possible is incredible given the agency's failure in this case to produce a single responsive document. Moreover, the assertion of a secret Exemption 3 claim is contrary to the purpose of the FOIA, the rights of FOIA requesters, and the functioning of a democratic society based on law.

**I. The Government May Not Keep Secret the Statute(s) Used to Justify its Nondisclosure Under Exemption 3**

One of the FOIA's principal goals is "ending secret law and insuring that this country ha[s] an informed, intelligent electorate." *Allen v. CIA*, 636 F.2d 1287, 1299 (D.C. Cir. 1980) (internal quotation omitted). The Supreme Court has stated that knowledge of "what the Government is up to" is "a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-72 (2004) (internal quotation omitted). As this Circuit has repeatedly explained, "FOIA provides no protection for such 'secret law' developed and

implemented by an agency." *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 872 (D.C. Cir. 2010); *Bannercraft Clothing Co. v. Renegotiation Board*, 466 F.2d 345, 352 (D.C. Cir. 1972) ("Congress was … troubled by the plight of those forced to litigate with agencies on the basis of secret laws or incomplete information."). Accordingly, "[d]ocuments constituting such 'secret law' must be produced." *Ash Grove Cement Co. v. FTC*, 371 F. Supp. 370, 373 (D.D.C. 1973).

The D.C. Circuit recently confirmed these principles in *Public Citizen v. OMB*. 598 F.3d 865. In *Public Citizen*, the court considered documents created by the White House Office of Management and Budget ("OMB") that summarized which agencies had authority to bypass OMB by submitting budgets directly to Congress and explained the legal basis for that authority. *Id.* at 867-68. In holding that such documents were not exempt from disclosure under the FOIA, the court emphasized that

> the documents at issue here lie at the core of what FOIA seeks to expose to public scrutiny. They explain how a powerful agency performing a central role in the functioning of the federal government carries out its responsibilities and interacts with other government agencies. As we have explained, "the strong policy of the FOIA [is] that the public is entitled to know what its government is doing and why." *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 868 (D.C. Cir. 1980). Where, as here, agency documents have significant external effects on other government agencies, they are not "predominantly internal" within the meaning of Exemption 2.

*Id.* at 874.[1]

Here, all three components seek to withhold the identity of an Exemption 3 statute. The Criminal Division might even be relying on more than one such secret statute. The government provides no information about the characteristics of these laws or the harms that might result from their identification. This approach is unprecedented, and it directly violates FOIA's core

---

[1] Although the "secret" or "working" law doctrine has been thus far applied primarily to Exemptions 2 and 5, the prohibition goes to the heart of the FOIA. Thus, it should apply to the government's Exemption 3 claim in this case. Indeed, it would be incongruous to forbid agencies to withhold internal memorandums and letters but permit them to keep secret the actual legal authority upon which they rely.

purpose of "ending secret law" and ensuring "an informed, intelligent electorate." *Allen*, 636 F.2d at 1299. Even under the *Glomar* doctrine—a controversial response which permits an agency to refuse to "confirm or deny the existence of records" under extremely limited circumstances, *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)—an agency could not withhold the legal authority for which it asserts the (b)(3) exemption. *Glomar* speaks only to the disclosure of facts.

The government cites two cases in support of its position: *Haddam v. FBI*, No. 01-00434, slip op. (D.D.C. Sept. 8, 2004), and *Hayden v. NSA*, 608 F.2d 1381 (D.C. Cir. 1979). Defs.' Mot. Summ. J., Dkt. 12, at 21. *Hayden* is plainly inapposite, as the case involved an identified statute: "Public Law No. 86-36 clearly refers to particular types of matters to be withheld, as required by Exemption 3, and this court has already held it to be an Exemption 3 statute . . . ." 608 F.2d at 1389. In *Haddam*, the government relies on a single paragraph in an unpublished opinion that found a proper assertion of Exemption 3 while "conclud[ing] that no further information as to this exemption should be disclosed on the public record." slip op. at 28. To the best of EPIC's knowledge, this opinion has never been cited by any federal court in a FOIA case. Furthermore, the extent of the government's claim to secrecy distinguishes this case from *Haddam*. In *Haddam*, the government actually provided information about the total volume of responsive records, *id.* at 14 n.15, disclosed certain documents to the plaintiff, *id.* at 29 n.18, and asserted Exemption 3 only as to 23 pages. *Id.* at 28. Here, the government has withheld all information about the volume of responsive records, released no documents to EPIC, and provided no description of the scope of its withholding under Exemption 3.

Recently, public attention has focused on the apparent unwillingness of the executive branch to explain the legal basis for its actions. *See New York Times Co. v. Dept. of Justice*, No.

11-9336, 2013 WL 50209 (S.D.N.Y. Jan. 3, 2013) (stating that withholding the legal *justification* for the Administration's conclusion that it may kill persons whom it suspects are terrorists, included United States citizens, "implicate[s] serious issues about the limits on the power of the Executive Branch under the Constitution and laws of the United States, and about whether we are indeed a nation of laws, not of men.") (emphasis added); *ACLU v. Dep't of Justice*, 808 F. Supp. 2d 280, 290-92 (D.D.C. 2011), *appeal docketed* No. 11-5320 (D.C. Circuit Nov. 16, 2011) (involving a FOIA request for the legal *opinion* for the use of drones to conduct targeted killings and the rules and standards used by the CIA in carrying out these drone strikes) (emphasis added); *New York Times Co. v. Dept. of Justice*, 872 F. Supp. 2d 309 (S.D.N.Y. 2012) (permitting the government to conceal from the public its secret legal *interpretation* of Section 215 of the USA PATRIOT Act) (emphasis added). The government's posture is arguably more extreme in this case because it seeks to withhold not legal analysis or agency interpretation but *the law itself*. Knowledge by the citizens of the law by which the state exercises its authority is fundamental to the operation of a democratic society. The idea that the government could justify its secret investigations by appealing to secret laws is damaging to governmental transparency and contrary to the rule of law. The Court should not ratify it by allowing the government to suppress the identity of the Exemption 3 statute in this case.

The public deserves to know the identity of the Exemption 3 statute, and EPIC is entitled to challenge the lawfulness of its application to the records withheld. Accordingly, this Court should release the parts of the government's declarations that identify the law and explain its status as an Exemption 3 statute.

## II.  The Court Should Exclude the Rest of the Government's Secret Declarations

The acceptance of *ex parte*, *in camera* declarations is "a practice out of accord with normal usage under our common law tradition, in which the judge functions as the impartial

arbiter of a dispute fully argued by both parties before him." *Arieff v. U.S. Dept. of Navy*, 712 F.2d 1462, 1471 (D.C. Cir. 1983). Keeping evidence secret from the plaintiff reduces the effectiveness of the court by depriving it of the "benefit of criticism and illumination by a party with the actual interest in forcing disclosure." *Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976) (quoting *Vaughn v. Rosen*, 484 F.2d 820, 825 (D.C. Cir. 1973)). Even if the court were to review the withheld documents itself, "[t]he scope of inquiry will not have been focused by the adverse parties." *Vaughn*, 484 F.2d at 825. The use of secret declarations also affects each of the parties to the FOIA suit. The government benefits by proceeding in the litigation without the "check on the accuracy of [its] representations" provided by the plaintiff. *Ray v. Turner*, 587 F.2d 1187, 1211 n.43 (D.C. Cir. 1978). The plaintiff, however, is harmed in its ability to effectively present its case and vindicate its rights under the FOIA. *See Yeager,* 678 F.2d at 324 ("[S]uch submissions do not permit the plaintiff an opportunity to respond . . . ."). The D.C. Circuit has been rightfully "troubled" by "[t]he legitimacy of accepting *in camera* affidavits." *Lykins v. United States Dep't of Justice*, 725 F.2d 1455, 1465 (D.C. Cir. 1984) ("In this case the District Court's failure to hold the government to the accepted standards for submission of *in camera* affidavits made it impossible for the adversary system to function effectively in the District Court.").

Thus, the standard for accepting *ex parte*, *in camera* declarations in this Circuit is one of strict necessity. *See Yeager*, 678 F.2d at 324 ("Because such submissions do not permit the plaintiff an opportunity to respond, these procedures should be employed only where absolutely necessary.") (quotation and citation omitted); *Lykins*, 725 F.2d at 1465 ("We have held that a trial court should not use *in camera* affidavits unless necessary . . . ."). If a court ultimately resorts to examining declarations *ex parte* and *in camera*, it must ensure that "such use is

justified to the greatest extent possible on the public record," *Lykins*, 725 F.2d at 1465, and must

"make available to the adverse party as much as possible of the *in camera* submission," *Id.*, and

should also consider reducing the "special dangers" caused by such secret evidence by

"accompan[ying it] by at least some form of in camera inspection" of documents. *Ray v. Turner*,

587 F.2d 1187, 1211 n.43 (D.C. Cir. 1978). *See also Mobley v. DOJ*, 870 F. Supp. 2d 61, 68-

69 (D.D.C. 2012) ("At the outset, the Court is cognizant of its responsibility to 'make as much as

possible of the in camera submission available to the opposing party' as is appropriate.") (citing

*Armstrong v. Exec. Office of the President*, 97 F.3d 575, 580 (D.C. Cir. 1996); *see Barnard v.

Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 16 (D.D.C. 2009); *accord  Phillippi v. CIA*, 546 F.2d

1009, 1013 (D.C. Cir. 1976).

The government claims to have met this standard by "provid[ing] all the information that

can be disclosed in the public record." Defs.' Mot. Leave, Dkt. 10, at 1; *see also* Defs.' Mot.

Summ. J., Dkt. 12, at 4 ("Defendants have made every effort to detail the basis for their

withholdings on the public record . . . ."). But these are "conclusory, boilerplate statements" that

fail to justify the introduction of secret evidence in this case. *Gray v. U.S. Army Criminal

Investigation Command*, 742 F. Supp. 2d 68, 75 (D.D.C. 2010); *see also Hayden v. National Sec.

Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) ("The affidavits will not suffice if the agency's

claims are conclusory, merely reciting statutory standards, or if they are too vague or

sweeping."). The vague invocations of "sensitive information," Defs.' Mot. Summ. J., Dkt. 12, at

4, and "harm to the ongoing law enforcement investigation," Defs.' Mot. Leave, Dkt. 10, at 2,

does not adequately explain the basis for the government's position.

Furthermore, the government's assertion that it has "provide[d] all the information that

can be disclosed in the public record" is difficult to credit given the agency's failure to produce

any information of value concerning this request. Indeed, the government has withheld (1) every responsive document in its entirety, *see* Defs.' Mot. Summ. J., Dkt. 12, at 3; (2) the volume of responsive records, *see id.* at n.3; (3) whether responsive records exist to any particular portion of EPIC's request, *see id.* at 2 n.2; (4) the means by which at least one component conducted its search, *see id.* at 8; and (5) true *Vaughn* indices listing the documents withheld and the reason for such withholding, *see id.* at 3 n.2. After all this, the government still claims that it needs to use secret declarations to conceal the information necessary to evaluate its assertion of Exemption 3, *see id.* at 21-22, Exemption 6, *see id.* at 26-29, Exemption 7(A), *see id.* at 8-15, Exemption 7(C), *see id.* at 29-30, and Exemption 7(D), *see id.* at 30-32. The resort to *ex parte*, *in camera* exhibits can hardly be considered "absolutely necessary" when the government has not seriously employed any other means of disclosing information or restoring balance to the adversarial process.

Moreover, this Court should not consider the question of whether to accept secret declarations in isolation. The judiciary has developed several mechanisms for reducing the distortion of the adversary process caused by the significant imbalance in knowledge between the parties to a FOIA suit. The *Vaughn* index is one such procedure, as it gives the plaintiff a "detailed justification for any claimed right to withhold a document," which can then be "subjected to criticism by the party seeking the document." *Phillippi*, 546 F.2d at 1013 (citing *Vaughn*, 484 F.2d at 826-28). Another mechanism is the affidavit or declaration accompanying summary judgment. *King v. U.S. Dept. of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987) ("Affidavits submitted by a governmental agency in justification for its exemption claims must therefore strive to correct, however, imperfectly, the asymmetrical distribution of knowledge that characterizes FOIA litigation."). *In camera* review by the court of the documents themselves is

yet another such procedure.

Although the government is permitted to deviate from these procedures in limited circumstances—*see N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 223-36 (1978) (permitting categorical *Vaughn* for Exemption 7(A)); *Arieff*, 712 F.2d 1462 (D.C. Cir. 1983) (permitting *ex parte*, *in camera* affidavits)—a deviation from one procedure necessarily increases the importance of the others. Here, the government seeks to avoid *all* of the mechanisms intended to ensure that the government's assertion of exemptions in a FOIA matter can be adequately evaluated in an adversarial proceeding. It has filed a categorical *Vaughn* rather than a true *Vaughn*, provided no responsive records for *in camera* review, and now seeks to keep secret portions of its declarations. Therefore, the harm to the adversarial process is greater here than consideration of *ex parte*, *in camera* declarations alone would indicate.

## **CONCLUSION**

For the foregoing reasons, EPIC respectfully requests that this Court release the identity of the Exemption 3 statute(s) and reject all other portions of the *ex parte*, *in camera* declarations.

Respectfully submitted,

By:     _/s/ _____

Marc Rotenberg (DC Bar # 422825)
David Jacobs[*]
ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated:  February 18, 2013

---

[*] Mr. Jacobs is a member in good standing of the New York bar.