## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No: 12-cv-00127 (RWR) ) |
| U.S. DEPARTMENT OF JUSTICE CRIMINAL DIVISION, et al., | ) ) ) |
| Defendants. | ) ) |

_____)

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff Electronic Privacy Information Center hereby opposes Defendants U.S.

Department of Justice Criminal Division, National Security Division, and the Federal Bureau of

Investigation's motion for summary judgment, and cross-moves for summary judgment pursuant

to Federal Rule of Civil Procedure 56(a). EPIC respectfully refers the Court to the accompanying

memorandum in support of this cross-motion.

Respectfully submitted,

By:    _/s/ _____
Marc Rotenberg (DC Bar # 422825)
Ginger McCall (DC Bar # 1001104)
David Jacobs[*]
ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated:  March 4, 2013

_____

[*] Mr. Jacobs is a member in good standing of the New York bar.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                          )
ELECTRONIC PRIVACY                            )
INFORMATION CENTER,                          )
                                                          )
                    Plaintiff,                           )
                                                          )
          v.                                              ) Civil Action No: 12-cv-00127 (RWR)
                                                          )
U.S. DEPARTMENT OF JUSTICE              )
CRIMINAL DIVISION, et al.,                    )
                                                          )
                    Defendants.                        )
_____)

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION**
**TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................ iv

Introduction ..........................................................................................................1

Statement of Facts ................................................................................................2

    I.   The Government's Targeting of WikiLeaks and WikiLeaks Supporters .....................2

    II.   EPIC's FOIA Requests and Appeals..........................................................5

    III.   EPIC's Lawsuit and the Government's Response .....................................6

Standard of Review................................................................................................9

Argument ...........................................................................................................10

    I.   Records Involving the Targeting of WikiLeaks Supporters Engaged in Lawful, First Amendment-Protected Activities Must be Released Under the FOIA .....................10

    A.   Exemption 7(A) Does Not Apply to Records Related to the Lawful, First Amendment-Protected Activities of WikiLeaks Supporters..............................................11

    B.   The Government May Not Exempt Publicly-Revealed Methods of Targeting WikiLeaks Supporters Under Exemptions 1, 7(A), or 7(E)................................................15

    C.   Exemption 5 Does Not Apply to Records Related to the Lawful, First Amendment-Protected Activities of WikiLeaks Supporters..............................................18

    II.   The Government Has Violated the FOIA by Failing to Conduct an Adequate Search, Failing to Release Segregable Portions of Records, and Providing Declarations Insufficient to Justify its Exemption Claims.................................................20

    A.   The Government Has Failed to Conduct an Adequate Search for Records...............20

    B.   The Government Has Failed to Segregate and Release Non-Exempt Portions of Records. ....................................................................................................22

    C.   The Government's Declarations Fail to Describe the Documents with Detail Sufficient to Justify its Exemption Claims .....................................................23

    III.   The Court Should Review the Withheld Records *In Camera* ................................25

Conclusion ....................................................................................................................................27

## TABLE OF AUTHORITIES

*Albuquerque Publ'g Co. v. Dep't of Justice*,
726 F. Supp. 851 (D.D.C. 1989)........................................................................ 18
*Bevis v. Dep't of State*,
801 F.2d 1386 (D.C. Cir. 1986)........................................................................ 25
*Bonner v. Dep't of State*,
928 F.2d 1148 (D.C. Cir. 1991)........................................................................ 26
*Campbell v. Dep't of Health and Human Servs.*,
682 F.2d 256 (D.C. Cir. 1982)........................................................................ 14
*Campbell v. U.S. Dep't of Justice*,
164 F.3d 20 (D.C. Cir. 1998)............................................... 12, 13, 20, 22
*Church of Scientology of California v. I.R.S.*,
792 F.2d 146 (D.C. Cir. 1986)........................................................................ 24
*Citizens For Responsibility & Ethics in Wash. v. Nat'l Archives & Records Admin.*,
583 F. Supp. 2d 146 (D.D.C. 2008)................................................................ 18
*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310, 130 S. Ct. 876, 898 (2010) ...................................................... 10
*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980)............................................... 10, 18, 19
*Connick v. Myers*,
461 U.S. 138 (1983)........................................................................................ 10
*Ctr. for Auto Safety v. Envtl. Prot. Agency*,
731 F.2d 16 (D.C. Cir. 1984)........................................................................... 22
*Ctr. for Nat'l Sec. Studies v. Dep't of Justice*,
331 F.3d 918 (D.C. Cir. 2003)........................................................................ 14
*EPA v. Mink*,
410 U.S. 73 (1973).......................................................................................... 19
*EPIC v. Dep't of Homeland Security*,
384 F. Supp. 2d 100 (D.D.C. 2005)................................................................ 10
*EPIC v. Dep't of Justice*,
511 F. Supp. 2d 56 (D.D.C. 2007)....................................................................9
*Founding Church of Scientology of Washington, D. C., Inc. v. Bell*,
603 F.2d 945 (D.C. Cir. 1979)...........................................................................7
*Founding Church of Scientology v. National Sec. Agency*,
610 F.2d 824 (D.C. Cir. 1979)........................................................................ 20
*Hayden v. National Sec. Agency*,
608 F.2d 1381 (D.C. Cir. 1979)...................................................................... 24
*House v. Napolitano*,
No. 11-10852, 2012 WL 1038816 (D. Mass. Mar. 28, 2012)................................ 13

*In Def. of Animals v. Dep't of Health & Human Services*,
No. 99-3024, 2001 WL 34871354 (D.D.C. Sept. 28, 2001) .................................. 14

*In re Application of the U.S. for an Order Pursuant to 18 U.S.C. 2703(d)*,
830 F. Supp. 2d 114 (E.D. Va. 2011) .................................................................... 17

*In re Application of U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d)*,
No. 11-5151, 2013 WL 286230 (4th Cir. Jan. 25, 2013) ...................................... 17

*John Doe Agency v. John Doe Corp.*,
493 U.S. 146  (1989)...............................................................................................9

*Johnson v. Exec. Office for U.S. Attorneys*,
310 F.3d 771 (D.C. Cir. 2002)............................................................................. 22

*Judicial Watch, Inc. v. Dep't of Homeland Sec.*,
No. 11-00604,  2012 WL 251914 (D.D.C. Jan. 27, 2012) .................................... 23

*King v. U.S. Dep't of Justice*,
830 F.2d 210 (D.C. Cir. 1987)...................................................................... 23, 24

*Kleindienst v. Mandel*,
408 U.S. 753 (1972)............................................................................................. 11

*Lamont v. Department of Justice*,
475 F. Supp. 761 (S.D.N.Y. 1979) ...................................................................... 12

*Larson v. Dep't of State*,
565 F.3d 857 (D.C. Cir. 2009)............................................................................. 24

*Lesar v. U.S. Dep't of Justice*,
636 F.2d 472 (D.C. Cir. 1980)............................................................................. 12

*Maydak v. United States Dep't of Justice*,
218 F.3d 760 (D.C. Cir. 2000)............................................................................. 11

*Mayer Brown LLP v. I.R.S.*,
562 F.3d 1190 (D.C. Cir. 2009)........................................................................... 17

*Mead Data Cent., Inc. v. Dep't of Air Force*,
566 F.2d 242 (D.C. Cir. 1977)...................................................................... 22, 23

*Milner v. Dep't of the Navy*,
131 S. Ct. 1259 (2011)..................................................................................... 9, 10

*Morley v. CIA*,
508 F.3d 1108 (D.C. Cir. 2007)........................................................................... 20

*NAACP. v. Claiborne Hardware Co.*,
458 U.S. 886 (1982)............................................................................................. 10

*Nat'l Archives & Records Admin. v. Favish*,
541 U.S. 157 (2004)...............................................................................................9

*Nat'l Ass'n of Home Builders v. Norton*,
309 F.3d 26 (D.C. Cir. 2002)................................................................................9

*Nat'l Pub. Radio v. Bell*,
431 F. Supp. 509 (D.D.C. 1977)........................................................................... 15

*NLRB v. Robbins Tire & Rubber Co.*,
437 U.S. 214 (1978)..................................................................................9

*North v. Walsh*,
881 F.2d 1088 (D.C. Cir. 1989)............................................................ 14

*Oglesby v. United States Dep't of the Army*,
79 F.3d 1172 (D.C. Cir. 1996)............................................................. 22

*Oglesby v. United States Dep't of the Army*,
920 F.2d 57 (D.C. Cir. 1990)............................................................... 20

*Perry v. Block*,
684 F.2d 121 (D.C. Cir. 1982)............................................................. 20

*Pratt v. Webster*,
673 F.2d 408 (D.C. Cir 1982)............................................................... 12

*Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*,
533 F.3d 810 (D.C. Cir. 2008)................................................................9

*Quinon v. Fed. Bureau of Investigation*,
86 F.3d 1222 (D.C. Cir. 1996)............................................................. 26

*Ray v. Turner*,
587 F.2d 1187 (D.C. Cir. 1978)..................................................... 26, 27

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
421 U.S. 168 (1975)............................................................................. 19

*Rosenfeld v. Dep't of Justice*,
57 F.3d 803 (9th Cir. 1995) ................................................................. 17

*Roth v. Dep't of Justice*,
642 F.3d 1161 (D.C. Cir. 2011)........................................................... 26

*Ryan v. Dep't of Justice*,
617 F.2d 781 (D.C. Cir. 1980).............................................................. 23

*Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. Dep't of Justice*,
823 F.2d 574 (D.C. Cir. 1987)............................................................. 19

*Skinner v. U.S. Dep't of Justice*,
806 F. Supp. 2d 105 (D.D.C. 2011)..................................................... 23

*Sw. Ctr. for Biological Diversity v. U.S.D.A.*,
170 F. Supp. 2d 931, 940-41 (D. Ariz. 2000)...................................... 19

*Trans-Pac. Policing Agreement v. U.S. Customs Serv.*,
177 F.3d 1022 (D.C. Cir. 1999)........................................................... 22

*U.S. Dep't of Air Force v. Rose*,
425 U.S. 352 (1976)................................................................................9

*U.S. Dep't of Justice v. Tax Analysts*,
492 U.S. 136 (1989)............................................................................. 10

*Weisberg v. U.S. Dep't of Justice*,

705 F.2d 1344 (D.C. Cir. 1983) ......................................................................... 20, 26

*Weisberg v. United States Department of Justice*,
627 F.2d 365 (D.C. Cir. 1980) ......................................................................... 20, 21

*Weissman v. CIA*,
565 F.2d 692 (D.C. Cir. 1977) ............................................................................... 12

*White v. Dep't of Justice*,
No. 11-2045, 2012 WL 4458413 (D.D.C. Sept. 26, 2012) .................................... 21

*Wilkie v. Robbins*,
551 U.S. 537 (2007) .............................................................................................. 13

## **INTRODUCTION**

This case involves three Freedom of Information Act ("FOIA") requests filed by the Electronic Privacy Information Center ("EPIC") that seek information about the targeting of individuals who have supported or expressed interest in WikiLeaks, an Internet-based media organization. The government has indicated that it has records responsive to EPIC's requests, but has refused to disclose any records to EPIC, to provide basic information about the volume of responsive records withheld, or to produce a sufficiently detailed justification for the exemptions claimed. The government has also sought to undercut the adversarial process essential to the resolution of FOIA disputes by moving to submit secret declarations and by relying on secret legal authorities.

Although the government cites a litany of exemptions for its withholdings, it places special emphasis on Exemption 7(A), which authorizes the withholding of records "compiled for law enforcement purposes," if disclosure "could reasonably be expected to interfere with enforcement proceedings." But the records EPIC seeks concern the targeting of individuals engaged in lawful First Amendment activities for which no legitimate law enforcement purpose exists. To be precise, EPIC is not generally seeking records about individuals who may be the target of criminal investigations, it is seeking records about individuals who are exercising their Constitutional rights. Furthermore, the government has not explained the harm that would result from disclosure of such records, as required under Exemption 7(A).

The government's attempt to withhold documents must also fail because it has not conducted an adequate search for records, nor has it segregated and released non-exempt portions of records. Accordingly, the Court should grant EPIC's cross-motion for summary judgment and deny the government's motion. At a minimum, the Court should order the government to submit

the withheld documents for *in camera* review, and ensure that all segregable portions of the records are released.

## STATEMENT OF FACTS

### I.   The Government's Targeting of WikiLeaks and WikiLeaks Supporters

WikiLeaks is an Internet-based non-profit media organization whose goal is to "bring important news and information to the public." Compl., Dkt. 1, ¶ 8. The organization's work is based on "the defence of freedom of speech and media publishing, the improvement of our common historical record and the support of the rights of all people to create new history." *Id.* ¶ 9. WikiLeaks has earned several awards for its work, including the 2008 Economist Index on Censorship Freedom of Expression award, *id.* ¶ 10, and Amnesty International's 2009 New Media award. *See Amnesty Announces Media Awards 2009 Winners*, Amnesty Int'l UK (June 6, 2009).[1] The organization is "entirely supported by the general public," through donations processed by companies such as PayPal, MasterCard, and Visa. *Id.* ¶¶ 11-12.

In 2010, WikiLeaks published several significant sets of documents, including a video of a U.S. military helicopter firing on civilians and journalists in Iraq in 2007, documents about the wars in Afghanistan and Iraq, and diplomatic cables concerning U.S. foreign policy. *See* Compl., Dkt. 1, ¶ 14; *see also How Many Documents Has WikiLeaks Published?*, NPR (Dec. 28, 2010)[2]; Tim Arango & Elisabeth Bumiller, *For 2 Grieving Families, Video Reveals Grim Truth*, N.Y. Times, Apr. 7, 2010, at A8. Although these disclosures might have created embarrassment or awkwardness for U.S. government officials, evidence of serious harm is lacking. *See* U.S. Dep't of Defense, News Transcript, *DOD News Briefing with Secretary Gates and Adm. Mullen from*

---

[1] https://www.amnesty.org.uk/news_details.asp?NewsID=18227
[2] http://www.npr.org/2010/12/28/132416904/how-many-documents-has-wikileaks-published.

*the Pentagon* (Nov. 30, 2010)[3] ("Is this embarrassing? Yes. Is it awkward? Yes. Consequences for U.S. foreign policy? I think fairly modest."); Adam Levine, Gates: *Leaked Documents Don't Reveal Key Intel, But Risks Remain*, CNN (Oct. 16, 2010, 8:25 AM)[4] (citing Defense Secretary Robert Gates' representation to the Senate that "the review to date has not revealed any sensitive intelligence sources and methods compromised by this disclosure.").

In response to these publications, the government retaliated against the organization in several ways. First, WikiLeaks was widely condemned by high-ranking U.S. government officials. Secretary of State Hillary Clinton, for example, said that "This disclosure is not just an attack on America's foreign policy interests . . . . It is an attack on the international community." Glenn Kessler, *Clinton, in Kazakhstan for Summit, Will Face Leaders Unhappy over WikiLeaks Cables*, Wash. Post, Nov. 30, 2010.[5] Several agencies also announced investigations into WikiLeaks. On November 29, 2010, Attorney General Eric Holder announced an investigation into the Wikileaks release, and stated on December 6, 2010 that he had authorized "significant" actions related to the this investigation.  Compl., Dkt. 1, ¶¶  15-16; *see* Mark Landler & J. David Goodman, *Clinton Says U.S. Diplomacy Will Survive "Attack,"* N.Y. Times, Nov. 30, 2010, at A14; Ewen MacAskill & Sam Jones, *Wikileaks Cables: US Looks to Prosecute Julian Assange*, The Guardian (Dec. 6, 2010).[6] The CIA also announced an investigation on December 22, 2010. Compl., Dkt. 1, ¶ 18.

Second, the government implicitly pressured private companies that had provided services for WikiLeaks to sever their relationships with the organization. *See* Charles Arthur,

---

[3] http://www.defense.gov/transcripts/transcript.aspx?transcriptID=4728.
[4] http://articles.cnn.com/2010-10-16/us/wikileaks.assessment_1_julian-assange-wikileaks-documents.
[5] http://www.washingtonpost.com/wp-dyn/content/article/2010/11/30/AR2010113001095.html.
[6] http://www.guardian.co.uk/world/2010/dec/06/wikileaks-cables-founder-julian-assange.

*WikiLeaks Under Attack: The Definitive Timeline*, Guardian.co.uk, Jan. 8, 2011 (quoting Senator Joe Lieberman's call for "any other company or organization that is hosting WikiLeaks to immediately terminate its relationship with them . . . .").[7] Ultimately, Amazon, EveryDNS, PayPal, MasterCard, and Bank of America terminated their relationships with WikiLeaks. Compl., Dkt. 1, ¶¶ 19-22.

Third, the government attempted to suppress access to WikiLeaks documents. Federal agencies prohibited or blocked access to WikiLeaks materials, including the Library of Congress. David de Sola, *U.S. Agencies Warn Unauthorized Employees Not to Look at WikiLeaks*, CNN (Dec. 4, 2010, 3:05 AM).[8] And those who might eventually seek government employment, such as college students, were warned to avoid even looking at documents released by WikiLeaks. *See* Derrick T. Dortch, *Job Hunters Should Steer Clear of WikiLeaks Site*, Wash. Post, Dec. 9, 2010.[9]

Finally, the government began to target members, supporters, and associates of WikiLeaks and WikiLeaks' sources. For example, U.S. WikiLeaks spokesperson Jacob Appelbaum reported being questioned by FBI agents after giving a speech at a hacker convention, *see* Elinor Mills, *Researcher Detained at U.S. Border, Questioned about WikiLeaks*, CNET (July 31, 2010),[10] and David House, the creator of a website supporting Bradley Manning, was questioned by the FBI and had his laptop seized. Ellen Nakashima, *Activist Who Supports Soldier in WikiLeaks Case Sues Over Seizure of Laptop*, Wash. Post., May 13, 2011[11]; Glenn Greenwald, *Government Harassing and Intimidating Bradley Manning Supporters*, Salon (Nov.

---

[7] http://www.guardian.co.uk/media/2010/dec/07/wikileaks-under-attack-definitive-timeline.
[8] http://www.cnn.com/2010/US/12/03/wikileaks.access.warning/index.html.
[9] http://www.washingtonpost.com/wp-dyn/content/article/2010/12/08/AR2010120806796.html/
[10] http://news.cnet.com/8301-27080_3-20012253-245.html.
[11] http://articles.washingtonpost.com/2011-05-13/national/35232781_1_laptop-search-warrant-reasonable-suspicion.

9, 2010).[12] According to the *New York Times,* the government sought access to social media accounts associated with WikiLeaks members and supporters. *See* Compl., Dkt. 1, ¶¶ 27-29; Charlie Savage, *F.B.I. Warrants Into Service Attacks by WikiLeaks Supporters*, N.Y. Times, Jan. 28, 2011, at A18;  Peter Beaumont, *WikiLeaks demands Google and Facebook unseal US subpoenas*, The Guardian, Jan. 8, 2011[13]; *In re Application of the U.S. for an Order Pursuant to 18 U.S.C. 2703(d)*, 830 F. Supp. 2d 114 (E.D. Va. 2011).

## II.  EPIC's FOIA Requests and Appeals

On June 23, 2011, EPIC filed FOIA requests with Defendants seeking information about the government's harassment and surveillance of individuals who had demonstrated support for or interest in WikiLeaks. Compl., Dkt. 1, ¶¶ 30-32. Specifically, EPIC asked for:

1.    All records regarding any individuals targeted for surveillance for support for or interest in WikiLeaks;

2.    All records regarding lists of names of individuals who have demonstrated support for or interest in WikiLeaks;

3.    All records of any agency communications with Internet and social media companies including, but not limited to Facebook and Google, regarding lists of individuals who have demonstrated, through advocacy or other means, support for or interest in WikiLeaks; and

4.    All records of any agency communications with financial services companies including, but not limited to Visa, MasterCard, and PayPal, regarding lists of individuals who have demonstrated, through monetary donations or other means, support or interest in WikiLeaks.

*Id.* ¶ 33. EPIC submitted this request to the Department of Justice components: the Federal Bureau of Investigation ("FBI"); the National Security Division ("NSD"); and the Criminal Division ("CRM"). *Id.* ¶¶ 30-32.

All of the Defendants failed to disclose a single record to EPIC. The Criminal Division

---

[12] http://www.salon.com/2010/11/09/manning_2/

responded by asking EPIC for clarification as to the time frame and subject matter of the request. Compl., Dkt. 1, ¶ 39. After EPIC provided additional information, CRM replied on August 18, 2011, asserting FOIA Exemption 6 and 7(C), yet admitting that "[they] have not performed a search for records" requested by EPIC. *Id.* ¶¶ 41-42. EPIC appealed CRM's response on October 14, 2011. *Id.* ¶¶ 52-54.

The FBI replied on July 11, 2011, stating that a search of the indices of its Central Records System for "Wikileaks" did not return responsive main file records. *Id.* ¶¶ 48-49. EPIC appealed on September 8, 2011, suggesting eleven other terms the FBI might use to conduct its search. *Id.* ¶¶ 58-61.

Finally, NSD replied on July 18, 2011, stating that it was withholding an unknown number of records under Exemption 7(A). *Id.* ¶¶ 44-45. On September 9, 2011, EPIC appealed NSD's assertion, noting that it had not provided any factual basis for the claim that the withheld documents were actually compiled for law enforcement purposes and that disclosure would interfere with enforcement proceedings. *Id.* ¶¶ 55-56.

### III. EPIC's Lawsuit and the Government's Response

On January 25, 2012, after Defendants failed to disclose a single document or to timely respond to EPIC's FOIA appeals, EPIC filed this lawsuit under the FOIA, 5 U.S.C. § 552. Compl., Dkt. 1, ¶¶ 1-2. The government answered the complaint on March 23, 2012. Answer, Dkt. 4. Following a scheduling conference on June 1, 2012, the Court issued a scheduling order that directed the government to produce *Vaughn* indices on November 1, 2012, and to file a dispositive motion on December 17, 2012. Order, Dkt. 8. The Parties subsequently amended the briefing schedule via consent notice, setting January 31, 2013 as the deadline for the

---

[13] http://www.guardian.co.uk/media/2011/jan/08/wikileaks-calls-google-facebook-us-subpoenas.

government's dispositive motion, March 4, 2013 for EPIC's opposition and cross-motion, April

3, 2013 for the government's reply, and April 17, 2013, for EPIC's reply. Notice, Dkt. 9.

On November 1, 2012, EPIC received three documents summarizing the categories of

information withheld by the three government agencies. FBI Vaughn, Ex. 1; NSD Vaughn, Ex. 2;

CRM Vaughn, Ex. 3. Although the government characterized these summaries as "*Vaughn*

indices*," these documents failed to meet the well-established threshold for a sufficient *Vaughn*

filing. A true *Vaughn* index contains "three indispensable elements:"

> (1) The index should be contained in one document, complete in itself.
> (2) The index must adequately describe each withheld document or deletion from
> a released document.
> (3) The index must state the exemption claimed for each deletion or withheld
> document, and explain why the exemption is relevant.

*Founding Church of Scientology of Washington, D. C., Inc. v. Bell*, 603 F.2d 945, 949 (D.C. Cir.

1979). Rather, the government submitted categorical *Vaughn* indices that did not justify the

withholding on a document-by-document basis but instead listed generic categories of

documents. For example, the Criminal Division's categorical *Vaughn* index listed six types of

documents: "E-mails," "Legal Pleadings," "Memorandums," "Transmittal Memorandums,"

"Case Tracking Summary," and "Miscellaneous Administrative Documents." CRM Vaughn, Ex.

3, at 2-3. The government's categorical *Vaughn* indices also made oblique references to future *ex

parte*, *in camera* filings. The Criminal Division's *Vaughn* index indicated that the agency would

provide more information "to the district court *in camera* at the time of its Motion for Summary

Judgment," *id.* at 3, while the National Security Division referred to "an *ex parte* filing" that

would accompany its motion NSD Vaughn, Ex. 2, at 3. The FBI, however, made no reference to

any *ex parte* or *in camera* filing. FBI Vaughn, Ex. 1.

The government moved for summary judgment on January 31, 2013. Defs.' Mot. Summ.

J., Dkt. 12. Before filing, the government asked whether EPIC would consent to the filing of

three declarations *ex parte* and *in camera*. Defs.' Mot. Leave, Dkt. 10. EPIC replied that it would

not consent to such a filing, and the government then moved for leave to file three declarations *ex*

*parte* and *in camera* in connection with its Motion for Summary Judgment. *Id.* These

declarations were completed by individuals at each of the Department of Justice components: the

Criminal Division, the National Security Division, and the Federal Bureau of Investigation. *Id.*

Although public versions of each declaration were also filed, the government explained that the

secret declarations were necessary to properly evaluate its arguments under Exemption 7(A),

which is the primary basis for its withholding. Defs.' Mot. Summ. J., Dkt. 12, at 8. The

government also stated that the *ex parte*, *in camera* filings were necessary to support its

withholdings under Exemptions 3, 6, 7(C), and 7(D). *Id.* at 4.

Finally, the government made a startling admission: "Each component has withheld

information pursuant to Exemption 3, but cannot publicly identify the statute(s) that require(s)

nondisclosure or provide further information about the withheld information." *Id.* at 21. The FBI

and the National Security Division stated that they are only withholding the identity of one

Exemption 3 statute, Hardy Decl., Dkt. 12, Ex. 1, at 79; Bradley Decl., Dkt. 12, Ex. 3, at 22,

while the Criminal Division suggested that it might be relying on multiple secret Exemption 3

statutes. Cunningham Decl., Dkt. 12, Ex. 5, at 22.

EPIC filed an opposition to the government's motion for leave to file *ex parte* and *in*

*camera* declarations on February 18, 2013. Pl.'s Opp. to Defs.' Mot. for Leave, Dkt. 13. EPIC

now opposes the government's motion for summary judgment, cross-moves for summary

judgment, and moves for *in camera* review of the withheld documents themselves.

**STANDARD OF REVIEW**

The U.S. Supreme Court "repeatedly has stressed the fundamental principle of public access to Government documents that animates the FOIA." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151-52 (1989). As the Court has previously explained, "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978); *see also Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-72 (2004) (knowledge of "what the Government is up to" is "a structural necessity in a real democracy") (internal quotation omitted). "In enacting FOIA, Congress struck the balance it thought right—generally favoring disclosure, subject only to a handful of specified exemptions—and did so across the length and breadth of the Federal Government." *Milner v. Dep't of the Navy*, 131 S. Ct. 1259, 1266 (2011). The FOIA's "basic purpose reflect[s] a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *U.S. Dep't of Air Force v. Rose*, 425 U.S. 352, 360-61 (1976), quoting S. Rep. No. 89-813, at 3 (1965). FOIA was meant to be a "disclosure statute," not a "withholding statute." *Milner*, 131 S. Ct. at 1262, and thus the law "mandates a strong presumption in favor of disclosure." *EPIC v. Dep't of Justice*, 511 F. Supp. 2d 56, 64 (D.D.C. 2007) (internal citations omitted).

The FOIA includes exemptions from disclosure, "[b]ut these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n,* 533 F.3d 810, 813 (D.C. Cir. 2008) (quoting *Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d 26, 32 (D.C. Cir. 2002)) (internal quotation marks omitted). Therefore FOIA exemptions "must be narrowly construed." *Id*. "The statute's goal is broad

disclosure, and the exemptions must be given a narrow compass." *Milner*, 131 S. Ct. at 1261

(internal citations omitted). Furthermore, "the burden is on the agency to sustain its action." 5

U.S.C. § 552(a)(4)(B); *see also EPIC v. Dep't of Homeland Security*, 384 F. Supp. 2d 100, 106

(D.D.C. 2005). Where the government has not carried this burden, summary judgment in favor of

the Plaintiff is appropriate. *See, e.g.*, *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142

(1989); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980).

## ARGUMENT

### I. Records Involving the Targeting of WikiLeaks Supporters Engaged in Lawful, First Amendment-Protected Activities Must be Released Under the FOIA

The core of EPIC's FOIA request seeks information about the surveillance of individuals

who have demonstrated interest in, or expressed support for, WikiLeaks. Many individuals have

viewed documents published by WikiLeaks, donated money to the organization, spoken out in

support of WikiLeaks or its sources, or otherwise associated themselves with the organization.

These activities are all protected under the First Amendment. Speech in support of WikiLeaks or

individuals associated with it involves matters of public concern, and therefore "occupies the

highest rung of the hierarchy of First Amendment values, and is entitled to special protection."

*Connick v. Myers*, 461 U.S. 138, 145 (1983) (internal quotation marks omitted). The fact that

such expressions might take the form of monetary donations to WikiLeaks does not diminish the

First Amendment issues at stake. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310,

130 S. Ct. 876, 898 (2010) (applying strict scrutiny to a law prohibiting corporate independent

expenditures). Supporters of WikiLeaks are protected by the First Amendment even if some

members of the organization may be engaged in unlawful activity. *See NAACP. v. Claiborne*

*Hardware Co.*, 458 U.S. 886, 908 (1982) ("The right to associate does not lose all constitutional

protection merely because some members of the group may have participated in conduct or

advocated doctrine that itself is not protected"). Finally, individuals who attempt to access documents released by WikiLeaks are exercising their "right to receive information and ideas." *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972).

EPIC accepts that a portion of the responsive records relate to legitimate law enforcement investigations. However, a fair reading of EPIC's FOIA request makes clear that many documents fall outside the exemptions claimed and relate to the surveillance of individuals who are engaging in First Amendment activities.[14] For this portion of records where there plainly is no illegal conduct on the part of the supporters—indeed, where *government* interference with First Amendment rights is most likely illegality—no legitimate law enforcement purpose exists. Furthermore, the government has not shown that disclosure of records about these individuals will result in any specific harm.

### A.   Exemption 7(A) Does Not Apply to Records Related to the Lawful, First Amendment-Protected Activities of WikiLeaks Supporters

The government relies primarily on Exemption 7(A), which allows for the withholding of records "compiled for law enforcement purposes," if disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). "The principal purpose of Exemption 7(A) is to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence." *Maydak v. United States Dep't of Justice*, 218 F.3d 760, 762 (D.C. Cir. 2000).

---

[14] The FBI claims that it is not "investigating" individuals who merely support WikiLeaks. Hardy Decl., Dkt. 12, Ex. 2, at 8 n.3. But the key question is whether records exist, not what the government's investigatory intent is. The FBI's statement provides no information about whether such records might nevertheless find their way into the FBI's databases (through inter-agency transfers, for example), or whether an otherwise legitimate investigation might have been exceeded its bounds. And it says nothing about the activities or records maintained by CRM or

In order to satisfy Exemption 7's threshold requirement, the government must "establish a rational nexus between the investigation and one of the agency's law enforcement duties, and a connection between an individual or incident and a possible security risk or violation of federal law." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32-33 (D.C. Cir. 1998) (internal quotation marks omitted). The government must be acting in the "function of law enforcement, rather than merely engaging in a general monitoring of private individuals' activities." *Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir 1982). Where an agency exceeds its law enforcement authority, or when an enforcement activity strays beyond an initially legitimate basis, the law enforcement purpose is insufficient to satisfy Exemption 7. *See Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 486-87 (D.C. Cir. 1980) (noting that "at some point this investigation wrongly strayed beyond its initial lawful scope and took on the nature of a campaign to harass and attempt to discredit Dr. King" and that if the requested records "were the actual FBI records relating to the Bureau's surveillance of Dr. King, we would have serious doubts whether these could be construed in their entirety as 'investigatory records compiled for law enforcement purposes.'); *Weissman v. CIA*, 565 F.2d 692, 694-96 (D.C. Cir. 1977) (law enforcement threshold not satisfied because CIA has no authority or power to conduct internal security investigations); *Lamont v. Department of Justice*, 475 F. Supp. 761, 775-76 (S.D.N.Y. 1979) (finding that, despite an initial, legitimate investigation, "the information collected by the FBI after 1955 related primarily to [Plaintiff's] speeches, publications, and public activities precisely the sort of generalized monitoring and information-gathering that are not related to the Bureau's law enforcement duties.").

The requirement of a legitimate law enforcement purpose follows from Congress's intent to apply Exemption 7 to records "prepared by government agencies to prosecute law violators."

---

NSD.

S. Rep. No. 89-813, at 9 (1965), and to allow the FOIA to expose overreaching or illegal government activities. *See* 120 Cong. Rec. 17,038 (1974) (statement of Sen. Weicker), (An effective FOIA might have prevented "many of the abuses which we place under the heading of Watergate"); 120 Cong. Rec. 36,867 (1974) (statement of Sen. Kennedy) ("[N]ot even the FBI should be placed beyond . . . the freedom of information law. Watergate has shown us that unreviewability and unaccountability in Government agencies breeds irresponsibility of Government officials.").

Here, records of the surveillance of individuals interested in or supportive of WikiLeaks serve no legitimate law enforcement purpose. The activities of WikiLeaks supporters described above are lawful and protected from government interference under the First Amendment. They are not connected to the "unauthorized disclosure of classified information" that the government cites as the purpose of its investigation. Defs.' Mot. Summ. J., Dkt. 12, at 9. There is no "criminal conduct," *id.* at 9, no "security risk or violation of federal law," *Campbell*, 164 F.3d at 32-33, and no "law violators," S. Rep. No. 89-813, at 9, to prosecute. Thus, no legitimate law enforcement purpose exists.

Indeed, to the extent that legal violations exist, they result from the government's interference with the exercise of First Amendment rights. *See Wilkie v. Robbins*, 551 U.S. 537, 584 (2007) ("The Court has held that the Government may not unnecessarily penalize the exercise of constitutional rights. This principle has been applied, most notably, to protect the freedoms guaranteed by the First Amendment."). In fact, David House brought a lawsuit against the government, alleging violations of his First and Fourth Amendment rights arising from the suspicionless search and seizure of his laptop and other electronic devices. *See House v. Napolitano*, No. 11-10852, 2012 WL 1038816 (D. Mass. Mar. 28, 2012). In that case, the district

13

court recently held that House had stated a claim for violation of his right to freedom of association under the First Amendment. *Id.* at 12. The court found it significant that

> the agents questioned House solely about his association with Manning, his work for the Support Network, whether he had any connections to WikiLeaks, and whether he had contact with anyone from WikiLeaks during his trip to Mexico. Id. at ¶ 19. None of their questions concerned border control, customs, trade, immigration, or terrorism. Id. House alleges he was questioned solely because of his association with the Support Network and Manning and so that the agents could search the information on his laptop and other electronic devices.

*Id.* This is exactly the kind of targeting that forms the primary basis of EPIC's document request in this case. Thus, not only is a legitimate law enforcement purpose lacking, but disruptive targeting and surveillance may itself be a violation of the law.

Furthermore, even assuming that a legitimate law enforcement purpose exists for targeting certain individuals who are also engaged in the exercise of their First Amendment rights, the government has not shown that disclosure would harm any enforcement proceeding. Exemption 7(A) requires either a "presently pending enforcement proceeding" or a likelihood that the "investigation is likely to lead to such proceedings." *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003); *In Def. of Animals v. Dep't of Health & Human Services*, No. 99-3024, 2001 WL 34871354, at *2 (D.D.C. Sept. 28, 2001) (stating that "anticipated filing satisfies FOIA's requirement of a reasonably anticipated, concrete prospective law enforcement proceeding"). The government must also "show that disclosure of those documents would, in some particular, discernible way, disrupt, impede, or otherwise harm the enforcement proceeding." *North v. Walsh*, 881 F.2d 1088, 1097 (D.C. Cir. 1989); *see also, e.g., Campbell v. Dep't of Health and Human Servs.*, 682 F.2d 256, 259 (D.C. Cir. 1982) ("[T]he government must show, by more than conclusory statement, how the particular kinds of investigatory records requested would interfere with a pending enforcement proceeding").

Here, the government claims that disclosing information about the targeting of WikiLeaks supporters would allow those individuals to evade prosecution, *see* Defs.' Mot. Summ. J., Dkt. 12, at 15, or would lead to the intimidation of potential witnesses, *id.* at 12. First, there is no concrete prospect of an enforcement proceeding against WikiLeaks supporters who engaged in activity protected by the First Amendment. Significantly, the government has identified no claim that might be brought against such supporters. Furthermore, because such activity is lawful, there is no criminal activity to conceal for those individuals to conceal and no prosecution for them to frustrate. Thus, the disclosure of these records would not "present[ ] the very real possibility of a criminal learning in alarming detail of the government's investigation of his crime before the government has had the opportunity to bring him to justice." *Nat'l Pub. Radio v. Bell,* 431 F. Supp. 509, 514-15 (D.D.C. 1977).

As to the government's concern about retaliation, to the extent that some WikiLeaks supporters are now cooperating with an investigation, the proper solution is to conduct an adequate segregability review. But the government fails to explain why the identifying information cannot be redacted, *see infra*, Part II.B.

**B.    The Government May Not Exempt Publicly-Revealed Methods of Targeting WikiLeaks Supporters Under Exemptions 1, 7(A), or 7(E)**

The government claims, again relying on Exemption 7(A), that disclosure of information about its targeting of WikiLeaks supporters would reveal the "scope" and "methods" of the investigation, which would then provide the public with a "roadmap" that would allow individuals to evade the investigation. *See* Defs.' Mot. Summ. J., Dkt. 12, at 13-14.

Similar claims are made under Exemptions 1 and 7(E). Exemption 1 permits the withholding of matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are

in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). The Executive Order relevant to this case provides that "[i]nformation shall not be considered for classification unless its unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security." Exec. Order No. 13,526 § 1.4, 75 Fed. Reg. 707, 707 (Dec. 29, 2009). The Executive Order further states that information may be classified only if the following requirements are met: (1) the information must be classified by an "original classification authority"; (2) the information must be "owned by, produced by or for, or . . . under the control of the United States Government"; (3) the information must fall within one of the withholding categories authorized under the Executive Order; and (4) the original classification authority must determine "that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security," and must be "able to identify or describe the damage." *Id.* § 1.1(a)(1)–(4). Section 1.4(c) protects "intelligence activities (including covert action), intelligence sources or methods, or cryptology." *Id.* § 1.4(c).[15]

Exemption 7(E) protects law enforcement records if their production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure would reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

As with Exemption 7(A), the government's claim under Exemptions 1 and 7(E) is that

---

[15] The government also relies on Sections 1.4(b) and 1.4(d), claiming that they require nondisclosure of the identities of particular foreign governments and related information in order to protect cooperative endeavors and preserve "the fragile relationships that exist between the United States and certain foreign governments." Defs.' Mot. Summ. J., Dkt. 12, at 19, 20. However, the identities of some foreign governments, and information about their role (or the lack thereof) in this case have been made public. *See* Raphael Satter, *Minister: Iceland refused to help FBI on WikiLeaks,* Associated Press (Feb. 1, 2013), http://news.msn.com/world/minister-iceland-refused-to-help-fbi-on-wikileaks. This publicly-disclosed information should thus be released to EPIC.

disclosure of information about the targeting of WikiLeaks supporters would allow criminals to evade intelligence gathering methods and to circumvent the law. *See* Defs.' Mot. Summ. J., Dkt. 12, at 19-20 (revealing the "scope" and "methods" of intelligence-gathering would "allow hostile entities to develop countermeasures" and "degrade and evade those collection capabilities"); *id.* at 32 (revealing techniques would "enable individuals to frustrate the Government's investigations and to continue to violate the law"); *id.* at 33 (revealing the comprehensiveness of and basis for the investigation would allow individuals to "evade detection.").

Here, the government has failed to "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190, 1194 (D.C. Cir. 2009). Many of the techniques used to conduct surveillance on WikiLeaks supports have already been publicly revealed. The government's request for electronic records from the social networking service Twitter, for example, has been litigated extensively. *See In re Application of U.S. for an Order Pursuant to 18 U.S.C. Section 2703(d),* No. 11-5151, 2013 WL 286230 (4th Cir. Jan. 25, 2013); *In re Application of the U.S. for an Order Pursuant to 18 U.S.C. 2703(d)*, 830 F. Supp. 2d 114 (E.D. Va. 2011). During the course of this litigation, the "scope" and "methods" of the Twitter Order have been publicly-revealed. *See In re Application*, 830 F. Supp. 2d, at 121 (describing nine categories of "specified electronic records related to Petitioners and their usernames, as well as records concerning Wikileaks, Julian Assange, and Bradley Manning."). Logically, disclosure of techniques that have already been made public does not aid potential criminals: if the information has already been disclosed, subsequent disclosure does no further damage. *See Rosenfeld v. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995) (Exemption 7(E) "only exempts investigative techniques not generally known to the public."); *Albuquerque Publ'g Co. v. Dep't of Justice*, 726 F. Supp. 851,

857 (D.D.C. 1989) (ordering release of records "pertaining to techniques that are commonly described or depicted in movies, popular novels, stories or magazines, or on television," including "eavesdropping, wiretapping, and surreptitious tape recording and photographing."). Thus, any records whose content has already been revealed in the litigation over the Twitter Order, and any generalized information about publicly-known surveillance practices, must be disclosed to EPIC.[16]

### C. Exemption 5 Does Not Apply to Records Related to the Lawful, First Amendment-Protected Activities of WikiLeaks Supporters

The FOIA allows the government to refuse to disclose "memorandums or letters which would not be available by law to a party other than the agency in litigation with the agency." 5 U.S.C. 552(b)(5). The government relies on the privileges protecting attorney work product, attorney-client communications, and deliberative process documents. Defs.' Mot. Summ. J., Dkt. 12, at 22.

The work product claim fails for many of the same reasons as the government's Exemption 7 claims. Work product privilege exists "to protect the adversary trial process itself," *Coastal States Gas*, 617 F.2d at 864, and thus requires "at the very least some articulable claim, likely to lead to litigation." *Citizens For Responsibility & Ethics in Wash. v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d 146, 160 (D.D.C. 2008) (citation omitted). Here, because the supporters' activities are fully protected by the First Amendment, there is no specific wrongdoing at issue and effectively no likelihood of future litigation. "While it may be true that the prospect of future litigation touches virtually any object of a DOJ attorney's attention, if the agency were allowed 'to withhold any document prepared by any person in the Government with a law degree

---

[16] To the extent that the government is also withholding such information under Exemption 6, this claim should be rejected for records of targets of surveillance that have already had their

simply because litigation might someday occur, the policies of the FOIA would be largely defeated.'" *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. Dep't of Justice*, 823 F.2d 574, 586-87 (D.C. Cir. 1987) (quoting *Coastal States*, 617 F.2d at 865).

The deliberative process privilege claim requires the government to establish two requirements: First, documents must be predecisional, that is, "generated before the adoption of agency policy." *Coastal States*, 617 F.2d at 866. Second, documents must be deliberative, meaning it must "reflect[] the give-and-take of the consultative process." *Id.* Here, postdecisional documents regarding the targeting of WikiLeaks supporters are ineligible for protection. *See Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184-85 (1975) (Exemption 5 "distinguish[es] between predecisional memoranda prepared in order to assist an agency decisionmaker in arriving at his decision, which are exempt from disclosure, and postdecisional memoranda setting forth the reasons for an agency decision already made, which are not."). The public has a compelling interest in knowing the government's explanation for targeting lawful First Amendment activities. Thus, such documents are not protected by the deliberative process privilege.

Furthermore, objective, factual material about the targeting of WikiLeaks supporters does not reflect the "give-and-take" of agency decisionmaking and must be disclosed. *See EPA v. Mink*, 410 U.S. 73, 91 (1973) (refusing to protect "factual material otherwise available on discovery merely [simply because] it was placed in a memorandum with matters of law, policy, or opinion"); *Sw. Ctr. for Biological Diversity v. U.S.D.A.*, 170 F. Supp. 2d 931, 940-41 (D. Ariz. 2000) aff'd sub nom. *Sw. Ctr. for Biological Diversity v. U.S. Dep't of Agric.*, 314 F.3d 1060 (9th Cir. 2002) (refusing to protect research data because "the data itself does not expose the

---

contents publicly disclosed.

deliberative process.").

**II. The Government Has Violated the FOIA by Failing to Conduct an Adequate Search, Failing to Release Segregable Portions of Records, and Providing Declarations Insufficient to Justify its Exemption Claims**

    **A.**     **The Government Has Failed to Conduct an Adequate Search for Records**

The government "must show beyond material doubt is that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). In order to conduct such a search, the government must "follow through on obvious leads to discover requested documents," *Campbell*, 164 F.3d at 28, and "cannot limit its search" to only one or more places if there are additional sources "that are likely to turn up the information requested *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Declarations used to support the adequacy of a search must be "relatively detailed and nonconclusory and . . . submitted in good faith." *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007); *Weisberg v. United States Department of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980) (finding a search affidavit to be too conclusory when it "d[id] not denote which files were searched or by whom, d[id] not reflect any systematic approach to document location, and d[id] not provide information specific enough to enable [Plaintiff] to challenge the procedures utilized."). Summary judgment is inappropriate if the government's declarations "raise serious doubts as to the completeness of the search or are for some other reason unsatisfactory," *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982), or if there are "positive indications of overlooked materials," *Founding Church of Scientology v. National Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979).

As an initial matter, the government's explanation of NSD's search is inadequate. The government simply states that NSD personnel "determined which component(s) within NSD

would be likely to possess responsive records," and that any documents not in the lead attorney's electronic files would be "duplicative." Bradley Decl., Ex. 3, at ¶ 9. The declaration does not explain how NSD determined which component to search, why it believes that other documents would be duplicative, or the terms used, if any, to search the electronic files. Far from describing a "systematic approach to document location" in detail "specific enough to enable [EPIC] to challenge the procedures utilized," *Weisberg*, 627 F.2d at 371, the declaration instead "provides no useful information for the Court to assess defendant's search and determine its adequacy." *White v. Dep't of Justice*, No. 11-2045, 2012 WL 4458413, at *3 (D.D.C. Sept. 26, 2012).

The government then claims that "additional detail regarding how NSD conducted its search" would "compromise the investigation." Defs.' Mot. Summ. J., Dkt. 12, at 8. But the justification for this claim is equally conclusory. No effort is made to explain how, exactly, a description of the search would "compromise the investigation." This assertion of investigatory harm is further undercut by the fact that both the FBI and CRM managed somehow to describe their record systems and search procedures without compromising their respective investigations. *See* Cunningham Decl., Ex. 5, ¶ 10; Hardy Decl., Ex. 1, ¶¶ 17-19.

Although described in greater detail than the NSD's search, the FBI's search is rendered inadequate by the failure to search using anything other than the term "WikiLeaks." *See* Hardy Decl., Ex. 1, ¶¶ 17, 19. This is a glaring omission, given that EPIC's FOIA appeal specifically enumerated eleven other possible search terms that might be used. And the FBI need not have relied on EPIC: another DOJ component, the Criminal Division, conducted its search using twelve terms and multiple Boolean connectors. *See* Cunningham Decl., Ex. 5, ¶ 10 ("WikiLeaks"; "surveillance"; "social media"; "Facebook"; "Google"; "Twitter"; "Private Bradley Manning"; "Julian Assange"; "Jacob Appelbaum"; "David House"; "Rop Gonggrijp";

and "Birgitta Jonsdottir"). The fact that EPIC had suggested, and CRM had used, additional terms makes the FBI's single-termed search a clear failure to "follow through on obvious leads to discover requested documents," *Campbell,* 164 F.3d at 28.

### B.     The Government Has Failed to Segregate and Release Non-Exempt Portions of Records.

The FOIA requires the government to disclose any "reasonably segregable portion of a record." 5 U.S.C. § 552(b); *see Oglesby v. United States Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996) ("If a document contains exempt information, the agency must still release 'any reasonably segregable portion' after deletion of the nondisclosable portions.") (citation omitted). "The 'segregability' requirement applies to all documents and all exemptions in the FOIA." *Ctr. for Auto Safety v. Envtl. Prot. Agency*, 731 F.2d 16, 21 (D.C. Cir. 1984). As with all parts of FOIA litigation, the burden is on the government to "provide a detailed justification for its non-segregability." *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (internal quotation marks omitted). This includes "a statement of [the government's] reasons," and a "descri[ption of] what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). Simply claiming that a segregability review has been conducted is insufficient. *Oglesby*, 79 F.3d at 1180. Finally, district courts have an "affirmative duty to consider the segregability issue *sua sponte*." *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

Here, the government offers the conclusory assertion that "there are no segregable, non-exempt portions that may be released to EPIC." Defs.' Mot. Summ. J., Dkt. 12, at 15; *see also* Hardy Decl., Ex. 1, ¶¶ 27, 119; Bradley Decl., Ex. 3, ¶ 12; Cunningham Decl., Ex. 5, ¶¶ 19, 44. "[U]nless the segregability provision of the FOIA is to be nothing more than a precatory precept,

agencies must be required to provide *the reasons behind their conclusions* in order that they may be challenged by FOIA plaintiffs and reviewed by the courts." *Mead Data Cent., Inc.*, 566 F.2d at 261 (emphasis added). The government has provided nothing more than "empty invocation[s] of the segregability standard" that the Court should reject. *Judicial Watch, Inc. v. Dep't of Homeland Sec.*, No. 11-00604,  2012 WL 251914, at *12 (D.D.C. Jan. 27, 2012).

Although EPIC does not bear the burden of conducting a segregability analysis, the government has described records that appear readily segregable. For example, the government is seeking to protect the names of witnesses, law enforcement personnel, foreign officials, and individual targets of investigations, Defs.' Mot. Summ. J., Dkt. 12, at 12, 19, 27-31, 33, as well as predecisional and deliberative documents, *id.* at 24-26. However, names and identifying information, and opinion portions of documents, are frequently redacted under the FOIA, leaving the remaining portions free to be disclosed to the plaintiff. *See, e.g.*, *Ryan v. Dep't of Justice*, 617 F.2d 781, 790-91 (D.C. Cir. 1980), overruled on other grounds by *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 10-12 (2001) ("We conclude that the requested documents are exempt from FOIA disclosure under Exemption 5, except for factual segments which do not reveal the deliberative process and are not intertwined with the policy-making process."); *Skinner v. U.S. Dep't of Justice*, 806 F. Supp. 2d 105, 113 (D.D.C. 2011) (redacting the names of third parties and releasing all segregable information to plaintiff).

### C.   The Government's Declarations Fail to Describe the Documents with Detail Sufficient to Justify its Exemption Claims

To prevail on a motion for summary judgment, the government must support its claims with detailed affidavits or declarations. "The significance of agency affidavits in a FOIA case cannot be underestimated." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987). Because the Plaintiff in a FOIA suit lacks access to the withheld documents, affidavits are

necessary to "correct, however imperfectly, the asymmetrical distribution of knowledge that characterizes FOIA litigation." *Id.* The government's declarations must "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quotation omitted). Declarations that are conclusory, vague, sweeping, or cryptic will fail to satisfy the government's burden of justifying its withholdings. *See Larson*, 565 F.3d at 864; *Hayden v. National Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) ("The affidavits will not suffice if the agency's claims are conclusory, merely reciting statutory standards, or if they are too vague or sweeping."). "To accept an inadequately supported exemption claim 'would constitute an abandonment of the trial court's obligation under the FOIA to conduct a de novo review." *King*, 830 F.2d at 219 (quoting *Allen v. CIA*, 636 F.2d 1287, 1293 (D.C. Cir. 1980), abrogated on other grounds by *Founding Church of Scientology v. Smith*, 721 F.2d 828 (D.C. Cir. 1983)).

The government has submitted both public and secret declarations to justify its withholdings. For the reasons set forth in EPIC's Opposition to Defendants' Motion for Leave to File *Ex Parte* and *In Camera* Exhibits, *see* Dkt. 13, this Court should exclude the *ex parte, in camera* declarations. The remaining public declarations contain document descriptions that are inadequate to support the claims under Exemptions 3 and 7(A).

Exemption 3 cannot be properly evaluated without knowing the identity of the withholding statute and some description about the documents to which it applies. *See Church of Scientology of California v. I.R.S.*, 792 F.2d 146, 152 (D.C. Cir. 1986) (holding that categorical document description may be appropriate if the Exemption 3 statute is "susceptible of such

generic application," but that an itemized description may be required if the Exemption 3 statute protects "specific subjects"). But the government fails to provide either the identity of the Exemption 3 statute or the documents it protects, nor does it explain how such disclosure would "harm the interests that Exemption 3 attempts to protect." Bradley Decl., Ex. 3, ¶ 22; *see also* Defs. Mot. Summ. J., Dkt. 12, at 21-22. Accordingly, it has described neither the documents nor the justifications for nondisclosure in detail sufficient to carry its burden.

Although Exemption 7(A) allows for categorical descriptions of documents, many of the document categories listed in the government's declarations fail to be "sufficiently distinct to allow a court to . . . trace a rational link between the nature of the document and the alleged likely interference." *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986) (internal quotation marks omitted). Some document categories are clearly "catch-alls" with no categorical commonalities other than relating to a particular investigation, *see* Hardy Decl., Ex. 1, ¶ 26(m)-(n) ("Other Investigative Documents," Miscellaneous Administrative Documents") Cunningham Decl., Ex. 5, ¶ 15(f) ("Miscellaneous Administrative Documents"); making them similar to the "file-by-file" justifications held to be impermissible by the D.C. Circuit. *See Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986). Other categories are given extremely broad definitions. *See* Hardy Decl., Ex. 1, ¶ 26(a), (b), (g) ("Electronic Communication," "FBI Letter," "E-mails"); Cunningham Decl., Ex. 5, ¶ 15(a) ("E-mails"). These general categories give "no indication of the substance of the information contained." *Bevis*, 801 F.2d at 1390.

### III. The Court Should Review the Withheld Records *In Camera*

In reviewing the validity of an exemption claim, a court "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be

withheld." 5 U.S.C. § 552(a)(4)(B). *In camera* review may serve as a "supplement" to the

agency's public explanation, but it is "no 'substitute for the government's obligation to provide

detailed public indexes and justifications whenever possible.'" *Roth v. Dep't of Justice*, 642 F.3d

1161, 1185 (D.C. Cir. 2011) (quoting *Lykins v. Dep't of Justice*, 725 F.2d 1455, 1463 (D.C. Cir.

1984)). "While *in camera* examination need not be automatic, in many situations it will plainly

be necessary and appropriate." *Ray v. Turner*, 587 F.2d 1187, 1191 (D.C. Cir. 1978). *In camera*

review might be appropriate merely "on the basis of an uneasiness [on the part of the trial judge],

on a doubt he wants satisfied before he takes responsibility for a *de novo* determination." *Id.* at

1195. Where, however, the government's affidavits "merely state in conclusory terms that

documents are exempt from disclosure," the D.C. Circuit has instructed that "an *in camera*

review is *necessary*." *Quinon v. Fed. Bureau of Investigation*, 86 F.3d 1222, 1229 (D.C. Cir.

1996) (emphasis added).

The government's refusal to describe the volume of records at issue in this case prevents

EPIC from recommending a specific form of *in camera* review. If the volume is small, review of

every record may be appropriate. *See id.* at 1228. If the volume is large, then the Court might

review either a random sample or a representative sample of the documents. *See, e.g., Weisberg,*

705 F.2d at 1490 (random sampling); *Bonner v. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir.

1991) (representative sampling).

*In camera* review is appropriate here because part of the dispute turns on the contents of

the withheld documents. For example, EPIC is challenging the government's assertion that no

segregable portions exist. Furthermore, EPIC's ability to provide a check on the government's

exemption claims is limited by the fact that it has not received detailed, itemized document

descriptions, and by the introduction of *ex parte, in camera* declarations. It is hard to overstate

the extent of the secrecy in this case: the government has withheld (1) every responsive document in its entirety, *see* Defs.' Mot. Summ. J., Dkt. 12, at 3; (2) the volume of responsive records, *see id.* at n.3; (3) whether responsive records exist, *see id.* at 2 n.2; (4) the means by which the search was conducted, *see id.* at 8; (5) indices that list the specific documents withheld and the reason for such withholding, *see id.* at 3 n.2; and (6) the basis of the assertion of Exemption 3, *see id.* at 21-22, Exemption 6, *see id.* at 26-29, Exemption 7(A), *see id.* at 8-15, Exemption 7(C), *see id.* at 29-30, and Exemption 7(D), *see id.* at 30-32. Review of the records themselves would help counteract, however imperfectly, the effects of this informational imbalance. Finally, *in camera* review would allow the Court to assure itself that the government's "inherent tendency to resist disclosure," *Ray*, 587 F.2d at 1195, has not prevented the disclosure of records in this case.

## CONCLUSION

For the foregoing reasons, the Court should deny the government's motion for summary judgment and grant Plaintiffs' cross-motion for summary judgment. At a minimum, the Court should conduct an *in camera* inspection of the records in order to satisfy its statutory obligation to conduct a *de novo* review of the government's withholdings and to ensure that all segregable information is released.

Respectfully submitted,

By:      /s/_____
         Marc Rotenberg (DC Bar # 422825)
         Ginger McCall (DC Bar # 1001104)
         David Jacobs[*]
         ELECTRONIC PRIVACY
         INFORMATION CENTER
         1718 Connecticut Avenue, N.W.
         Suite 200
         Washington, D.C. 20009
         (202) 483-1140 (telephone)
         (202) 483-1248 (facsimile)

Dated:  March 4, 2013

---

[*] Mr. Jacobs is a member in good standing of the New York bar.