**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 12-cv-00127 (RWR) |
| U.S. DEPARTMENT OF JUSTICE CRIMINAL DIVISION, et al., | ) ) ) |
| Defendants. | ) ) ) |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendants U.S. Department of Justice Criminal Division, National Security Division

("NSD"), and the Federal Bureau of Investigation ("FBI"), through the undersigned counsel,

respectfully submit this reply in support of their motion for summary judgment (Dkt. 12) and in

opposition to Plaintiff's cross-motion for summary judgment (Dkt. 15).

Dated: April 10, 2013.                  Respectfully submitted,

                                        STUART F. DELERY
                                        Acting Assistant Attorney General

                                        ELIZABETH J. SHAPIRO
                                        Deputy Director, Federal Programs Branch

                                         _/s/ Scott Risner_____
                                        SCOTT RISNER (MI Bar # P70762)
                                        Trial Attorney
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        20 Massachusetts Ave., N.W.
                                        Washington, D.C. 20530
                                        Tel: (202) 514-2395
                                        Fax: (202) 616-8470

Email: scott.risner@usdoj.gov

Counsel for Defendants

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

  I.  DEFENDANTS CONDUCTED ADEQUATE SEARCHES FOR RESPONSIVE
      RECORDS ................................................................................................................. 2

  II.  EACH COMPONENT PROPERLY WITHHELD ALL RESPONSIVE
       DOCUMENTS UNDER EXEMPTION 7(A) .................................................................... 3

      A.  The Records Responsive to EPIC's Requests Were Compiled as Part of an
         Investigation into the Unauthorized Disclosure of Classified Information ................. 4

      B.  Records Compiled as Part of an Investigation into the Unauthorized Disclosure
         of Classified Information are "Compiled for Law Enforcement Purposes" ................ 6

      C.  Defendants' Declarations Demonstrate the Harms That Could Result from
         Disclosure ...................................................................................................... 10

      D.  Because All Responsive Documents Have Been Withheld in Full Under
         Exemption 7(A), No Segregable, Non-Exempt Information Can Be Released .......... 13

  III.  EACH COMPONENT PROPERLY WITHHELD CERTAIN INFORMATION
       UNDER ADDITIONAL EXEMPTIONS ........................................................................ 14

      A.  Exemption 1 ................................................................................................... 14

      B.  Exemption 3 ................................................................................................... 16

      C.  Exemption 5 ................................................................................................... 17

      D.  Exemption 6 ................................................................................................... 18

      D.  Exemption 7(E) .............................................................................................. 19

  IV.  THE COURT NEED NOT, AND SHOULD NOT, ENGAGE IN AN *IN CAMERA*
      REVIEW OF THE RESPONSIVE RECORDS ............................................................. 22

CONCLUSION.................................................................................................................... 24

# TABLE OF AUTHORITIES

## CASES                                                                    Pages:

*Armstrong v. Exec. Office of the President,*
    97 F.3d 575 (D.C. Cir. 1996)....................................................................................23

*Barnard v. DHS,*
    598 F. Supp. 1 (D.D.C. 2009).................................................................................21

*Bevis v. Dep't of State,*
    801 F.2d 1386 (D.C. Cir. 1986).............................................................................12

*Brunetti v. FBI,*
    357 F. Supp. 2d 97 (D.D.C. 2004)........................................................................21

*Campbell v. Department of Health & Human Servs.,*
    682 F.2d 256 (D.C. Cir. 1982).............................................................................12

*Campbell v. DOJ,*
    164 F.3d 20 (D.C. Cir. 1998)............................................................................7, 24

*Crooker v. Bureau of Alcohol, Tobacco & Firearms,*
    789 F.2d 64 (D.C. Cir. 1986)..........................................................................12, 13

*Ctr. for Nat'l Sec. Studies v. DOJ,*
    331 F.3d 918 (D.C. Cir. 2003)....................................................................7, 10, 11

*Davis v. DOJ,*
    968 F.2d 1276 (D.C. Cir. 1992).............................................................................19

*DOJ v. Reporters Comm. for Freedom of Press,*
    489 U.S. 749 (1989)..............................................................................................19

*Durrani v. DOJ,*
    607 F. Supp. 2d 77 (D.D.C. 2009)........................................................................20

*Edmonds v. FBI,*
    272 F. Supp. 2d 35 (D.D.C. 2003)........................................................................13

*Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.,*
    384 F. Supp. 2d 100 (D.D.C. 2005)................................................................22, 24

*Greenberg v. U.S. Dep't of Treasury,*
    10 F. Supp. 2d 3 (D.D.C. 1998)..............................................................................2

*Hayden v. Nat'l Sec. Agency,*
    608 F.2d 1381 (D.C. Cir. 1979) ........................................................................23

*Jones v. FBI,*
    41 F.3d 238 (6th Cir. 1994) ..............................................................................23

*Keys v. DHS,*
    510 F. Supp. 2d 121 (D.D.C. 2007) ..................................................................21

*LaCedra v. Exec. Office of U.S. Attorneys,*
    317 F.3d 345 (D.C. Cir. 2003) ............................................................................5

*Lesar v. DOJ,*
    636 F.2d 472 (D.C. Cir. 1980) ............................................................................8

*Lewis-Bay v. DOJ,*
    595 F. Supp. 2d 120 (D.D.C. 2009) ..................................................................22

*Martino v. FBI,*
    577 F. Supp. 2d 178 (D.D.C. 2008) ....................................................................7

*Mapother v. DOJ,*
    3 F.3d 1533 (D.C. Cir. 1993) ............................................................................18

*Mayer Brown LLP v. IRS,*
    562 F.3d 1190 (D.C. Cir. 2009) ..................................................................20, 21

*Meeropol v. Meese,*
    790 F.2d 942 (D.C. Cir. 1986) ..........................................................................22

*Military Audit Project v. Casey,*
    656 F.2d 724 (D.C. Cir. 1981) ..........................................................................15

*Morley v. CIA,*
    508 F.3d 1108 (D.C. Cir. 2007) ........................................................................15

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) ..........................................................................................22

*Oglesby v. U.S. Department of Army,*
    920 F.2d 57 (D.C. Cir. 1990) ..............................................................................3

*PHE, Inc. v. DOJ,*
    983 F.2d 248 (D.C. Cir. 1993) ..........................................................................22

*Pratt v. Webster,*
  673 F.2d 408 (D.C. Cir. 1982) ........................................................................8

*Ray v. Turner,*
  587 F.2d 1187 (D.C. Cir. 1978) ....................................................................23

*Spirko v. USPS,*
  147 F.3d 992 (D.C. Cir. 1998) ......................................................................24

*Stern v. Fed. Bureau of Investigation,*
  737 F.2d 84 (D.C. Cir. 1984) ........................................................................19

*Weisberg v. DOJ,*
  627 F.2d 365 (D.C. Cir. 1980) ........................................................................2

*Weissman v. CIA,*
  565 F.2d 692 (D.C. Cir. 1977) ........................................................................7

*Wolf v. CIA,*
  473 F.3d 370 (D.C. Cir. 2007) ......................................................................16

## **MISCELLANEOUS**                                                        **Pages:**

5 U.S.C. § 552 ....................................................................................................4, 20

Executive Order 13526 ..................................................................................14, 15

Rafael Satter, *Minister: Iceland refused to help FBI on WikiLeaks*, Associated Press
  (Feb. 1, 2013), *available at* http://news.msn.com/world/minister-iceland-refused-to-
  help-fbi-on-wikileaks (accessed on April 10, 2013 ..........................................16

Sec'y Hillary Clinton, Remarks to the Press on Release of Purportedly Confidential
  Documents by WikiLeaks (Nov. 29, 2010), *available at*
  http://www.state.gov/secretary/rm/2010/11/152078.htm (accessed on April 10, 2013) .....10

## INTRODUCTION

Defendants' motion for summary judgment explains that the records responsive to EPIC's FOIA requests are protected from release because, among other reasons, their disclosure would interfere with the Government's criminal investigation into the potential unauthorized release of classified information that was subsequently published on the WikiLeaks website. *See* Defs.' Mot. 8-16. As Defendants have shown, EPIC's requests are a quintessential example of an improper attempt to use FOIA to force the Government to open its investigative files to public inspection.

EPIC's response merely confirms Defendants' arguments. EPIC's brief demonstrates that its requests seek to reveal whether, and to what extent, the Government has employed particular investigative techniques in its attempts to identify suspects and to obtain evidence. Based on assumptions about the investigation, EPIC expresses its disagreement with the Government's enforcement priorities. Of course, EPIC lacks the knowledge, expertise, and legal authority to control the direction of a law enforcement investigation. But this, in any event, is a case concerning FOIA requests. The Court is not being asked to consider whether the Government should investigate the unauthorized disclosure of classified documents, but rather, whether Defendants properly responded to EPIC's requests for records. On that issue, EPIC's brief misunderstands the scope of its own requests and ignores the arguments in Defendants' motion. Defendants have demonstrated that all responsive records subject to FOIA have been properly withheld under Exemption 7(A) (among other exemptions). Defendants' motion should be granted, EPIC's should be denied, and judgment should be entered for Defendants.

**ARGUMENT**

I.      **DEFENDANTS CONDUCTED ADEQUATE SEARCHES FOR RESPONSIVE RECORDS**

Defendants' motion first explained that the searches conducted by the FBI, NSD, and the Criminal Division were adequate.  In response, EPIC challenges the sufficiency of NSD's explanation and the adequacy of the FBI's search.  *See* Pl.'s Opp'n/Mot. 20-22.  (EPIC's response does not address the Criminal Division's search.)

With respect to NSD, EPIC contends that the component's declaration does not provide sufficient information for the Court to assess the adequacy of NSD's search.  EPIC relies on *Weisberg v. DOJ*, 627 F.2d 365 (D.C. Cir. 1980), for its argument that NSD's search is inadequately described, but *Weisberg* shows that NSD's explanation is sufficiently comprehensive.  In *Weisberg*, the agency had indicated merely that it had reviewed agency "files which would contain information that Mr. Weisberg has requested."  *Id.* at 370.  By contrast, NSD has identified the one location within NSD – the Counterespionage Section ("CES") – that it determined was reasonably likely to have responsive records.  Bradley Decl. (Ex. 3) ¶ 9.  NSD explained the scope of its search – all of the electronic files of the lead CES attorney assigned to the matter – and the basis for the search's design – the fact that any responsive records in other NSD employees' files would merely duplicate that attorney's records.  *Id.*  By explaining the scope of the search, the types of files searched, and the parameters of those searches, NSD's declaration is "relatively detailed, nonconclusory, and submitted in good faith."  *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 12-13 (D.D.C. 1998)).  That is sufficient to warrant entry of summary judgment on this issue.

EPIC also challenges the adequacy of the FBI's search.  The FBI's declaration explained the scope of its search, the search terms used, and the basis for the FBI's belief that its search

would reasonably be expected to locate any responsive documents.  *See* Hardy Decl. (Ex. 1)

¶¶ 17-21.  In response, EPIC contends that "the FBI's search is rendered inadequate by the

failure to search using anything other than the term 'WikiLeaks.'"  Pl.'s Opp'n/Mot. 21.  That

argument is incorrect for several reasons.  As a factual matter, the FBI began by searching the

Central Records System ("CRS") using the term "WikiLeaks," but the FBI then broadened its

search by using the information it obtained to contact particular case agents and identify

additional investigative files that likely contained responsive information.  Hardy Decl. (Ex. 1)

¶ 19.  EPIC's contentions that the FBI was required to use additional search terms because

EPIC's administrative appeal listed other terms, or because another component used different

search terms, are also without merit.  For one thing, the terms identified by EPIC included the

names of individuals who have personal privacy interests.  *See id.*, Ex. C, at 4 (EPIC's appeal).

More importantly, though, the agency's obligation is not to conduct a search as designed by the

requester.  Rather, the agency must execute a search that uses "methods which can be reasonably

expected to produce the information requested."  *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68

(D.C. Cir. 1990).  The FBI determined that its records systems – which are organized differently

than the Criminal Division's and NSD's – should be searched using the term "WikiLeaks," and

then the resulting leads were further investigated.  Given that all four parts of EPIC's request

concern "support for or interest in WikiLeaks," basing the search on the use of the term

"WikiLeaks" was reasonable, as if anything the FBI's search was overbroad in its scope.  As a

consequence, the FBI's search was adequate.

## II.    DEFENDANTS PROPERLY WITHHELD ALL RESPONSIVE DOCUMENTS UNDER EXEMPTION 7(A)

Defendants' motion explained that all records responsive to the requests are protected

from disclosure by Exemption 7(A), which applies to "records or information compiled for law

enforcement" when the production of such records "could reasonably be expected to interfere

with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  In response, EPIC distorts the scope

of its requests, questions whether the Government should be undertaking its investigation into

the unauthorized disclosure of classified information, and ignores the harms identified in

Defendants' motion.

### A. The Records Responsive to EPIC's Requests Were Compiled as Part of an Investigation into the Unauthorized Disclosure of Classified Information

As an initial matter, it is important to be clear about the scope of EPIC's requests, and to

be clear about the significance of Defendants' confirmation that there are records responsive to

the requests.  EPIC's brief is replete with references to a FOIA request far different than the

requests that were actually submitted to Defendants.  Over and over, EPIC suggests that its

requests seek records concerning an investigation into individuals because of their engagement in

conduct protected by the First Amendment.  *See, e.g.*, Pl.'s Opp'n/Mot. 1 (EPIC "is seeking

records about individuals who are exercising their Constitutional rights."), 11 (the request

"relate[s] to the surveillance of individuals who are engaging in First Amendment activities").

This characterization is important, because much of their argument proceeds from the premise

that Defendants have confirmed the existence and withholding of records responsive to such a

request.

The truth, however, is that the FOIA requests at issue in this case are very different than

the request described in EPIC's brief.  The terms of the request say nothing about First

Amendment activities or Constitutional rights.  Instead, the requests seek four categories of

records.  While the language of each request varies slightly, the requests seek:

1. All records regarding any individuals targeted for surveillance for support for or interest in WikiLeaks;
2. All records regarding lists of names of individuals who have demonstrated

4

support for or interest in WikiLeaks;

3. All records of any agency communications with Internet and social media companies including, but not limited to Facebook and Google, regarding lists of individuals who have demonstrated, through advocacy or other means, support for or interest in WikiLeaks; and

4. All records of any agency communications with financial services companies including, but not limited to Visa, MasterCard, and PayPal, regarding lists of individuals who have demonstrated, through monetary donations or other means, support or interest in WikiLeaks.

*See*, *e.g.*, Hardy Decl. (Ex. 1), Ex. A (request to FBI) at 3. By withholding responsive documents, Defendants have necessarily confirmed that each component has records responsive to the request as a whole, the terms of which they have interpreted broadly. *See LaCedra v. Exec. Office of U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003) (requiring agencies to interpret requests "liberally in favor of disclosure"). But that says nothing about which parts of the request the records are responsive to. Indeed, Defendants expressly do not confirm the existence of records responsive to any particular portion of the request. *See* Defs.' Mot. 2 n.1; Hardy *Ex Parte* Decl. (Ex. 2) ¶ 8 n.1.

EPIC's argument is flawed by its assumption that all (or even some) of the responsive records fall within EPIC's own narrow reading of portions of the request. For example, they assume that the responsive records concern the "surveillance" of individuals who "have viewed documents published by WikiLeaks." Pl.'s Opp'n/Mot. 10. EPIC's argument flows from an assumption that Defendants have somehow confirmed the existence of records that show that individuals have been "targeted" or investigated because of their engagement in conduct protected by the First Amendment. But properly interpreted, EPIC's requests cover subject matter much broader than what it suggests. The requests seek categories of records relating to WikiLeaks, an organization that was involved in the publication of classified information that had been disclosed without authorization. As each component has explained, the records

responsive to EPIC's requests concern the Government's investigation into the unauthorized disclosure of classified information that was subsequently published on the WikiLeaks website. *See* Hardy Decl. (Ex. 1) ¶ 23; Bradley Decl. (Ex. 3) ¶ 13; Cunningham Decl. (Ex. 5) ¶ 12. The starting point for the Court's review of the withholdings should thus be Defendants' description of the responsive materials (supported by the terms of the actual requests) rather than EPIC's unsupported assumptions about the focus of an investigation with which it lacks familiarity.

**B.      Records Compiled as Part of an Investigation into the Unauthorized Disclosure of Classified Information Are "Compiled for Law Enforcement Purposes"**

When EPIC's request is properly understood, there can be little question that Defendants have met their burden in showing that the responsive records were "compiled for law enforcement purposes." Defendants' motion explains that the records at issue satisfy this threshold requirement of Exemption 7 because they were compiled as part of the Department of Justice's investigation into the unauthorized disclosure of classified information that was subsequently published on the WikiLeaks website. *See* Hardy Decl. (Ex. 1) ¶ 23; Bradley Decl. (Ex. 3) ¶ 13; Cunningham Decl. (Ex. 5) ¶ 12.

In response, EPIC does not dispute that the records were "compiled" as part of an investigation, but instead attacks the legitimacy of the Government's investigation. Through a lengthy factual recitation concerning matters of little relevance to the issues before the Court, EPIC praises WikiLeaks and expresses its clear disagreement with the need to investigate the events at issue.[1] EPIC is, of course, free to advocate for changes to the law. But the question of

---

[1] Defendants need not respond to all of EPIC's factual claims, as they are generally irrelevant to the issues before the Court. *See* Pl.'s Opp'n/Mot. 2-6. EPIC offers a mix of speculation and media reporting to present its own views on the Government's investigation, but Defendants will not be forced into confirming or correcting EPIC's statements in a way that will reveal non-public information about the investigation. Defendants have already provided certain

whether the Government should investigate violations of national security laws is not before this Court.  Instead, this case concerns requests for information under FOIA, and the application of Exemption 7 requires a determination not of whether the Government *should* investigate a particular episode, but rather, whether the records at issue were compiled for law enforcement purposes.

On that issue, there can be little doubt.  In order to satisfy the threshold requirement in Exemption 7, an agency must "establish a rational nexus between the investigation and one of the agency's law enforcement duties, and a connection between an individual and a possible security risk or violation of federal law."  *Campbell v. DOJ*, 164 F.3d 20, 32-33 (D.C. Cir. 1998) (internal citation omitted).  While the Department of Justice's "claim of a law enforcement purpose is entitled to deference," *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926 (D.C. Cir. 2003), there can be no question that the investigation of unauthorized disclosures of classified information serves a critical law enforcement purpose.  Such disclosures are unlawful, and the investigation of criminal activity is plainly a legitimate law enforcement purpose.  *See, e.g.*, *Martino v. FBI*, 577 F. Supp. 2d 178, 181 (D.D.C. 2008).

In response, EPIC looks to a narrow set of cases that have found that Exemption 7 may not be used when an investigation is either outside the authority of an agency or conducted for improper purposes.  As to the first scenario, EPIC's reliance on *Weissman v. CIA*, 565 F.2d 692, 694-96 (D.C. Cir. 1977), is puzzling.  *Weissman* found that CIA could not rely on Exemption 7 to protect records from an investigation that it had no authority to undertake, *id.* at 694-96, but

---

information about the investigation in their *ex parte* and *in camera* submissions, and can provide additional information at the Court's request.  Moreover, while EPIC styled its brief as including a cross-motion for summary judgment, they did not include a separate statement of material facts.  *See* L. Civ. R. 7(h).  As a result, it is unclear what portion, if any, of its factual recitation EPIC actually believes is material to this case.

there can be no doubt that the Department of Justice has the authority and responsibility to investigate potential violations of laws concerning the handling of classified information.

The thrust of EPIC's argument instead seems to be that the Government's investigation into WikiLeaks does not fulfill legitimate law enforcement purposes.  To that end, EPIC contends that "generalized monitoring of private individuals' activities" is not a proper law enforcement purpose, *see* Pl.'s Opp'n/Mot. 12, but their argument fails as a matter of both law and fact because EPIC misapplies the requirements of Exemption 7.  In *Pratt v. Webster*, 673 F.2d 408, 420-21 (D.C. Cir. 1982), the D.C. Circuit recognized that Exemption 7 does not cover "investigatory activities wholly unrelated to law enforcement agencies' legislated functions of preventing risks to the national security and violations of the criminal laws and of apprehending those who do violate the laws."  Instead, the exemption applies only when the Government identifies a "nexus" between "a particular individual or a particular incident as the object of its investigation and the connection between that individual or incident and a possible security risk or violation of federal law."  *Id.* at 420.  Defendants satisfy that requirement: the Government has identified concrete activities that constitute potential violations of criminal and national security law, and is investigating parties who may be responsible for those acts.

EPIC's argument also relies heavily on the assertion that the Government's investigation is improper.  EPIC relies on cases in which courts have considered whether an investigation has "strayed beyond its initial lawful scope," *Lesar v. DOJ*, 636 F.2d 472, 487 (D.C. Cir. 1980), but the cases have no application here.  EPIC's citation to *Lamont v. DOJ*, 475 F. Supp. 761 (S.D.N.Y. 1979), is particularly instructive.  There, the court found that the FBI had carried out a proper investigation for 13 years but that, after the FBI indicated that its investigation had ended, the subsequent 17 years of generalized surveillance lacked a clear connection to legitimate law

enforcement purposes.  *Id.* at 774-76.  Here, by contrast, the Attorney General indicated on

November 28, 2010 that the Government had initiated a criminal investigation into the

unauthorized release of classified information.  That investigation continues, just two and one-

half years later, and is focused on particular violations of the law.  EPIC's brief recognizes as

much, in conceding that "a portion of the responsive records relate to legitimate law enforcement

investigations," yet they go on to assert that "many documents" do not because they "relate to

the surveillance of individuals who are engaging in First Amendment activities."  Pl.'s

Opp'n/Mot. 11.  EPIC's supposition that the investigation consists of "generalized monitoring" is

wholly unsupported.  In fact, it is contrary to what the FBI has itself explained in its declaration,

where it indicated:

> The FBI is not investigating individuals who simply support or have an interest in
> WikiLeaks.  However, reading Plaintiff's request broadly, the FBI concluded that
> records concerning its investigation of the disclosure of classified information that
> was published on the WikiLeaks website would be responsive to Plaintiff's
> request.  The FBI does not, however, maintain lists of individuals who have
> demonstrated support for or interest in WikiLeaks, and thus has no records
> responsive to this portion of Plaintiff's request.

Hardy Decl. (Ex. 1) ¶ 19 n.3.

Finally, EPIC flippantly dismisses the concerns underlying the investigation.  It asserts

that, "to the extent that legal violations exist, they result from the government's interference with

the exercise of First Amendment rights."  Pls.' Opp'n/Mot. 13.  That is nonsense; the potential

violations of the law that gave rise to the Government's investigation are serious.

Notwithstanding EPIC's attempts to minimize the harms at issue, the Government has legitimate

interests in investigating the unauthorized disclosure of classified information.  As then-

Secretary of State Clinton recognized in the context of the publications by WikiLeaks, the

unauthorized disclosure of classified information "puts people's lives in danger, threatens our

national security, and undermines our efforts to work with other countries to solve shared

problems."  *See* Sec'y Hillary Clinton, Remarks to the Press on Release of Purportedly

Confidential Documents by Wikileaks (Nov. 29, 2010), *available at*

http://www.state.gov/secretary/rm/2010/11/152078.htm. Exemption 7 protects records that were

compiled for the purpose of investigating a "violation of federal law as well as a breach of

national security," *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926, and Defendants have satisfied the

threshold requirement of Exemption 7.

### C.    Defendants' Declarations Demonstrate the Harms That Could Result from Disclosure

EPIC also contends that Defendants have not explained how disclosure of the responsive

records could reasonably be expected to interfere with the ongoing investigation.  *See* Pl.'s

Opp'n/Mot. 14-15.  That is incorrect; Defendants' motion and each component's declaration

includes an extensive discussion of the harms that would result from disclosure.  *See* Defs.' Mot.

10-15; Hardy Dec. (Ex. 1) ¶¶ 27-38; Bradley Decl. (Ex. 3) ¶¶ 14-16; Cunningham Decl. (Ex. 5)

¶¶ 16-19.  As the components' declarations explain, disclosure would identify potential

witnesses and other individuals who have cooperated with the investigation, reveal the

documentary evidence and other information gathered in the course of the investigation, expose

the scope and methods of the investigation, and tip-off subjects and other persons of

investigative interest.  Hardy Decl. (Ex. 1) ¶¶ 30, 32; Bradley Decl. (Ex. 3) ¶¶ 8-9; Bradley *Ex*

*Parte* Decl. (Ex. 4) ¶¶ 8-9; Cunningham Decl. (Ex. 5) ¶ 17.  Courts regularly recognize that the

risk of such harms gives rise to protection under Exemption 7(A).  *See* Defs.' Mot. 12-15.

In response, EPIC does not dispute that these harms are sufficient to give rise to

protection under Exemption 7(A).  Instead, EPIC contends that disclosure cannot harm

enforcement proceedings because "there is no concrete prospect of an enforcement proceeding

against WikiLeaks supporters who engaged in activity protected by the First Amendment." Pl.'s Opp'n/Mot. 15. But as above, this argument presupposes that EPIC's FOIA requests are quite unlike the requests at issue in this case. The Government's declarations have not suggested that the investigation would lead to the prosecution of individuals for conduct protected by the First Amendment, and EPIC's argument here fails for the reasons set forth above.

Moreover, contrary to EPIC's argument, the Government's declarations have identified concrete examples of current or prospective prosecutions that could be harmed by release of the responsive records. As the FBI's declaration explains, the withheld materials have been created "in relation to the pending prosecution of PFC Bradley Manning" and "in anticipation of potential other prosecutions arising out of the pending investigations into the disclosure of classified information that was subsequently published on the WikiLeaks website." Hardy Decl. (Ex. 1) ¶ 82.

In second-guessing the harms at issue, EPIC also fails to recognize that the Government need not demonstrate that disclosure is certain to cause particular harms. Instead, "Exemption 7(A) explicitly requires a predictive judgment of the harm that will result from disclosure of information." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927. Moreover, Defendants' declarations must be "viewed in light of the appropriate deference to the executive on issues of national security." *Id. See also id.* at 927-28 ("Just as we have deferred to the executive when it invokes FOIA Exemptions 1 and 3, we owe the same deference under Exemption 7(A) in appropriate cases," including those in which "the government's declarations raise legitimate concerns that disclosure would impair national security.").

EPIC also contends that the FBI and the Criminal Division have provided insufficient detail concerning the Exemption 7(A) withholdings because the categories of documents

described in the declarations provide insufficient detail. *See* Pl.'s Opp'n/Mot. 25. In its attempt to shape Defendants' declarations here into something that resembles declarations that other courts have rejected, EPIC misapplies the case law and misinterprets how the FBI and the Criminal Division have identified the relevant categories of documents.

The D.C. Circuit has recognized that an agency applying Exemption 7(A) may "group[] documents into relevant categories that are sufficiently distinct to allow a court to grasp 'how each . . . category of documents, if disclosed, would interfere with the investigation.'" *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986) (quoting *Campbell v. Dep't of Health & Human Servs.*, 682 F.2d 256, 265 (D.C. Cir. 1982)). The agency must identify "functional" categories so that the court may "trace a rational link between the nature of the document and the alleged likely interference." *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986).

In their declarations, the FBI and the Criminal Division first described the documents at issue by type, such as Electronic Communications, interview forms, payment requests, and investigative inserts. *See* Hardy Decl. (Ex. 1) ¶ 26(a)-(n) (describing fourteen types of documents); Cunningham Decl. (Ex. 5) ¶ 15(a)-(f) (describing six types of documents). EPIC's brief focuses on those descriptions. Pls.' Opp'n/Mot. 25. But EPIC ignores that the components' declarations break the documents into functional categories and described the types of information in each category, and the harms that would result from disclosure of the category. For example, the FBI's declaration explains that the records include evidentiary, investigative, and administrative materials. *See* Hardy Decl. (Ex. 1) ¶¶ 28-38. These "functional" categories are described in ways that indicate their substantive contents and connects the contents to the harms that would result from disclosure. This is plainly not a case where the agency's

declaration uses categories such as "letters" that give "absolutely no indication of the substance

of the information contained." *Bevis*, 801 F.2d at 1390.  Instead, Defendants' use of categories

mirrors what the Court upheld in *Edmonds v. FBI*, 272 F. Supp. 2d 35, 54-55 (D.D.C. 2003),

where the agency's declaration grouped the withheld material into two categories, "evidentiary"

and "investigative" materials.  Because the categories identified in the components' declarations

demonstrate "the nature of the documents" and the "likely interference" that would result from

disclosure, *Crooker*, 789 F.2d at 67, Defendants' reliance on Exemption 7(A) should be upheld.[2]

### D.   Because All Responsive Documents Have Been Withheld in Full Under Exemption 7(A), No Segregable, Non-Exempt Information Can Be Released

As Defendants have explained, all of the responsive documents subject to FOIA have

been withheld in full under Exemption 7(A).  In determining that the documents are exempt in

their entirety, the components reviewed each document to determine whether the exemption

applied and whether any segregable non-exempt information can be released.  *See* Hardy Decl.

(Ex. 1) ¶¶ 27, 119; Bradley Decl. (Ex. 3) ¶ 12; Cunningham Decl. (Ex. 5) ¶¶ 19, 44.  As a result,

there are no non-exempt portions that can be segregated and released without disclosing

protected information.  *Id.*

EPIC contends that the Government's segregability analysis fails, but the argument

ignores the application of Exemption 7(A).  EPIC contends that certain documents withheld by

Defendants under Exemption 1, 5, 6, and 7(D) "appear readily segregable" because they contain

---

[2] EPIC also contends that Defendants provided insufficiently detailed *Vaughn* indices at an earlier stage of the litigation.  *See* Pl.'s Opp'n/Mot. 7.  As EPIC notes, each component provided a *Vaughn* index on November 1, 2012, in which it identified the exemptions that applied to the component's responsive documents.  Those indices did not provide a document-by-document description because, as Defendants explained in their motion for summary judgment, doing so would necessarily reveal the scope of the investigation.  EPIC did not assert in November that the *Vaughn* indices were insufficient, and Defendants do not rely on those documents at this time.  Instead, Defendants' motion for summary judgment included detailed affidavits (both public and *ex parte*) from each component to demonstrate the propriety of its withholdings.

the "names of witnesses, law enforcement personnel, foreign officials, and individual targets of

investigations."  Pl.'s Opp'n/Mot. 23.  It is true that the Government often releases documents in

part after redacting information such as the names of law enforcement officers.  But here,

Exemption 7(A) applies to all responsive documents in their entirety; because there is no

segregable information unprotected by that exemption, there is no need for a separate

segregability analysis with respect to each additional exemption.

## III.    EACH COMPONENT PROPERLY WITHHELD CERTAIN INFORMATION UNDER ADDITIONAL EXEMPTIONS

Because all of the responsive records were properly withheld in full under Exemption

7(A), the Court need not reach the other exemptions addressed in Defendants' motion.  If the

Court reaches those issues, though, EPIC's challenges to the assertion of the remaining

exemptions are all without merit.

### A.    Exemption 1

Defendants' motion explained that the FBI and NSD withheld certain documents under

Exemption 1, which protects classified information.  *See* Defs.' Mot. 15-21.  EPIC's response

does not dispute that the agencies have satisfied the procedural requirements for classification,

but instead argues that the information at issue does not fall within the scope of the categories of

information protected by the relevant Executive Order.  *See* Pl.'s Opp'n/Mot. 16.  While the

Order sets forth eight categories of information that may be classified, three are at issue here, and

EPIC's brief offers only one or two sentences in response to each.

Section 1.4(c) of the Executive Order protects information that concerns "intelligence

activities (including covert action), intelligence sources or methods, or cryptology."  E.O. 13526,

§ 1.4(c).  In response, EPIC contends that the agencies may not withhold information on this

basis if it concerns "publicly-revealed methods of targeting WikiLeaks supporters."  Pl.'s

14

Opp'n/Mot. 15.  EPIC's argument is without merit, as it simply ignores Defendants' motion and

declarations.  Defendants' declarations explained that the FBI has withheld documents

describing "intelligence methods utilized by the FBI for gathering intelligence data," Hardy

Decl. (Ex. 1) ¶ 52, while NSD has withheld documents that discuss "ongoing intelligence

operations," Bradley Decl. (Ex. 3) ¶ 20.  The damage to national security that could result from

disclosure is not limited to the harms of disclosing techniques or methods that have never been

made public.  As the FBI explained, disclosure of the activities or methods at issue under section

1.4(c) could reveal the identities of specific targets of the investigation, and it could allow hostile

entities to discover the FBI's intelligence-gathering methods.  Hardy Decl. (Ex. 1) ¶¶ 53-54.

NSD has similarly explained that disclosure "would reveal the scope of sensitive U.S.

intelligence gathering operations."  Bradley Decl. (Ex. 3) ¶ 20.  The classified information at

issue thus goes far beyond what EPIC identifies in its brief.  These declarations provide ample

detail for the basis of the withholdings, and should be given "substantial weight" because of the

agencies' "unique insights" into the adverse effects that might result from disclosure of classified

information.  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  "[L]ittle

proof or explanation is required beyond a plausible assertion that information is properly

classified," *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007), and EPIC's argument fails.

EPIC also challenges the Government's reliance on sections 1.4(b) and (d), which cover

information that was provided by a foreign government in confidence, along with information

that concerns the foreign relations or foreign activities of the United States.  E.O. 13526,

§§ 1.4(b), 1.4(d), 6.1(s)(1).  For example, the FBI explained that it withheld information under

section 1.4(b) because it identified foreign governments and foreign government officials, and

included detailed information they provided in confidence.  Hardy Decl. (Ex. 1) ¶¶ 50A, 50C.

In response, EPIC argues (in a footnote) that "the identities of some foreign governments, and information about their role (or the lack thereof) in this case have been made public."  Pl.'s Opp'n/Mot. 16 n.15.  EPIC cites to a single Associated Press article, which contains statements attributed to the interior minister of Iceland regarding events in August 2011.  *See* Rafael Satter, *Minister: Iceland refused to help FBI on WikiLeaks*, Associated Press (Feb. 1, 2013), *available at* http://news.msn.com/world/minister-iceland-refused-to-help-fbi-on-wikileaks (accessed on April 10, 2013).  EPIC's argument falls far short of demonstrating that the information withheld by Defendants is not properly classified.  When a requester claims that a prior disclosure exists, the requester bears the burden of showing (1) that the requested information is "as specific as the information previously released;" (2) that the requested information "match[es] the information previously disclosed;" and (3) that the information has "already . . . been made public through an official and documented disclosure."  *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007).  EPIC's three-sentence argument satisfies none of these requirements.  Even if the Court were to accept the veracity of the statements in the cited article, the refusal by one foreign government entity or official to assist with an investigation says nothing about the assistance provided by other foreign governments and officials.  The information in that article is not specific and does not match the information withheld by Defendants, in content or specificity.  Moreover, statements made by a foreign official do not constitute an official disclosure by the United States.  EPIC's argument is without merit, and Defendants' withholdings under Exemption 1 should be upheld.

## B.    Exemption 3

EPIC contends that Defendants have provided insufficient detail to justify their withholdings under Exemption 3.  As explained in Defendants' motion, however, the components cannot publicly identify the statute(s) that require(s) nondisclosure under Exemption

3 or provide further detail about the withheld information.  *See* Defs.' Mot. 21-22; Hardy Decl. (Ex. 1) ¶ 79; Bradley Decl. (Ex. 3) ¶ 22; Cunningham Decl. (Ex. 5) ¶ 22.  Defendants have provided ample detail about these withholdings in their *ex parte* filings.[3]  *See* Hardy *Ex Parte* Decl. (Ex. 2) ¶¶ 9-12; Bradley *Ex Parte* Decl. (Ex. 4) ¶¶ 10-12; Cunningham *Ex Parte* Decl. (Ex. 6) ¶¶ 6-9.  For the reasons explained *in camera*, the Exemption 3 withholdings should be upheld.

    **C.**    **Exemption 5**

    Defendants' motion also explained that all three components have withheld information under Exemption 5.  EPIC's brief challenges the assertions of the work product doctrine and the deliberative process privilege, but beyond citations to the general standards the brief is devoid of any discussion of Defendants' arguments.

    With respect to the work product doctrine, EPIC contends that the agencies cannot rely on the doctrine because there is "effectively no likelihood of future litigation."  Pl.'s Opp'n/Mot. 18.  That is wrong.  EPIC's argument that an individual cannot be prosecuted for engaging in conduct protected by the First Amendment does not address the materials discussed in Defendants' declarations.  The FBI's declaration explains that the withheld materials were created "in related to the pending prosecution of PFC Bradley Manning" and "in anticipation of potential other prosecutions arising out of the pending investigations into the disclosure of classified information that was subsequently published on the WikiLeaks website."  Hardy Decl. (Ex. 1) ¶ 82.  The declarations show that certain documents were created for litigation that is already underway, and it is plainly foreseeable that other litigation or prosecutions will be initiated as the investigation continues.

---

[3] Defendants' motion for leave to file *ex parte*, and their reply in support of that motion, provide further arguments on the need and propriety of including the basis for the Exemption 3 withholdings only in an *ex parte* filing.  *See* Dkt. 10; Dkt. 14.

EPIC also contends that the agencies cannot rely on the deliberative process privilege to protect "postdecisional documents" and "objective, factual material about the targeting of WikiLeaks supporters." Pl.'s Opp'n/Mot. 19.  As to the first argument, Defendants have not withheld postdecisional materials; the component's declarations show that the privilege is invoked to withhold drafts of affidavits, pleadings, and memoranda, along with deliberative communications reflecting the decision-making process.  Hardy Decl. (Ex. 1) ¶ 87; Bradley Decl. (Ex. 3) ¶ 26; Cunningham Decl. (Ex. 5) ¶ 29.  As for any withholding of factual materials, EPIC's argument is overbroad and legally flawed.  Defendants' declarations do not assert the deliberative process privilege to protect objective, factual material, but, in any event, agencies may withhold factual material contained in a deliberative document when the document's author has selectively chosen certain facts, such that disclosure would highlight facts that the author deemed significant or noteworthy.  *See, e.g.*, *Mapother v. DOJ*, 3 F.3d 1533, 1539 (D.C. Cir. 1993) (upholding Exemption 5 withholdings after recognizing that "the majority of the [document's] factual material was assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of the official called upon to" make the decision at issue).

**D.     Exemption 6**

With respect to Defendants' withholdings under Exemption 6, EPIC's response consists of a single sentence in a footnote.[4]  Defendants' declarations explained that the information withheld under Exemption 6 concerns the identities of law enforcement personnel involved in the investigation, individuals who have provided information to the Government as part of the

---

[4] The Court need not actually reach the propriety of Defendants' withholdings under Exemption 6.  All of the information withheld under Exemption 6 has also been withheld under Exemption 7(C), and EPIC's brief does not challenge the Exemption 7(C) withholdings.  *See* Hardy Decl. (Ex. 1) ¶ 90 n.10; Bradley Decl. (Ex. 3) ¶ 30; Cunningham Decl. (Ex. 5) ¶ 31.

investigation, and individuals who are considered to be persons of investigative interest.  Defs.'

Mot. 26-28.  EPIC contends that any records concerning "publicly-known surveillance practices"

may not be withheld "for records of targets of surveillance that have already had their contents

publicly disclosed."  Pl.'s Opp'n/Mot. 18 & n.16.  While Exemption 6 would not apply to

records that have themselves already been released under FOIA, the fact that some records about

an individual have been released would not itself render the exemption inapplicable to other

records about the individual.  To accept EPIC's argument would be to find that no privacy

interest exists for individuals known to be suspects of an investigation, let alone individuals

under indictment or convicted criminals.  But courts have repeatedly found otherwise.  *See, e.g.*,

*DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 762-63 (1989) (recognizing

privacy interests in nondisclosure of a rap sheet, even though it had previously been disclosed);

*Davis v. DOJ*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (recognizing privacy interests of convicted

defendants, acquitted codefendants, and unindicted targets of an investigation); *see also Stern v.

FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984) (recognizing individuals' "strong interest in not being

associated unwarrantedly with alleged criminal activity").  As the FBI and NSD determined,

individuals who are considered to be persons of investigative interest have a legitimate privacy

interest in non-disclosure.  Hardy Decl. (Ex. 1) ¶ 102; Bradley Decl. (Ex. 3) ¶ 34.  EPIC has not

submitted privacy waivers from any individuals as part of its requests, and the components have

appropriate balanced the competing interests of Exemption 6.

**E.      Exemption 7(E)**[5]

Defendants' motion also explains that the FBI properly withheld documents under

Exemption 7(E), which protects records compiled for law enforcement purposes when their

---

[5] EPIC's brief does not challenge or otherwise address Defendants' withholdings under
Exemptions 7(C), 7(D), or 7(F).

release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  *See* Defs.' Mot. 32-33; Hardy Decl. (Ex. 1) ¶¶ 112-16.

As explained in the FBI's declaration, the FBI asserts Exemption 7(E) to protect information concerning procedures, techniques, and guidelines used by FBI Special Agents in the course of criminal and national security investigations, including the underlying investigation here.  *See* Hardy Decl. (Ex. 1) ¶¶ 113-14.  In response, EPIC contends that the Government cannot rely on Exemption 7(E) because "the government has failed to 'demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'"  Pl.'s Opp'n/Mot. 17 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009).  EPIC's argument is that "[m]any of the techniques used to conduct surveillance on WikiLeaks support[er]s have already been publicly revealed," and "disclosure of techniques that have already been made public does not aid potential criminals."[6]  *Id.*

EPIC's argument misreads Exemption 7(E).  The requirement that release "could reasonably be expected to risk circumvention of the law" applies only to the withholding of "guidelines for law enforcement investigations or prosecutions;" it does not restrict the withholding of "techniques and procedures for law enforcement investigations or prosecutions."  *See* 5 U.S.C. § 552(b)(7)(E).  *See Durrani v. DOJ*, 607 F. Supp. 2d 77, 91 (D.D.C. 2009) ("Exemption 7(E) affords categorical protection for techniques and procedures used in law

---

[6] The FBI also asserts the exemption to protect the location and identity of FBI units that are or have been involved in the investigation, information concerning the dates and comprehensiveness of the investigation, and the bases for the initiation of the investigation. Hardy Decl. (Ex. 1) ¶¶ 115-16.  EPIC does not address this information in its brief, and the FBI's withholdings should be upheld.

enforcement investigations and prosecutions."); *Keys v. DHS*, 510 F. Supp. 2d 121, 129 (D.D.C. 2007) (recognizing that the exemption's first clause "requires no demonstration of harm or balancing of interests").

In any event, the FBI has demonstrated that disclosure "could reasonably be expected to risk circumvention of the law." Notably, the bar for this exemption is much lower than EPIC suggests, as Exemption 7(E) "is written in broad and general terms." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009). The D.C. Circuit has explained that the Government need not show that disclosure would actually lead to circumvention:

> [T]he exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.

*Id.* With respect to investigative techniques and procedures, the FBI has determined that disclosure would not only reveal particular techniques and procedures that have been used by investigators, it would also reveal *how* the techniques and procedures have been used, including the circumstances of their use. Hardy Decl. (Ex. 1) ¶ 114. Even accepting EPIC's assertion that it is publicly-known that the FBI uses particular techniques, it does not follow that further disclosures concerning the use of those techniques would not risk circumvention of the law. As this Court has recognized, "[t]here is no principle . . . that requires an agency to release all details of techniques simply because some aspects are known to the public." *Barnard v. DHS*, 598 F. Supp. 2d 1, 23 (D.D.C. 2009). *See also Lewis-Bey v. DOJ*, 595 F. Supp. 2d 120, 138 (D.D.C. 2009) (upholding Exemption 7(E) withholdings of information concerning surveillance techniques, including "circumstances[,] timing of their use, and the specific location where they were employed"); *Brunetti v. FBI*, 357 F. Supp. 2d 97, 108 (D.D.C. 2004) (recognizing that the

21

release of agency notations concerning the "efficacy [of techniques used] would allow criminals

to adapt their activities and methods in order to avoid future detection").  The FBI has explained

that disclosure of the information at issue "could enable the subjects of these investigations and

other investigations to educate themselves about the law enforcement techniques and procedures

employed in order to locate and apprehend individuals and gather and analyze evidence," which

"would allow such individuals to take countermeasures to circumvent the effectiveness of these

techniques and procedures and to continue to violate the law."  Hardy Decl. (Ex. 1) ¶ 114.  This

places the information squarely within the scope of Exemption 7(E), and the FBI's withholdings

are proper.

## IV.    THE COURT NEED NOT, AND SHOULD NOT, ENGAGE IN AN *IN CAMERA* REVIEW OF THE RESPONSIVE RECORDS

Finally, EPIC asks the Court to review the withheld records *in camera*.  As explained

above and in Defendants' opening brief, the Government's submissions are more than sufficient

for this Court to grant summary judgment on the validity of Defendants' withholdings.

However, should the Court find any submission insufficient, there are other, more proportional

remedies that the Court should employ before conducting an *in camera* review, such as requiring

the Government to submit supplemental declarations with additional detail.

Courts generally conduct *in camera* review in exceptional, rather than routine, cases.  *See*

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978); *PHE, Inc. v. DOJ*, 983 F.2d

248, 252-53 (D.C. Cir. 1993) (noting that *in camera* review is generally disfavored); *Elec.*

*Privacy Info. Ctr. v. DHS*, 384 F. Supp. 2d 100, 119 (D.D.C. 2005) ("[C]ourts disfavor *in camera*

inspection and it is more appropriate in only the exceptional cases.").  FOIA cases are typically

decided on motions for summary judgment, based on the agencies' supporting affidavits, which

are entitled to a presumption of good faith.  *Meeropol v. Meese*, 790 F.2d 942, 952 (D.C. Cir.

1986).  It is only when the agency's affidavits are found to be inadequate that *in camera* review

need be considered as an option  Even then, *in camera* review over-burdens judicial resources,

by requiring the review of potentially large volumes of responsive materials.  *See Jones v. FBI*,

41 F.3d 238, 243 (6th Cir. 1994); *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978).  *In*

*camera* review is especially disfavored for material withheld under Exemption 1.  *See Armstrong*

*v. Exec. Office of the President*, 97 F.3d 575, 580-81 (D.C. Cir. 1996).

     EPIC's brief fails to show that this case is the exceptional case that warrants such review.

There is no suggestion in EPIC's brief that the good faith of the agencies is in question.  While

EPIC contends that *in camera* review is appropriate "because part of the dispute turns on the

contents of the withheld documents," Pl.'s Opp'n/Mot. 26, that is always the case when a court is

reviewing an agency's withholding of documents under FOIA.  EPIC also argues for *in camera*

review on the grounds that Defendants have withheld all documents in their entirety and have not

provided EPIC with information such as the volume of responsive records or the basis for the

assertion of Exemption 3.  But EPIC ignores the fact that all of the information it identifies as

lacking has already been provided to the Court for *ex parte* and *in camera* review.  The Court is

able to review that information, without also requiring Defendants to submit the investigative

files themselves for review.

     Because the agencies have provided this Court with declarations that are sufficiently

detailed to inform the Court of the specific information that has been withheld, as well as the

bases for its withholding, *in camera* review is "neither necessary nor appropriate."  *Hayden v.*

*Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979).  Even if the Court finds the

components' submissions to be insufficient, though, *in camera* review is only one among several

options that the Court may consider.  If the Court finds any material portion of Defendants'

submissions to be insufficient, the Court should require the component or components at issue to submit additional supplemental declarations before it orders *in camera* review.  *See Campbell v. DOJ*, 164 F.3d 20, 31 (D.C. Cir. 1998) ("On remand, the district court can either review the documents *in camera* or require the FBI to provide a new declaration. . . .  The latter course is favored where agency affidavits are facially inadequate."); *Spirko v. USPS*, 147 F.3d 992, 997 (D.C. Cir. 1998) (listing other potential remedies, including requiring additional affidavits); *Elec. Privacy Info. Ctr.*, 384 F. Supp. 2d at 120 (permitting agencies to submit a revised Vaughn index). An order granting *in camera* review should be a last resort.  In any event, such review is unwarranted and unnecessary in this case, as the agencies' declarations are more than sufficient to establish their entitlement to summary judgment.

## <u>CONCLUSION</u>

For the reasons stated above, and in Defendants' motion, the Court should grant Defendants' motion and enter final judgment for them in this matter.

Dated: April 10, 2013.                              Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

*/s/ Scott Risner*
SCOTT RISNER (MI Bar No. P70762)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 514-2395
Fax: (202) 616-8470
Email: scott.risner@usdoj.gov

Counsel for Defendants