IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE CRIMINAL DIVISION, *et al.*, <br><br> Defendants. | Civil Action No. 12-cv-0127 (RWR) |

**THIRD OVERALL AND
SECOND PUBLIC DECLARATION OF DAVID M. HARDY**

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), formerly at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C., and currently relocated to Winchester, Virginia. I have held this position since August 1, 2002. Prior to joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the United States Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 226 employees who staff a total of ten (10) units and two (2) field operational service center units

whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to Federal Bureau of Investigation ("FBI") records and information pursuant to the FOIA, 5 U.S.C. § 552; Privacy Act of 1974; Executive Order ("E.O.") 13526; Presidential, Attorney General and FBI policies and procedures; judicial decisions; and other Presidential and Congressional directives. My responsibilities also include the review of FBI information for classification purposes as mandated by E.O. 13,526, 75 Fed. Reg. 707 (2010), and the preparation of declarations in support of FOIA Exemption 1 claims asserted under the FOIA, 5 U.S.C. § 552(b)(1). I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to E.O. 13,526 §§ 1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information pursuant to the provisions of the FOIA, 5 U.S.C. § 552 and the Privacy Act ("PA") of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's response to the FOIA request of plaintiff, Electronic Privacy Information Center ("EPIC"), which seeks access to certain FBI records about "individuals targeted for surveillance for support for or interest in WikiLeaks."

(4)     On March 11, 2014, the Court issued a Minute Order in this matter noting that a year has passed since the parties' cross motions for summary judgment and defendants' motion for leave to file *ex parte* and *in camera* exhibits were filed. Taking judicial notice that events have transpired that may have caused the defendants' position to have changed, the Court instructed defendants to submit a supplemental briefing, particularly with respect to their

invocation of Exemption 7(A). The FBI submits this declaration in response to the March 11, 2014 Minute Order and in further support of the government's motion for summary judgment in this case. This is my third declaration overall and second public declaration in this case, and it incorporates and supplements my prior declarations and my fourth overall and second *in camera, ex parte* declaration. *See* ECF No. 12-1, First Public Hardy Decl.; ECF No. 11, Notice of Filing Second Overall and First *In Camera, Ex Parte* Hardy Declaration; *see also* Fourth Overall and Second *In Camera, Ex Parte* Hardy Declaration.

(5)     As explained in my first public declaration, the FBI invoked Exemption 7(A) to protect responsive records in this case so as not to adversely affect its active and pending investigation of the unauthorized disclosure of classified information that was published by the WikiLeaks website, any prosecutions that may result from the FBI's investigation, and/or the then-pending trial of Private Bradley Manning.[1] *See* ECF No. 12-1, First Public Hardy Decl., at ¶¶ 23 and 25.

(6)     There are at least two separate categories of law enforcement proceedings here, which are progressing on different tracks.

(a)     The first type of law enforcement proceeding is the military prosecution of Manning, which falls within the jurisdiction of the Department of Defense ("DoD"). Since this case was originally briefed, Manning was tried and convicted by a military court of 20 counts stemming from her unauthorized disclosure of classified information and sentenced to 35 years in prison. Her appeal is currently pending.

(b)     The second type of enforcement proceeding, generally, is the Department of Justice's ("DOJ's") civilian criminal/national security investigation(s) into the unauthorized

---

[1] Now known as Chelsea Manning.

disclosure of classified information that was published on the WikiLeaks website. The FBI's investigation of the unauthorized disclosure is a multi-subject investigation and is still active and ongoing.

(7)     The FBI considered whether any changes in either (a) the status of the FBI's civilian investigation of the unauthorized disclosures of classified information or (b) Manning's military case altered its prior conclusion that disclosure of any responsive information in this case would adversely affect the government's continuing investigation of the unauthorized disclosure of classified information, any prospective prosecutions that could result from the FBI's investigation, or the Manning appeal. However, because the FBI's investigation remains ongoing and could result in one or more prosecutions, and because the Manning case is not concluded but instead has progressed to the appeal phase, the FBI has concluded that no materials can be released at this time without jeopardizing DOJ's pending or prospective civilian enforcement proceedings, for the reasons discussed in my first public declaration and first *in camera, ex parte* declaration in this case.[2]

(8)     Specifically, as I previously explained, disclosure of documents falling within the category of "Evidentiary/Investigative Materials" would interfere with pending or prospective enforcement proceedings in the following ways. *See* ECF No. 12-1, First Public Hardy Decl., at ¶¶ 29 – 32.

(a)     Disclosure of confidential source statements could subject them to retaliation, intimidation, or physical or mental harm. This would have a chilling effect on these investigations and any future prosecutions resulting from these cases, inasmuch as potential

---

[2] While we do not believe that the change in status of the military enforcement proceeding against Manning affects DOJ's application of Exemption 7(A) to the FBI's pending investigative file, DOJ is willing to double-check that no documents publicly released in the military proceeding against Manning are DOJ documents that are responsive to plaintiff's request and that can be segregated and released to plaintiff.

4

witnesses and/or sources might fear exposure and reprisals from the subjects of these investigations and/or from other individuals. Implicit in conducting interviews in investigations of this nature is the notion that a source's identity and the information he/she/it provided will be afforded confidentiality. The FBI goes to great lengths to protect and maintain sources' confidentiality because it is an integral part of successful investigations and prosecutions. The release of source statements would disrupt and harm ongoing investigative actions and/or pending or prospective prosecutions.

(b) Disclosure of documents reflecting information exchanged between the FBI and its law enforcement partners would disclose evidence, investigative information, and criminal intelligence developed by agencies that have cooperated with and provided information to the FBI, and that are still doing so, in the pending investigations at this point in the investigative process would reveal the scope and focus of the investigations; identify and tip off individuals of interest to law enforcement; and provide suspects or targets the opportunity to destroy evidence or alter their behaviors to avoid detection. Inherent in the cooperative effort between the FBI and other law enforcement agencies is the mutual understanding that information provided to the FBI by these agencies will not be prematurely released. This information was gathered, and is continuing to be gathered, to help identify subjects, suspects, and/or other individuals of potential investigative interest; to identify and assist in locating witnesses and/or confidential sources; and to further the progress of the investigations.

(c) Finally, disclosure of documentary evidence being gathered in the ongoing investigations, or information that discusses, describes, or analyzes the documentary evidence, would undermine any pending or prospective prosecutions by prematurely revealing the scope and focus of the investigations, as well as the subjects of and persons of investigative interest in

those investigations. Once subjects and persons of interest become aware of the FBI's attention, they are able to take defensive actions to conceal their activities, elude detection, and/or suppress or fabricate evidence. Additionally, disclosure of documentary evidence and/or information concerning documentary evidence also could reasonably lead to the identification of the sources of the evidence. This too would adversely impact the ongoing investigations, and any pending or prospective prosecutions, because it could result in possible intimidation of or harm to those witnesses and sources. This evidence and information about this evidence in other documents is pertinent and integral to the FBI's ongoing investigation and any potential future prosecutions.

(9) Additionally, as I previously explained, disclosure of documents falling within the category of "Administrative Materials" would interfere with pending or prospective enforcement proceedings in the following ways. *See* ECF No. 12-1, First Public Hardy Decl., at ¶¶ 33 – 38.

(a) In many instances, administrative information is contained at the beginning or end of correspondence or documents that fall within the Investigative/Evidentiary Material category, such that release of the administrative information would also reveal the investigative interests of the FBI and could enable suspects, targets, and individuals of interest to the FBI to discern a "road map" of the investigations.

(b) Disclosure of reporting communications would interfere with pending or prospective enforcement proceedings because they have the potential to reveal or confirm the cooperation of other Government agencies in the investigations, and they are replete with detailed information about the FBI's investigative activities, potential witnesses/sources to be interviewed, background information about third party individuals, the origins of information connecting individuals to the investigations, and individuals' connections to subjects and individuals of investigative interest to the FBI. Consequently, release of this information would

prematurely reveal the nature and scope of these active and ongoing investigations by revealing the investigative steps taken to obtain witness and source interviews; techniques and investigative methods used to compile and/or solicit information from various sources; and any potential or perceived challenges in the investigations.

(c) Moreover, disclosure of other administrative documents would reveal the identities of sources or investigative methods or activities that were and are being employed by the FBI in the pending investigations, the premature disclosure of which could undermine the pending investigations as well as pending and prospective prosecutions by providing information useful in identifying witnesses and ascertaining investigative strategies and items of evidence, all of which could allow the targets of the investigation to evade detection or circumvent enforcement efforts.

(d) Finally, releasing administrative instructions would disclose specific investigative procedures employed in these investigations. Release of this information would thus permit subjects or individuals of investigative interest to the FBI to anticipate law enforcement actions and to alter, destroy, or fabricate evidence.

(10) The FBI has also considered whether the additional exemptions previously cited continue to apply and has concluded that responsive information in this case also remains exempt pursuant to FOIA Exemptions 1, 3, 5, 6, 7(C), 7(D), 7(E), and 7(F), 5 U.S.C. §§ 552(b)(1), (b)(3), (b)(5), (b)(6) and (b)(7)(C) – (F), for the reasons previously explained in my first public and *in camera, ex parte* declarations in this case.

## CONCLUSION

(11) The FBI has carefully considered its positions regarding the withholding of responsive documents in this case in light of the passage of time since this case was originally

briefed. The FBI has concluded circumstances have not changed substantially enough to alter its determination that release of any information responsive to plaintiff's FOIA request could reasonably be expected to interfere with the FBI's pending civilian investigation of the unauthorized disclosure of classified information that was subsequently published on the WikiLeaks website, as well as any civilian prosecutions that may result from the investigation and potentially Manning's pending military appeal. And as previously noted, withholding continues to be warranted on the basis of other exemptions as well. Once all exemptions are considered and applied, there is no reasonably segregable information that can be released at this time.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 25th day of April, 2014.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia