UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No: 12-cv-00127 (BJR) ) |
| U.S. DEPARTMENT OF JUSTICE CRIMINAL DIVISION, et al., | ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL BRIEF**

On March 11, 2014, this Court issued a Minute Order directing defendants to "update its position regarding Plaintiff's FOIA request, particularly with respect to the government's invocation of exemption 7(A)." Dkt. Defendants filed a Supplemental Brief on April 25, 2014. Dkt. 33. Defendants also filed Sealed Motion For Leave To File Document Under Seal. Dkt. 34. Plaintiff Electronic Privacy Information Center ("EPIC") hereby opposes Defendants' Supplemental Brief.

**PROCEDURAL BACKGROUND**

This lawsuit arises from three Freedom of Information Act requests in which EPIC asked Defendants for information about the government's surveillance of individuals who had demonstrated interest in WikiLeaks, an Internet-based media organization. Compl., Dkt. 1, ¶¶ 30-32. On November 1, 2012, the day the government's *Vaughn* index was due, EPIC received three documents summarizing the categories of information withheld by the three government agencies. Pl. Opp. to Mot. Leave, Dkt. 13, FBI Vaughn, Ex. 1; NSD Vaughn, Ex. 2; CRM Vaughn, Ex. 3. Although the government characterized these summaries as "*Vaughn* indices,"

1

these documents failed to meet the well-established threshold for a sufficient *Vaughn* filing. Instead, the government submitted categorical *Vaughn* indices that did not justify the withholding on a document-by-document basis but listed generic categories of documents. *Id*.

Before moving for summary judgment on January 31, 2013, the government moved for leave to file three declarations *ex parte* and *in camera* in connection with its Motion for Summary Judgment. Defs.' Mot. Leave, Dkt. 10; Defs.' Mot. Summ. J., Dkt. 12. Although public versions of each declaration were also filed, the government explained that the secret declarations were necessary to properly evaluate its arguments under Exemption 7(A), which is the primary basis for its withholding. Defs.' Mot. Summ. J., Dkt. 12, at 8. The government also stated that the *ex parte*, *in camera* filings were necessary to support its withholdings under Exemptions 3, 6, 7(C), and 7(D). *Id.* at 4. In its Motion for Summary Judgment, the government also admitted that "[e]ach component has withheld information pursuant to Exemption 3, but cannot publicly identify the statute(s) that require(s) nondisclosure or provide further information about the withheld information." *Id.* at 21.

On February 18, 2013, EPIC filed its Opposition to Defendants' Motion for Leave to File *Ex Parte* and *In Camera* Exhibits. Pl. Opp. to Mot. Leave, Dkt. 13. On March 4, EPIC moved for the court to review the underlying FOIA documents *in camera*. Pl.'s Mot. for In Cam. Rev., Dkt. 17. EPIC highlighted the D.C. Circuit's ruling that where the government's affidavits "merely state in conclusory terms that documents are exempt from disclosure, an *in camera* review is necessary." *Id.*; *Quinon v. FBI*, 86 F.3d 1222, 1229 (D.C. Cir. 1996). The Parties completed briefing their Motions for Summary Judgment on April 24, 2013.

Following this court's Minute Order dated March 11, 2014, the government filed a Supplemental Memorandum and a Sealed Motion to File a Document Under Seal ("Motion for

Leave"). Defs.' Supp. Memo., Dkt. 33; Defs.' Sealed Mot. to File Doc. Under Seal, Dkt. 34. This Opposition responds to the government's Supplemental Brief.

**ARGUMENT**

As EPIC argued in its earlier Cross Motion for Summary Judgment, many of the documents at issue are not law enforcement records. Instead, they are records detailing government surveillance of individuals engaged in legitimate First Amendment activities. To the extent that EPIC's request encompasses law enforcement records, events have transpired over the past year that have reduced the force of the government's claims to withhold these documents under exemption 7(A) and 7(E). The trial of Chelsea Manning has concluded. Details of the government's surveillance of Wikileaks supporters, the focus of EPIC's request, have been reported and new documents have been released. Together, these developments diminish the government's claims that release of records would interfere with law enforcement proceedings.

**I.      Many of the Documents EPIC is Seeking are Not Law Enforcement Records**

Contrary to the government's assertion, many of the documents that are responsive to EPIC's FOIA Request are simply not law enforcement records and should be fully released. A fair reading of EPIC's FOIA request makes clear that many documents fall outside the exemptions claimed and relate to the surveillance of individuals who are engaging in First Amendment protected activities.

No legitimate law enforcement purpose can exist to justify withholding records of the plainly lawful conduct of Wikileaks supporters. *Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir 1982) (finding that the government must be acting in the "function of law enforcement, rather than merely engaging in a general monitoring of private individuals' activities.") Indeed, where *government* interference with First Amendment rights is most likely illegal, release of records

would best serve both the public and the FOIA itself. *NARA v. Favish*, 541 U.S. 157, 171-72, 124 S. Ct. 1570, 1580, 158 L. Ed. 2d 319 (2004) (describing the FOIA as "defin[ing] a structural necessity in a real democracy"). Here, records of the surveillance of individuals interested in WikiLeaks serve no legitimate law enforcement purpose. They are not connected to the "unauthorized disclosure of classified information" that the government cites as the purpose of its investigation. Defs.' Mot. Summ. J., Dkt. 12, at 9. There is no "criminal conduct," *id.* at 9, no "security risk or violation of federal law," *Campbell*, 164 F.3d at 32-33, and no "law violators," S. Rep. No. 89-813, at 9, to prosecute. Furthermore, the government has not shown that disclosure of records about these individuals could reasonably be expected to interfere with enforcement proceedings. In the absence of a showing of an articulable harm, Exemption 7(A) does not apply.

**II.    If Any Responsive Documents are Law Enforcement Records, the Government Still has not Met its Burden to Justify Withholdings**

Even if some subset of the documents sought are law enforcement records, the government has not met its burden to justify its withholdings. Exemption 7(A) authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to interfere with enforcement proceedings." *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 385-86 (D.C. Cir. 2007) *citing* 5 U.S.C. § 552(b)(7)(A). The government can meet its burden by demonstrating that release of the requested information would reveal "the size, scope and direction of [the] investigation" and thereby "allow for the destruction or alteration of relevant evidence, and the fabrication of fraudulent alibis." *Alyeska Pipeline Serv. Co. v. U.S. Envtl. Prot. Agency,* 856 F.2d 309, 312 (D.C.Cir.1988). The government has not met

that burden here. The government's brief motion gives EPIC no clear indication of specifically which documents are being withheld or why they are being withheld.

### III. Substantial Events Have Transpired Since the Original Briefing, Which Warrant Consideration by the Court

Since the original briefing was completed in April 2013, government documents have been released that have revealed new details about law enforcement data collection, surveillance methods, and the investigations of Wikileaks supporters and Pfc. Manning.

    *a.*    *Developments Related to Wikileaks and Wikileaks Supporters*

In Defendant's Supplemental Brief, the DOJ separates its law enforcement proceedings into two categories: the prosecution of Pfc. Manning and the broader investigation into the unauthorized disclosure of documents via the Wikileaks website. Defs.' Supp. Memo. at 6.

Since the court martial proceedings of Pfc. Manning have concluded, the agency should not be permitted to withhold related documents under 7(A). On July 20, 2013, Pfc. Chelsea (formerly Bradley) Manning was convicted of several charges related to the Wikileaks disclosures and on August 21, 2013, she was sentenced to thirty-five years in prison. On April 14, 2014, her sentence was upheld by Army Major General Jeffrey S. Buchanan.[1] Though Pfc. Manning's case has been appealed further, new facts cannot usually be introduced at the appellate level. *Jones v. Horne*, 634 F.3d 588, 603 (D.C. Cir. 2011) ("Issues and legal theories presented for the first time on appeal ordinarily will not be heard on appeal") (citations omitted). The conclusion of Pfc. Manning's trial should therefore complete the DOJ's investigation. In fact, the DOJ concedes that, at this point, "[t]here may be less risk that disclosure of defendants' records could jeopardize DoD's court-martial of Manning." Defs.' Supp. Memo. at 9.

---

[1] Victoria Cavaliere, *Army General Upholds Manning's Prison Sentence in Wikileaks Case*, Reuters, Apr. 14, 2014, http://www.reuters.com/article/2014/04/14/us-usa-wikileaks-manning-idUSBREA3D1L720140414

Regarding the broader "investigation into unauthorized disclosure of classified information that was published on the Wikileaks website," this description is exactly the kind of "vague" proceeding that the D.C. Circuit has found fails to justify withholding under Exemption 7(A). In *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 12-5223, 2014 WL 1284811 (D.C. Cir. Apr. 1, 2014) the D.C. Circuit Court considered the withholding of documents related to the prosecution of three specific individuals, as well as "all related criminal investigations." The court held that because the prosecutions of the individuals had been completed, the documents regarding investigations of those specific individuals could no longer be withheld under Exemption 7(A). *Id.* The court also held that the use of 7(A) to withhold records related to "all related criminal investigations" was improper because of the "vague nature of the DOJ's mention of ongoing investigations, especially when coupled with its reliance on other specifically enumerated proceedings… [and] the passage of time: It has been over 30 months since the DOJ filed its Declaration and many more since the events underlying the investigation took place." *Id*. The same arguments apply here. The DOJ has relied on a similarly vague, open-ended description of an investigation, which it claims proceeds even after the sole responsible party, Pfc. Manning, has already been prosecuted and convicted. This kind of vague, expansive investigation cannot support a withholding under Exemption 7(A). *Id.* ("In the typical case, however, the requested records relate to a specific individual or entity that is the subject of the ongoing investigation, making the likelihood of interference readily apparent"). A substantial amount of time has also passed since the "events underlying the investigation took place." *Id*. The first document disclosed by Pfc. Manning was published by Wikileaks in February 2010, more than four years ago.[2] Pfc. Manning was convicted nearly a year ago, on July 20, 2013.

---

[2] Greg Mitchell, *One Year Ago: The Unmaking of Bradley Manning*, The Nation, May 18, 2011, http://www.thenation.com/blog/160754/one-year-ago-unmaking-bradley-manning

Clearly the passage of time and the conclusion of the criminal trial should weigh against the application of an exemption intended to shield records related to an actual law enforcement investigation

The public release of several documents responsive to EPIC's FOIA request should also weigh against the application of Exemption 7(A). In EPIC's Cross Motion for Summary Judgment, Dkt. No. 16, EPIC described several documents regarding the government's investigations and techniques that had been released as of February 2013. Since that time, several additional documents concerning the investigation of two Wikileaks supporters had been legally unsealed.[3] Smari McCarthy and Herbert Snorrason, two Icelandic freedom of information activists who supported Wikileaks, were informed of the federal District Court order after the suppression order was lifted on May 2.[4] The subpoenas, which are publicly available, applied to "certain records and information" relevant to McCarthy and Snorrason's Gmail addresses, including physical addresses, other e-mail addresses, telephone connection records, "session times and durations," "length of service," and IP addresses.[5]

The government's failure to renew the suppression order of individuals who expressed support for Wikileaks substantially undermines its insistence that the records sought by EPIC are exempt under 7(A). Further, where a FOIA request is made by a third party seeking information to which the target of the investigation already has access, the government is required to make a more particularized showing of harm or interference with law enforcement proceedings. *Campbell v. Dep't of Health & Human Servs.*, 682 F.2d 256, 265 (D.C. Cir 1982), *see also Goldschmidt v. Dep't of Agric.*, 557 F. Supp 274 (D.D.C. 1983) (holding that documents sought

---

[3] Sam Knight, *Court Documents Reveal Extent of Federal Investigation Into Wikileaks*, The Nation, June 21, 2013, http://www.thenation.com/article/174933/court-documents-reveal-extent-federal-investigation-wikileaks
[4] *Id.*
[5] *Id.*

were already in the possession of the targets of the investigation and the agency failed to demonstrate that the disclosure would interfere with law enforcement proceedings). The government has made no such showing here. DOJ instead relies on a conclusory statement of harm – that disclosure of documents in this case would "adversely affect the government's continuing investigation." Defs.' Supp. Memo. at 9.

      *b. Revelations Regarding Previously Secret Law Enforcement Collection Methods*

Since the completion of briefing in this case last year, there have been substantial new revelations about law enforcement surveillance and data collection methods. These revelations undercut the agency's attempts to withhold documents in response to plaintiff's FOIA request.

The NSA's specific surveillance of Wikileaks and its supporters has been widely reported since the earlier briefing in this matter.[6] Documents released by federal officials and news reports have detailed the extraordinary investigative techniques deployed by the National Security Agency. Among other methods, these documents revealed that the NSA's bulk collection of telephone metadata;[7] the NSA PRISM program, which allows the agency to demand that Internet companies, including Google, Facebook, Skype, and Microsoft, turn over for government analysis all data that matches court-approved search terms;[8] a secret rule that

---

[6] One leaked document contains a summary of an internal discussion in which officials from two NSA offices – including the agency's general counsel and an arm of its Threat Operations Center – considered designating WikiLeaks as a "'malicious foreign actor' for the purpose of targeting." Such a designation would allow the group to be targeted with extensive electronic surveillance – without the need to exclude U.S. persons from surveillance searches. Another document revealed that American spying partner, UK's Government Communications Headquarters, was able to "secretly monitor visitors to a WikiLeaks site," and "collect the IP addresses of visitors in real time, as well as the search terms that visitors used to reach the site from search engines like Google." Julian Hattem, *Spies Targeted Wikileaks*, The Hill, Feb. 18, 2014, *available at* http://thehill.com/policy/technology/198562-spies-targeted-wikileaks.

[7] Office of the Director of National Intelligence, *Section 215 of the Foreign Intelligence Surveillance Act* ("*DNI Factsheet*"), http:// icontherecord.tumblr.com/topics/section-215 James Ball, *NSA stores metadata of millions of web users for up to a year, secret files show*, The Guardian, Sep. 30, 2013, *available at* http://www.theguardian.com/world/2013/sep/30/nsa-americans-metadata-year-documents.

[8] Glenn Greenwald, *NSA Prism program taps in to user data of Apple, Google and others*, The Guardian, Jun. 6, 2013, *available at* http://www.theguardian.com/world/2013/jun/06/us-tech-giants-nsa-data. *See also* Office of the Director of National Intelligence, *Keynote Address by General Keith Alexander, Director, National Security Agency,*

8

allowed the NSA to conduct warrantless searches of internet and telephone data and use the data to track individual Americans' communications using a person's name or other identifying information;[9] three Foreign Intelligence Surveillance Court documents outlining the NSA's procedures for minimizing its collection of domestic communications;[10] the existence of XKeyscore, an NSA program that allows analysts to search with no prior authorization through vast databases containing emails, online chats and the browsing histories of millions of individuals;[11] and, the NSA's creation of "social graphs" to deduce Americans' real-world social connections.[12]

These recent developments also substantially undercut the government's reliance on law enforcement exemptions, particularly Exemption 7(E). Exemption 7(E) protects law enforcement records if their production "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure would reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

---

*Black Hat USA 2013*, http://icontherecord.tumblr.com/post/58054574770/keynote-address-by-general-keith-alexander.

[9] *See* Office of the Director of National Intelligence, *DNI Announces the Release of Additional Documents Related to Collection Activities Authorized by President George W. Bush Shortly After the Attacks of Sept. 11*, http://icontherecord.tumblr.com/tagged/section-702 (last accessed May 12, 2014). *See also* James Ball and Spencer Ackerman, *NSA loophole allows warrantless search for US citizens' emails and phone calls*, The Guardian, Aug. 9, 2013, *available at* http://www.theguardian.com/world/2013/aug/09/nsa-loophole-warrantless-searches-email-calls.

[10] Office of the Director of National Intelligence, *DNI Clapper Declassifies and Releases Telephone Metadata Collection Documents*, http://icontherecord.tumblr.com/post/57514665466/dni-clapper-declassifies-and-releases-telephone. *See also* Glenn Greenwald, *NSA collected US email records in bulk for more than two years under Obama*, The Guardian, Jun. 27 2013, *available at* http://www.theguardian.com/world/2013/jun/27/nsa-data-mining-authorised-obama (revealing that the NSA stores domestic communications if they contain: foreign intelligence information; evidence of a crime; threats of serious harm to life or property; or any other information that could aid the agency's electronic surveillance, which includes encrypted communications).

[11] Glenn Greenwald, *XKeyscore: NSA tool collects 'nearly everything a user does on the internet'*, The Guardian, Jul. 31, 2013, *available at* http://www.theguardian.com/world/2013/jul/31/nsa-top-secret-program-online-data. Office of the Director of National Intelligence, *NSA Press Statement on 30 July 2013*, http://icontherecord.tumblr.com/search/xkeyscore (last accessed May 12, 2014).

[12] James Risen and Laura Poitras, *N.S.A. Gathers Data on Social Connections of U.S. Citizens*, N.Y. Times, Sep. 28, 2013, *available at* http://www.nytimes.com/2013/09/29/us/nsa-examines-social-networks-of-us-citizens.html.http://www.nytimes.com/2013/09/29/us/nsa-examines-social-networks-of-us-citizens.html

As EPIC argued in its Cross Motion for Summary Judgment, FOIA disclosure of techniques that have already been made public cannot aid potential criminals. *See Rosenfeld v. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995) (finding that Exemption 7(E) "only exempts investigative techniques not generally known to the public"); *Albuquerque Publ'g Co. v. Dep't of Justice*, 726 F. Supp. 851, 857 (D.D.C. 1989) (ordering release of records "pertaining to techniques that are commonly described or depicted in movies, popular novels, stories or magazines, or on television," including "eavesdropping, wiretapping, and surreptitious tape recording and photographing"). Thus, any records regarding investigations of specific supporters whose content has already been revealed, and any documents regarding publicly known surveillance practices, must be disclosed to EPIC.

### IV. Plaintiff's Position Regarding All Other Exemptions and In Camera Revoew Has Not Changed

Plaintiff continues to assert all arguments regarding other exemptions – including Exemptions 1, 3, 5, 6, 7(C), and 7(F), that are contained in Plaintiff's 2013 Cross Motion for Summary Judgment. Plaintiff also renews its request for *in camera review*.

### CONCLUSION

For the reasons stated above, and in Plaintiff's earlier briefing on Summary Judgment, the Court should grant Plaintiff's Cross Motion for Summary Judgment and should enter final judgment in favor of Plaintiff.

Respectfully submitted,

By:
Marc Rotenberg (DC Bar # 422825)
____/s/ _____
Ginger P. McCall (DC Bar # 1001104)
Julia Horwitz (DC Bar # 1018561)
ELECTRONIC PRIVACY
INFORMATION CENTER

                                                1718 Connecticut Avenue, N.W., Suite 200  
                                                Washington, D.C. 20009  
Dated: May 12, 2014                          (202) 483-1140 (telephone)