**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,**<br><br>               **Plaintiff,**<br><br>    **v.**<br><br>**DEPARTMENT OF JUSTICE CRIMINAL DIVISION,** *et al.*<br><br>               **Defendants.** | **Civil Action No. 12-127 (BJR)**<br><br>**MEMORANDUM OPINION** |

**GRANTING IN PART & DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;**
**GRANTING IN PART & DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

This matter is before the Court on the parties' cross-motions for summary judgment and Plaintiff's motion for *in camera* review of the Defendants' withheld records.  Dkt. Nos. 12, 15, 17, 34.  Plaintiff Electronic Privacy Information Center ("EPIC") submitted a Freedom of Information Act ("FOIA") request seeking documents related to the Government's investigation into WikiLeaks, an "Internet-based media organization" famous for releasing classified information to the public.  EPIC now brings suit against the Federal Bureau of Investigations ("FBI"), the Department of Justice's National Security Division ("NSD"), and the Department of Justice's Criminal Division ("CRM") (collectively, "Defendants," "the agencies," or "the Government").  The Court grants summary judgment in favor of FBI and CRM because these agencies have demonstrated that they conducted adequate searches and properly withheld any responsive documents pursuant to FOIA Exemption 7.  However, because NSD fails to

1

demonstrate that its search was adequate, the Court denies NSD's motion for summary judgment and grants Plaintiff's Cross-Motion in this regard.

## II.  BACKGROUND

On November 28, 2010, WikiLeaks published numerous classified United States government documents that had been provided to it by Private Bradley Manning.  The Department of Justice immediately initiated an investigation into the possible unauthorized released of classified information.  Compl. ¶¶ 15-16; Defs.' Mot. at.

As part of its investigation, the Government sought and obtained a court order compelling the social networking website, Twitter, to disclose customer account information for five individuals, including Manning, WikiLeaks spokesperson, Jacob Appelbaum, and WikiLeak's founder, Julian Assange.  *See United States v. Appelbaum*, 707 F.3d 283, 287 (4th Cir. 2013).  Plaintiff suspects that other online services were served with similar court orders requesting information on WikiLeaks supporters.  Def.'s Mot., Ex. 1A at 3.  Plaintiff also claims that "the government began to target members, supporters, and associates of WikiLeaks and WikiLeaks' sources."  In support for this claim, Plaintiff points to news articles on the FBI's questioning of Abbelbaum and David House, the creator of a website that supports Manning.  Pl.'s Opp'n at 4.

On June 23, 2011, EPIC filed FOIA requests with each of the Defendants, seeking records related to the Government's investigation into WikiLeaks.  Pl.'s Cross-Mot., Dkt. 15 at 5; Compl., Dkt. 1 at ¶¶ 30-32.  Specifically, EPIC's requested four categories of records:

1. All records regarding any individuals targeted for surveillance for support for or interest in WikiLeaks;

2. All records regarding lists of names of individuals who have demonstrated support for or interest in WikiLeaks;

3. All records of any agency communications with Internet and social media companies including, but not limited to Facebook and Google, regarding lists of individuals who

have demonstrated, through advocacy or other means, support for or interest in WikiLeaks; and

4.  All records of any agency communications with financial services companies including, but not limited to Visa, MasterCard, and PayPal, regarding lists of individuals who have demonstrated, through monetary donations or other means, support or interest in WikiLeaks.

Defs.' Mot., Exs. 1A, 3-1, 5-1.

Each of the agencies responded to EPIC's FOIA requests separately.  CRM requested more specification on the subject matter and time frame of desired records.  Defs.' Mot. Summ. J. Ex 5, App. 2.  After receiving clarification, CRM responded that it had not yet conducted a search but that any responsive records would not be disclosed pursuant to Exemptions 6 and 7(c). *Id.,* Ex. 5, App. 4.  Meanwhile, NSD responded that it was withholding responsive records pursuant to Exemption 7(a).  *Id.*, Ex. 3-2.

Lastly, FBI stated that it had searched "the indices to [its] Central Records System" using the term WikiLeaks and was "unable to identify responsive main file records." *Id.*, Ex. 1B (internal quotation marks omitted).  In a subsequent search of its Central Records System ("CRS"), the FBI identified "investigative files that likely contain information responsive to [P]laintiff's FOIA request." *Id.*, Ex. 1 ("1st Hardy Decl.") ¶ 19.[1]  The FBI withheld these potentially responsive records pursuant to Exemption 7(A).  *Id.* ¶ 20.

Unsatisfied with the agencies' responses, EPIC filed this lawsuit, seeking review of the adequacy of the FBI and NSD's searches and each of the agency's decision to withhold the responsive documents.  *See generally* Compl.  The parties filed cross-motions for summary judgment.  Dkt. Nos. 12, 15.  In support of its motion, Defendants filed public and ex parte

---

[1] David M. Hardy is the Section Chief of the Record/Information Dissemination Section, Records Management Division at the FBI.  1st Hardy Decl. ¶ 1.

affidavits from each of the relevant agencies.  *See* Order (July 29, 2014) (granting Defendant's motion for leave to file ex parte declarations).

At this juncture, Defendants maintain that all of the responsive documents are protected from disclosure by Exemption 7(A), although additional exemptions may also apply.[2]  Defs' Mot. at 1; Defs' Supp'l at 14.  Plaintiff insists that Exemption 7(A) cannot apply because it is "not generally seeking records about individuals who may be the target of criminal investigations, [but rather] it is seeking records about individuals who are exercising their Constitution rights," by supporting WikiLeaks.  Pl.'s Cross-Mot. at 1.  Plaintiff has also moved for *in camera* review of the withheld records.  Dkt. No. 17.

After this case was transferred to the undersigned, the Court instructed the parties to file supplemental briefing to shed light on any relevant events that had transpired since the filing of the parties' cross-motions for summary judgment.  The Defendants report that on July 2013 Manning was convicted in the military court and his appeal is pending.  Defs' Supp'l at 8.  Defendants note that Manning's prosecution is separate and distinct from the Department of Justice and FBI's multi-subject investigation into the unauthorized disclosure of classified information published on WikiLeaks, which is "still active and ongoing" and remains in the investigative stage.  Defs' Supp'l Br. at 8.

The Court turns now to consider the parties' specific arguments and the applicable legal standards.

### III.  LEGAL STANDARD

FOIA was intended by Congress to make governmental records generally available to any person, on request, unless specifically exempted by the Act itself.  *Vaughn v. Rosen*, 484 F.2d

---

[2]     Defendants also rely on Exemptions 1, 3, 5, 6, 7(C), 7(D), 7(E), and 7(F).  The Court, finding that Exemption 7(A) applies, does not discuss whether these alternative exemptions may apply.

820, 823 (D.C. Cir. 1973). "FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). The nine exemptions the Government may invoke to justify a refusal to produce records must be "construed narrowly," to "provide the maximum access consonant with the overall purpose of the Act." *Vaughn*, 484 F.2d at 823.

Most FOIA cases can be resolved on summary judgment. *See Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment is granted when there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In a FOIA case, an agency is entitled to summary judgment if it can demonstrate that there are no material facts in dispute as to the adequacy of its search for or production of responsive records. *Nat'l Whistleblower Ctr. v. U.S. Dep't of Health & Human Servs*., 849 F. Supp. 2d 13, 21-22 (D.D.C. 2012).

Where a plaintiff challenges an agency's withholding, "the burden is on [the agency] to establish [its] right to withhold information from the public . . . ." *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 861 (D.C. Cir. 1980). An agency can rely on sufficiently detailed declarations or affidavits, a *Vaughn* index, or both to establish that a withholding is proper. *See Bigwood*, 484 F. Supp. 2d at 74. Declarations must (1) "describe the documents and the justifications for nondisclosure with reasonably specific detail," (2) "demonstrate that the information withheld logically falls within the claimed exemption," and (3) "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Elect. Privacy*

*Info. Ctr.,* 384 F. Supp. 2d at 106 (quoting *Military Audit Project v. Casey,* 656 F.2d 724, 738

(D.C. Cir. 1981).  An agency "is not required to provide so much detail that the exempt material

would be effectively disclosed."  *Johnson v. Executive Office for U.S. Attorneys,* 310 F.3d 771,

776 (D.C. Cir. 2002) (citing *Mead Data Cent., Inc. v. U.S. Dep't of Air Force,* 566 F.2d 242, 261

(D.C. Cir. 1977)).

## IV.  ANALYSIS

### A.  Adequacy of Search

Plaintiff challenges the adequacy of the NSD's and FBI's respective searches.  Where a

plaintiff challenges the adequacy of a search under FOIA, the agency "must show beyond

material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant

documents."  *Weisberg v. United States Dep't of Justice,* 705 F.2d 1344, 1351 (D.C. Cir. 1983).

To demonstrate the adequacy of the search, an agency may rely solely on "a reasonably detailed

affidavit [or declaration], setting forth the search terms and the type of search performed, and

averring that all files likely to contain responsive materials (if such records exist) were

searched."  *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  Courts give substantial

weight to an agency's affidavits, and the presumption of good faith accorded to such affidavits

"cannot be rebutted by purely speculative claims about the existence and discoverability of other

documents."  *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 849 F. Supp. 2d at 22

(quoting *SafeCard Servs. Inc. v. Sec. & Exch. Comm'*n, 926 F.2d 1197, 1200 (D.C. Cir. 1991))

(internal quotation marks omitted).

### 1.  NSD Has Failed to Demonstrate an Adequate Search

Upon receiving Plaintiff's request, NSD FOIA personnel determined that the

Counterespionage Unit (CES) was likely to have responsive records.  Def.'s Mot., Ex. 3 (1st

Bradley Decl.) ¶ 9.[3]  CES stated that there was an "ongoing criminal investigation relating to WikiLeaks and [the] unauthorized disclosure of classified information." *Id.*  The lead CES attorney on this investigation indicated that the only place where any potentially responsive documents would reasonably be contained was in his/her electronic files, and that files in other locations would merely be duplicative of responsive records found in his/her files. *Id.*  NSD FOIA personnel was given access to the lead attorney's files and reviewed them before determining that "all responsive files are part of a pending criminal investigation and are therefore exempt from disclosure pursuant to FOIA Exemption []7(A)." Bradley 1st Decl. ¶ 10.

   EPIC contends that NSD's search is lacking because the agency "does not explain how [it] determined which components to search," or why all responsive records found outside of the lead attorney's files would be duplicative, "or the terms used, if any, to search electronic files." Pl.'s Cross-Mot. at 20-21.  In response, NSD rehashes the aforementioned steps taken by NSD to locate responsive records, concluding that the "search was sufficiently comprehensive." Defs.' Mot. Summ. J. at 8.  NSD claims it provided details regarding how it conducted its search in its ex parte declaration because "disclosure would itself compromise the investigation."[4] *Id.*

   The Court agrees that NSD has failed to provide evidence of an adequate search.  Despite NSD's assertion, its ex parte declaration fails to provide any further explanation regarding how its search was conducted.[5] *See* Bradley 2d Decl. ¶ 4.  Such an explanation is especially

---

[3]   Mark A. Bradley is the director of the FOIA and Declassification Unit of the Office of Law and Policy for the NSD.  Bradley 1st Decl. ¶ 1.

[4]   Bradley submitted an ex parte declaration in addition to his public declaration. *See* Def.'s Mot., Ex. 4.

[5]   Instead of explaining how its search was conducted, NSD's *ex parte* declaration focuses on the fruits of its search. *See* Bradley 2d Decl. ¶ 4.  However, the adequacy of a FOIA search is not determined by the fruits of the search, but by the appropriateness of the methods used to carry out the search. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citing *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)).

warranted given that NSD limited its search to only one employee's files.  NSD's reason for

limiting its search to this one employee's files was that "[n]o other locations within NSD area

[were] reasonably likely to have responsive records that are not duplicated in the electronic files

of the lead attorney."  Bradley 1st Decl. ¶ 9.  However, this conclusion is based solely on the

lead attorney's representations, and it is not obvious why the lead attorney would know the

contents of all the responsive records so as to affirm that they are duplicative of his files or,

conversely, that his files are duplicative of all other files.

Moreover, it does not appear that NSD used any search terms to search its records, or, if

it did, NSD does not provide these search terms to the Court.  *See Valencia–Lucena,* 180 F.3d at

326 (explaining that a reasonably detailed affidavit should set forth the search terms used by the

agency).  This is especially troubling given the specificity of EPIC's request, which expressly

included the names of people and companies it sought information about.  *See Meeropol v.*

*Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986) (stating that courts should measure the adequacy of a

search by "the reasonableness of the effort in light of the specific request").

The Court finds that NSD's affidavit does not provide sufficient details to support an

adequate search.  Any future search must "reflect a systematic approach to document location."

*See Oglesby*, 920 F.2d at 68 ("A reasonably detailed affidavit, setting forth the search terms and

the type of search performed, and averring that all files likely to contain responsive materials (if

such records exist) were searched, is necessary to afford a FOIA requester an opportunity to

challenge the adequacy of the search and to allow the district court to determine if the search was

adequate in order to grant summary judgment."); *McGehee v. Cent. Intelligence Agency*, 697

F.2d 1095, 1102 (D.C. Cir. 1983) (indicating that a agency's affidavit should "describe[] its

search procedures and explain[] why a more thorough investigation would have been unduly

burdensome").  Accordingly, the Court grants Plaintiff's motion insofar as it challenges the adequacy of NSD's search.[6]

### 2.   FBI's Search was Adequate

FBI searched its Central Record System ("CRS") – the main database used by the FBI to organize its files – using the search term "WikiLeaks."  1st Hardy Decl. ¶ 19.  Generally, the CRS may be searched by inserting a key word and locating it among the main subject files, or one can perform a cross-reference search that locates any subject file merely mentioning the key term, regardless of whether or not the title of that file includes that term.  *Id.* ¶ 12.

The FBI's initial CRS searched only the main subject files for the term "WikiLeaks."  *Id.* ¶ 18.  After this search proved unsuccessful, the FBI conducted a cross-reference search and found a file that contained the term WikiLeaks.  *Id.* ¶ 19.  The FBI contacted the case agents associated with this file and asked them whether their files contained information responsive to EPIC's FOIA request.  Specifically, the FBI inquired about "all records regarding any individual targeted for surveillance for support for or interest in WikiLeaks," any "lists of names of individuals who have supported or shown interest in WikiLeaks," as well as any "communications with internet, social media, and financial services companies regarding 'lists of individuals who have demonstrated ... support for or interest in WikiLeaks.'"  *Id.* ¶ 19.  After consultations with the case agents, "the FBI identified investigative files that likely contain information responsive to [EPIC's] FOIA request."  *Id.*  The FBI clarifies that it is not investigating individuals who "simply support or have an interest in WikiLeaks," and that it does not "maintain lists or individuals who have demonstrated support for or interest in WikiLeaks."

---

[6]     The Court will not consider whether exemptions apply to NSD until an adequate search is conducted.

Nevertheless, the FBI interpreted "Plaintiff's request broadly," and "concluded that records concerning its investigation of the disclosure of the classified information that was published on the WikiLeaks website would be responsive to Plaintiff's request."  Hardy 1st Decl. n.3.

Plaintiff now argues that FBI failed to follow through on "obvious leads to discover requested documents" because it only used one search term, WikiLeaks.  Pls.' Cross-Mot. Summ. J. at 22.  FBI responds that while it began its search using the term WikiLeaks, it "broadened its search by using the information obtained to contact particular case agents and identify additional investigative files that likely contained responsive information."  Def.'s Mot. at

The Court finds that FBI's search for responsive records was adequate.  The FBI used the key term WikiLeaks to search its CRS, but its search efforts did not cease there.  The FBI then used the results of the CRS search to locate the case agents working with potentially responsive material.  The Court deems that this strategy was especially reasonable given that the term WikiLeaks is repeatedly stated in Plaintiff's FOIA request when describing each group of requested documents.  *See* Defs.' Mot. Summ. J., Exs. 1A, 3-1, 5-1.  Once identifying the case agents, the FBI requested that these case agents review their files for further responsive documents, specifically referring to the language in Plaintiff's FOIA request.  The Court finds that the FBI's use of the term WikiLeaks at the initial stages of the search was reasonable in light of the Plaintiff's own consistent use of term when drafting its FOIA request, as well as the FBI's later search efforts with its case agents that went beyond the term WikiLeaks.

### B. FBI & CRM Properly Withheld Responsive Documents Pursuant to FOIA Exemption 7(A)

#### 1. Exemption 7 Threshold: Were the Records "Compiled for Law Enforcement Purposes"?

Plaintiff acknowledges "that a portion of the responsive records relate to legitimate law enforcement investigations," and are therefore properly withheld under Exemption 7(A).  Pl.'s Cross-Mot. at 11.  Nevertheless, Plaintiff argues that its FOIA requests also encompass "the targeting of individuals engaged in lawful First Amendment activities for which no legitimate law enforcement purpose exists."  Pl.'s Reply at 4; *see also* Pl.'s Cross-Mot. at 10-13.  In other words, Plaintiff believes that WikiLeaks supporters are being targeted illegally, given that "[t]here is no criminal conduct, no security risk or violation of federal law, and no law violators to prosecute."  Pl.'s Cross Mot. at 14.  Plaintiff points to the surveillance of Jacob Appelbaum and David House to support the likely existence of records that have "no legitimate law enforcement purpose."[7]  Pl.'s Reply at 4.

Defendants respond that the Plaintiff is "argu[ing] about documents that do not exist." Defs.' Supp'l Reply at 2.  Defendants explain that their search has not produced documents responsive to Plaintiff's requests because there are no surveillance records for individuals who "simply support" or have interest in WikiLeaks.  *Id.*  According to Defendants, "all of the

---

[7]     House brought a law suit against various government entities, claiming that the government had conducted an unreasonable search and seizure when he was stopped at the border and a search of his laptop was conducted.  Pl.'s Opp'n at 14 (citing *House v. Napolitano*, 2012 U.S. Dist. Lexis 42297, No. 11-10852 (D. Mass. March 28, 2012)).  The District Court of Massachusetts denied the government's motion to dismiss House's lawsuit.  In its brief, Plaintiff provides an excerpt from the District Court of Massachusetts's opinion which sets forth the factual allegations surrounding the search as House described them in his complaint.  The Court finds this recitation of facts unhelpful, given that the District Court of Massachusetts was not making any findings and was required to accept House's allegations as true at the motion to dismiss stage.  Nor did the *House v. Napolitano* lawsuit reach the procedural stage where any findings of fact were made, and instead, in May 2013, House filed a stipulation of dismissal with prejudice.  Dkt. No. 33-6.

records they are withholding are law enforcement records," notwithstanding Plaintiff's

"assumptions and suppositions" to the contrary. *Id.*

An agency withholding records pursuant to Exemption 7 must demonstrate, as a

threshold matter, that its withheld records were "compiled for law enforcement purposes." *Pratt*

*v. Webster*, 673 F.2d 408, 416 (D.C. Cir. 1982).  But when an agency "specializes in law

enforcement, its decision to invoke [E]xemption 7 is entitled to deference." *Campbell v. DOJ*,

164 F.3d 20, 32 (D.C. Cir. 1998).  Specifically, the D.C. Circuit has recognized that

> an agency whose principal mission is criminal law enforcement will more often
> than not satisfy the Exemption 7 threshold criterion.  Thus, a court can accept less
> exacting proof from such an agency that the purpose underlying disputed
> documents is law enforcement.  This less exacting judicial scrutiny of a criminal
> law enforcement agency's purpose in the context of the FOIA Exemption 7
> threshold is further bolstered by Congress' concern that inadvertent disclosure of
> criminal investigations, information sources, or enforcement techniques might
> cause serious harm to the legitimate interests of law enforcement agencies.

*Id.* at 418.

In line with this more deferential approach, the D.C. Circuit set forth "two critical

conditions that must be met for a law enforcement agency to pass the Exemption 7 threshold."

*Pratt v. Webster*, 673 F.2d at 420.  "First, the agency's investigatory activities that give rise to

the documents sought must be related to the enforcement of federal laws or to the maintenance of

national security." *Id.*  To demonstrate this "nexus" requirement, the agency must identify "a

particular individual or a particular incident as the object of its investigation and the connection

between that individual or incident and a possible security risk or violation of federal law." *Id.*

The existence of a possible security risk or violation of federal law establishes that an agency

acted "within its principal function of law enforcement, rather than merely engaging in a general

monitoring of private individuals' activities." *Id.*

Second, "the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least 'a colorable claim' of its rationality." *Id.* at 421.  In other words, "the agency's basis for the claimed connection between the object of the investigation and the asserted law enforcement duty cannot be pretextual or wholly unbelievable." *Id.*  In sum, an agency's declarations filed in support of Exemption 7(A) must provide facts that "establish a rational 'nexus' between the investigation and one of the agency's law enforcement duties, and a connection between an individual or incident and a possible security risk or violation of federal law." *Campbell*, 164 F.3d at 24-25.

The documents generated in the course of investigating the unauthorized release of classified material on the WikiLeaks website were quite obviously related to the FBI and CRM's law enforcement duties to enforce criminal laws and to protect against national security threats. Defendants FBI and CRM have filed seven declarations in this case, three of which were filed ex parte and *in camera*.  David Hardy from the FBI states that "responsive records are contained in files pertaining to the FBI's investigation of the disclosure of classified information that was published on the WikiLeaks website."  Hardy 1st Decl. ¶ 23.  Similarly, John Cunningham[8] from CRM states that "the responsive records in the possession of the Criminal Division are all part of the Department of Justice's investigation into the unauthorized disclosure of classified information that resulted in the publication of materials on the WikiLeaks website." Cunningham 1st Decl. ¶ 12.  The fact that the agencies have identified a possible security risk or violation of federal law sufficiently establishes, at least for purposes of Exemption 7, that they

---

[8]     John E. Cunningham III is a trial attorney in the Department of Justice, Criminal Division, and is currently assigned to the Office of Enforcement Operations, Freedom of Information Act/Privacy Act Unit.  Cunningham 1st Decl. ¶ 1.

have acted "within [their] principal function of law enforcement, rather than merely engaging in a general monitoring of private individuals' activities."[9] *Pratt v. Webster*, 673 F.2d at 420.

Moreover, there is no support for the notion that Defendants' investigation into the unauthorized publishing of classified material on WikiLeaks is pretext and that Defendants are conducting illegal investigations of innocent WikiLeaks supporters. The FBI specifically states that it "is not investigating individuals who simply support or have an interest in WikiLeaks," and "does not . . . maintain lists of individuals who have demonstrated support for or interest in WikiLeaks, and thus has no records responsive to this portion of Plaintiff's request." Hardy 1st Decl. ¶ 19 n.3; *see also* Hardy 4th Decl. ¶¶ 7-8. Moreover, CRM's *in camera* submission demonstrates to the Court that its responsive documents do not pertain to an investigation of individuals who "simply support" WikiLeaks. *See* Defs.' Mot. Summ. J. Ex. 6. After reviewing the Defendants' declarations and exhibits attached thereto, the Court finds that Plaintiff's speculation fails to rebut the presumption of good faith that is afforded to agency declarations. *See Nat'l Whistleblower Ctr.*, 849 F. Supp. 2d at 22 (quoting *SafeCard Servs., Inc.*, 926 F.2d at 1200 (D.C. Cir. 1991)) (internal quotation marks omitted) (stating that the presumption of good faith afforded to agencies' sworn statements "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents").

## 2. Interference with Enforcement Proceedings

To make a successful Exemption 7(A) claim, the government must further "demonstrate that disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings

---

[9] The D.C. Circuit has recently clarified that records are "compiled for law enforcement purposes" not only when they are related to an investigation and prosecution after a violation of the law, but also when the records are generated in an effort to "prevent criminal activity and to maintain security." *Elec. Privacy Info. Ctr. v. United States Dep't of Homeland Sec.*, 2015 U.S. App. LEXIS 2043, at *8-9 (D.C. Cir. 2015).

that are (3) pending or reasonably anticipated." *Citizens for Responsibility & Ethics in Wash. v. Dep't of Justice,* 746 F.3d 1082, 1096 (D.C. Cir. 2014) (internal quotation marks and citations omitted). Here, Defendants assert that "disclosure would identify potential witnesses and other individuals who have cooperated with the investigation, reveal the documentary evidence and other information gathered in the course of the investigation, expose the scope and methods of the investigation, and tip-off subjects and other persons of investigative interest." [10] Defs.' Reply at 10.

Plaintiff first argues that the release of records concerning individuals who are simply supporting WikiLeaks could not interfere with any pending or reasonably anticipated enforcement proceeding since their activity is legal and protected by the First Amendment. Pl.'s Cross-Mot. at 14. This argument is again premised on Plaintiff's speculation that the Government's investigation is targeting innocent WikiLeaks supporters, and, for the reasons previously discussed, the Court finds it lacks merit.

Next, Plaintiff argues that litigation surrounding the Twitter Order has already disclosed to the public "[m]any of the techniques used to conduct surveillance on WikiLeaks support[er]s," and therefore subsequent disclosure can do no further damage. Pl.'s Cross-Mot. at 17. Plaintiff asks that Defendants turn over "any records whose content has already been revealed in the litigation over the Twitter Order, and any generalized information about publicly-known surveillance practices." *Id.* at 18. Finally, Plaintiff contends that the Defendants' investigation is

---

[10] Defendants originally stated that the release of documents would also interfere with the military prosecution of Manning. After supplemental briefing, Defendants acknowledge that Manning has been convicted and sentenced by a military tribunal but maintain that the release of these records would interfere with Manning's appeal. The Court need not determine whether the appeal of Manning's sentence is sufficient to warrant Exemption 7(A) protection. Regardless of whether the records interfere with Manning's prosecution, the Court finds that the records interfere with an active, ongoing law enforcement investigation concerning the unauthorized release of classified materials on the WikiLeaks website. As such, the records qualify for Exemption 7(A) protection.

too vague to support a withholding under Exemption 7(A). Pl.'s Supp'l Br. at 6 (citing *Citizens for Responsibility & Ethics in Washington v. Dep't of Justice,* 746 F.3d 1082 (D.C. Cir. 2014)).

"Exemption 7(A) explicitly requires a predictive judgment of the harm that will result from disclosure of information, permitting withholding when it 'could reasonably be expected' that the harm will result." *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003) (quoting 5 U.S.C. § 552(b)). "So long as the investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies." *Citizens for Responsibility & Ethics in Washington v. Dep't of Justice,* 746 F.3d at 1098 (quoting *Juarez v. Dep't of Justice*, 518 F.3d 54, 59 (D.C. Cir. 2008)). The government has the burden of demonstrating a reasonable likelihood of interference with enforcement proceedings. *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926. The government's declarations, especially when viewed in light of the appropriate deference to the executive on issues of national security, may satisfy this burden. *Id.*

Here, the FBI and CRM have determined that the release of information on the techniques and procedures employed in their WikiLeaks investigation would allow targets of the investigation to evade law enforcement, and have filed detailed affidavits in support thereof. Hardy 1st Decl. ¶ 25; Cunningham 1st Decl. ¶ 11. As Plaintiff notes, certain court documents related to the Twitter litigation have been made public and describe the agencies' investigative techniques against specific individuals. To the extent that Plaintiff seeks those already-made public documents, the Court is persuaded that their release will not interfere with a law enforcement proceeding and orders that Defendants turn those documents over. [11]

---

[11]     In its supplemental briefing, Plaintiff notes that subpoenas for information on Smari McCarthy and Herbert Snorrason, "two Icelandic freedom of information activists who supported WikiLeaks," have also been unsealed. Pl.'s Supp'l Opp'n at 7. Plaintiff argues that since McCarthy and Snorrason are now in possession of the subpoenas, the agencies' disclosure of responsive records is not likely to interfere

Despite Plaintiff's urging to the contrary, the release of the Twitter litigation documents does not entitle Plaintiff to the non-public records which may describe the same or similar techniques as those discussed in the Twitter litigation.  The Supreme Court and the D.C. Circuit have cautioned against allowing "bits and pieces" of data to be released which "may aid in piecing together bits of other information even when the individual piece is not of obvious importance itself."  In other words, "what may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context."  *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d at 928-929.

In the instant case, releasing all of the records with investigatory techniques similar to that involved in the Twitter litigation may, for instance, reveal information regarding the scope of this ongoing multi-subject investigation.  This is precisely the type of information that Exemption 7(A) protects and why this Court must defer to the agencies' expertise.  *See id*. at 928 (determining that Exemption 7(A) allowed agency to withhold the names of detainees even though some names were made public because the records "could reveal much about the focus and scope of the agency's investigation and are thus precisely the sort of information exemption

---

with law enforcement proceedings.  Defendant responds that EPIC's narrower request for information did not include the names of these two individuals.  Def.'s Supp'l Reply at 4, n.1.

As an initial matter, the Court rejects the Defendant's representation of EPIC's request.  EPIC's FOIA request clearly extends beyond any named individuals.  *See* Dkt. No. 12-4, Ex. 3 ("However, the FOIA Request is not limited to those six individuals.  In fact, one of the purposes of this FOIA Request is to obtain records relating to the surveillance of other individuals who have not been named as surveillance targets.").  Nevertheless, the effect of the release of the McCarthy and Snorrason court documents is not as broad as Plaintiff argues.  Like the Twitter litigation documents, any responsive document related to McCarthy and Snorrason which has already been made public should be released to Plaintiff.  However, insofar as Plaintiff seeks the disclosure of other non-public records, the Court's denies such a request for the reasons elaborated below.

7(A) allows an agency to keep secret") (quoting *Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir.

1996)).  The Court finds this to be particularly true here, where the investigation, as here, deals

with issues of national security.[12]  *Id.* at 928 ("[T]he judiciary is in an extremely poor position to

second-guess the executive's judgment in this area of national security.").

Finally, the Court is not persuaded that the Defendants' investigation is too vague to

support an Exemption 7(A) withholding.  EPIC attempts to liken the investigation in the instant

case with that at issue in *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of

Justice*, 746 F.3d 1082 (D.C. Cir. 2014) (hereinafter, *CREW v. Dep't of Justice*).  Pl.'s Supp'l

Opp'n at 6.  *CREW* concerned the FBI's investigation into the activities of former lobbyist Jack

Abramoff.  Several people were convicted, including two senior aides to Tom DeLay, the former

House of Representatives Majority Leader.  *Id.* at 1087.  The FBI never acknowledged whether

Tom DeLay was the target of their investigation but, in August 2010, DeLay announced that the

Department of Justice would not bring criminal charges against him.  *Id.*  After this

announcement, CREW filed a FOIA request seeking records related to the FBI's investigation of

Tom DeLay.  The FBI argued that Exemption 7(A) applied because the release of the records

would interfere with the criminal prosecution of DeLay's senior aides as well as all criminal

investigations related to the lobbying investigation.  *Id.* at 1096.

---

[12]    In its supplemental brief, Plaintiff states that the media has recently uncovered "investigative techniques deployed by the National Security Agency," which were used in the NSA's surveillance of WikiLeaks and its supporters.  Pl.'s Supp'l Opp'n at 8.  Plaintiff argues that the public's awareness of the NSA's investigative techniques show that the disclosure of such techniques will not aid criminals in circumventing the investigation or the law.  *Id.* at 10.  The Court rejects Plaintiff's arguments.  As an initial matter, the NSA is not a Defendant and its investigation is not at issue here.  Moreover, as noted above, the scope of the Defendants' investigations and other "bits" of valuable information may be revealed by disclosing the records, even if the investigative techniques discussed therein have already been made public.

Ultimately, the D.C. Circuit in *CREW v. Department of Justice* determined that Exemption 7(A) did not apply because there was no pending or anticipated proceeding. First, DeLay's senior aides had been convicted, sentenced, and no appeals were pending. *Id.* at 1097. Second, the Circuit expressed "considerable uncertainty about whether a criminal investigation in fact continues to this day." *Id.*

In stark contrast to the *CREW* panel, this Court is persuaded that there is an ongoing criminal investigation. Unlike the vague characterization of the investigation in *CREW*, Defendants have provided sufficient specificity as to the status of the investigation, and sufficient explanation as to why the investigation is of long-term duration. *See e.g.*, Hardy 4th Decl. ¶¶ 7, 8; Bradley 2d Decl. ¶ 12; 2d Cunningham Decl. ¶ 8.

### C.  Segregability

EPIC argues that "the government has failed to segregate and release non-exempt portions of records." Pl.'s Cross-Mot. Summ. J. at 22. EPIC insists that the types of documents the government wants to protect are readily segregable, "[f]or example, the government is seeking to protect the names of witnesses, law enforcement personnel, foreign officials, and individual targets of investigations, as well as predecisional and deliberative documents." Pl.'s Cross-Mot. at 23. In response, Defendants maintain that "[e]ach component has reviewed the responsive material, and determined that it is exempt in its entirety under Exemption 7(A). As a result, there are no segregable, non-exempt portions that may be released to EPIC." Defs.' Mot. at 15.

FOIA requires that "any reasonable segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). This Circuit has long since held that "non-exempt portions of a document must be

disclosed unless they are inextricably intertwined with exempt portions." *Mead Data*, 566 F.2d at 260.  In order to demonstrate that all reasonably segregable material has been disclosed, the agency must provide a "detailed justification" for its non-segregability.  *Johnson*, 310 F.3d at 776 (quoting *Mead Data,* 566 F.2d at 261)).  "[C]onclusory language in agency declarations that do not provide a specific basis for segregability findings by a district court may be found inadequate." *Jarvik v. C.I.A.*, 741 F. Supp. 2d 106, 120 (D.D.C. 2010) (citations omitted). However, the agency is not required to provide so much detail that the exempt material would be effectively disclosed.  *Johnson*, 310 F.3d at 776 (quoting *Mead Data,* 566 F.2d at 261)).

The Court finds that the Government has amply supported its determination that there is no segregable material.  The FBI explains in its declaration that "[its] review of the potentially responsive records in the pending cases reveals no materials that can be released without jeopardizing current or prospective investigative/and or prosecutive efforts."  Hardy 1st Decl. ¶¶ 27, 119.  The Court, having reviewed the FBI's carefully detailed ex parte declaration, is persuaded.  *See* Hardy 4th Decl. ¶ 7.  Similarly, CRM states, "[t]he Criminal Division has reviewed these records and determined that there are no reasonably segregable non-exempt portions that can be released."  Cunningham 1st Decl. ¶ 44.  Furthermore, CRM's ex parte *Vaughn* index, which identifies every responsive document and the basis for its withholding, provides further support for CRM's segregability analysis.  Accordingly, the Court finds that the government provides adequate justification for the nonsegregability of the records.

### D.  *In Camera* Review

EPIC contends that the Court should review the withheld records *in camera*, because the government's secrecy limits EPIC's "ability to provide a check on the government's exemption claims."  Pl.'s Cross-Mot at 25- 26.

 While district courts have "the explicit authority to conduct *in camera* reviews of agency files to determine the applicability of the claimed [FOIA] exemptions," the court should not resort to an *in camera* review as a matter of course. *Quinon v. Fed. Bureau of Investigation*, 86 F.3d 1222, 1227-28 (D.C. Cir. 1996) (citing S. Conf. Rep. No. 1200, 93d Cong., 2d Sess. 9 (1974).  However, an *in camera* review may be required "when agency affidavits in support of a claim of exemption are insufficiently detailed or there is evidence of bad faith on the part of the agency."  *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996) (citing *Quinon v. Federal Bureau of Investigation,* 86 F.3d 1222, 1228 (D.C. Cir. 1996)).

Here, EPIC brings no allegation that Defendants acted in bad faith.  Moreover, as discussed above, the agencies' public and ex parte declarations provide a sufficient basis to determine that Exemption 7(A) applies to the responsive documents.  *See Hayden*, 608 F.2d at 1386 (declining to conduct *in camera* review where agency had not displayed bad faith and had provided sufficient declarations).  Accordingly, the court, reminded that Congress intended that the courts give agency declarations "substantial weight" in light of their law enforcement expertise, declines to conduct an *in camera* review.

## V.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Defendants' motion for summary judgment, and grants in part and denies in part Plaintiff's motion for summary

judgment.  An Order consistent with this opinion is separately and contemporaneously issued 4th

day of March, 2015.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE